J5FTSECC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
     SECURITIES AND EXCHANGE
3    COMMISSION,

4                  Plaintiff,
                v.                          18 CV 8175 (ER)
5
     BARRY C. HONIG, et al.,
6
                  Defendants.
7    ------------------------------x
                                            May 15, 2019
8                                           10:30 a.m.

9    Before:
                       HON. EDGARDO RAMOS,
10
                                            District Judge
11
                          APPEARANCES
12
     SECURITIES AND EXCHANGE COMMISSION
13        Attorneys for Plaintiff
     BY:  NANCY BROWN
14        KATHERINE BROMBERG
          JON DANIELS
15
     SIMPSON THACHER & BARTLETT
16        Attorneys for Defendant Honig
     BY:  ANAR PATEL
17
     MILBANK
18        Attorneys for Defendant Stetson
     BY:  ADAM FEE
19
     RICHARD & RICHARD
20        Attorneys for Defendant Brauser
     BY:  DENNIS RICHARD
21
     ORRICK, HERRINGTON & SUTCLIFFE
22        Attorneys for Defendant O'Rourke
     BY:  GREGORY MORVILLO
23        NICOLE LLORET

24   COOLEY
          Attorneys for Defendant Ladd
25   BY:  RANDALL LEE
          MICHAEL BERKOVITZ

J5FTSECC

1          (Case called)

2          THE COURT:  Good morning to you all.  This matter is

3     on for an initial conference.

4          Ms. Brown, it's been a while since this was case

5     filed, but why don't you give me, in a nutshell, what this case

6     is about.

7          MS. BROWN:  Well, your Honor, this case was filed, as

8     you know, in September of 2018 against 20 defendants.  It

9     encompasses allegations of three pump and dumps with respect to

10    three different companies.  They are named as Company A,

11    Company B, and Company C in the complaint, but I'm free to tell

12    you that they are BioZone Pharmaceuticals, MGT Investments, and

13    MabVax Therapeutics.

14         THE COURT:  What's that third one?

15         MS. BROWN:  MabVax, M-A-B-V-A-X.

16         And we allege that over a period between 2010 and 2016

17    the defendants engaged in schemes to inflate the price of the

18    securities.  They gained undisclosed control over companies,

19    amassed millions of shares of securities, then engaged a

20    promoter or promoters to publicize in a false and misleading

21    way the rosy prospects of these issuers, and then cashed out

22    when the price and the volume of the securities rose.  And we

23    allege that that happened five times, two with respect to

24    MabVax, two with respect to MGT Investments, and one with

25    respect to BioZone.  We allege that they made millions of

J5FTSECC

1    dollars in these endeavors, and they violated numerous

2    provisions of the federal securities laws in doing so.

3          I think we're here today to talk about a discovery

4    schedule, and I'm happy to proceed there or give you more color

5    on the complaint.  I can tell you the status of various

6    settlements if that --

7          THE COURT:  Why don't you do that.  More than half of

8    this case or half of the defendants are gone at this point,

9    right?

10          MS. BROWN:  Either completely or partially.  So we

11    have three defendants with whom we have entered into partial

12    settlements by which they have consented to the imposition of

13    injunctive relief, monetary relief remains.  We will determine

14    that at a later point, usually at the end of the case,

15    hopefully on further consent and not for the motion practice.

16          We have also settled with numerous defendants

17    completely, so I think a total of nine out of the first 20 have

18    been settled either partially or completely.  They include

19    Mr. Groussman and his company, Dr. Frost and his two companies,

20    and various associated entities.

21          So now we would like to move into discovery.  We're

22    happy to do that.  We have proposed a schedule, the defendants

23    have proposed a different schedule.  Some of the defendants

24    agree with all of defendant Ladd's schedule and some do not.

25          THE COURT:  As I understand it, everyone agrees that

4

J5FTSECC

1   April 1 of 2020 is the cut-off date, correct?

2              MS. BROWN:  I believe actually defendant Ladd's last

3   proposal has an April 30 cut-off.  I think the two main issues

4   for discussion this morning are the timing of written

5   discovery, by which I mean interrogatories and requests to

6   admit.  The Commission believes after years of practice in this

7   area that those kinds of discovery should await the end of the

8   fact discovery period, and I'm happy to expand on that

9   position.

10             With respect to the other item that I think is up for

11  discussion is the postponement of the defendants' depositions.

12  The defendant Ladd's proposal has the defendants available for

13  deposition only in a three-week period at the end of fact

14  discovery, and we think that's inappropriate.  We think that

15  the defendants' depositions should be available as soon as the

16  document discovery is completed, which we anticipate will

17  happen very, very soon, and we don't see any reason for delay.

18  And frankly, defendants have offered none except that they want

19  to be better educated about our case.  I mean I understand that

20  position, but I don't think that's a reason to restrict the

21  depositions of the defendants.

22             THE COURT:  Why is it that you want to hold off on

23  turning over documents until later, or is has that issue been

24  resolved?

25             MS. BROWN:  I think that issue has been resolved.  We

J5FTSECC

1    have agreed with defendant Ladd and defendant Brauser to

2    respond to their requests in 30 days from the issuance of those

3    requests, which is in May.  So we will do that.

4             We had originally proposed, because the original

5    proposal required us to turn over documents at the same time we

6    were responding to motions to dismiss, and we simply proposed

7    what we thought was reasonable, which was to delay it until at

8    least our oppositions were filed.

9             Since that time Ladd and Brauser have both served

10   document requests, we have also served document requests, and

11   so we anticipate that that would go forward.

12            THE COURT:  Okay.  So I will hear from -- who

13   represents Mr. Ladd?

14            MR. LEE:  I do, your Honor.

15            THE COURT:  But before we get to that, I want to give

16   the defendants an opportunity to provide any additional color

17   that you want me to know at this time.  You are under no

18   obligation to revisit anything, but if there's something that

19   you want to put on the record, I'm happy to hear you.

20            MR. FEE:  No, thank you, your Honor.

21            THE COURT:  Seeing none, Mr. Lee, why is it that you

22   want to -- well, what is your position on these various issues,

23   on written discovery and the documents?

24            MR. LEE:  Thank you, your Honor.  First, I am glad to

25   hear from the SEC.  I think all the defendants are glad to hear

J5FTSECC

1   that the issue as to when requests for production can be

2   promulgated and when those documents can be produced has been

3   resolved.  It has not been entirely clear what the SEC's

4   position is on that, so that's why the Court saw sort of

5   different positions taken up in our letters because there was a

6   lack of transparency from the SEC as to what their position was

7   actually going to be it, dispute numerous requests by us.  And

8   that's why I think counsel for at least one of the other

9   parties has maintained the position that document discovery

10  should be deferred, but we believe, obviously, that there is no

11  reason to defer it.

12          On the issue of written discovery, it's our position

13  that given the complexity of the charges, the number of

14  charges, the number of different statutory provisions that the

15  SEC has cited, which exceeds something like 15 or 20 different

16  alleged statutory violations under various provisions of the

17  securities laws, a number of different players and parties, we

18  believe that written discovery requests, namely requests for

19  admissions and interrogatories, is an appropriate way to try to

20  identify what are truly the disputed issues, what are not, what

21  issues are not disputed, to try to sort of make a discovery

22  more streamlined.

23          That certainly applies to requests for admission and

24  fact-based interrogatories.  With respect to contention

25  interrogatories, I think our position would be the same, that

J5FTSECC

1    it is a way of making discovery more streamlined and efficient,

2    given the nature of the charges.

3          I would also sort -- just to back up for a second, I

4    would like to clarify for the Court that the defendants in this

5    case sort of occupy different roles.  There are a group of

6    defendants who are alleged to have been essentially the

7    orchestrators of the various alleged pump and dump schemes, and

8    then there were the defendants who were charged who are

9    officers of the companies that were allegedly the vehicles for

10   the pump and dump schemes.

11         Mr. Ladd, my client, is the CEO -- he is currently the

12   CEO of MGT Capital, which is a public company.  The evidence

13   will show it is a longstanding, legitimate, public company with

14   legitimate business interests.  And his role is solely with

15   respect to the allegation that he allowed his company

16   essentially -- he knowingly allowed his company to be used as

17   one of the vehicles for this pump and dump scheme.  So I think

18   it is inaccurate to characterize him as a perpetrator of this

19   sort of broad manipulative scheme, as Ms. Brown has suggested.

20   So I just wanted to clarify for the Court that Mr. Ladd's

21   position, we submit, is the quite different from some of the

22   other defendants.

23         Finally, on the issue of depositions, it was not clear

24   to us that the SEC was proposing depositions to occur -- party

25   depositions only after the production of documents was

J5FTSECC

1    completed.  Certainly we think that's appropriate.  Our

2    proposal structuring and staging the case such that we have

3    document production, requests for admission and interrogatories

4    proceeding at the parties' discretion, everyone will have to

5    decide when they believe it is appropriate and useful to

6    promulgate those, to be followed by non-party depositions and

7    party depositions, at least in my experience is a perfectly

8    sort of logical and conventional way of making sure the

9    evidence has been produced and has been available to all

10   counsel and parties before party depositions start.  That was

11   the simple reason for our proposal.

12       THE COURT:  It certainly seems appropriate to hold off

13   on party depositions until all document and other productions

14   have been completed, but it sounded a little strange to me that

15   they would be confined to a three-week period fairly late in

16   the discovery schedule.

17       So given that the SEC has now agreed that document

18   production can begin immediately, I take it, Mr. Lee, that you

19   no longer stand on that position that it should be held off

20   until after the new year and confined to that three-week

21   period.

22       MR. LEE:  That would certainly address a large part of

23   our concern.  I know that the other defendants joined in our

24   proposal on that point, so I can't speak for all of the

25   defendants, but that would certainly address a big part of our

J5FTSECC

1    concern.

2              THE COURT:  Does anyone else wish to speak on the

3    topic of depositions?

4              MR. MORVILLO:  Yes, your Honor, Gregory Morvillo.

5              If what we're saying is that party depositions don't

6    take place in the last three weeks, which seems to me to be a

7    tight schedule as well, but we could put them at the end of the

8    depositions.  That would be amenable to Mr. O'Rourke, and that

9    might put them out to the end -- or the beginning of the next

10   year.  If the deadline for the discovery is April 1st or

11   April 30, whatever it's going to be, there's no reason to take

12   those depositions at the beginning, we should take them at the

13   end when we have had an opportunity -- all the defendants have

14   had an opportunity to see everything and know everything.

15             The SEC knows everything.  They have had the

16   opportunity to talk to people and interview people.  They did

17   this whole investigation.  We are behind the eight ball at this

18   point.  We have nothing except the complaint.  So putting our

19   clients at the end, particularly in light of the fact that

20   there's a criminal investigation in San Francisco into the very

21   allegations that has been ongoing, makes sense and is

22   protective of my clients, so I would like to put our clients at

23   the end of process.  It doesn't have to be in a three-week

24   period, but wherever the end is, that's where they should be.

25             THE COURT:  I don't know about this San Francisco

J5FTSECC

1   investigation.  Does anyone have any insight they could share

2   with the court?

3          MR. MORVILLO:  There is a criminal investigation, my

4   understanding was a dual investigation with the SEC and San

5   Francisco, although I wasn't privy to it, obviously.  And the

6   SEC charge, San Francisco continues to investigate, my

7   understanding is they now have a cooperating witness and things

8   have slowed down.  There were tolling agreements in place,

9   those have it expired, but my understanding is the cooperating

10  witness, who is among the defendants in this group, I believe,

11  has started to cooperate, and there may be a criminal case

12  coming down the pike reasonably shortly.

13          If that's the case, and one or more of our clients get

14  indicted, you can bet we'll be back asking for a full stay.

15  But in the meantime, while San Francisco drags its feet on

16  this, we don't think it's appropriate for the SEC to act as a

17  stalking horse for the U.S. Attorney's Office.  I'm not

18  suggesting that that is what they would want to do, I'm not

19  suggesting that's what the plan is or I mean to cast no

20  aspersions on Ms. Brown and the SEC, I just want a situation to

21  evolve where my client is potentially under investigation and

22  the SEC is taking his deposition and he is forced either to

23  take the Fifth or give it, and then they give the deposition to

24  San Francisco.  So I would like to avoid any of these

25  possibilities if we can.

J5FTSECC

1          THE COURT:  Okay.

2          MS. BROWN:  Your Honor, may I be heard on that last

3    point?

4          THE COURT:  Absolutely.

5          MS. BROWN:  I'm sorry to interrupt.  I hoped that one

6    of the defendants would offer to the Court the information that

7    there is a parallel criminal investigation.  It's not a dual

8    investigation, it's a parallel investigation.

9          Because I think what defendants are trying do here,

10   and particularly by putting the depositions of the parties at

11   the end, is to get all the benefits of discovery and have none

12   of the obligations of discovery.  For example, you will see in

13   the 26(f) report that was filed with the Court there's a

14   reference to my request that the defendants let us know if they

15   will assert an active production privilege, because if they

16   are, it seems to us completely unfair that we would have to

17   turn over documents and yet the defendants would rely on their

18   active production privilege to withhold documents from us.

19         So I am happy to proceed with discovery.  I told

20   defendants that, they attached one of my emails which said I

21   was happy to proceed with document discovery, but I don't think

22   it's fair for us to be the only providers of discovery and the

23   defendants could sit back and enjoy the benefits of that.

24   That's just not the way that litigation is conducted in this

25   district.

J5FTSECC

1          THE COURT:  But you have issued the requests for

2     production of the documents to defendants, correct?

3          MS. BROWN:  Yes.

4          THE COURT:  And I take it that you have not heard as

5     of yet whether or not they intend to interpose any privilege.

6          MS. BROWN:  Correct, I have not.

7          THE COURT:  Okay.  Does anyone wish to make a

8     statement on the record as to whether they will or will not be?

9     Not holding you to it.

10          MR. RICHARD:  Your Honor, Dennis Richard for

11     Mr. Brauser.

12          We're not prepared to make a definitive statement,

13     however, we do not believe we will be asserting an active

14     production privilege.  And given that, if there is one or two

15     or three defendants that do not, what we're looking for here --

16     the parties have exchanged initial disclosures just days ago --

17     is to go ahead and exchange initial disclosures even before the

18     response date of -- this has pending for a long time, of the

19     production requests.

20          The SEC has their investigative files that we would

21     like to see.  They asked us if we'll produce emails.  We would

22     like to exchange so that there isn't any:  You got it, you

23     didn't.  And we would like to do that next week or the week

24     after just so we can get this under way, and by then we'll know

25     and be able to confirm we're not asserting any type of

J5FTSECC

1    production privilege.

2              MR. FEE:  Briefly, your Honor, Adam Fee.  Just on the

3    last point Ms. Brown made, Mr. Stetson individually I think is

4    still not yet ready to announce his position.  There are

5    entities here that could not assert an active production

6    privilege and will not, at least speaking for ourselves.

7              Just with respect to her last point about the

8    unfairness, I think was the word she used, an invocation and

9    one side producing discovery.  There is relief the SEC has,

10   obviously, if Mr. Stetson chooses to invoke his Fifth Amendment

11   rights, and that's an adverse inference that the judge could

12   instruct the jury about.  I don't think there is case law that

13   would necessarily support the position that the SEC does not

14   need to produce to defendants who choose to invoke.  I don't

15   know that she's saying, but I just want to clarify that there

16   is relief available, it's not stopping production.

17             MS. BROWN:  Actually there is precedent.  Judge Pauley

18   in this district issued an order that required all defendants

19   to participate in discovery who wanted discovery from the SEC

20   in a case that was pending and a parallel criminal

21   investigation was proceeding.  So there is precedent for that,

22   and it makes sense to me -- I wonder, if we're not sure about

23   the document production, if we could at least set a date by

24   which the defendants' depositions could go forward.

25             THE COURT:  Well, could I ask you, Ms. Brown, are you

J5FTSECC

1   able to make some estimate of how voluminous the discovery will

2   be?

3           MS. BROWN:  Yes.  So the number I have, and I checked

4   this morning, is that we have about a million documents to

5   produce, slightly over that, but I will say that's not entirely

6   indicative of what we have available because at least half of

7   those documents are actually operating system files, et cetera,

8   that we obtained from a hard drive that was produced to us by

9   the ex-husband of a former MGT Investment employee.

10          THE COURT:  Okay.

11          MS. BROWN:  So I don't think 1.2 really sort of gives

12  you a picture.

13          THE COURT:  So you think it's substantially fewer than

14  1.2 million.

15          MS. BROWN:  I would say about 600,000 documents.

16          MR. MORVILLO:  Do you think we could get the estimate

17  of page number?  One page, that's fine, it's a 50-page

18  document, that's entirely different.

19          MS. BROWN:  That's something that I don't have

20  available.

21          THE COURT:  So 600,000 documents.  Would you be in a

22  position to provide some guidance or index to the defendants as

23  to what documents pertain to what entities or individuals?

24          MS. BROWN:  The way our documents are produced, your

25  Honor, is they come with all sorts of metadata information that

J5FTSECC

1    allow defendants and anyone, including me, to review the

2    documents with that kind of information.  So for example, one

3    of the things that is provided is the producing party.  So if

4    the producing party is MGT, then you can sort the production by

5    just those documents produced by MGT.  They're all fully

6    searchable.  So if there is a particular word you want to

7    search, you can search that.  They're searchable by date,

8    they're searchable by Bates number, they're searchable in any

9    number of different ways that provides a user with information

10   about the source, the date.

11           THE COURT:  And they're electronic, all these

12   documents?

13           MS. BROWN:  Yes.

14           THE COURT:  And will you be able to produce your files

15   within the 30 days that you received the request?

16           MS. BROWN:  We're working on it.

17           THE COURT:  Okay.  So let me ask the parties --

18           MR. MORVILLO:  Sorry, Judge, I wanted to clarify, is

19   that a "no" on the index?  I think you asked whether there was

20   an index that will be provided to us, and we got, "they're

21   searchable terms."  I'm just trying to get an answer to that

22   question.

23           THE COURT:  I think that was a "no," but Ms. Brown?

24           MS. BROWN:  I don't know what he means by "index."  We

25   can print out the screen shot of who the producing parties are,

J5FTSECC

1     if that would be the useful.

2            MR. MORVILLO:  That was the Court's word, I was just

3     using what you asked for, and --

4            THE COURT:  I don't think you're going to get a

5     document that says these documents pertain to your client and

6     these documents pertain to others, but it sounds like they're

7     fully searchable, so that should help substantially.

8            Let me ask the parties, if the document discovery

9     proceeds on the current schedule, 30 days from date of

10    production or something close to that, when does it make sense

11    to schedule depositions?  Because obviously I want to give

12    everyone an opportunity to review the documents.  I don't think

13    it has to be until next January, but something early fall,

14    September, maybe?

15           MS. BROWN:  I was thinking right after Labor Day, your

16    Honor.

17           THE COURT:  That seems to make sense to me.  So why

18    don't we do that, why don't we start depositions first week of

19    September after Labor Day.

20           And with respect to the written discovery,

21    interrogatories, et cetera, I am inclined to proceed under the

22    local rule.  I know Mr. Lee has pointed out to me that I have

23    allowed parties to stray from that rule on a couple of

24    occasions, but that's two or three of several thousand cases

25    that I presided over.  The rule seems to work just fine.  And

J5FTSECC

1    obviously, everyone still needs to get their feet wet with

2    respect to -- at least on the defense side, with respect to the

3    discovery.  I wouldn't want parties to prematurely put any

4    position on the line that they would have to change later on.

5    So we will abide by the Local Rule 33.3.

6              I think that takes care of the discovery issues.  Is

7    there a controversy concerning April 1 versus April 30?

8              MS. BROWN:  Yes.

9              MR. LEE:  Your Honor, we proposed April 30.  We

10   believe given the number of parties, number of claims, number

11   of documents, whether 600,000 documents or a million documents

12   it will be a multiple of that in terms of pages.  We propose

13   April 30.

14             THE COURT:  That makes sense.  That's reasonable.  So

15   the cut-off for discovery will be April 30.

16             MR. LEE:  Your Honor, just to clarify with respect to

17   the local rule, does the Court's ruling apply to requests for

18   admission as well?

19             THE COURT:  Yes.  By the way, these are the deadlines

20   now, but from my perspective, as long as we keep the April 30

21   date, if you guys agree among yourselves to move those dates

22   one way or the other, that does not matter to me.  You are free

23   to do that on consent.

24             MS. BROWN:  I think we will have to because I know the

25   April 30 date does to the interim dates, so we'll have to

J5FTSECC

1    confer and figure that out.

2              MR. LEE:  One more question or clarification, all of

3    this, I think at least in terms of our ability to be prepared,

4    assumes that the SEC will be producing their documents if not

5    on the 30th day very close to 30th day.  I know Ms. Brown said

6    they're working on it.  That was somewhat vague, from our

7    perspective.

8              THE COURT:  Yes, somewhat vague, but again, I'm

9    assuming that they will produce it within 30 days or sometime

10   shortly thereafter.  If any of these dates become a problem and

11   you need to come back to me, just come back to me.  Okay?

12             And with that guidance, can I ask the parties to

13   prepare a final version of the discovery schedule that I could

14   sign off on?

15             MR. LEE:  Yes, your Honor.

16             MR. MORVILLO:  Did you decide when the parties are

17   going to be deposed amid the depositions?

18             THE COURT:  Well, depositions can start in the fall,

19   and if the parties are ready to be deposed the parties could be

20   deposed.  If they notice your client, presumably they could be

21   deposed.  I am not going to put them off at the end.

22             MS. BROWN:  Thank you, your Honor.

23             THE COURT:  By the end of the day today, business

24   today, you can submit that final discovery order.

25             Anything else that we need to do?  Sir?

J5FTSECC

1          MR. RICHARD:  Yes, your Honor.  The Court recently

2     adjourned the briefing schedule on motions to dismiss with

3     motions due on June 19, and the order actually says shall be

4     filed on June 19, and then another part said by.  And the

5     reason I'm asking this question is because my client at least

6     wants to put his position on the record publicly through a

7     motion to dismiss, and if we filed it earlier, I understand

8     that they don't have to respond until a month later.

9          THE COURT:  You're free to file it today.

10          MR. RICHARD:  Thank you.

11          THE COURT:  Okay.  Unless there's anything else, we're

12     adjourned.

13          (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300