UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

ADMINISTRATIVE PROCEEDINGS RULINGS
Release No. 656/July 12, 2010

ADMINISTRATIVE PROCEEDING
File No. 3-13847

_____
In the Matter of                                      :
                                                      :
MORGAN ASSET MANAGEMENT, INC.,       :       ORDER ADDRESSING ISSUES
MORGAN KEEGAN & COMPANY, INC.,       :       UNDER RULE OF PRACTICE
JAMES C. KELSOE, JR., and                   :       230(G)
JOSEPH THOMPSON WELLER, CPA          :
_____

Rule 230(g) of the Rules of Practice of the Securities and Exchange Commission (Commission), entitled "Issuance of Investigatory Subpoenas After Institution of Proceedings," provides:

> The Division of Enforcement shall promptly inform the hearing officer and each party if investigatory subpoenas are issued under the same investigation file number or pursuant to the same order directing private investigation ("formal order") under which the investigation leading to the institution of proceedings was conducted.  The hearing officer shall order such steps as necessary and appropriate to assure that the issuance of investigatory subpoenas after the institution of proceedings is not for the purpose of obtaining evidence relevant to the proceedings and that any relevant documents that may be obtained through the use of investigatory subpoenas in a continuing investigation are made available to each respondent for inspection and copying on a timely basis.

The Commission issued the Order Instituting Proceedings (OIP) in this matter on April 7, 2010.  The investigation leading to the institution of the OIP was Investigation No. A-3042.  The Commission authorized the Division of Enforcement (Division) to commence Investigation No. A-3042 on May 8, 2008.

Eight days after the Commission issued the OIP, the Associate Regional Director of the Commission's Atlanta Regional Office, acting pursuant to delegated authority, authorized a second investigation, Investigation No. A-3211.  Respondents contend that Investigation Nos. A-3042 and A-3211 are functionally identical and the Division started the second investigation for the impermissible purpose of gathering additional evidence for use at the hearing in the present proceeding.  They also assert that the "new" investigation number is simply a ploy by the Division to camouflage the fact that A-3042 is ongoing.  Respondents request relief under Rule

230(g) of the Commission's Rules of Practice.  The Division maintains that Rule 230(g) does not literally apply in the present circumstances.[1]  It also asserts that it initiated A-3211 for the lawful purpose of investigating misconduct by other individuals who are not Respondents in this proceeding.  The Division is willing to share with Respondents relevant information it develops in A-3211, but it argues that any additional relief under Rule 230(g) is unwarranted.

The Division has issued six subpoenas for documents and testimony in A-3211, but it has voluntarily postponed the return dates of those subpoenas pending resolution of the present controversy.  The hearing in the present proceeding is scheduled to commence on September 13, 2010.

> A-3211 is the continuation of A-3042, the investigation
> leading to the institution of the present proceeding;
> Rule 230(g) applies to A-3211 with full force and effect.

The Division contends that Rule 230(g) "arguably does not apply" or "does not expressly apply" to A-3211 because there are two separate investigation file numbers and two separate formal orders (Div. Resp. at 4 n.1, 7).  Respondents maintain that the orders of investigation in A-3042 and A-3211 are functionally identical.  They accuse the Division of issuing a new formal order of investigation in A-3211 to circumvent the requirements of Rule 230(g) (Resp. Motion at 3, 6-7).

The formal order of investigation in A-3042 permitted the Division to investigate potential misconduct by the directors of Morgan Keegan & Company's Funds.  The parties agree that potential misconduct by the Funds' directors is the focus of the formal order of investigation in A-3211.  The Division concedes that there is "probably going to [be] some substantial overlap" between A-3042 and A-3211 (May 7, 2010, Prehearing Conf. Tr. at 35).  Respondents examine the OIP and the formal orders of investigation in detail and they provide a host of particulars to demonstrate that A-3211 is little more than the continuation of A-3042 (Resp. Motion at 6-7).  Respondents also point to an e-mail dated April 12, 2010 (five days after the Commission issued the OIP and three days before the Atlanta Regional Office issued the formal order in A-3211), the subject of which is "Morgan Asset—Continuing investigation after institution of proceeding" (Division's Supplemental Withheld Document and E-Mail Lists at 93) (describing an e-mail from Stephen E. Donahue to William P. Hicks).[2]  I agree with Respondents that the subject line of the withheld e-mail suggests an intention by the Division to continue the investigation leading to the institution of this proceeding, as well as the Division's likely

---

[1]   The Division notified Respondents and me on May 7, 2010, that it had initiated the investigation in A-3211.  The Division did not inform Respondents or me once it began to issue subpoenas in A-3211 on June 4, 2010.  Respondents' counsel learned of the subpoenas from a colleague in the private bar who represents the recipients of the subpoenas.

[2]   Mr. Donahue and Mr. Hicks are both designated as officers of the Commission to conduct the investigation in A-3211.  Mr. Donahue attended the first prehearing conference in this proceeding as an observer (May 7, 2010, Prehearing Conf. Tr. at 3).  Mr. Hicks has entered an appearance as counsel of record in this proceeding.

awareness of the prohibitions of Rule 230(g).  In opposition to this strong showing by Respondents, the Division has elected to maintain its silence about its reasons for issuing a new formal order of investigation in A-3211.

I agree with Respondents that A-3211 is the continuation of A-3042, the investigation leading to the institution of the present proceeding.  I further find that the Division's efforts to camouflage this fact are unpersuasive.  Any other reading of the two formal orders would exalt form over substance.  It would also require me to turn a blind eye to the Commission's concern that "[e]ven the appearance of a lack of integrity could undermine the public confidence in the administrative process upon which our authority ultimately depends."  Clarke T. Blizzard, 77 SEC Docket 1515, 1518 (Apr. 24, 2002).

> One of the Division's purposes for issuing investigatory
> subpoenas in A-3211 after the institution of proceedings is
> to assist itself in preparing for the upcoming hearing.

Respondents object to the fact that the Division's case-in-chief will continue to evolve as the investigation in A-3211 progresses.  They complain that it is fundamentally unfair to require them to shoot at a moving target, particularly where, as here, the investigative file in A-3042 is already voluminous and the Commission has imposed strict time limits for issuing an Initial Decision.

Respondents observe that, although the Division investigated pursuant to A-3042 for nearly two years, it failed to take the testimony of any of the Funds' directors.  The Division's omission was surprising because the directors were within the ambit of the formal order in A-3042.  Nonetheless, the Division's list of proposed hearing witnesses includes Mary Stone, a former director of one of the Funds who is now also subject to a subpoena for documents and testimony in A-3211.  Some of the other Funds' directors may become witnesses for Respondents (May 7, 2010, Prehearing Conf. Tr. at 36-37).[3]  It is evident that the Division would benefit from taking investigative testimony from the six directors at this juncture.  By doing so, it could lock the witnesses into their respective stories, and a tentative or potentially hostile witness who changed his/her testimony at the hearing would then risk impeachment.  There is also considerable overlap between the Funds' valuation issues alleged in the OIP and the Funds' valuation documents sought from the directors by subpoena in A-3211.

The Division has also made plain that it wants to provide more evidence to its proposed expert witness than is available from the investigative file in A-3042.  Division counsel referred to this plan at the June 2, 2010, Prehearing Conference (Tr. at 28-29) (emphasis added):

> [T]o the extent that there is the kind of evidence that is . . . different than anything that came up during the investigation . . . we would request that the expert be permitted to supplement her direct testimony by giving some live direct testimony just to address any new evidence or issues that come up . . . to the extent that there are new or different facts or issues that . . . we don't know about

---

[3]  Respondents' list of proposed hearing witnesses is not due until July 27, 2010.

now and could not have anticipated, we would like our expert to be able to take those into account in fashioning her direct testimony.

When the Division's proposed expert filed her direct written testimony on June 22, 2010, she reiterated the same point on page 6 ("Our findings are as of the date of this report, and we reserve the right to modify or expand the opinions [expressed in this report] based on further thoughts given to existing information and upon the availability of additional documents and data.") (emphasis added).

I agree with Respondents. For reasons not explained on the record, the Division elected to follow a high-risk strategy: it asked the Commission to issue the OIP before it had completed the relevant parts of its investigation. The Division is free to take this sort of risk, of course, but it cannot now ask for a ruling that, in effect, guarantees that it will suffer no adverse consequences. I find that one of the Division's purposes in issuing subpoenas in A-3211 is to assist itself in preparing for the upcoming hearing.[4]

The Commission did not incorporate into Rule 230(g)
a directive to consider only the "sole or dominant"
purpose of the continuing investigation.

Federal prosecutors conducting ongoing grand jury investigations are subject to limitations that are similar, but not identical, to those that Rule 230(g) imposes on the Division. See United States v. Bros. Constr. Co. of Ohio, 219 F.3d 300, 314 (4th Cir. 2000) ("[O]nce a criminal defendant has been indicted, the Government is barred from employing the grand jury for the 'sole or dominant purpose' of developing additional evidence against the defendant."); In re Grand Jury Subpoena Duces Tecum, 767 F.2d 26, 29 (2d Cir. 1985) ("It is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial") (citation omitted); United States v. Moss, 756 F.2d 329, 332 (4th Cir. 1985) (holding that the defendant bears the burden of showing that the government's purpose was primarily to collect evidence relating to the pending charges).

Under the criminal law approach, government prosecutors are allowed to make a good-faith inquiry into charges that are not covered by the indictment "even if it uncovers further evidence against an indicted person." Bros. Constr. 219 F.3d at 314 (citing Moss, 756 F.2d at 332). A superseding indictment that adds charges or defendants to the criminal case is strong evidence that the grand jury was used for a proper purpose, but an ongoing investigation that does not produce new charges does not give rise to the converse inference of impropriety. See

---

[4] The Commission did not prohibit altogether the issuance of subpoenas in a continuing investigation upon initiation of an administrative proceeding because "[i]n some circumstances, for example, . . . where a single formal order is being used to investigate several distinct areas of potential violations, proceedings may be instituted prior to the end of all investigative activities." Rules of Practice, 60 Fed. Reg. 32,738, 32,762 (June 23, 1995). The ongoing investigation of the Funds' directors is not really "a distinct area of potential violations." Moreover, the Division cannot legitimately characterize discovery of fresh evidence through A-3211 as merely "an incidental benefit." See infra p. 5.

4

United States v. Leung, 40 F.3d 577, 581-82 (2d Cir. 1994).  Of course, a Leung-type analysis could only be made in the future and with the benefit of hindsight.

Although the government may not use a grand jury for discovery concerning a pending prosecution, it may continue an investigation from which information relevant to a pending prosecution "may be an incidental benefit."  United States v. Alred, 144 F.3d 1405, 1413 (11th Cir. 1998) (quoting United States v. Beasley, 550 F.2d 261, 266 (5th Cir. 1977)); United States v. Gibbons, 607 F.2d 1320, 1328 (10th Cir. 1979) (same).

The Division, apparently believing that this criminal law precedent should now be incorporated into the Commission's Rule 230(g) jurisprudence, asserts that its continuing investigation of the Funds' directors is "primarily" for the permissible purpose of determining if the Funds' directors violated any federal securities laws (Div. Resp. at 4-5).[5]

There are three reasons why the criminal law precedent should not be so incorporated. First, "there is a fine line between an improper 'trial preparation' use of a grand jury and a proper 'continuing investigation' use."  United States v. Flemmi, 245 F.3d 24, 28 (1st Cir. 2001).  While the grand jury is an arm of the judiciary, id., it can hardly be said that the Division's investigations are an arm of the Office of Administrative Law Judges.  Under the best of circumstances, it would be difficult for an Administrative Law Judge (ALJ) to ascertain the Division's "sole purpose" or to distinguish the Division's "dominant purpose" from the Division's other purposes.  Second, the leading judicial opinions such as Moss, Grand Jury Subpoena, and Leung were issued before 1995.  They were presumably known to the Commission when it drafted its Rules of Practice.  Nonetheless, the Commission elected not to phrase Rule 230(g) to apply only when the Division's "sole or dominant" purpose in continuing an investigation was improper.  Lastly, the plain wording of Rule 230(g) authorizes an ALJ to take necessary and appropriate steps to eliminate the improper purpose, whether it is the sole purpose, the dominant purpose, or one of many purposes.

The Parties' Positions on Remedies

Respondents urge me either to order that Division staff members identified as officers of the Commission in A-3211 be precluded from participating in this proceeding or, alternatively, order that Division staff members currently appearing in this proceeding be precluded from participating in A-3211 or having access to information and documents obtained through A-3211 (Resp. Motion at 1-2, 9-11).  The Division contends that the only remedy available is to require it

---

[5]  While there is a presumption of regularity in the Division's investigations, it is difficult to evaluate the Division's assertion about its "primary" purpose without a candid affidavit from the Associate Regional Director, attesting to the Division's good faith and explaining the reason for the different investigative file numbers.  Such affidavits are routinely offered by criminal prosecutors disputing accusations of grand jury abuse.  See, e.g., Moss, 756 F.2d at 331; In re Grand Jury Subpoena, Apr. 1978, at Balt., 581 F.2d 1103, 1105 (4th Cir. 1978); United States v. George, 444 F.2d 310, 312 (6th Cir. 1971).  Here, the Division offers only a non-denial denial (Div. Resp. at 5) ("[I]t is difficult to conceive . . . .").

to share with Respondents any relevant information it obtains in response to subpoenas issued in A-3211 (May 7, 2010, Prehearing Conf. Tr. at 35; Div. Resp. at 1, 5, 7 & n.2).

The Division's proposed remedy is problematic for several reasons. The second sentence of Rule 230(g) contains two clauses: a preventive clause ("the hearing officer shall order such steps as necessary and appropriate to assure . . .") and a damage control clause ("the hearing officer shall order . . . that any relevant documents that may be obtained . . . are made available to each respondent . . ."). The Division's approach would read the preventive clause, in its entirety, out of the Rule. I decline the invitation to treat the preventive clause as surplusage. The Division's reading of the damage control clause would grant itself entirely too much power. Division counsel of record should not have unlimited access to all documents and testimony developed through A-3211 while they simultaneously retain the authority to decree that certain documents gathered in A-3211 are not "relevant" to the present proceeding and are therefore unavailable to Respondents. At the same time, an ALJ could not realistically police disputes between the Division and Respondents about relevance without impermissibly intruding into the Division's conduct of A-3211.[6] Finally, it is not clear that the Division's offer to turn over "relevant" documents includes a promise to share transcripts of all the investigative testimony it will develop in A-3211. Under 17 C.F.R. § 203.6, the Division retains the right to deny a person who testifies during an investigation a copy of the person's own transcript. The Division need only assert that there is "good cause" for doing so. Id. The Division has not explained whether it is pledging to make relevant transcripts available to Respondents while it retains the right to withhold the same transcripts from the witnesses themselves. Cf. Piper, 68 SEC Docket at 544 (ordering the Division to turn over transcripts of investigative testimony).

One aspect of Respondents' proposed remedy is also problematic. It is often stated that there is no such thing as an exclusionary rule in civil or administrative proceedings. See Richard O. Bertoli, 47 S.E.C. 148, 153 n.23 (1979) (dictum) (citing United States v. Janis, 428 U.S. 433, 447 (1976)); see also Pa. Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 364 (1998); INS v. Lopez-Mendoza, 468 U.S. 1032, 1050 (1984). However, it is also often stated that the criminal law doctrine of Brady v. Maryland, 373 U.S. 83, 87 (1963), and the Jencks Act, 18 U.S.C. § 3500, have no application to civil or administrative proceedings. See Williams v. Wynne, 533 F.3d 360, 372 (5th Cir. 2008); Millspaugh v. County Dep't of Public Welfare, 937 F.2d 1172, 1175 (7th Cir. 1991); McDougall v. Dunn, 468 F.2d 468, 475 (4th Cir. 1972). Nonetheless, the Commission has incorporated both Brady and the Jencks Act into its Rules of Practice. See Rules of Practice 230(b)(2) and 231(a). I interpret the first clause of the second sentence in Rule 230(g) as an exclusionary rule. Pursuant to Rule of Practice 111(d), which grants a presiding ALJ broad power to regulate the conduct of the parties and their counsel, I grant Respondents' motion, as set forth below.

---

[6] In Piper Capital Mgmt., Inc., 68 SEC Docket 541, 544 (Oct. 1, 1998), the only prior decision interpreting Rule 230(g), an ALJ ordered the Division to produce "all" documents obtained through subpoenas in an ongoing investigation, not merely "relevant" documents. Piper was decided several years before the Commission confirmed the breadth of Rule of Practice 111(d) in Blizzard. For that reason, the Division may not rely on Piper to support its claim that the first clause of the second sentence in Rule 230(g) is a dead letter.

**ORDER**

Division personnel involved in preparing the present case for hearing shall not participate, directly or indirectly, in Investigation No. A-3211.  This prohibition applies to Division counsel of record and to any support staff, including paralegals, who may assist counsel of record.  The prohibition shall remain in effect until the end of the hearing and the closing of the record.

During the hearing in this matter, the Division may not examine or cross-examine any witness with testimony or documents obtained by subpoenas issued in Investigation No. A-3211. The Division shall not ask any witness about testimony the witness may have given or documents the Division may have obtained by subpoenas issued in Investigation No. A-3211. The Division may not impeach any witness or refresh the recollection of any witness with evidence obtained by subpoenas issued in Investigation No. A-3211.  The Division may not use evidence obtained by subpoenas issued in Investigation No. A-3211 to update or expand the direct written testimony of its proposed expert witness.

Notwithstanding the requirements of the first two ordering paragraphs, Division personnel conducting Investigation No. A-3211 may share documents and transcripts with Division personnel involved in the present proceeding under the following circumstances. Division personnel involved in Investigation No. A-3211 shall not provide Division personnel involved in preparing the present case for hearing with access to any documents or transcripts from Investigation No. A-3211 unless they provide Respondents with access to the same materials at the same time.  If any materials from Investigation No. A-3211 are withheld from Respondents on the grounds that the materials are not relevant to the present proceeding, are privileged, or for any other reason, the withheld materials shall also be withheld from Division personnel involved in preparing the present case for hearing.

IT IS SO ORDERED.

_____
James T. Kelly
Administrative Law Judge