Randall R. Lee (*admitted pro hac vice*)
COOLEY LLP
1333 2nd Street
Santa Monica, CA 90401
randall.lee@cooley.com
Telephone: (310) 883-6485
Facsimile: (310) 883-6500

Christopher Johnstone (*admitted pro hac vice*)
WILMER CUTLER PICKERING HALE
  AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
chris.johnstone@wilmerhale.com
Telephone: (650) 858-6147
Facsimile: (650) 858-6100

*Attorneys for Defendant Robert Ladd*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:18-cv-08175-ER |
| v. | ) ) | |
| BARRY C. HONIG, *et al.*, | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Defendants. | ) ) | |

---

## DEFENDANT ROBERT LADD'S REPLY BRIEF IN FURTHER SUPPORT OF HIS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT ..........................................................................................................2

      A.    The SEC Fails to State a Claim of Fraud in Connection with the McAfee
            Announcement ...............................................................................................2

            1.    The Complaint Fails to Plead Any Facts Alleging that the McAfee
                    Announcement was Material to Investors....................................... 2

            2.    The Complaint Fails to Plead Materiality Because Mr. McAfee's
                    Departure from McAfee Associates Had Been Public for Decades .......... 3

            3.    The Complaint Fails to Allege Scienter in Connection with the McAfee
                    Announcement ..................................................................................... 5

      B.    The SEC Fails Plausibly to Allege that Mr. Ladd Knew of the Investor
            Defendants' Alleged "Group"......................................................................6

            1.    The Complaint Fails to Allege the Existence of a "Group"
                    Under Section 13(d) of the Exchange Act ................................. 6

             2.    The Complaint Fails to Allege a Strong Inference that Mr. Ladd
                    Knowingly Concealed the Existence of a "Group" ................................... 7

      C.    The Court Should Strike the *Seeking Alpha* Allegations because
            Evidentiary Admissibility is Irrelevant to Whether Time-Barred
            Allegations Should Be Struck.................................................................8

      D.    The SEC Has Failed to Adequately Allege Negligence—A Mutually Exclusive
            Theory of Liability.................................................................................9

      E.    The SEC Fails to Allege Mr. Ladd Knowingly Aided and Abetted Others ..........10

III.   CONCLUSION....................................................................................................10

i

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**CASES**

*Chechele v. Scheetz*,
 819 F. Supp. 2d 342 (S.D.N.Y. 2011)................................................................................6

*Corenco Corp. v. Schiavone & Sons, Inc.*,
 488 F.2d 207 (2d Cir. 1973)..............................................................................................6

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
 553 F.3d 187 (2d Cir. 2009)...............................................................................................2

*Finnane v. Pentel of Am., Ltd.*,
 43 F. Supp. 2d 891 (N.D. Ill. 1999) ..................................................................................8

*Garber v. Legg Mason, Inc.*,
 347 F. App'x 665 (2d Cir. 2009) .......................................................................................4

*Harris v. U.S. Dep't of Veterans Affairs*,
 776 F.3d 907 (D.C. Cir. 2015)...........................................................................................9

*Hyosung (America), Inc. v. Am. President Lines, Ltd.*,
 773 F. Supp. 577 (S.D.N.Y. 1991) ....................................................................................8

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
 986 F. Supp. 2d 544 (S.D.N.Y. 2014)................................................................................6

*In re Lone Pine Resources, Inc.*,
 2014 WL 1259653 (S.D.N.Y. Mar. 27, 2014) ..................................................................2

*In re Taylor Made Golf Co., Inc.*,
 589 F. App'x 967 (Fed. Cir. 2014) ....................................................................................4

*Morales v. Quintel Entm't, Inc.*,
 249 F.3d 115 (2d Cir. 2001)...............................................................................................6

*Robare Grp., Ltd. v. SEC*,
 922 F.3d 468 (D.C. Cir. 2019) ...........................................................................................9

*SEC v. Autocorp Equities, Inc.*,
 292 F. Supp. 2d 1310 (D. Utah 2003)...............................................................................10

*SEC v. Lee*,
 720 F. Supp. 2d 305 (S.D.N.Y. 2010)................................................................................8

*SEC v. Straub*,
  2016 WL 5793398 (S.D.N.Y. Sept. 30, 2016).........................................................8

*Sharette v. Credit Suisse Int'l*,
  127 F. Supp. 3d 60 (S.D.N.Y. 2015)...................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..........................................................................................5

*Tounget v. City of Hemet*,
  2009 WL 536835 (C.D. Cal. Feb. 24, 2009).........................................................8

*TSC Industries v. Northway*,
  426 U.S. 438 (1976)..........................................................................................2

*White v. H&R Block, Inc.*,
  2004 WL 1698628 (S.D.N.Y. July 28, 2004) ......................................................5

## STATUTES, RULES, AND REGULATIONS

Dodd-Frank Wall Street Reform and Consumer Protection Act,
  Pub. L. No. 111-203, § 929-O, 124 Stat. 1376 (2010)......................................10

Fed. R. Civ. P. 12(b)(6)......................................................................................2, 4

Staff Accounting Bulletin No. 99, 1999 WL 1123073 (Aug. 12, 1999).....................2, 3

Securities Exchange Act, Pub. L. No. 73-291, § 13(d), 48 Stat. 881 (1934).....................1, 5, 6, 9

Securities Exchange Act, Pub. L. No. 73-291, § 17(a)(2), 48 Stat. 881 (1934) .............................9

## I.     INTRODUCTION

The SEC's opposition brief reveals that buried within the SEC's 100-page Complaint lie two extraordinarily weak and attenuated theories of fraud against Mr. Ladd.

The SEC's first theory posits that Mr. Ladd engaged in fraud by misrepresenting the personal biography of John McAfee, one of the most famous cybersecurity entrepreneurs of all time.  Ignoring both context and common sense, the SEC strains to articulate why this statement was material to investors, especially since the fact that Mr. McAfee was no longer CEO of McAfee Associates when it was sold to Intel was plainly a matter of public record.  In other words, the SEC claims that Mr. Ladd misrepresented information about Mr. McAfee that was already publicly available—without alleging a single fact showing that he acted with scienter.

The SEC's second theory is that Mr. Ladd engaged in securities fraud by failing to disclose in MGT's public filings that Mr. Honig and his co-investors were operating as a "group" under Section 13(d) of the Exchange Act.  But the SEC's opposition fails to identify any allegations in the Complaint that Mr. Honig's co-investors had an agreement to act together for the purpose of acquiring, holding, voting or disposing of MGT's stock, as that provision requires. And the SEC certainly fails to identify any allegations that would create a strong inference that Mr. Ladd—as the CEO of MGT—acted with scienter by knowingly concealing this alleged agreement among Mr. Honig's co-investors.

The SEC repeatedly attempts to lower the bar it must meet to get past the pleadings stage. But the SEC now has had two opportunities, and a considerable amount of time, to allege a plausible case against Mr. Ladd.  Having failed to put forward any coherent theory of liability, its case as to Mr. Ladd should be dismissed with prejudice.

II.     **ARGUMENT**

    A.      **The SEC Fails to State a Claim of Fraud in Connection with the McAfee
            Announcement**

            1.      **The Complaint Fails to Plead Any Facts Alleging that the McAfee
                    Announcement was Material to Investors**

        The SEC's Complaint fails to plausibly allege that a single sentence in MGT's May 2016

press release, which stated that Mr. McAfee "sold his anti-virus company to Intel for $7.6

billion," and which was an exhibit to a Form 8-K, was material to investors.  For a misstatement

to be material, "there must be a ***substantial likelihood*** that the disclosure of the omitted fact

would have been viewed by the reasonable investor as having ***significantly altered*** the 'total

mix' of information made available." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v.

JP Morgan Chase Co.*, 553 F.3d 187, 197-98 (2d Cir. 2009) (emphasis added).  This standard,

first articulated by the Supreme Court in *TSC Industries v. Northway*, rejected as the standard for

materiality that a reasonable investor "might" consider the misrepresented information to be

important.  *See* 426 U.S. 438, 449 (1976).  Under SEC Staff Accounting Bulletin (SAB) No. 99,

which the Second Circuit considers to be "persuasive authority," courts look at both quantitative

and qualitative factors to evaluate whether a statement is material.  *See ECA*, 553 F.3d at 197-98.

In evaluating quantitative materiality, courts will often evaluate the financial magnitude of an

alleged misstatement.  *See* SAB No. 99, 1999 WL 1123073, at *2.  In evaluating qualitative

materiality, courts will look at factors such as "(1) whether there was a concealment of an

unlawful transaction; (2) the significance of the misstatement in relation to the company's

operations; and (3) management's expectation that the misstatement will result in a significant

market reaction."  *In re Lone Pine Resources, Inc.*, 2014 WL 1259653, at *4-5 (S.D.N.Y. Mar.

27, 2014) (granting Rule 12(b)(6) motion for failure to plead qualitative materiality).

The Complaint utterly fails to plead facts showing that the alleged misstatement was material to investors, either quantitatively or qualitatively.  Indeed, the SEC completely ignores the entirety of the Form 8-K to which the press release was appended.  The Form 8-K announced that MGT had agreed to purchase certain technology and assets of D-Vasive, Inc., a cybersecurity company, in connection with which Mr. McAfee would become CEO of MGT.  *See* Dkt. 148-10 at Item 1.01.  The Form 8-K included three exhibits: an asset purchase agreement (Exhibit 10.1), a consulting agreement (Exhibit 10.2), and the press release (Exhibit 99.1).  *See* Dkt. 148-10.  Notably, the SEC does not allege that ***any*** portion of the Form 8-K itself, which disclosed the purchase of assets and proposed appointment of Mr. McAfee as CEO, was false in any respect.  In context, the allegation that a single sentence in the press release was material is not only implausible, it is preposterous.

The only argument the SEC puts forward is that the statement was material to investors because of the "suggest[ion]" that MGT "might achieve similar success" to McAfee Associates.  AC ¶ 144.  But the suggestion implicit in the press release—that MGT had teamed up with a successful and well-known cybersecurity entrepreneur and that it hoped he would achieve success with MGT as well—would have been exactly the same had the sentence explicitly stated the precise timeline of Mr. McAfee's departure from the company he founded and built before it was sold to Intel.  Thus, the SEC not only fails to plead any facts alleging materiality, its theory that investors were misled is simply incoherent.  *See* SAB No. 99, 1999 WL 1123073, at *5 (determining materiality requires consideration of "the ***effect*** of the misstatement on the financial statements taken as a whole" (emphasis added)).

### 2. The Complaint Fails to Plead Materiality Because Mr. McAfee's Departure from McAfee Associates Had Been Public for Decades

The reason the SEC relies on a mere "suggestion" as the pillar of its materiality

allegations is that the fact of Mr. McAfee's departure from the company he founded had been well-known to the market for decades: it was in the press, disclosed in SEC filings, and even available on Wikipedia.  *See* Mot. at 16.  Indeed, John McAfee was one of the most famous cybersecurity entrepreneurs of all time.  Thus, it was a matter of public record that in the mid-1990s Mr. McAfee had left the company he founded.[1]  *See* Mot. at 16.  Rather than being "old and obscure" (Opp. at 10), this fact was so part of the public record that it was available on his Wikipedia page during the time period identified in the Complaint.  *See In re Taylor Made Golf Co., Inc.*, 589 F. App'x 967, 971 (Fed. Cir. 2014) (Wikipedia article is "indicative of common knowledge").  The SEC's argument that the Court should disregard SEC filings disclosing Mr. McAfee's departure (Opp. at 10) is remarkable given that the SEC often proclaims that SEC filings are "the foundation of investor protection."[2]  In fact, the SEC filings of McAfee Associates disclose that in the mid-1990s Mr. McAfee had left the company he founded.  Thus, the SEC cannot allege that the alleged misstatement was material.  *See Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 668-69 (2d Cir. 2009) (affirming dismissal of complaint on materiality grounds where information about individual's departure from a company "was already in the public domain" after being reported by three newspaper articles and three SEC filings).

Faced with this reality, the SEC attempts to lower the bar for itself, arguing lamely that materiality is "intensely fact-specific and is rarely an appropriate basis for dismissing a § 10(b)

---

[1] In a footnote, the SEC argues that the exhibits demonstrating the public nature of Mr. McAfee's departure are "extrinsic to the Complaint" and are thus "inappropriate for consideration" in resolving a Rule 12(b)(6) motion.  *See* Opp. at 11 n.6.  This attempt to scrub the record of publicly available information ignores Mr. Ladd's Request for Judicial Notice, Dkt. 149, which lays out a clear basis for taking judicial notice of every exhibit referenced in the motion, including the news articles and public filings at issue here.  The SEC did not file any opposition to Mr. Ladd's request for judicial notice, and the materials referenced therein are properly considered at the pleadings stage.  *See Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 75 (S.D.N.Y. 2015) (granting request for judicial notice after plaintiffs "neither objected to the Court taking judicial notice of the documents nor contested their authenticity in any way").

[2] Rick A. Fleming, Investor Advocate, *The Benefits of Structured Data for Investors* (March 24, 2015), *available at* https://www.sec.gov/news/speech/032415-spch-rf.html.

4

complaint."  Opp. at 9-10.  Of course, "'rarely appropriate' is not the same as 'never appropriate'" and dismissal is entirely appropriate when, as here, "the truth was ***all over*** the market."  *White v. H&R Block, Inc.*, 2004 WL 1698628, at *12 (S.D.N.Y. July 28, 2004) (dismissing plaintiff's case on materiality grounds because "the facts here show that all the information plaintiffs claim was concealed by defendants was publicly available" and thus "the law renders defendants' purported misstatements immaterial") (emphasis added).  And the reason most cases are not dismissed on materiality grounds is that plaintiffs rarely base their entire fraud claim on the alleged concealment of publicly available information.  The SEC should not be permitted to bypass the requirement to plead a coherent theory of materiality.

### 3.   The Complaint Fails to Allege Scienter in Connection with the McAfee Announcement

The SEC also fails to allege facts creating a strong inference that Mr. Ladd knew, or was reckless in not knowing, that the Form 8-K contained a material misstatement about the sale of McAfee Associates.  More specifically, the SEC has alleged no email, statement, or other fact that would support such an inference, let alone the "strong" inference required by the Supreme Court.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  Instead, the SEC points to allegations that are wholly unrelated to the announcement of the McAfee transaction and have no bearing on Mr. Ladd's knowledge as to the accuracy of one sentence in an almost sixty-page Form 8-K.[3]

The only other argument the SEC puts forward in support of its scienter allegations is that Mr. Ladd "effectively concedes that he acted at least recklessly" because, if information about

---

[3] The SEC relies only on the out-of-time *Seeking Alpha* allegations (relating to conduct in 2012 and 2013), the allegations that a "group" under Section 13(d) had been concealed (which are wholly unrelated), the Form 10-Q which actually clarified the May 2016 press release (*see* Mot. at 19), and Mr. Ladd's stock sales (which the SEC fails to allege were "unusual" and thus cannot support scienter, *see id.* at 18-19).

Mr. McAfee was already known to the public, Mr. Ladd would have been reckless in not including that information in the press release.  Opp. at 13.  But the SEC cannot have it both ways: If it is taking the position that Mr. Ladd was reckless because the information was publicly available, then the alleged misstatement was immaterial as a matter of law.  *See infra* at II.A.2.  If not, the SEC still must plead specific facts creating a strong inference that Mr. Ladd *himself* knew that the statement was inaccurate when he filed the Form 8-K.  Because the SEC has not cited any such facts, it has failed to allege that Mr. Ladd acted with scienter.

### B.      The SEC Fails Plausibly to Allege that Mr. Ladd Knew of the Investor Defendants' Alleged "Group"

#### 1.      The Complaint Fails to Allege the Existence of a "Group" Under Section 13(d) of the Exchange Act

The SEC glosses over the specific elements of a "group" under Section 13(d), including that it must plead that the members of the alleged "group" had an ***agreement*** "to act together for the purpose of acquiring, holding, voting or disposing of" MGT's stock.  *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 123-24 (2d Cir. 2001); *Corenco Corp. v. Schiavone & Sons, Inc.*, 488 F.2d 207, 217 (2d Cir. 1973) (stating that "absent an agreement between them a 'group' would not exist").  Although the SEC again retreats to the generic statement that the existence of an agreement to operate as a group is a "question of fact" (Opp. at 17), the SEC must allege "enough factual matter (taken as true) to suggest that an agreement was made."  *Chechele v. Scheetz*, 819 F. Supp. 2d 342, 346 (S.D.N.Y. 2011).  Here, the SEC fails to point to any factual allegations supporting such an agreement.  *See id.* at 347 ("[B]are allegations that the parties agreed that they would maintain control of [the company] will not, without more, suffice." (internal quotation marks omitted)); *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 544, 554 (S.D.N.Y. 2014) (granting motion to dismiss because conclusory allegations of an agreement did not suffice to "plead any basis on which to infer the formation of a 'group'").

At bottom, the SEC's "group" allegations are nothing more than *ipse dixit*. Rather than pleading facts alleging an agreement among specific individuals, the SEC engages in a sleight of hand: it simply defines Messrs. Honig, Brauser, Stetson, and O'Rourke collectively as the "Honig Group" at the beginning of its brief (Opp. at 1), and then repeats that as a mantra, in effect ignoring the requirement to plead specific facts among each of those individuals. Nowhere in the Complaint does the SEC point to emails, testimony, or anything else alleging an agreement among these four individuals to acquire, hold, vote, or dispose shares of MGT. Simply assuming the conclusion does not make it so.

### 2.    The Complaint Fails to Allege a Strong Inference that Mr. Ladd Knowingly Concealed the Existence of a "Group"

The biggest problem with the SEC's second fraud theory is the failure to allege that Mr. Ladd *knew* the alleged "group" had any agreement such that he acted with scienter in not disclosing its existence. The only non-conclusory allegation the SEC points to is a single email written by Mr. Ladd: "As for the cap table, we have 17.2 million common shares outstanding, including your group's 2.8 million." AC ¶ 137. The SEC claims that this reference "evinces Ladd's and Honig's shared understanding of the Securities Exchange Act Section 13(d)'s 5% 'group' disclosure requirement . . . and their shared intent to avoid disclosure to the public that the Honig Group was a shareholder 'group' that, they knew, collectively owned more than 16% of MGT's stock."[4] Opp. at 5 n.2. The assumption that the word "group" in Mr. Ladd's email refers to its regulatory definition, rather than the obvious dictionary definition, is nothing more than sheer speculation and cannot support a strong inference of Mr. Ladd's scienter. *See* Mot. at

---

[4] The portion of the email that the SEC's Complaint selectively omits further undercuts the SEC's theory. As the SEC now admits, Mr. Honig responded to Mr. Ladd's email quoted in the Complaint by stating, "I am not part of a group. I invested individually," to which Mr. Ladd responded, "I stand corrected." *See* Dkt. 156 Ex. A. That the SEC omitted this language from the Complaint reveals just how wildly speculative its theory of scienter is.

23; *see also SEC v. Lee*, 720 F. Supp. 2d 305, 335 (S.D.N.Y. 2010) (strong inference of scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent").

> ### C.     The Court Should Strike the *Seeking Alpha* Allegations because Evidentiary Admissibility is Irrelevant to Whether Time-Barred Allegations Should Be Struck

Mr. Ladd's motion to dismiss explained that the *Seeking Alpha* allegations—which fell outside the statute of limitations—should be dismissed and stricken from the Complaint.  Mot. at 10.  The SEC acknowledges that the *Seeking Alpha* allegations are untimely.  Opp. at 6.  But the SEC now contends that those allegations can survive Mr. Ladd's motion to strike because a defendant's "prior conduct—including conduct outside the applicable limitations period—is admissible to prove a defendant's intent (among other things)."  *Id.*

But the question of whether out-of-time conduct will eventually be admissible at trial is not relevant to the question of whether it may be included in a complaint.  Cases hold that any "time-barred incidents" that "cannot form the basis of a claim" are "properly stricken from the complaint"; whether any such incidents "are admissible at trial is an evidentiary matter to be determined later."  *Finnane v. Pentel of Am., Ltd.*, 43 F. Supp. 2d 891, 898 (N.D. Ill. 1999); *see also Tounget v. City of Hemet*, 2009 WL 536835, at *14 (C.D. Cal. Feb. 24, 2009) (dismissing time-barred allegations from complaint); *Hyosung (America), Inc. v. Am. President Lines, Ltd.*, 773 F. Supp. 577, 579 (S.D.N.Y. 1991) (same).  For its part, the SEC has cited no authority showing that its untimely allegations should not be stricken; indeed, the only cases it cites do not even concern motions to strike allegations in a complaint.  *See* Opp. at 7 (citing *SEC v. Straub*, 2016 WL 5793398, at *20 n.7 (S.D.N.Y. Sept. 30, 2016) (noting that "evidence of conduct and acts" that fall outside a statute of limitations period "may still be admissible at trial," but not addressing whether such allegations should remain in a complaint at all)).

8

Furthermore, the *Seeking Alpha* allegations (which were not even included in the original complaint) serve no purpose other than to create unfair prejudice against Mr. Ladd.  The *Seeking Alpha* allegations focus on a false disclosure by a promoter that he had not received compensation (AC ¶ 131).  Although the SEC claims that the 2012-2013 allegations show "the same basic pattern" underlying two alleged "pump-and-dump" schemes (Opp. at 7), those allegations have no bearing on the actual claims against Mr. Ladd—that he misled the public about Mr. McAfee's background or that he knowingly concealed the existence of a group under Section 13(d) of the Exchange Act.  The SEC's attempt to shore up its flimsy scienter allegations with conduct outside the statute of limitations should be rejected.

   **D.   The SEC Has Failed to Adequately Allege Negligence—A Mutually Exclusive Theory of Liability**

The SEC concedes that it has not alleged a negligence case beyond a single, conclusory reference to negligence in its claim for relief.  *See* Opp. at 24.  That is not enough.  A plaintiff does not plead a claim for negligence by a stray reference to negligence in its complaint.  *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 916 (D.C. Cir. 2015) ("Merely using the term negligence does not raise a cognizable claim of negligence." (internal quotation marks omitted)).

The SEC also cannot claim that it has pleaded a negligence case based on its fraud allegations.  Indeed, "[i]ntent and negligence are regarded as mutually exclusive grounds for liability," and thus any allegations of fraud are insufficient in pleading a negligence case. *Robare Grp., Ltd. v. SEC*, 922 F.3d 468, 479 (D.C. Cir. 2019) (quoting *Harris*, 776 F.3d at 916). Because the SEC is clearly pursuing a fraud theory in the Complaint, and negligence is not a lesser-included claim, its claims under § 17(a)(2) should be dismissed.

### E.    The SEC Fails to Allege Mr. Ladd Knowingly Aided and Abetted Others

Implicitly acknowledging that it cannot establish Mr. Ladd's "actual knowledge" of the Investor Defendants' securities fraud violations, the SEC retreats to the position that it can prove aiding and abetting liability through recklessness.  *See* Opp. at 24.  While correct that the Dodd-Frank Act allows aiding and abetting to be established through recklessness, *see* Mot. at 25 n.10, here the SEC has pled a knowledge case.  In particular, the SEC alleges that Mr. Ladd "provided ***knowing*** and substantial assistance" to securities fraud violations; the SEC does *not* plead that Mr. Ladd acted recklessly *in his aiding and abetting*.[5]  *See* AC ¶¶ 235, 240 (emphasis added).  Because the Complaint contains no allegations that Mr. Ladd had actual knowledge that he was assisting anyone in the commission of alleged securities fraud, the SEC's aiding and abetting claims must be dismissed.

## III.    CONCLUSION

For the foregoing reasons, Mr. Ladd respectfully requests that this Court dismiss the SEC's claims against him with prejudice.  The SEC has already amended its complaint and it should not be permitted to amend the allegations again.  Additionally, the SEC did not even request leave to amend its allegations as to Mr. Ladd.  For these reasons, any claims that are dismissed should be without leave to amend.

---

[5] To establish liability for aiding and abetting, the SEC must establish scienter "of the fact that the defendant was aiding or abetting a violation of securities law."  *SEC v. Autocorp Equities, Inc.*, 292 F. Supp. 2d 1310, 1332 (D. Utah 2003) (emphasis added).  Although the SEC alleges that the *primary* violation was committed knowingly or recklessly, *see* Opp. at 24 (citing AC ¶¶ 235, 240), aiding and abetting is a separate charge as to which the SEC has only alleged *knowing* conduct.  The SEC's argument is nonsensical, as Mr. Ladd could not possibly provide knowing assistance by recklessly doing something.  *See, e.g.*, AC ¶ 235 (alleging that Mr. Ladd "provided further knowing and substantial assistance to [the Investor Defendants' violations] by knowingly or recklessly failing to disclose the true extent of [their] stock ownership").

Dated:  September 3, 2019                     Respectfully submitted,


                                              /s/ Randall R. Lee
                                              Randall R. Lee (*admitted pro hac vice*)
                                              COOLEY LLP
                                              1333 2nd Street
                                              Santa Monica, CA 90401
                                              randall.lee@cooley.com
                                              Telephone: (310) 883-6485
                                              Facsimile: (310) 883-6500


                                              Christopher Johnstone (*admitted pro hac vice*)
                                              WILMER CUTLER PICKERING HALE
                                                AND DORR LLP
                                              950 Page Mill Road
                                              Palo Alto, CA 94304
                                              chris.johnstone@wilmerhale.com
                                              Telephone: (650) 858-6147
                                              Facsimile: (650) 858-6100

                                              *Attorneys for Defendant Robert Ladd*