UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

   -- against --      **Case No. 18-civ-08175-ER**

BARRY C. HONIG, et al.,

    Defendants.

———————————————————————x


**DEFENDANTS MICHAEL BRAUSER AND GRANDER HOLDINGS, INC.'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

James D. Sallah, *Pro Hac Vice*   Dennis A. Richard, *Pro Hac Vice*
Joshua A. Katz, *Pro Hac Vice*    Melissa L. Mackiewicz, *Pro Hac Vice*
SALLAH ASTARITA COX LLC   RICHARD AND RICHARD, P.A.
3010 N. Military Trail       825 Brickell Bay Drive
Suite 210          Tower III, Suite 1748
Boca Raton, FL  33431      Miami, FL  33131
T:  (561) 989-9080       T: (305) 374-6688
F:  (561) 989-9020       F: (305) 374-0384

Dated: September 10, 2019

# TABLE OF CONTENTS

I.  THE SEC FAILS TO ALLEGE WITH PARTICULARITY THAT BRAUSER VIOLATED SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 (COUNT I), SECTION 17(a) OF THE SECURITIES ACT (COUNT II), AND SECTION 9(a) OF THE EXCHANGE ACT (COUNT IX) ........................................... 1

   A. Lack of Required Particularity ....................................................................... 1

   B. The SEC's "Plausibility" Argument Illuminates the SEC's Failure to Adequately Plead a "Pump and Dump" as to Brauser ......................................................... 6

   C. The SEC's Aiding and Abetting Claims – Enabled By Congress Post-Central Bank – Are as to Defendants Other Than Brauser ...................................................... 8

II. THE SEC FAILS TO ADEQUATELY PLEAD THAT BRAUSER VIOLATED SECTION 13(d) AND RULE 13(d)-1(a) (COUNT XII) ................................................. 10

III. THE SEC FAILS TO ADEQUATELY PLEAD THAT BRAUSER VIOLATED SECTIONS 5(a) AND (c) OF THE SECURITIES ACT (COUNT XI) .......................... 13

IV. THE CLAIMS AGAINST BRAUSER SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND ......................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87 (2nd Cir. 2007) ................................ 7, 16

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ..................................................... 6, 7

*Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994) ............... 3, 8, 9

*Cohen v. Stevanovich*, 722 F.Supp.2d 416 (S.D.N.Y. 2010) ........................................... 5

*Corenco Corp. v. Schiavone & Sons, Inc.,* 488 F.2d 207 (2nd Cir. 1973)................................. 12

*Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005) ............................................. 7

*Forward Indus., Inc. v. Wise,* 2014 WL 6901137 (S.D.N.Y. 2014)............................................ 12

*Glob. Intellicom v. Thomsom,* 1999 WL 544708 (S.D.N.Y July 27, 1999).................................. 13

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 95 F.Supp.2d 169 (S.D.N.Y. 2000) ............................................................................................... 12

*In re Blech Securities Litigation,* 928 F.Supp. 1279 (S.D.N.Y. 1996) ........................................ 16

*In re Galectin Therapeutics, Inc. Securities Litigation,* 843 F.3d 1257 (11th Cir. 2016) ............. 2

*In re Refco, Inc. Securities Litigation*, 503 F.Supp.2d 611 (S.D.N.Y 2007) ............................... 15

*In re: Credit Suisse Securities (USA)*, 215 WL 13309770, n.1 (September 28, 2015).................. 5

*Iroquois Master Fund, Ltd. v. CEL-SCI Corp.*, 2011 WL 1216688, *3 (S.D.N.Y. 2011) ........... 13

*Log On America, Inc. v. Promethean Asst Mgmt., L.L.C.,* 223 F.Supp.2d 435 (S.D.N.Y. 2001) ............................................................................................... 11

*Monsieur Touton Selection v. Future Brands, LLC*, 2006 WL 2192790 (S.D.N.Y. 2006) .......... 14

*Picard v. Kohn*, 907 F.Supp.2d 392 (S.D.N.Y. 2012) .................................................... 7

*Rich v. Maidstone Financial, Inc.,* No. 98 CIV 2569 (DAB), 2001 WL 286757, *3 (S.D.N.Y. 2001)............................................................................................. 17

*Rombach v. Chang*, 355 F.3d 164 (2nd Cir. 2004)....................................................... 13

*S.E.C. v. Collins & Aikman Corp.,* 524 F.Supp.2d 477 (S.D.N.Y 2007)............................. 2, 3, 10

*S.E.C. v. Egan*, 994 F.Supp.2d 558 (S.D.N.Y. 2014) ................................................... 6

*S.E.C. v. Koenig*, 2000 WL 1074901, *8 (N.D. Ill. 2007)............................................. 9

*S.E.C. v. Lybrand,* 200 F. Supp.2d 384 (S.D.N.Y. 2002) ............................................. 9

*S.E.C. v. Madsen,* No. 17-cv-8300 (JMF), 2018 WL 5023945, * 3 (S.D.N.Y. 2018).................... 2

*S.E.C. v. Pimco*, 341 F.Supp.2d 454 (S.D.N.Y. 2004) ................................................ 9

*S.E.C. v. Wey,* 246 F.Supp.3d 894 (S.D.N.Y 2017)............................................... 3, 9

*SEC v. Blackburn,* No. CIV 15-2451, 2007 WL 5307424 at *5 (E.D. La. September 10, 2015) ......................................................................................... 17

*Segal v. Gordon*, 467 F.2d 602 (2nd Cir. 1972) ..................................................... 11

*Shapiro v. Cantor,* 123 F.3d 717 (2nd Cir. 1997)...................................................... 9

*Telenor East Invest AS v. Altimo Holdings & Investments Ltd.,* 567 F.Supp.2d 432 (S.D.N.Y. 2008).......................................................................................... 10

*Transcon Wines v. A.G. Becker, Inc.*, 470 F.Supp.356 (S.D.N.Y. 1979) .................................. 12

Defendants, Michael Brauser and Grander Holdings, Inc. ("Brauser"), reply in support of Brauser's motion to dismiss Plaintiff's First Amended Complaint ("*FAC*" or "complaint") (ECF No. 105). This memorandum is in reply to Plaintiff Securities and Exchange Commission's ("SEC's") memorandum of law ("*SEC Opp. Brief*") (ECF No. 155) in response to Brauser's memorandum of law (ECF No. 145) in support of motion to dismiss ("*Brauser Mot. Brief*").

### Preface

"This case involves . . . the stock of three public companies, 'Company A,' 'Company B' and 'Company C.'" *FAC,* p. 2 at ¶ 1. That is how those companies are referred to throughout the complaint. Therefore, the motion to dismiss brief also refers to those companies as "Company A," "Company B," and "Company C," which allows testing the allegations in the context in which they are made. In its opposition brief, the SEC uses names for the companies that appear nowhere in the complaint. This strains the tracking of Brauser's arguments and the SEC's counterarguments. The SEC also strains the tracking of corresponding arguments when responding to the issues Brauser raises by reversing the sequence in which they appear in the motion brief.

I. **THE SEC FAILS TO ALLEGE WITH PARTICULARITY THAT BRAUSER VIOLATED SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 (COUNT I), SECTION 17(a) OF THE SECURITIES ACT (COUNT II), AND SECTION 9(a) OF THE EXCHANGE ACT (COUNT IX)**

The SEC relegates these core claims to the end of its brief. *SEC Opp. Brief*, p. 22.

### A. Lack of Required Particularity

The SEC claims that Brauser engaged in "three schemes," each a "'pump-and-dump' . . . involving the stock of three public companies, 'Company A,' 'Company B' and 'Company C.'" *FAC,* p. 2 at ¶ 1. It alleges that the stock of each of the three companies was artificially inflated

by two means: (1) publishing misleading promotions; and (2) engaging in manipulative trading of each company's stock. *Id.*

The SEC does not contest that an essential element of a "pump-and-dump" scheme is the "pump." *Brauser Mot. Brief*, pp. 2-3, *citing S.E.C. v. Madsen,* 2018 WL 5023945, * 3 (S.D.N.Y. 2018); *In re Galectin Therapeutics, Inc. Securities Litigation,* 843 F.3d 1257, 1274 (11th Cir. 2016) (affirming dismissal) ("This case is, at most, a 'pump' without a 'dump.'").

Brauser's motion to dismiss focused on the paucity of particularity in the SEC's allegations that Brauser had pumped up the stock value of each of the three companies by paying for the publication of misleading promotions and then engaging in matched trading to foster the appearance of an active market in the stocks. All of the specific allegations of publishing misleading articles and engaging in matched trading post-publication, are as to defendants *other than* Brauser. *Brauser Mot. Brief,* pp. 5-11. Brauser analyzed this separately as to each of the "three schemes" claimed by the SEC, teasing out of the SEC's 277-paragraph complaint every allegation of who it alleges committed these operative acts, none of whom was Brauser. *Id.*

In generally avoiding the focus of Brauser's motion – the absence of Brauser from the pump – the SEC argues that its control group allegations are sufficient to state a claim on its securities fraud counts. To support this argument the SEC cites the following language from *S.E.C. v. Collins & Aikman Corp.,* 524 F.Supp.2d 477, 486 (S.D.N.Y 2007): "[A] person who, in concert with others, participates in a securities fraud scheme by making false statements does incur liability under Section 10(b)." *SEC Opp. Brief,* p. 26. In context, that language from *Collins & Aikman* reads:

> [A] person who participates in a conspiracy to commit a securities law violation but takes no concrete steps in furtherance of the violation has not run afoul of the statute. By contrast, a person who, in concert with others, participates in a securities fraud

> scheme by making false statements does incur liability under
> section 10(b).
>
> Participation in a scheme can thus be sufficient for liability under
> section 10(b) only if that participation took the form of actions or
> statements that were independently deceptive or fraudulent.

524 F.Supp. at 486.

The SEC avoids confronting the alleged fraud at the heart of the scheme it is claiming. As discussed in Brauser's motion brief, what Section "10(b) . . . catches must be fraud." *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 174 (1994). In *Collins & Aikman*, the alleged fraud was issuance of false accounting documents containing lies about the company's financial condition. 524 F.Supp.2d at 490. There, the motion to dismiss was denied because the SEC alleged, with particularity, how each of the defendants participated in the creation and promotion of the false financials. *Id.* at 491-95. In *S.E.C. v. Wey,* 246 F.Supp.3d 894, 916 (S.D.N.Y 2017), on which the SEC relies, the alleged fraud was false representations to NASDAQ in order to get stock publicly listed on a stock exchange. *SEC Opp. Brief*, pp. 22-23 and 28-30. Here, the alleged fraud is engaging in matched trading to create the appearance of active markets before the release of misleading media articles. Thus, Brauser's motion brief focused on the SEC's failure to allege, with particularity, a single instance of Brauser having engaged in either of the two aspects of the alleged "pump."

The SEC cites *Wey* for its language that the SEC was not required to allege that one of the *Wey* defendants, Mr. Uchimoto, "participated in each and every aspect of the fraudulent scheme." *SEC Opp. Brief,* pp. 22-23. However, on the same page cited by the SEC the *Wey* court dismissed the SEC's scheme liability claims against Uchimoto as "plague[d]" with a "lack of particularity" failing "to meet the heightened pleading requirements of Rule 9(b)." 246 F.Supp.3d at 916 ("Therefore, the scheme liability claims under Rule 10(b)-5(a) and (c) and

Section 17(a)(1) and (3) are dismissed"); *see also,* 246 F.Supp.3d at 933 ("Because no claims against Uchimoto survive the motion to dismiss, the SEC's claims for civil penalties, disgorgement and injunctive relief against him are similarly dismissed").

In searching its complaint for particularity, the SEC comes up empty. For example, the SEC argues that "Honig or Brauser . . . secretly compensated bloggers and promoters to write about the transaction to artificially increase the issuer's stock price," citing paragraph 55 of its complaint. *SEC Opp. Brief*, p. 2. What paragraph 55 actually alleges, as to paid promotions, is: "Typically, Honig, Brauser, Stetson and O'Rourke . . . paid writers, bloggers or other public relations professionals to write about it." *FAC*, pp. 17-18 at ¶ 55. Where the complaint does contain particulars identifying who allegedly solicited and paid such bloggers, the SEC always identifies persons *other than* Brauser. *FAC*, pp. 34-36. This is broken down, in detail, in Brauser's motion brief. As to Company A, the SEC identifies a defendant *other than* Brauser as the person who contacted the blogger, and paid him to write a favorable article. *Brauser Mot. Brief*, pp. 5-6. As to Company B, the SEC alleges four misleading articles, setting forth with particularity who allegedly enlisted and paid the blogger, none of whom is Brauser. *Id.,* pp. 8-9. As to Company C, the SEC alleges that the paid promotions consisted of two internet articles but the SEC alleges that they were published at the request of a defendant *other than* Brauser and paid for by a defendant *other than* Brauser. *Id.*, p. 11.

The SEC also takes liberties with its complaint in arguing that it alleges, with particularity, that Brauser engaged in the other aspect of the alleged "pump" – manipulative trading in violation of Section 9(a)(1) of the Exchange Act. *FAC*, pp. 89-90 at Count IX. The SEC argues that it "alleges that Brauser" joined "Honig in manipulating the price of [Company B] securities *through matched trading in the early morning of May 9, 2016 . . . .*" *SEC Opp.*

*Brief*, p. 26 (emph. added). However, neither at the cited page nor anywhere else in the SEC's prolix complaint does it allege, with particularity, a single matched trade between Brauser and anyone else.

The SEC ignores that in order "[t]o state a claim for manipulation under Section 9(a)(1), plaintiffs *must specifically identify particular washed sales or matched orders.*" *Cohen v. Stevanovich*, 722 F.Supp.2d 416, 424 (S.D.N.Y. 2010) (emph. added). While the complaint does contain particularity in alleging wash sales/matched orders, it is as to defendants *other than* Brauser. For example, the SEC alleges that "[o]n the morning of Friday, September 20, 2013," a defendant *other than* Brauser "put in buy orders for Company A stock at $0.40 per share to ensure his order was executed against the corresponding sell order later placed by" another defendant *other than* Brauser. *FAC*, pp. 34-35 at ¶ 105. The SEC knows about any matched trades, having engaged in extensive investigative discovery before filing this action, subpoenaing the "blue sheets" showing every trade that make up its "matched trading" claims. However, even after doubling the size of its complaint, from 53 to 100 pages, the SEC's amended complaint still fails to allege a single matched trade with Brauser. "Blue sheets are electronic forms that are generated by market makers, brokers and/or clearing firms in response to requests by the Commission . . . that provide detailed information about trades by a firm and its customers." *In re: Credit Suisse Securities (USA)*, 2015 WL 13309770, n.1 (September 28, 2015).

Even the SEC's general allegations, concerning such trading, do not ensnare Brauser. The SEC generally alleges that *before* the release of a misleading article various defendants "and their associates engaged in *pre*-release manipulative trading to generate a misleading picture of market interest in the company's stock." *FAC*, p. 3 at ¶ 3 (emph. added). But, when it comes to

particularity as to these trades, the SEC alleges that it was a defendant *other than* Brauser who had advance knowledge that the misleading announcement would occur *later* that morning and "traded in Company B stock . . . dozens of times" *before* the public announcement "to create the misleading appearance of an active market . . . ." *FAC*, p. 47 at ¶¶ 144-145. All of the particular allegations as to such manipulative trading are as to defendants *other than* Brauser. All 277 paragraphs of the complaint were analyzed to search for any such allegation, with particularity, as to Brauser. *See Brauser Mot. Brief*, pp. 6-8 as to Company A; pp. 9-10 as to Company B; and p. 11 as to Company C. There are none.

## B. The SEC's "Plausibility" Argument Illuminates the SEC's Failure to Adequately Plead a "Pump and Dump" as to Brauser

The SEC argues: "To survive Brauser's motion, the Commission need only allege 'enough facts to state a claim to relief that is plausible on its face,' citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). *SEC Opp. Brief*, p. 8. Of course, "[i]n addition to providing a facially plausible claim to relief, a party 'must state with particularity the circumstances constituting fraud . . . Fed.R.Civ.P. 9(b)." *S.E.C. v. Egan*, 994 F.Supp.2d 558, 564 (S.D.N.Y. 2014) (emph. added).

Moreover, under *Twombly* and its progeny the SEC does not even meet the lower plausibility standard. In *Twombly,* the Supreme Court reinstated the district court's dismissal of the complaint finding that allegations of "parallel conduct" – different persons doing similar things at the same time – was insufficient to state a claim if there were alternate equally rational grounds for such conduct. *See Twombly* at 554:

> The inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market.

The SEC alleges that Brauser engaged in the "dump" component of the alleged "pump and dump" scheme by selling stock in three companies when the market price went up, as did other defendants. Thus, the SEC is arguing that Brauser did something "in line with a wide swath of rational . . . business strategy unilaterally prompted by common perceptions of the market." Investors sell stock when the price goes up.

*Twombly* has been so applied in this district. *See Picard v. Kohn*, 907 F.Supp.2d 392, 400 (S.D.N.Y. 2012) ("Under *Twombly*, where several different theories might explain the same conduct, a complaint must provide a factual basis for the specific theory on which its legal claims rely;" dismissing multiple claims where the alleged "'parallel conduct . . . could just as well be independent action,'" quoting *Twombly*). In addition, the Second Circuit has ruled that "the rationale of [Twombly's] parallel conduct holding" applies outside the antitrust context in which it appeared in *Twombly*, and is applicable "generally to Rule 8 pleading standards." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, n. 2 (2nd Cir. 2007).

Thus, in addition to the SEC's failure to plead with particularity Brauser's alleged involvement in the "pump" – which alone provides the grounds to dismiss its pump and dump claims – its allegations as to the "dump" are also wanting under *Twombly*.

And, notwithstanding the SEC's suggestion to the contrary (*SEC Opp. Brief* at 8), the particularity required by Rule 9(b) may not be supplied by inference. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005) ("[W]e decline to make inferences about the submission of fraudulent claims because such an assumption would 'strip all meaning from Rule 9(b)'s requirements of specificity'").

**C. The SEC's Aiding and Abetting Claims – Enabled By Congress Post-Central Bank – Are as to Defendants Other Than Brauser**

The SEC's allegations against Brauser sound in "aiding and abetting." *See, e.g., FAC*, p. 26 at ¶ 78 ("Brauser . . . knew, or was reckless in not knowing, that Honig was paying Ford to write promotional pieces . . ."); *see also, SEC Opp. Brief*, p. 7 ("In his July 1, 2015 blog, Ford made materially false claims about . . . deals, which he, Honig, Brauser, Stetson and O'Rourke all knew or were reckless in not knowing were false, and failed to disclose that he was being compensated for the post."). But the SEC makes *no* aiding and abetting claims against Brauser.

*All* aiding and abetting claims in the SEC's complaint are against defendants *other than* Brauser. *FAC*, pp. 86-87 at Counts VII and VIII (aiding and abetting claims against Defendants Ladd and Keller); *id.*, p. 94 at Count XIII (aiding and abetting claims against Defendant Ladd); *id.*, p. 95 at Count XIV (aiding and abetting claims against Defendants Maza and Keller).

The absence of any aiding and abetting claims against Brauser is telling. A brief history of how the law has changed – concerning aiding and abetting claims – illustrates the SEC's failure here. In 1994, the Supreme Court rejected the SEC's attempt to read aiding and abetting claims into the relevant statutory framework. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994):

> [T]he SEC suggest[s] (or hint[s] at) the novel argument that the use of the phrase "directly or indirectly" in the text of § 10(b) covers aiding and abetting.

*Id.* at 176.

> . . . Congress has not enacted a general civil aiding and abetting statute – either for suits by the Government (when the Government sues for civil penalties or injunctive relief) or for suits by private parties.

*Id.* at 182.

> [N]othing in the text or history of § 10(b) even implies that aiding and abetting was covered by the statutory prohibition on manipulative and deceptive conduct.

*Id.* at 183.

As the Second Circuit held two years after the Supreme Court handed down its *Central Bank* decision: "Allegations of 'assisting,' 'participating in,' 'complicity in,' and similar synonyms . . . all fall within the prohibitive bar of *Central Bank*." *Shapiro v. Cantor,* 123 F.3d 717, 720 (2nd Cir. 1997) (internal quotations omitted).

In response to the *Central Bank* decision, Congress enacted Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] to clarify that the SEC may bring aiding and abetting claims. *S.E.C. v. Lybrand,* 200 F. Supp.2d 384, 398 (S.D.N.Y. 2002); *S.E.C. v. Pimco*, 341 F.Supp.2d 454, 467 (S.D.N.Y. 2004); *see also, S.E.C. v. Koenig*, 2000 WL 1074901, *8 (N.D. Ill. 2007) ("Section 20(e) of the Private Securities Litigation Reform Act of 1995 [15 U.S.C. § 78t(e)], which authorizes the SEC to bring claims for aiding and abetting primary securities law violations, was enacted in response to the Supreme Court's decision in *Central Bank* . . . .").

Section 20(e) currently states:

> **(e) Prosecution of Persons Who *Aid and Abet* Violations**
> For purposes of any action brought *by the Commission* . . . any person that knowingly *or recklessly* provides substantial assistance to another person in violation of a provision of this chapter, or of any rule or regulation issued under this chapter, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

15 U.S.C. § 78t(e) (emph. added). The words "or recklessly" were added by amendment in 2010. PL 111-203, July 21, 2010, 124 Stat 1376; *see also Wey,* 246 F.Supp.3d at 926.

It is respectfully submitted that the reason the SEC has not brought an aiding and abetting claim against Brauser is that it does not have a sufficient basis to do so. However, unless and until the SEC brings such a claim the determination of its legal sufficiency is premature.

## II. THE SEC FAILS TO ADEQUATELY PLEAD THAT BRAUSER VIOLATED SECTION 13(d) AND RULE 13(d)-1(a) (COUNT XII)

The SEC starts its 13(d)/control group argument by lowering the bar of what it must allege, arguing that "particularity is not required for claims brought solely under Section 13(d)," *citing Telenor East Invest AS v. Altimo Holdings & Investments Ltd.,* 567 F.Supp.2d 432, 444 (S.D.N.Y. 2008). *SEC Opp. Brief*, p. 13, n. 15. What *Telenor* actually says is that if a §13(d) claim does *not* sound in fraud then it need not be pleaded with particularity. As set forth in Brauser's motion brief, "[c]laims alleging fraud in connection with violations of section[] 13(d) . . . *must* be pleaded with particularity." *Mgmt. Assistance Inc. v. Edelman,* 584 F.Supp.1016, 1018 (S.D.N.Y. 1984) (emph. added). *Brauser Mot. Brief*, p. 11. The SEC ignores the cited authority and, ironically, argues its "control group" allegations as part of the fraudulent scheme. *See, e.g.*, *SEC Opp. Brief*, p. 24 (arguing that its complaint "alleges, with particularity . . . pump-and-dump schemes, and that a central component of their success were Brauser's and Honig's (and their group's) concealment of their involvement and control"); *id.* at p. 4 (arguing that "Honig and O'Rourke, acting on behalf of the group, negotiated the acquisition" that was the basis for an alleged pump).

The SEC also argues that its §13(d) claim need not be pleaded with particularity because it does not require a showing of scienter to establish liability. *SEC Opp. Brief*, p. 9 ("[C]laims stating violations of § 13(d) of the . . . Exchange Act . . . and Rule 13(d)-1(a) standing alone . . . are not subject to Rule 9(b) *because neither requires a showing of scienter to establish liability.*" (emph. added). This is a non-sequitur. "Scienter requires an inquiry independent from the question of whether the person committed a prohibited act." *Collins & Aikman*, 524 F.Supp.2d at 487. Brauser's challenge to the sufficiency of the complaint centers on the SEC's failure to plead with particularity that Brauser committed the alleged prohibited acts at the heart of the

fraud – the alleged matched trading or the alleged misleading promotions before such matched trading. *Supra*, pp. 1-6.

Curiously, the SEC suggests that it has pleaded its 13(d) claims with particularity but cites dozens of paragraphs of its complaint relating to Company A. *SEC Opp. Brief,* p. 16 (stating that Brauser's "most active role" was in Company A, which the SEC identifies as "BioZone"). *SEC Opp. Brief,* p. 16, *citing FAC* at ¶¶ 80-117. But, as to Company A, the SEC makes *no* 13(d) claim against Brauser. The SEC only makes 13(d) claims against Brauser as to Companies B and C. *See FAC*, pp. 92-93, Count XII, at ¶ 264 (alleging that Brauser was "under an obligation to file with the Commission true and accurate reports with respect to . . . ownership *of the Company B and Company C securities*, and failed to do so, thereby violating Exchange Act Section 13(d) and Rule 13d-1(a) thereunder") (emph. added).

The SEC's "shared office space" argument also falls short. It argues: "[T]he Complaint *generally* alleges that" Brauser "shared an office until late 2013" with other defendants. *SEC Opp. Brief*, p. 17. But the SEC's §13(d) claims against Brauser – which only relate to Companies B and C – are alleged to have occurred years later, in 2015 and 2016. *FAC*, p. 93 at ¶¶ 261, 263.

These kinds of allegations to establish a 13(d)/control group claim were roundly rejected in *Log On America, Inc. v. Promethean Asst Mgmt., L.L.C.,* 223 F.Supp.2d 435, 448 (S.D.N.Y. 2001). In *Log On America,* the defendants were alleged to have "in the past . . . jointly invested in companies together," "used the same law firm," and "engaged in similar unlawful . . . conduct in connection with similar transactions with other companies." Such "'unadorned allegation[s] that defendants are acting as a group [are] not adequate to sustain a Section 13(d) claim.'" *Id.* at 449, citing *Segal v. Gordon*, 467 F.2d 602, 608 (2nd Cir. 1972).

The SEC cites *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 95 F.Supp.2d 169, 173, 176 (S.D.N.Y. 2000), for "noting extensive communications" as indicative of a control group. But the SEC ignores that court's statement of law, particularly salient here, that "a *conclusory* allegation of the existence of a group is insufficient under any standard." *Id.* at 175 (emph. added). Virtually all of the SEC's 13(d)/control group allegations against Brauser are conclusory, the SEC's operative allegations relating to other defendants. This is laid out in Brauser's motion brief, pp. 11, *et seq.*

The SEC argues: "The touchstone of a group is that 'the members combined in furtherance of a common objective.'" *SEC Opp. Brief* at 14. Here the alleged common objective is a pump and dump scheme. "However, absent an agreement between them a 'group' would not exist." *Corenco Corp. v. Schiavone & Sons, Inc.,* 488 F.2d 207, 217 (2nd Cir. 1973). "[T]hat defendants had 'jointly invested together in other transactions' would not establish that they currently have an agreement with respect to . . . stock." *Forward Indus., Inc. v. Wise*, 2014 WL 6901137, *3 (S.D.N.Y. 2014). "'Mere relationship, among persons or entities, whether family, personal or business, is insufficient to create the group which is deemed to be a statutory person.'" *Transcon Wines v. A.G. Becker, Inc.*, 470 F.Supp.356, 375 (S.D.N.Y. 1979); *Cf. Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 329 ("The allegation that defendants agreed to this price floor is obviously conclusory, and is not accepted as true.").

In an effort to enhance its "control group" allegations, the SEC argues that its complaint "alleges the *specific* history of Brauser's and Honig's co-investing, noting that they had co-invested in over 40 issuers over a seven-and-a-half year period," citing ¶ 60 of its Amended Complaint. *SEC Opp. Brief*, p. 16. (emph. added). There is no *specific* history of these alleged co-investments, in the 40 issuers, either in paragraph 60 or anywhere else in the complaint. The

SEC does not even identify the 40 issuers. The SEC cites *Glob. Intellicom v. Thomsom*, 1999 WL 544708, at *14 (S.D.N.Y 1999) for its reference to the "allegation that 'various . . . Defendants have engaged in . . . similar transactions with other public companies' to deny a motion to dismiss." *SEC Opp. Brief*, p. 16. The SEC omits that in *Global Intellicom* the court stated: "Global . . . alleges that certain defendants have carried out similar manipulation schemes against other companies. . . . The complaint *lists and describes each of the transactions.*" *Glob. Intellicom* at *6 (emph. added). Here the SEC neither lists nor describes the alleged co-investments "in over 40 issuers over a seven-and-a-half year period." *FAC, ¶ 60.*

Finally, as with the SEC's 10(b), 17(a) and 9(a) allegations, the SEC's 13(d)/control group allegations read like "aiding and abetting" claims. However, the SEC has *no* aiding and abetting claim against Brauser. *Supra*, pp. 8-9.

## III. THE SEC FAILS TO ADEQUATELY PLEAD THAT BRAUSER VIOLATED SECTIONS 5(a) AND (c) OF THE SECURITIES ACT (COUNT XI)

The SEC does not challenge Brauser's citation to *Rombach v. Chang*, 355 F.3d 164, 171 (2nd Cir. 2004), for its ruling that "[f]raud allegations may damage a defendant's reputation regardless of the cause of action in which they appear, and they are therefore properly subject to Rule 9(b) in every case . . . ." *Brauser Mot. Brief*, p. 18. Indeed, in *Rombach* the Second Circuit goes even further, pointing out that "[b]y its terms, Rule 9(b) applies to 'all averments of fraud,' and that [t]his wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Rombach*, 355 F.3d at 171. While a plaintiff need not allege fraudulent conduct for purposes of a specific cause of action, "claims that do rely upon averments of fraud are subject to the test of Rule 9(b)." *Id.*; *see also Iroquois Master Fund, Ltd. v. CEL-SCI Corp.*, 2011 WL 1216688, *3 (S.D.N.Y. 2011) ("A claim sounds in fraud when, although not an essential element

of the claim, the plaintiff alleges fraud as an integral part of the conduct giving rise to the claim, such as when a claim relies on alleged misrepresentations and omissions.") (internal citations/quotation marks omitted).

Here, the SEC places its unregistered securities claim squarely within its fraudulent scheme. For example, the SEC alleges:

> The registration provisions of the Securities Act are also designed to ensure that investors have key information when the company or its control persons seek to sell securities. Companies are generally required to disclose important financial information in a registration statement filed with the Commission, which is available to the public. When *participants in a pump-and-dump scheme* sell large blocks of stock to the investing public without registering the transaction, the offer or sale of that stock can violate the registration requirements of the Securities Act.

*FAC*, p. 15 at ¶ 51 (emph. added). The SEC incorporates all of its fraud allegations into this Count. *Id.* at ¶ 254.

Brauser also challenged the conclusory nature of Count XI in which the SEC claims that Brauser sold unregistered securities of Company A. *Id.* at 16-18. The SEC responds that it alleges that Brauser sold unregistered securities in interstate commerce and "[t]hat is all that is needed to state a *prima facie* Section 5 claim." *SEC Opp. Brief*, p. 10. But that is, of course, conclusory. Conclusory allegations are insufficient under any standard. *Monsieur Touton Selection v. Future Brands, LLC*, 2006 WL 2192790, at *4 (S.D.N.Y. 2006) ("Even under the permissive regime of notice pleading, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent dismissal") (quotations omitted).

The SEC argues that "Brauser does not point to any deficiency in those allegations." *SEC Opp. Brief*, p. 10. However, the SEC overlooks Brauser's challenge to such allegations as "conclusory" and "lump[ing] Brauser in with seven other persons or entities . . . ." *Brauser Mot. Brief*, p. 16. An example is the SEC's allegation that "Honig and Brauser were also statutory

underwriters under Securities Act Section 2(a)(11) because they acquired these securities from the issuer or an affiliate of the issuer with a view to public distribution." *FAC*, p. 38 at ¶ 115. A similar conclusory allegation that defendants were "underwriters" under Section 2(a)(11) was deemed insufficient by the court in *In re Refco, Inc. Securities Litigation*, 503 F.Supp.2d 611, 629 (S.D.N.Y 2007) (due to the lack of detail of "what actual actions the defendants took").

Although the SEC lumps Brauser in with Honig, when it comes to providing detail it is as to Honig. The SEC alleges that it was "Honig's Company A share certificates," – not Brauser's – that were the subject of false attorney opinion letters to Company A's transfer agent in order to remove restrictive legends . . . ." *FAC*, p. 33 at ¶ 100. The SEC alleges that "[t]hese false opinion letters were sought by Honig" – not Brauser – "because Honig together with another non-Brauser defendant "knew that the removal of the restrictive legend was a necessary step in readying Honig's Company A shares for sale to the public," and that "[e]ach of the letters contained the material misrepresentation that Honig was not an affiliate of Company A . . . ." *Id.* There is no such allegation as to Brauser. *See also FAC*, pp. 33-34 at ¶¶ 101-102 providing detail as to Honig but not Brauser.

The SEC goes on the allege that "[o]nce the restrictive legends were lifted from Honig's shares and the shares were deposited into a brokerage account, and Honig was ready to sell them," that "Honig directed O'Rourke to reach out to Ford to arrange for him to post his purportedly independent investment analysis of Company A" that the SEC claims was a fraudulent "pump." *FAC*, p. 34 at ¶ 102.

Brauser did not "mistakenly" assume that the SEC was claiming "participant" liability, as the SEC argues. *SEC Opp. Brief* at 10. Given the SEC's paucity of facts as to Brauser, and claims that Brauser was a statutory underwriter, Brauser argued that "[t]o the extent the SEC is

alleging that Brauser was a participant, his 'role in the transaction must be a significant one before [Section 5] liability will attach," followed by cited authorities. *Brauser Mot. Brief*, p. 18. Neither a defendant nor the Court should have to divine a plaintiff's claims which clump multiple defendants together in a sea of prolixity.

## IV. THE CLAIMS AGAINST BRAUSER SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

In response to Brauser's motion brief the SEC "requests leave to amend to address those deficiencies identified by the Court in ruling on" Brauser's motion. *SEC Opp*. Brief. However, the SEC does not contest the Second Circuit's opinion that the particularity mandate of Rule 9(b) serves to "prohibit plaintiffs" – including the SEC – "from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Rombach*, 355 F.3d at 171 (dismissing fraud claims for failure to meet the heightened pleading standards of Rule 9(b)) (internal citation omitted). The SEC does not contest that Rule 9(b)'s "stricture . . . serves to prevent the abuse of process and the gratuitous disruption of business activity." *In re Blech Securities Litigation,* 928 F.Supp. 1279, 1293 (S.D.N.Y. 1996). The SEC does not contest that "it has already exacted a prejudgment penalty against Brauser by using the imprimatur of its governmental status to subject him to public ostracism in business affairs." *Brauser Mot. Brief*, p. 19. The SEC does not contest having issued a press release publicly branding Brauser as a securities "fraudster" who "engaged in brazen market manipulation that advanced [his] financial interests while fleecing innocent investors . . . ." *Id*. at 18-19. The SEC does not contest that the "Rule 9(b) pleading constraint serves to . . . safeguard [a defendant's] reputation from improvident charges of wrongdoing . . . ." *ATSI Commc'ns, Inc.,* 493 F.3d at 99. The SEC does not contest that it failed to "provide Brauser with the customary 'Wells' notice designed to allow prospective defendants to show the SEC, pre-filing, the lack of

merit in such claims before they become public." *Id.* at 19.  The SEC does not contest that it "enjoyed years of discovery before even filing this lawsuit." *Id.* at 18.

The SEC does not contest that "[t]he 'particularity requirement' contained in Rule 9(b) is substantial."  *Rich v. Maidstone Financial, Inc.,* 2001 WL 286757, *3 (S.D.N.Y. 2001) (dismissing complaint pursuant to R. 9(b)).   The SEC does not contest that where the complaint includes allegations against multiple defendants "[t]he courts are especially vigilant in applying Rule 9(b)." *Id.* at * 6.  The SEC does not contest that "[o]ne of the purposes of Rule 9(b) is to guard against 'guilt by association.'" *SEC v. Blackburn,* 2007 WL 5307424 at *5 (E.D. La. 2015).

The SEC has had a full and fair opportunity to state a viable claim as to Brauser.  Under these circumstances the SEC's complaint against Brauser should be dismissed without leave to amend. Respectfully submitted,

*Attorneys for Defendants Michael Brauser and Grander Holdings, Inc.*

SALLAH ASTARITA COX LLC                 RICHARD AND RICHARD, P.A.
3010 N. Military Trail                              Tower III, Suite 1748
Suite 210                                              825 Brickell Bay Drive
Boca Raton, FL  33431                          Miami, FL  33131
T:  (561) 989-9080                                T: (305) 374-6688
F:  (561) 989-9020                                F: (305) 374-0384

                                                         By: /s/ *Dennis A. Richard*
                                                               DENNIS A. RICHARD
                                                               dennis@richardandrichard.com
                                                               MELISSA L. MACKIEWICZ
                                                               melissa@richardandrichard.com
                                                               *Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing motion has been electronically filed this 10th day of September, 2019 with the Court via CM/ECF, which will serve an electronic copy on all counsel of record.

/s/ <i>Dennis Richard</i>      
DENNIS RICHARD

W:\WDOX\CLIENTS\512\4467\00130881.DOCX