# RICHARD AND RICHARD

**ATTORNEYS AT LAW**
**825 BRICKELL BAY DRIVE**
**SEVENTEENTH FLOOR**
**MIAMI, FLORIDA**
**33131**

DENNIS RICHARD  
E-mail: dennis@richardandrichard.com

**PHONE (305) 374-6688**

September 18, 2019

**VIA ECF**

The Honorable Edgardo Ramos  
United States District Court  
Thurgood Marshall U.S. Courthouse  
40 Foley Square  
New York, NY  10007

     RE:    *SEC v. Honig, et al.*, No. 1:18-cv-08175

Dear Judge Ramos:

We represent defendants, Michael Brauser and Grander Holdings, LLC ("Brauser").  This submission is pursuant to leave provided at the pre-motion conference on September 11, 2019.  *Hrg. Transc.*, 9/11/19 at 27:18-22.

The present issue was triggered by the SEC's cryptic letter to the Court "to advise . . . that the Commission's New York Regional Office" – which is the SEC's counsel of record in this case – "continues to investigate matters that involve conduct of certain Defendants" and that "[i]f the Commission staff representing the Commission in this matter becomes aware of documents collected in that investigation that are relevant to matters alleged in the Amended Complaint, we will produce them to Defendants."  *Letter from SEC Counsel,* 8/8/19 (ECF No. 157).

After the SEC files court proceedings, its use of its administrative powers to engage in *ex parte* discovery is constrained by the Federal Rules of Civil Procedure.  *S.E.C v. Life Parters*

The Honorable Edgardo Ramos
September 18, 2019
Page 2

*Holdings, Inc., et al.,* 2012 WL 1280253 (W.D. Tex. August 17, 2012). The issue turns on whether the *ex parte* SEC investigation is "for the *sole* purpose of investigating violations not alleged in the" SEC's complaint. *Id.* at *2 (emph. added). The SEC told the Court:

> [T]he Commission plans to use its administrative powers to investigate matters <u>unrelated</u> to the allegations in the Amended Complaint. Because those matters are unrelated to the instant matter, they are not the subject of this litigation nor subject to the Federal Rules of Civil Procedure.

*Letter from SEC Counsel N. Brown to the Court*, 9/4/19, p. 1 (emphasis by SEC) (ECF No. 171, p. 1).

After the SEC's *in camera* submission at the September 11th hearing, the Court advised the parties that it had "directed the SEC to submit additional briefing which will also be *ex parte* and under seal to me so that I can further make a determination as to whether or not the investigation *is wholly unrelated* to the current investigation, and that submission is due by next week, the 18th" of September, 2019. *Hrg. Transc.*, 9/11/19 at 25:5-10.

The SEC filed its additional *ex parte* briefing under seal on Tuesday, September 17, 2019. Although the Defendants are in the dark as to what is in the SEC's *ex parte* brief, and therefore not in a position to test its completeness or candor, we submit a framework for the Court's determination of whether the SEC's *ex parte* discovery is wholly unrelated to the allegations in the Amended Complaint.

At its core, the Amended Complaint alleges an ongoing pattern of "'pump-and-dump' schemes" including amassing a controlling interest in the stock of public companies, concealing that control, driving up the stock price and trading volume through manipulative trading and/or paid promotional activity, and then dumping the stock into an artificially inflated market. *FAC*, p. 2 (ECF 105). The SEC has acknowledged that its Amended Complaint "alleges a common

The Honorable Edgardo Ramos
September 18, 2019
Page 3

pattern among the many schemes" although it only "focuses on three issuers . . . ." *SEC's Opp. to Brauser's MTD Amended Complaint*, ECF No. 155, p. 2. The SEC alleges that the "pattern . . . [t]ypically" involves "some kind of transaction" such as "an acquisition or merger," and/or paying "writers" or "bloggers" to publish misleading information about public companies to pump up the value of stock. *Am. Compl.*, ¶ 55 (ECF No. 105, p. 17-18). The SEC alleges this pattern has occurred with dozens of issuers. *Id.*, ¶ 57 (ECF No. 105, p. 18).

Indeed, in *every* count against Brauser the SEC alleges that "[b]y reason of the foregoing . . . Brauser . . . *will continue* to" engage in the same pattern of conduct. *Id.*, p. 71, ¶ 202; p. 78, ¶ 210; p. 90, ¶ 248; p. 92, ¶ 258; and, pp. 93-94, ¶ 265. The SEC seeks injunctive relief against this alleged continuing pattern of wrongful conduct. *Id.*, pp. 97-99.

Given these allegations in the SEC's Amended Complaint, we asked SEC counsel:

> When you represent to the Court that "the Commission plans to use its administrative powers to investigate matters <u>unrelated</u> to the allegations in the Amended Complaint," does that mean that such matters are outside of the alleged pattern?

*Letter from Brauser Counsel J. Sallah*, 9/9/19 (emph. by SEC) (Exh. A hereto).

SEC counsel replied:

> In response, we can *only* refer you to what we've said before regarding the non-public investigation, that is: it concerns conduct that is distinct from and post-dates the conduct alleged in the amended complaint.

*Email from SEC Counsel, N. Brown, to Brauser Counsel J. Sallah,* 9/11/19 (emph. added) (Exh. B hereto).

Thus, when confronted with the actual allegations of the Amended Complaint and asked the simple question of whether its planned *ex parte* investigation was unrelated to those

allegations the SEC averted the question, responding that it would "only" say that it "concerns conduct that is distinct from and post-dates the conduct alleged in the amended complaint."

The difference in what the SEC told the Court on September 4th – that it "plans to use its administrative powers to investigate matters <u>unrelated</u> to the allegations in the Amended Complaint" (emphasis by SEC) and its later reply to a direct question by a Defendant's counsel – that it would "only" say that it "concerns conduct that is distinct from and post-dates the conduct alleged in the amended complaint" – is telling. If, for example, the SEC is using its administrative subpoena powers to investigate the very pattern of conduct it claims is continuing – and asks the Court to enjoin – then it should be utilizing court-issued subpoenas pursuant to the Federal Rules of Civil Procedure.

This precise issue is the subject of the ruling in *Life Parters* that although the filing of a civil suit generally does not inhibit the SEC's "authority to investigate securities-law violations," the SEC is "unquestionably bound by the" Federal Rules of Civil Procedure when its *ex parte* investigative powers are not being used as "part of a purely administrative investigation unrelated to the" pending civil case. 2012 WL 12850253 at *2.

In *Life Parters*, just as here, the SEC "submitted materials *in camera;*" the SEC asserted that the *in camera* submission would "debunk[] Defendants' false accusation that the [administrative] subpoena was issued to obtain *ex parte* discovery." *Id.* at *2 (internal quotation marks/brackets omitted). Upon its *in camera* review, the *Life Parters* court rejected the SEC's position, finding that the *ex parte* discovery was *not* wholly unrelated to the pending civil action. The SEC moved for reconsideration, which was denied, the court further stating:

> The Court's position is supported by Plaintiff's [SEC] Enforcement Manual, which cautions the staff regarding the dangers of issuing

> investigative subpoenas after commencement of a related civil action because "a court might conclude that the use of investigative subpoenas to conduct discovery is a misuse of the SEC's investigative powers and circumvents the court's authority and limits on discovery in the Federal Rules of Civil Procedure.

*SEC v. Life Parters Holdings, Inc.,* 2012 WL 12918375, *1 (W.D. Tex. September 25, 2012). Copies of both *Life Parters* decisions are attached hereto as Composite Exh. C.

The SEC's exception in its initial letter to the Court – that "*[i]f* the Commission staff representing the Commission in this matter becomes aware of documents collected in [its administrative] investigation that are relevant to matters in the Amended Complaint, we will produce them to Defendants" – is not salutary. The SEC took a similar position in the *Life Parters* case, arguing that the defendants were not prejudiced because the SEC later provided them a copy of the SEC's *ex parte* deposition. 2012 WL 12850253 at * 3. The court ruled that this did not "alleviate the prejudice caused by [the SEC] taking an extra-judicial deposition from a non-party witness to obtain testimony against" the defendants, and that "[m]ost importantly," the SEC's "lack of notice to Defendants deprived them of their ability to cross-examine" the witness "and object to testimony elicited by" the SEC. *Id.*

### *Upon This Court's Determination*

Given this Court's statement that it will be making "a determination as to whether or not the investigation is wholly unrelated" to the pending civil action, what follows turns on that determination. If the Court determines that the SEC's investigation is *not* "wholly unrelated," then the SEC should conduct such discovery in accordance with the Federal Rules of Civil Procedure. That way Brauser and other parties will receive basic due process – notice of any subpoenas, depositions or other discovery.

The Honorable Edgardo Ramos
September 18, 2019
Page 6

If the Court determines that the SEC's investigations *is* "wholly unrelated" to the pending civil action, then the SEC should be restricted from using the fruits of that *ex parte* investigation in this case.

Respectfully submitted,

*/s/ Dennis A. Richard*
DENNIS A. RICHARD

cc: Counsel of Record (via ECF)