J9B5secA

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
3    SECURITIES AND EXCHANGE
     COMMISSION,
4
                    Plaintiff,              New York, N.Y.
5
               v.                           18 Civ. 8175 (ER)
6
     BARRY C. HONIG,
7    JOHN STETSON,
     MICHAEL BRAUSER,
8    JOHN R. O'ROURKE, III,
     ROBERT LADD,
9    ELLIOT MAZA,
     BRIAN KELLER,
10   JOHN H. FORD,
     ATG CAPITAL LLC,
11   GRQ CONSULTANTS, INC.,
     HS CONTRARIAN INVESTMENTS,
12   LLC,
     GRANDER HOLDINS, INC.,
13   STETSON CAPITAL INVESTMENTS
     INC.,
14
                    Defendants.
15
     ------------------------------x
16
                                            September 11, 2019
17                                          10:10 a.m.
18   Before:
19                   HON. EDGARDO RAMOS,
20                                          District Judge
21
22
23
24
25
```

J9B5secA

APPEARANCES

SECURITIES AND EXCHANGE COMMISSION
BY:  NANCY A. BROWN
     JACK KAUFMAN
     KATHERINE S. BROMBERG

RICHARD & RICHARD, P.A.
     Attorneys for Defendants Brauser and Grander Holdings
BY:  DENNIS A. RICHARD  (via phone)
          -and-
SALAH ASTARITA & COX, LLC
BY:  JAMES D. SALLAH

WILMER, CUTLER, PICKERING, HALE & DORR, LLP
     Attorneys for Defendant Ladd
BY:  CHRIS JOHNSTONE
          -and-
COOLEY, LLP
BY:  RANDALL R. LEE

J9B5secA                              argument

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your name for

3     the record.

4          MS. BROWN:  Good morning, your Honor.  Nancy Brown of

5     the Securities and Exchange Commission, and with me are my

6     colleagues Jack Kaufman and Katherine Bromberg.

7          THE COURT:  Good morning.

8          NSPEAK:  Good morning.

9          MS. BROMBERG:  Good morning.

10          MR. LEE:  Good morning, your Honor.  Randall Lee for

11     defendant Robert Ladd.

12          MR. JOHNSTONE:  Good morning, your Honor.  Chris

13     Johnstone for defendant Robert Ladd.

14          MR. SALLAH:  Good morning, your Honor.  James Sallah

15     for Mike Brauser and Grander Holdings.

16          THE COURT:  Good morning to you.  And we have someone

17     on the phone?

18          MR. RICHARD:  Yes, your Honor.  Dennis Richard, also

19     for Brauser and Grander.

20          THE COURT:  Where are you, Mr. Richard?

21          MR. RICHARD:  I am in Miami.

22          THE COURT:  Well, welcome.

23          This matter is on for a pre-motion conference.  Who

24     wants to go first?

25          MR. JOHNSTONE:  Your Honor, I'm happy to go first.

J9B5secA                      argument

1            THE COURT:  Very well.

2            MR. JOHNSTONE:  Your Honor, in the SEC's pre-motion

3     letter they identify four specific items.  Since the filing of

4     that letter we believe that, in the main, most of those items

5     have been address and resolved.  Today we expect the SEC to

6     pivot and to pose a different question:  Whether Mr. Ladd

7     should be required to produce the documents of a separate

8     entity, MGT.

9            To set the table here are some important facts about

10    MGT:  First, it is a public company with a fiduciary duty,

11    fiduciary responsibility to shareholders.  Second, it has an

12    independent board of directors.  Third, it's represented

13    separately in this case by Kramer Levin, Darren LaVerne and

14    Sean Coffey of that firm.  Fourth, Kramer Levin has been

15    representing MGT in both the investigative and litigation

16    phases of this case.

17           THE COURT:  So MGT is not Company A, Company B or

18    Company C?

19           MR. JOHNSTONE:  It is Company B.

20           THE COURT:  Okay.

21           MR. JOHNSTONE:  And, fifth, none of the engagement

22    between MGT and the SEC has involved Mr. Ladd at all.  In fact,

23    until recently, we believed that the parties were on the same

24    page with respect to the document productions of MGT documents.

25    For documents that MGT has, the SEC has sought and obtained

J9B5secA                          argument

1    them directly from MGT and Kramer Levin.  For documents that

2    MGT does not have, Mr. Ladd has produced, including from two

3    personal e-mail accounts.  We believe that this is a sensible

4    approach to document discovery in this case.  In fact, it would

5    be unusual for the personal counsel of an individual to insert

6    themselves in document production decisions of a public company

7    with its own capable counsel.  We submit the SEC should

8    continue to work directly with MGT as they've been doing and

9    not attempt to seek discrete categories of documents from

10   Mr. Ladd individually.

11              THE COURT:  Let me ask you -- you are Mr. Johnstone?

12              MR. JOHNSTONE:  Yes, your Honor.

13              THE COURT:  The documents that the SEC is seeking from

14   Mr. Ladd, is there any dispute as to their relevance or to

15   their, the fact that they are otherwise properly discoverable?

16              MR. JOHNSTONE:  Your Honor, we have not been involved

17   in the back and forth over literally three years between MGT

18   and the SEC over these documents so we don't know the extent to

19   which these documents have already been produced or MGT

20   considers them outside the scope of reasonable discovery.  I

21   will say this about the two categories, they are highly

22   questionable.  The first category of documents precedes the

23   statute of limitations period in this case.  The statute of

24   limitations starts at March 8, 2014.  The SEC is seeking

25   documents prior to that date.  For that reason it seems like a

J9B5secA                          argument

1   highly questionable request.

2          THE COURT:  Why?  I mean, the fact that the statute

3   only goes back to 2014 doesn't mean that otherwise relevant

4   information or documents go back beyond that date.

5          MR. JOHNSTONE:  It is in fact possible that there

6   could be information that is relevant and discoverable.  We

7   believe it's highly questionable that the SEC needs documents

8   five years prior to this date.

9          The second category is documents after the end of the

10  allegations in the complaint against Mr. Ladd.  Those

11  allegations run up until June 2016.  The documents the SEC are

12  seeking are after that date, therefore irrelevant to the claims

13  in this case.

14         THE COURT:  Well, irrelevant perhaps to Mr. Ladd

15  but -- well, I don't know, Ms. Brown, why don't you take it?

16         MS. BROWN:  Yes, sir.

17         THE COURT:  You can remain seated.

18         MS. BROWN:  Thank you, your Honor.

19         On the question of relevance, we allege in our

20  complaint that the relationship between Mr. Ladd and Mr. Honig

21  and his group of co-investors began in 2012.  That's why our

22  request goes back to that period.  If I could explain for a

23  minute about why we are seeking these documents from Mr. Ladd

24  and not MGT, MGT --

25         [audio feedback]

J9B5secA                          argument

1              THE COURT:  Mr. Richard, are you there?

2              MR. RICHARD:  Yes, I am here.  I just heard a loud

3    sound.

4              THE COURT:  So did we.

5              MR. RICHARD:  And now I can't hear anything.

6              THE COURT:  Can you hear me?

7              MR. RICHARD:  No.  Well, I can hear you, but very,

8    very, very dim.

9              THE COURT:  Okay.

10             THE COURT:  Mr. Richard, can you mute your phone?

11             MR. RICHARD:  Yes.

12             THE COURT:  Why don't we try that.

13             MR. RICHARD:  I am in a quiet room but I will mute my

14   phone.

15             THE COURT:  Okay.  I will just everyone speak up, just

16   please, please make yourselves heard and be cognizant of madam

17   court reporter.  If she asks you to keep your voice up, keep

18   your voice up.  Okay?

19             So, Ms. Brown, if you would continue?

20             MS. BROWN:  Thank you, your Honor.

21             So, in our back and forth with MGT, which by the way

22   we served that subpoena almost the day that we got our response

23   from Mr. Ladd in which he indicated that he would not produce

24   any documents from MGT, so we served a subpoena to preserve our

25   options that we could pursue documents from MGT directly and

J9B5secA                          argument

1    also from Mr. Ladd.

2            In our back and forth with MGT, MGT explained that it

3    had collected, for review and potential production, documents

4    only dating back to, I believe it was October 2013.  And so we

5    agreed with them, because they made several protests on the

6    basis of their financial condition, that they not have to go

7    back and collect new documents from an earlier period, that

8    without prejudice we would take what they had already

9    collected.  And so, we did that.  In the meantime, we sent

10   several e-mails to counsel for Ladd asking them if they had

11   made a request to MGT for authority to produce documents from

12   MGT because, as the Court is aware, the law is that if you have

13   the practical ability to access documents you should produce

14   them, they are within your possession custody, and control.

15   And so, we ask those questions.  Ladd did not respond.  He has

16   never denied that he could have access to those documents and

17   could ask for authority.  We have reason to believe that MGT,

18   given its precarious financial condition, would allow Ladd to

19   shoulder the responsibility to produce those documents --

20           THE COURT:  And are these documents that go beyond

21   October 2013?  Is that what you are looking for from Mr. Ladd?

22           MS. BROWN:  They go back, your Honor, so they go from

23   October 2012, the date on which we allege Mr. Ladd and

24   Mr. Honig began their association.

25           THE COURT:  And these are documents that you have not

J9B5secA                         argument

1    otherwise gotten from MGT?

2                MS. BROWN:  Correct.

3                THE COURT:  Okay.

4                MS. BROWN:  Correct.  We seek no duplication, we

5    simply seek the documents that we think are relevant to this

6    matter.

7                THE COURT:  Okay.

8                MS. BROWN:  So, that's where we are.

9                So, we ask for the documents from both sides.  We have

10   an obligation, as the Court knows, under Rule 5(d)(1), to take

11   into consideration and to take reasonable steps to accommodate

12   non-party subpoena recipients' claims of undue burden, undue

13   expense.  So, we have taken MGT at their word that they have

14   spent, according to them, half of their existing cash on

15   responding to our subpoenas and a fact, by the way, that

16   Mr. Ladd is CEO and one of three board members of MGT should be

17   fully aware.  And so, we believe that it was appropriate to

18   shift the burden, such as it is, to produce the remaining

19   documents by Mr. Ladd.

20               THE COURT:  And Mr. Ladd is currently the CEO of MGT?

21               MS. BROWN:  Yes.

22               THE COURT:  Do you know whether he has asked for

23   authority to turn over the documents that he may have?

24               MS. BROWN:  That's what I have asked, your Honor, and

25   received no response.

J9B5secA                         argument

1              THE COURT:  Okay.

2              MR. JOHNSTONE:  Your Honor, if I could just respond

3     briefly?

4              THE COURT:  Certainly.

5              MR. JOHNSTONE:  The SEC has indicated that that it has

6     served a subpoena on MGT to preserve its options.  I think

7     that's kind of an incomplete depiction what has happened.

8              MGT has been represented by Kramer Levin in this

9     matter since 2016.  This is the third bite at the apple for the

10    SEC who has served a subpoena during the investigation,

11    received thousands of documents, served a subpoena during this

12    litigation, received 8,000 pages of documents.  Now the SEC

13    wants a third bite at the apple through Mr. Ladd.  Mr. Ladd is

14    the CEO of MGT but he is one among three directors, the other

15    two of which are independent.  In the SEC's letter they don't

16    cite a single case in support of their position that personal

17    counsel of an individual should insert themselves in the

18    production decisions of a public company.

19             THE COURT:  Explain that to me.  Why is that?  Because

20    this is the second time you have said it and I don't understand

21    how it is relevant to whether or not Mr. Ladd has an obligation

22    to produce documents that are arguably relevant and within his

23    custody and control.

24             MR. JOHNSTONE:  It is important to understand that MGT

25    is represented separately in this action.  They have

1    independent counsel because their interests and Mr. Ladd's

2    interests may not always align.  That's why MGT retained Kramer

3    Levin to produce these documents.

4              THE COURT:  Okay.

5              MR. JOHNSTONE:  The case law in the Second Circuit is

6    pretty clear.  If you look at the case that we cite, which is

7    the *Shcherbakovskiy* case, the Second Circuit identifies

8    specific factors to look at new these precise circumstances,

9    one of which is whether the entity is an alter ego of the

10   individual.  Certainly not the case here; Mr. Ladd owns a

11   fraction of a percent of MGT stock.  It also looks into whether

12   he indisputably controls the board of that company.  That's the

13   language that the Second Circuit used.  That's clearly not the

14   case here.  And so, the SEC has been engaged with MGT for years

15   at this point.  MGT has capable counsel, just uptown.  They

16   have a document review system that they're going through and to

17   insert Mr. Ladd into the system at this late hour makes no

18   sense in terms of process and it makes no sense in terms of

19   cost.

20             THE COURT:  So, is MGT aware of the subpoena that's

21   been issued to Mr. Ladd?

22             MR. JOHNSTONE:  Yes, they are.

23             THE COURT:  Have they objected?  Have they moved to

24   quash the subpoena?

25             MR. JOHNSTONE:  As I said they haven't been involved

J9B5secA                          argument

1    in our discussions with the SEC and the SEC hasn't involved us

2    in their discussions with MGT.

3            THE COURT:  Are they aware of the requests that are

4    being made in the subpoena?

5            MR. JOHNSTONE:  In the document request to us?

6            THE COURT:  Yes.

7            MR. JOHNSTONE:  If they're following the docket they

8    are.

9            THE COURT:  Okay.

10           MR. JOHNSTONE:  And I believe that they are.

11           THE COURT:  So, I guess your concern is whether or not

12   MGT's rights are somehow being slighted.  But, if they are

13   aware of the subpoena to Mr. Ladd, and I absolutely agree they

14   have very, very competent counsel, that if they have objection

15   to it I think that they would have come to me and tried, as a

16   third-party, to quash that subpoena because of their particular

17   interests.  If that hasn't happened why should I be concerned

18   about the issue that you have raised?

19           MR. JOHNSTONE:  It's quite possible that they haven't

20   looked at the precise issue here.  Your Honor, the pre-motion

21   letter that was filed focused on four other discrete issues, it

22   didn't focus specifically on the issue of whether an individual

23   should have to produce MGT's documents.

24           THE COURT:  I think Kramer Levin probably could figure

25   that out.  I haven't heard anything suggesting that the

J9B5secA                         argument

1     documents are not relevant, nor have I heard anything

2     suggesting that the requests are burdensome or unduly

3     burdensome or that Mr. Ladd should not be made to produce them

4     for traditional issues so I will direct Mr. Ladd to turn over

5     the documents that are requested.

6             Next?

7             MS. BROWN:  Sorry, your Honor.  I was about to stand

8     up again.

9             I think the other issue before you this morning is the

10    issue of our non-public investigation which we wrote to you

11    about on August 8th and received responses from the defendants.

12    We then provided you a letter more recently with the case law

13    that sets out why we are able to do that.  I am here this

14    morning to discuss those issues to the extent I can.  I am

15    happy to talk to the Court *in camera* about the specifics of the

16    non-public investigation.  I am not at liberty to disclose

17    those on the open record.

18            THE COURT:  Who wants to speak on behalf of

19    defendants?  What is the bottom line?

20            MR. LEE:  Yes, your Honor.  Randall Lee for Mr. Ladd,

21    and I believe Mr. Sallah would like to be heard on this issue

22    as well, but I will start.

23            THE COURT:  Very well.

24            MR. LEE:  Your Honor, we have two concerns about the

25    posture of the SEC's filing with the Court on August 8 and

1    their putting the court, the parties, and the public on notice

2    of an ongoing investigation.  In the first, the fact that the

3    letter was filed publicly was, in and of itself, highly

4    unusual, highly irregular, gratuitous, and contrary to

5    long-standing SEC practice and protocol that it's ongoing

6    investigations are non-public.  For the SEC to, out of the

7    blue, to have filed a public letter stating that one or more of

8    the defendants is under another purportedly unrelated

9    investigation was highly prejudicial, it was unnecessary, and

10   harmful to our client's reputations.

11          On the merits, on the substance of the SEC's position,

12   our second concern is that there simply is no ability for us to

13   sort of understand and test the SEC's assertions that its

14   ongoing investigation is truly unrelated.  And this is, your

15   Honor, to be clear, this is not the ordinary case, this is a

16   highly unusual circumstance, and just to give Court a few

17   examples, the SEC's investigation was sweeping and expansive in

18   nature.  Its initial disclosures in this matter run 25 pages

19   and identify that it obtained documents during its

20   investigation from 106 entities and parties.  The complaint

21   itself identifies a broad range of purported misconduct far

22   beyond what's actually alleged in the complaint.

23          The amended complaint, at paragraph 55 states that

24   there were 19 issuers, as opposed to the three named in the

25   complaint, as to whom Mr. Honig and others purportedly engaged

J9B5secA                    argument

1    in manipulative conduct.  It identifies 40 issuers as between

2    Mr. Honig and Mr. Brauser, it identifies 65 issuers between

3    Honig and Stetson, and it identifies, at paragraph 63, 75

4    issuers.  And, keep in mind, there are only three alleged by

5    name in the complaint as Companies A, B, and C but the

6    complaint specifically alleges that Mr. Honig and Mr. O'Rourke

7    co-invested in 75 different issuers.

8           And so, under these circumstances, the notion that we

9    should simply accept the SEC's representation that whatever

10   else it is still doing after a four-year long investigation is

11   unrelated to the charges and the allegations at hand I think is

12   quite frankly, hard to accept.  And so, what we are asking for,

13   is some mechanism.  We have proposed that the SEC identify,

14   under seal to the parties, the names of the additional targets

15   or subjects of their ongoing investigation and the nature of

16   their ongoing investigation, and so on, so at least we have

17   some ability to understand and test the SEC's assertion that

18   this is unrelated.

19          THE COURT:  Well, I mean, let me ask you this,

20   Mr. Lee, and I will ask Ms. Brown because I actually don't know

21   whether or not this is as unusual as you have indicated, that

22   this is highly unusual, and I guess a part of what you mean is

23   that, in the ordinary course, if, for example, your client were

24   under investigation, you would have no right to know whether or

25   not he was under investigation or what the SEC was

J9B5secA                          argument

investigating or what documents he or she may have had that may

be sought.  Now, they did send this letter to me, it is a

public document, but why does this change the parties' rights

on the facts of this case?

            MR. LEE:  I think it changes the parties' rights

precisely because there is ongoing litigation and the SEC is

vowing to abide by the Federal Rules of Civil Procedure in its

conduct of discovery as to matters within the scope of this

litigation.  And the reason I pointed out the expansive scope

of this litigation is that it is hard to conceive for us that

they could be independently and legitimately conducting

additional investigation that has no relevance whatsoever to

the claims here.

            THE COURT:  Okay.

            MR. LEE:  So, what the SEC is seeking to do and, in

theory the SEC is correct, their citation of *Iqbal* is correct,

in theory they are allowed to conduct -- to use their

administrative authority even during the pendency of the

litigation.  What is unusual about this circumstance is two

things.  Number one, the fact that they chose to file a public

letter about it; and number two, the fact that given the

breadth and expansiveness and scope of the claims in this case

they're still claiming that additional investigation is

unrelated and we should just take their word for it.

            THE COURT:  Mr. Sallah?

J9B5secA                    argument

1          MR. SALLAH:  Yes, your Honor.

2          To echo that, the SEC's own internal manuals

3    understand and the Courts can conclude, as you know, the use of

4    investigative subpoenas -- which are akin to a grand jury

5    subpoena, they're non-public -- could be viewed as a misuse of

6    the SEC's investigative powers and that could circumvent their

7    rights, of course, to limit discovery and the Federal Rules of

8    Civil Procedure, which have their own limits on discovery, just

9    to echo a little bit about the distinction between litigation

10   and an investigative subpoena, and when they're parallel, there

11   is potential conflicts.

12         Now, Ms. Brown did address, in a letter to us on

13   September 4th, she said that the Commission is not using

14   administrative subpoenas to take any discovery related in this

15   case.  Rather, as noted in the letter, the Commission plans to

16   use its administrative powers to investigate matters

17   unrelated -- and they highlighted, underlined "unrelated"-- to

18   this case.

19         So, you look at the amended complaint and it talks

20   about a pattern.  Repeatedly it talks about a pattern.  And in

21   the opposition to the response to our motion to dismiss they

22   talk about a pattern going back 40, in some instances 65

23   different cases.

24         So, we would like to know if the present

25   investigation, which is distinct, unrelated, and involves

J9B5secA                    argument

1    conduct post the allegations of the complaint, it must be some

2    conduct that does not fall within that pattern that they

3    describe -- taking control of an issuer, pumping up the stock,

4    and then liquidating the stock, dumping the stock.  So, I can't

5    imagine what it could be because if it is truly unrelated, it

6    has got to be something else.  Otherwise -- otherwise, right --

7    the evidence can be gathered using investigative process to

8    establish 406 evidence, modus operandi, habit, practice, course

9    of conduct which, again, is what we are concerned about.

10   However, if it does go to the pattern described by the

11   Commission, this other investigation involves issuers then

12   acquiring a block of stock, pumping up the stock, disseminating

13   false information, and then dumping the stock, it is related

14   and Ms. Brown's representations to us and the Court that

15   they're unrelated are just simply not candid.  That is why we

16   simply want to find out more.

17              THE COURT:  Very well.

18              Ms. Brown?

19              MS. BROWN:  Yes, your Honor.

20              THE COURT:  First of all, let me ask you this.  The

21   August 8 letter -- I don't do this every day, you do -- how

22   usual is this letter?

23              MS. BROWN:  Not that unusual, your Honor, and I will

24   tell you how it usually comes up.

25              We write those letters in situations like this one

19

1   where a new non-public investigation has been undertaken

2   precisely to give the Courts and the parties an opportunity to

3   have this discussion but also because, in our experience,

4   typically the defendant about whom this non-public

5   investigation is focused finds out about it and comes to the

6   Court and complains that we are using our administrative powers

7   to defeat the rules of the Federal Rules of Civil Procedure.

8   So, we always think it makes more sense to alert parties and

9   the Court to this issue and we have done so in many cases.  I

10  neglected to bring those cases with me this morning to tell you

11  about them but I am happy to submit a letter with additional

12  cases in which we have done a similar thing.

13          THE COURT:  Okay.  Why don't do you that.

14          MS. BROWN:  Sure.  Okay.

15          As I say, sometimes it arises where the defendant

16  brings the issue to the Court but I will include those as well.

17          With respect to the unrelated and post-dated nature of

18  the new non-public investigation, I am afraid I really can't

19  say more -- and I said this in an e-mail to Mr. Sallah this

20  morning -- I can't say more than that without doing exactly

21  what Mr. Lee complains that I have already done, which is

22  disclose the nature of the non-public investigation.  We don't

23  do that as a matter of policy.  We don't do that for several

24  reasons.  One is we don't want defendants and others to know

25  what our investigative steps that we may be taking are, but

J9B5secA                          argument

1   also because we don't want the public to know that we are

2   investigating people against whom we may never bring charges.

3              So, that is why I am circumspect in addressing

4   Mr. Sallah and Mr. Lee's complaint about not knowing what the

5   nature of the investigation is.  But, again, I am happy to

6   offer that information to the Court in camera.

7              THE COURT:  Why don't we do this.  We will do that, we

8   will take a moment to do that but I want the parties' input as

9   to what representations could be made on the record to address

10  the defendant's concerns that the investigation truly is

11  separate and distinct and that the SEC is not misusing its

12  administrative powers.  So, let's think about that.  In the

13  meantime, I can see plaintiffs in the robing room.

14              Give us 5, 10 minutes.  Don't go far.

15              (Pages 21-24 SEALED and EX PARTE FOR PLAINTIFF ONLY,

16  by order of the Court)

17

18

19

20

21

22

23

24

25

J9B5secA                        argument

1            THE COURT:  Everyone can be seated.  We are back on

2      the record.

3            And so, the parties are aware that the *in camera*

4      *ex parte* meeting that I just had with plaintiff's counsel is

5      under seal and I will advise the parties that I have directed

6      the SEC to submit additional briefing which will be also

7      *ex parte* and under seal to me so that I can further make a

8      determination as to whether or not the investigation is wholly

9      unrelated to the current investigation, and that submission is

10     due by next week, the 18th.

11            Is there anything else that we can discuss with

12     respect to that issue, anything else that defendants wish to

13     raise?

14            MR. LEE:  Well, your Honor, just briefly.

15            The Court asked counsel about the regularity of this

16     letter.  In my experience I have never seen anything like it

17     before but I will accept Ms. Brown's representation that they

18     have done this in other cases.  What she didn't explain is why

19     they chose to file it publicly.  That was completely

20     unnecessary, they could have filed it under seal.  They could

21     have sent a letter.  If the whole idea was to put counsel, the

22     defense on notice, they could have simply sent us a letter, but

23     the fact that they chose to file something publicly, I have

24     never seen anything like it and I think was unnecessary and

25     gratuitous at the very best.

J9B5secA                         argument

1          THE COURT:  Well, Ms. Brown has indicated that she

2     will be submitting something indicating that in fact the SEC,

3     that it is not unusual for the SEC to issue such letters.

4          And I take it, Ms. Brown, that when the SEC has done

5     this in the past it has been a public filing?

6          MS. BROWN:  Yes.

7          THE COURT:  Okay.  So, there we have it.

8          Mr. Lee, you obviously can make whatever application

9     you want.  If you believe that your client's substantial rights

10    have been affected in any adverse fashion, make whatever

11    application you feel is necessary.

12         Mr. Sallah, anything else you wanted to say?

13         MR. SALLAH:  One moment?

14         THE COURT:  Yes.

15         (Counsel conferring)

16         MR. SALLAH:  Your Honor, one thing we discussed while

17    you were *in camera*, if your Honor does determine that these are

18    wholly unrelated matters after his review of the briefing *in*

19    *camera*, we would only ask that some protocols could be put in

20    place so that, for example, if they're completely unrelated,

21    that the evidence gathered and the distinct and unrelated

22    investigation could not be used in this case to establish

23    practice, habit or, your Honor, they're seeking injunctive

24    relief and, unlike private civil litigants injunctive relief

25    for the SEC, they have to show substantial likelihood of future

1   harm.  And so, we would not want an investigation gathering

2   post-dated conduct or post-allegation conduct to come into play

3   here to try to establish an injunction if that's what they're

4   trying to do.

5        THE COURT:  Let me ask Ms. Brown.  Ms. Brown, does the

6   SEC have protocols currently in place, standard protocols to

7   prevent what Mr. Sallah is concerned about, which is to say,

8   well, you say that it is completely unrelated and it is an

9   investigation and you are gathering documents and what is to

10   prevent you from then using those documents and prosecuting

11   this case?

12        MS. BROWN:  Well, as I think I said in my letter, if

13   there are documents that are produced to us that are related to

14   this case, we will produce them to the defendants.  We can't

15   control what people produce to us and there may be documents

16   that we, after reading their document request, deem relevant to

17   this case and we will produce them.

18        THE COURT:  Okay.  As I have indicated, the plaintiffs

19   will be submitting something *ex parte* and under seal.  If the

20   defendants wish to submit anything you can also make a

21   submission making requests of that type, then we will give the

22   SEC an opportunity to respond.

23        MR. SALLAH:  Thank you.

24        THE COURT:  Very well.

25        Anything else?

1          MR. LEE:  Your Honor, we have, both us and

2     Mr. Brauser, have filed motions to dismiss.  We have also filed

3     requests for oral argument in this case.  I think we had

4     reached an agreement with counsel for SEC on a proposed date if

5     it were available for the Court and it has now been fully

6     briefed so I wanted to raise it for the Court.

7          THE COURT:  I typically don't have oral argument

8     unless there is a particular issue that I need further

9     explication on.  So, why don't we hold off on that and if I

10     require oral argument, I will let the parties know, and I will

11     also give you an idea of what I am concerned about.

12          MS. BROWN:  Thank you, your Honor.

13          MR. LEE:  Thank you, your Honor.

14          THE COURT:  Very well.  I believe that's all that we

15     needed to discuss today.  Is that right?

16          MR. LEE:  Yes, your Honor.

17          MS. BROWN:  Yes, your Honor.

18          THE COURT:  We are adjourned.  Thank you, folks.

19                          o0o

20

21

22

23

24

25