

Randall R. Lee  By ECF
+1 310 883 6485
randall.lee@cooley.com

October 11, 2019

**VIA ECF**

The Honorable Edgardo Ramos
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 619
New York, New York 10007

*SEC v. Honig, et al.*, No. 1:18-cv-08175-ER

Dear Judge Ramos:

We represent Defendant Robert Ladd in the above-captioned case. Pursuant to Individual Rule of Practice 2.A(ii), we respectfully submit this letter to request a pre-motion conference and to set forth the bases for a motion to compel production from Plaintiff Securities and Exchange Commission ("SEC") pursuant to Federal Rule of Civil Procedure 37. There are four bases:

*First*, the SEC has improperly asserted a blanket privilege over *all* internal communications concerning (i) the SEC's application or interpretation of the statutory provisions that Mr. Ladd is alleged to have violated, and (ii) the SEC's review of SEC filings by MGT Capital, the company of which Mr. Ladd is CEO, which filings the SEC alleges were misleading. We request that the Court order the SEC to prepare a traditional document-by-document privilege log as to these two categories of documents so that we and the Court can evaluate the SEC's overbroad and baseless claim that every single internal communication is protected by a privilege.

The SEC's internal communications as to these two topics relate squarely to Mr. Ladd's anticipated defenses. The SEC has charged Mr. Ladd with aiding and abetting violations of Section 13 of the Exchange Act by failing to disclose that certain MGT investors were acting as a "group" within the meaning of that statute. Yet the SEC has promulgated virtually no guidance on the meaning of that generic term under the statute. Our requests for production are targeted at identifying internal communications within the SEC reflecting uncertainty among market participants as to the meaning of the word "group" and the need to provide guidance as to how it will be interpreted and enforced by the SEC.

Similarly, the SEC has charged Mr. Ladd with making false or misleading statements in MGT's SEC filings. MGT's filings (including those that the SEC now claims were misleading) were contemporaneously reviewed by the SEC's Division of Corporation Finance. Thus, internal SEC discussions about MGT's filings at the time they were made may be highly relevant to Mr. Ladd's defense of allegations the SEC has made years later about those filings.



The SEC has asserted an indiscriminate array of privileges over all of its internal communications.  This blanket claim of privilege is plainly improper.  *See* Ex. A; Ex. B at 3; Ex. C at 2-3; *see generally* Ex. D.  It cannot be disputed that the SEC's internal communications are not categorically exempt from discovery.  For example, an internal email between two SEC employees that does not contain legal advice to their client (the Commission), that is not in anticipation of litigation, and that does not discuss a final agency decision cannot be withheld.  In *SEC v. Kovzan*, 2012 WL 4819011 (D. Kan. Oct. 10, 2012), the defendant sought the SEC's internal documents concerning a final decision on specific guidance given to companies by the SEC.  *Id.* at *2.  The SEC refused to search for internal SEC documents.  *Id.*  The court held that, while documents "concerning" the SEC's final decisions "might be privileged," the court could not "issue a blanket exemption for such documents"; instead, the court required the SEC to "search for responsive documents and produce all such documents that are not privileged."  *Id.* at *6.[1]  We ask this Court to order the SEC to prepare a privilege log listing each responsive internal communication so that we and the Court may evaluate the validity of the SEC's assertions on a document-specific basis.[2]

*Second*, the SEC has refused to produce statements and presentations that SEC officials have made to third parties regarding the key topics at issue in this case.  *See* Ex. G at 5.  Specifically, Mr. Ladd requested that the SEC produce its public statements and third-party communications concerning (i) the application or interpretation of, or guidance concerning, the relevant provisions of Section 13 of the Exchange Act, and (ii) whether or when efforts to enhance investor awareness of a publicly traded security (through promotions or otherwise) are legal.  *See* Ex. H (RFP Nos. 4-8; 17-20).  Because of the paucity of guidance that the SEC has provided on what constitutes a "group" under Section 13, public statements and presentations by SEC officials and communications with third parties on these topics may be squarely relevant to the reasonableness of Mr. Ladd's understanding of a "group."  Similarly, given that the SEC has alleged that Mr. Ladd was reckless in promoting MGT, documents reflecting views that SEC officials have expressed as to what may or may not be proper promotional activity may be relevant to whether Mr. Ladd acted recklessly in approving certain promotions by MGT.

In response to the SEC's contention that these requests were overbroad, as a compromise we requested that the SEC search the emails of the Commissioners, their staff, and officials holding the rank of Senior Officers within the Divisions of Enforcement and Corporation Finance for responsive documents.  *See* Ex. C at 2.  Our effort to limit our requests to a small number of SEC officials who were most likely to be making public statements or to be communicating with third parties regarding these key issues is precisely the approach the court adopted in *SEC v. Goldstone*, 2014 WL 4349507, at *40-41 (D.N.M. Aug. 23, 2014).  There, defendants sought

---

[1] *See also SEC v. Goldstone*, 12-cv-257 (D.N.M.) ECF No. 209 at 2 (attached as Ex. E) (stating that the SEC produced 18,000 pages of emails from 19 SEC employees in response to Rule 34 document requests); *see also* ECF No. 276 (attached as Ex. F) (granting motion to compel searches of *additional* SEC emails).

[2] The SEC's privilege log includes many categories of documents for which we are *not* seeking a document-by-document privilege log.  For the reasons discussed above, however, a traditional privilege log is critical as to these two categories.



testimony by the SEC under Rule 30(b)(6) about public statements on certain topics; the SEC objected.  *See id.* at *40.  The court held that the appropriate solution was to "narrow the target group of the SEC Divisions and staff members, the scope of the search, and the topics' language."  *Id.* at *41.  The SEC has rejected our tailored, commonsense approach.

*Third,* Mr. Ladd requested that the SEC produce information relating to the Commission's application and interpretation of Sections 13(d)(1), 13(d)(3), 13(g)(1), and 13(g)(3) of the Exchange Act and the regulations thereunder.  The SEC initially represented that it searched for documents that were responsive to the search terms 13(d), 13(g), 13D, 13G, or group.  *See* Ex. D at 2.  The Commission then "clarif[ied]" that it only searched for files responsive to the search terms 13d, 13g, 13D, and 13G, if they also contained the word "group."  *See* Ex. I at 2.  The SEC has refused to broaden its search.  The SEC's search is unreasonably narrow because it may not capture substantive discussions of the relevant statutory and regulatory provisions, including documents reflecting that these provisions have been recognized as confusing or ambiguous.

*Fourth*, the SEC has refused to produce the factual portions of notes its staff took during witness interviews and during their review of FBI 302s.  During its investigation, the SEC conducted interviews of at least 11 witnesses for which FBI agents prepared FD-302s.  In our meet and confers, the SEC represented that it had reviewed the 302s but intentionally did not take possession of them; instead, the SEC took notes of the 302s, which apparently contained verbatim memorializations of statements made by witnesses, in an obvious attempt to avoid having to produce *any* witness statements.  *See* Ex. J at 4.  The SEC has refused to produce even redacted versions of its notes, relying on an overbroad claim of work product.

Yet factual statements made to the government by witnesses cannot be withheld as work product.  In *In re John Doe Corp.*, a party sought notes from interviews of two witnesses for "what [the witnesses] said, not the attorney's evaluation of potential liability or thoughts as to use at trial."  675 F.2d 482, 492 (2d Cir. 1982).  The Second Circuit rejected the argument that "mental processes and legal theories" would be disclosed if the interview notes were produced, finding that production of the notes would not "trench upon any substantial interest protected by the work-product immunity" because the notes merely recited statements by witnesses "in a paraphrased, abbreviated form."  *Id.* at 493 (affirming district court's civil contempt judgment against party that refused to produce on privilege grounds).

This Court has previously ordered the SEC to produce notes of witness statements in a similar situation.  Relying on *John Doe*, the Court in *SEC v. Thrasher* required the SEC to produce notes of witness interviews because the notes were merely "abbreviated recapitulations of what a witness has said during his or her interview" or were entries "surrounded by quotation marks, thus indicating that they are direct quotes from the witness" and so did not "yield any significant insights into the strategy, tactics, or theories of the Commission's attorneys."  1995 WL 46681, at *6 (S.D.N.Y. Feb. 7, 1995), *affirmed by* 1995 WL 456402, at *13 (S.D.N.Y. Aug. 2, 1995).  The same reasoning requires the SEC to produce the factual portions of its notes in this case.

We look forward to addressing these issues with the Court.

# Cooley

October 11, 2019
Page Four

Very truly yours,

*/s/ Randall R. Lee*

Randall R. Lee


CC: Counsel of Record (via ECF)