# EXHIBIT I



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NANCY A. BROWN
TELEPHONE: (212) 336-1023
EMAIL: BROWNN@SEC.GOV

October 2, 2019

**Via Email**

Chris Johnstone, Esq.
WilmerHale
950 Page Mill Road
Palo Alto, CA 94304

Re: SEC v. Honig, et al.;
No. 18 Civ. 8175 (ER)

Dear Chris:

We write to update our September 6, 2019 letter to you with information regarding our ongoing efforts to respond to your Second Request for the Production of Documents, dated May 21, 2019. For your reference, I have incorporated your letter and our previous discussions below.

Requests 4, 5, 6, 7, and 8: Each of these requests seeks information relating to the Commission's application and interpretation of Sections 13(d)(1), 13(d)(3), 13(g)(1), and/or 13(g)(3) of the Securities Exchange Act and/or 17 C.F.R. §§ 240.13d-1(a) and 240.13d-5 thereunder. During the meet and confer, you explained that your searches for documents responsive to these requests were limited to the Office of Mergers and Acquisitions within the Division of Corporation Finance, because you understood that that office was the group most likely to have responsive documents. We request that you expand your search to include the Office of Chief Counsel (OCC) within the Division of Corporation Finance. According to The SEC's website, OCC addresses questions submitted by an online form, telephone, and mail, and considers requests for no-action, interpretive and exemptive letters, among other activities. See https://www.sec.gov/divisions/corpfin/cflegalregpolicy.htm. Given OCC's role within the Division of Corporation Finance, we believe it is reasonable and appropriate to expand your search to include OCC. We also request that you describe the searches you have conducted, and will agree to conduct, with greater particularity, e.g., by identifying the relevant search terms and custodians used in responding to each of these five requests.[1]

***SEC Response***: *We have consulted with Corp Fin and find that OCC simply redirects all questions about those provisions to the Office of Mergers and Acquisitions. Those emails were searched for responsive documents.*

*As to the searches we performed, we already provided that information. See my letter, dated August 8, 2019, where I described the search we have performed.*

**Ladd Reply**: Your representation about the OCC is not a sufficient reason not to search for responsive documents. As we explained, the SEC holds out the OCC as the point of contact for the investing public with respect to these issues. The representation that OCC "simply redirects all questions about those provisions to the Office of Mergers and Acquisitions" is not a reason to ignore OCC files in your search, especially where you have essentially conceded that OCC and OMA corresponded about these issues. Likewise, your statement during the August 12 meet and confer that OMA is responsible for public-facing communications on these issues is not sufficient because, as we have explained, internal discussions at the SEC (the regulatory agency that enforces these provisions) on the interpretation and application of the relevant provisions of the securities laws may be highly relevant to Mr. Ladd's defense.

As to the search terms and custodians you applied, your August 8, 2019 letter states that you applied the search terms "'13(d),' '13(g)'' '13D' or '13G' and 'group'" to "the files of the Division of Corporation Finance's [] Office of Mergers & Acquisitions" in searching for documents responsive to Requests 4, 5, 6, and 7. You did not provide further clarity on the August 12 meet and confer. We do not understand your search syntax and we do not understand what you mean by "the files" of the Office of Mergers & Acquisitions ("OMA"), and that is why we followed up in our August 23 letter. Your response does not address this lack of clarity.

Please:

    1. Explain whether you reviewed all of the documents that resulted from the application of the five search terms you list for responsiveness to Requests 4 through 8;

**Reply: Yes.**

    2. Explain whether you applied your search terms disjunctively or conjunctively, i.e., 13d OR 13g OR 13D OR 13G OR group, versus (13d OR 13g OR 13D OR 13G) AND (group);

**Reply: Disjunctively.**

*October 2, 2019 Update:* *To clarify, the search we applied was conjunctive, meaning, and as we told you in earlier correspondence: 13d or 13g or 13D or 13G AND group.*

    3. Explain what you mean by your reference to having searched "the files" of OMA. Specifically, during our August 12 meet-and-confer, we asked who were the custodians of documents that were searched, and you simply responded, in sum and substance, that you "looked at people who worked in the Office of Mergers and Acquisitions." If you searched the email account and other electronic documents for each and every employee in OMA, please so state. If you adopted a narrower search methodology, please describe that search methodology with particularity. Your August 8 letter, and your follow-up explanation on the

August 12 meet and confer, do not provide any insight into the actual search conducted by the SEC; and

**Reply: We asked our Corp. Finance contact to search all email files of each OMA employee. We believe she did so. We have asked her for a list of custodians and expect to hear back from her with that information next week.**

*October 2, 2019 SEC Update: We provided the list of custodians to you by email dated September 12, 2019.*

　　　4. State whether you will agree to search the files of the OCC; and if so, what search parameters you will be using.

**Reply: We will do so using the same search terms provided above.**

*October 2, 2019 SEC Reply: We have collected printouts of the OCC Sharepoint database that logs all incoming questions, and their assignment, and are readying a production of that information that is responsive to your Request after applying the search terms listed above.*

We request that you provide the information we have requested by September 6, 2019. If we do not receive a satisfactory response, we will take appropriate action.

As to Request No. 8, your August 8 letter states that the SEC has "no non-privileged documents responsive to this Request," and your latest privilege log refers to purportedly privileged documents relating to these issues. Please confirm whether you searched for responsive documents using the same search methodology as for Requests No. 4 through 7. As to your representation that there is not a single non-privileged internal SEC document concerning the application or interpretation of these securities regulations, that position is not plausible or defensible under prevailing case law concerning the privileges you assert, and we will take that up with you in our response to your amended privilege log.

Requests 4, 5, 6, 7, 17, 18, and 19: Each of these requests either explicitly or potentially calls for statements or presentations to third parties. In your August 8, 2019 letter, you stated that you "will neither look for, nor produce, publicly available documents." During the August 12, 2019 meet and confer, we asked you to explain how you were determining what was "publicly available." You stated that you were using the "commonly understood" definition, and you stated that if a document were available on the SEC's website or through Google, it was publicly available. We pointed out that not all SEC statements and presentations to third parties would necessarily be available on the SEC's website or through Google (for example, we noted that SEC officials frequently give speeches that are not on the website), and we asked what search you had conducted for any such materials. You responded that you were not

aware of any repository of all public statements, did not search email for responsive documents, and did not make any other inquiries to find responsive documents. By your own admission, there may be responsive materials that you did not search for. We request that you search the emails of the Commissioners, their staff, and Senior Officers within the Divisions of Enforcement and Corporation Finance for responsive documents. This request is narrowly tailored to a small number of SEC officials who are most likely to be making public statements responsive to the requests at issue.

***SEC Response***: *In my letter to you, dated August 8, 2019, I asked you to provide your explanation of the relevance of any such presentation or speech, particularly given the disclaimer that each Commissioner and staff member makes when presenting to third parties to the effect that the presenter speaks solely as an individual and not on behalf of the Commission. You have not provided that explanation.*

*I also requested that you explain the relevance of any documents that concern the legality of efforts to raise investor awareness to any claim or defense in this action. You have not done so to date.*

**Ladd Reply**: As to the relevance of SEC presentations and speeches, we do not understand your purported confusion, as we have made clear to you on many occasions the relevance of internal and external SEC communications concerning these issues, particularly given the extremely limited universe of interpretive caselaw, administrative decisions, and the like. In any event, we did expressly explain the specific relevance of SEC speeches and public statements in the August 12 meet and confer. For example, we explained, in sum and substance, that statements by SEC officials acknowledging difficulties in applying Section 13(d) may be highly relevant to Mr. Ladd's alleged scienter in violating those regulations. That SEC officials provide a standard disclaimer does not diminish the potential relevance, especially since the standard disclaimer makes clear that the comments being made are the personal opinion of that SEC official.

As to the relevance of documents concerning the legality of efforts to raise investor awareness, we explained on the August 12 meet and confer, in sum and substance, that given the SEC's allegation that Mr. Ladd was reckless in promoting MGT, what is or is not allowed with promotions may be relevant to whether he acted recklessly. Your position that lack of clarity within the agency charged with enforcing the securities laws about the limits of permissible stock promotion activity is not relevant to Mr. Ladd's alleged liability for the promotional activity described in the Amended Complaint is not tenable.

Given that you have not provided any reason to avoid searching for these materials other than purportedly not understanding their relevance, and given that we have repeatedly explained their relevance and do so again here, we ask again that you search for and produce them without delay.

We request that you provide the information we have requested by September 6, 2019. If we do not receive a satisfactory response, we will take appropriate action.

**Reply: We have nothing further to add except to point you to your own Request No. 5 which seeks "all public statements or presentations by the SEC to third parties. . . " As we've explained, given the requisite disclaimers provided as a preface to every public statement by a Commission employee, we have no responsive documents, that is, a "statement or presentation by the SEC," other than what full Commission orders and the like (all equally available to you) but rather, statements or presentations by individual SEC employees or Commissioners acting in their personal capacity and not on behalf of the SEC.**

**As to communications with third parties requested in Request No. 7, we have already produced all third-party communications by the Division of Corp. Finance's OMA.**

**With respect to third-party communications between the Divisions of Corp. Finance and Trading and Markets, and third-parties, concerning whether or when efforts to enhance investor awareness of a publicly traded security (through promotions or otherwise) are legal (Request Nos. 17, 18, and 19), we have already advised that we will conduct a search for responsive, non-privileged documents through email files of appropriate areas of the Division of Trading and Markets for third-party communications concerning Securities Act Section 17(b). We will do so using the search terms "17(b) and promotion or promotional or tout\*" and we will conduct the search for documents dated 2012 and forward. (We understand that it is Trading and Markets which has responsibility for the interpretation and application of that provision.) If you would like to suggest other or different search terms that we could use to find what you are looking for, we would be happy to consider them, but without more specificity, we understand you to be requesting every written communication that the SEC has ever had with any third party regarding potentially false or misleading statements in every securities promotion that the SEC has ever considered, a request that, even if it sought information relevant to this case (which we dispute), is grossly overbroad and not proportional to the needs of this case.**

***October 2, 2019 SEC Update:*** *We will be making a production of the relevant communications resulting from the 17(b) search that we describe above.*

Requests 13, 19, and 20: These requests generally relate to "efforts to enhance investor awareness (through promotions or otherwise)" of a publicly traded security. During the meet and confer, you stated that you made certain "inquiries" of the Divisions of Corporation Finance and Trading and Markets for responsive documents, and that those divisions told you they did not understand the request. You also acknowledged that the language of our requests mirrored the language of one of the Commission's requests, and that you understood the intent was to seek documents relating to promotional activity concerning a stock. In light of that acknowledgement, we request that you make further inquiries within the Divisions of

Corporation Finance and Trading and Markets (including by explaining the nature of what we are seeking), and that you specify more particularly what inquiries you have made to search for responsive materials.

*SEC Response: When I discussed the results of my inquiries to Corp Fin and Trading & Markets, I advised you that both told me that they had no responsive documents. In explaining the similarity between our two Requests, I advised you of what I was looking for, namely documents relating to promotional activity concerning a stock. As it appears that you are now clarifying that that is the material you too are seeking, we can go back to the relevant Divisions and inquire as to third-party communications about Section 17(b) of the Securities Act. Please advise.*

**Ladd Reply**: We appreciate your willingness to inquire with the relevant divisions of the SEC for responsive documents, but we do not understand your proposed narrowing of the requests. At your request, we clarified what we are looking for, both during the August 12 meet-and- confer and in our August 21 letter. We therefore request that you search for and produce the material called for by the three requests, i.e., documents and communications concerning such promotional efforts with respect to MGT or any other company in which Mr. Ladd or MGT had an investment (Request No. 13), documents and communications concerning guidance, or concerning the decision not to issue guidance, concerning whether or when such promotional efforts are legal (Request No. 19), and all internal SEC documents or communications concerning the same (Request No. 20).

We request that you provide your proposed search parameters by September 6, 2019. If we do not receive a satisfactory response, we will take appropriate action.

**Reply: We have already produced all responsive, non-privileged documents concerning MGT's efforts to enhance investor awareness of which we are aware in our first production. With respect to third-party communications between the Division of Corp. Finance and the Division of Trading and Markets, and third-parties, concerning whether or when efforts to enhance investor awareness of a publicly traded security (through promotions or otherwise) are legal (Request Nos. 17, 18, and 19), we have already advised that we will conduct a search for responsive, non-privileged documents through email files of appropriate areas of the Division of Trading and Markets for third-party communications concerning Securities Act Section 17(b). We will do so using the search terms "17(b) and promotion or promotional or tout*" and we will conduct the search for documents dated 2012 and forward. (We understand that it is Trading and Markets which has responsibility for the interpretation and application of that provision.) If you would like to suggest other or different search terms that we could use to find what you are looking for, we would be happy to consider them, but without more specificity, we understand you to be requesting every written communication that the SEC has ever had with any third party regarding potentially false or misleading statements in every securities promotion that the SEC has ever**

considered, a request that, even if it sought information relevant to this case (which we dispute), is grossly overbroad and not proportional to the needs of this case.

*October 2, 2019 SEC Update:* *We will be making a production of the relevant communications resulting from the 17(b) search that we describe above.*

Request 15: This request seeks documents and communications between the SEC and any self-regulatory agency concerning MGT. In your August 8, 2019 letter and again during the August 12, 2019 meet and confer, you requested more specificity in our request, such as what Divisions of the Commission and which self-regulatory agencies may yield responsive documents. In response to your request, we ask that you specifically search for documents and communications involving the Commission's Division of Trading and Markets and/or Division of Corporation Finance, and the New York Stock Exchange or any of its markets.

*SEC Response: We will make that inquiry. It would be helpful if you identified what you are looking for, and how what you are looking for has relevance to any claim or defense in this matter (which does not include MGT as a party), as I requested, as both Divisions are quite large. In addition, if you are looking for documents concerning particular filings, and can specify a time-frame, that will assist in our inquiry.*

**Ladd Reply**: We appreciate that you will make the inquiry. As to your questions about relevance and your suggestion that we limit our request to particular filings or a particular time period, we note that the SEC alleges a broad conspiracy to "pump and dump" MGT stock on multiple occasions. We are entitled to understand what communications the SEC and SROs were having with respect to MGT during the relevant time period, *i.e.*, January 1, 2012 through the filing of the Amended Complaint. For example, these communications may have arisen in connection with MGT's SEC filings, trading activity in MGT shares, or MGT's listing qualifications. As such, they may shed light, among other ways, by illustrating what MGT's regulators contemporaneously considered (1) about whether MGT was a legitimate business or a mere vehicle for a pump-and-dump scheme; and (2) about whether MGT, Mr. Ladd, or the investor defendants were complying with, or not complying with, laws and regulations with respect to their investments, promotional activity, and press releases concerning MGT. Contemporaneous reactions by regulators to the events alleged in the Amended Complaint and to MGT's securities filings are critical to Mr. Ladd's defense that he did nothing wrong.

We request that you provide your proposed search parameters by September 6, 2019. If we do not receive a satisfactory response, we will take appropriate action.

**Reply: We will look for non-privileged communications between the Divisions of Corp. Finance and Trading and Markets, and NYSE, concerning MGT.**

*October 2, 2019 SEC Update:* We have done a search through emails of the Divisions of Trading and Markets and Corp. Finance for non-privileged communications between either Division and the NYSE concerning MGT from January 1, 2012 through October 31, 2016. The search produced no responsive documents.

Request 22: This request calls for documents and communications concerning filings by MGT with the SEC. During the meet and confer, you stated that you would be asserting privilege over all responsive internal communications. We explained that for this request, a blanket assertion of privilege would be overbroad and unsubstantiated given the subject matter at issue and the roles of the SEC personnel who would likely be involved in the communications. Accordingly, given our respective positions, we believe it is particularly important that you prepare a document-by-document privilege log for items responsive to this request so that we can assess the validity of your claims of privilege.

*SEC Response:* Again, we asked you for more specificity. For example, if there are certain filings in which you are interested, please let us know. We know of no claim or defense to which all internal communications at the Commission respecting MGT, a non-party, could relate.
*In our meet and confer, you indicated that you had litigated this precise issue with success, and when I asked you to identify the case you litigated, you offered to provide it. You have not done so to date.*

**Ladd Reply:** We have no record of your having made such a request with respect to Request No. 22. In any event, please see our reply to Request No. 15, above.

As to having litigated the issue of the production of internal SEC emails with success, we point you to footnote 1 in our August 21 letter, which you reproduced in your August 26 response. In the case of *SEC v. Goldstone*, after initially having resisted the production of internal communications, the SEC ultimately produced 18,000 pages of emails from 19 SEC employees and Commissioners. Some of those internal emails were eventually introduced as evidence at trial. You may wish to consult with your colleagues in the Denver Regional Office on their success in attempting to claim privilege over all internal SEC communications.

We also write to memorialize certain additional matters we discussed during the meet and confer, as follows:

- You agreed to confirm whether there are any other errors on the producing party list in the SEC's initial disclosures (aside from the reference to Drew Ciccarelli as a producing party).

    - *Ladd Follow Up:* You failed to provide any response to this request, which is basic and straightforward. Please do so by September 6, 2019.

> **Reply: None of which we are aware.**

- ▫ We noted that the SEC's initial disclosures identify at least 13 individual investor witnesses. You agreed to provide a more realistic list of such witnesses.

- *SEC Response: I agreed to advise you of additional witnesses as we located them, and as we are obligated to do under the Rules.*

- **Ladd Reply**: As we explained in our email to you dated August 30, that is a blatant mischaracterization of your representation during the meet-and-confer. Our August 30 email requests that you revise your initial disclosures by September 5, 2019 to provide a realistic list of individual investor witnesses, as required under Rule 26(a)(1)(A)(i).

- **Reply: What you are asking for is a witness list. We are neither prepared nor required to provide that at this time. We will provide appropriate supplementation of our Initial Disclosures.**

- ▫ You agreed to identify any other proffer agreements or testimony that have been produced to us beyond those listed in my August 9, 2019 email to you.

- *SEC Response: I was not responding to your list, by affirming it or otherwise. I undertook to provide you with a list of our notes on 302's and witness interviews in our updated privilege log, which I provided to you on August 21, 2019. As to the proffer agreements, they have been produced, and we will continue to update our production as required.*

- **Ladd Reply**: We see that Entry No. 67 in your revised privilege log lists such 302s and witness testimony. Please confirm that this is the complete list.

    - **Reply: We have nothing to add at this time.**

As to proffer agreements, as we explained, we have not been able to identify all such discrete documents through the application of search terms or by reviewing your producing party list, for reasons including poor optical character recognition (OCR) on certain documents, and therefore renew our request that you simply identify for us what proffer agreements you have made. You undoubtedly have such a list and withholding it at this juncture is not reasonable.

   **Reply: We have no such list. We plan to make further productions as appropriate, and additional proffer agreements will be included.**

- You agreed to provide us with a list of individuals whose FBI 302s you reviewed and took notes of.[1]

- *<u>SEC Response</u>: See above. When you asked whether our notes on the 302s were verbatim, I told you, and can confirm here, that they are not. They include our selection of portions of the 302s to memorialize, some of which may be memorialized verbatim in part.*

**Ladd Reply**: As we have previously explained, the SEC may not shroud FBI 302's in privilege by electing to take notes from them, rather than taking custody of them. This is especially true if some of the 302s have been "memorialized verbatim in part." We understand that you will not be producing this non-privileged material and will take appropriate action.

              Sincerely yours,

              Nancy A. Brown

---

[1] During our August 9, 2019 and August 12, 2019 meet and confers, you represented to us that the SEC is not in possession of the FBI 302s but did review them and take notes of them. You also represented that the SEC did not copy verbatim any portion of a witness statement in the FBI 302s while taking notes of them.