# RICHARD AND RICHARD
### ATTORNEYS AT LAW
### 825 BRICKELL BAY DRIVE
### MIAMI, FLORIDA 33131

DENNIS RICHARD
E-mail: dennis@richardandrichard.com

PHONE (305) 374-6688

The Honorable Edgardo Ramos
United States District Court
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY  10007

October 23, 2019
**VIA ECF**

     RE:    *SEC v. Honig, et al.*, No. 1:18-cv-08175

Dear Judge Ramos:

We respectfully request a pre-motion conference on defendant, Michael Brauser's, planned motion to compel the SEC to remedy its production of more than four million unorganized pages.  (The Court has already scheduled a pre-motion conference, on November 7, 2019 at 4:30 p.m., on discovery issues raised by defendant Robert Ladd.  *Order*, ECF No. 187).

In response to Brauser's discovery request, the SEC objected to producing documents other than how it received them during its years-long investigation.  *SEC Resp.,* 5/24/19, p. 4, ¶ 9, **Exh. A**.  Thus, the SEC persists in espousing the same position that was expressly rejected at least a decade ago.  *SEC v. Collins,* 256 F.R.D. 403, 411, 413  (S.D.N.Y. 2009) (emph. added):

> The SEC contends that . . . it has the option of producing the complete, unfiltered, and unorganized investigatory file, as this is how the documents are maintained in the usual course of its business. . . . Rule 34 mandates that documents must be produced organized by the subjects of the request *or* organized as they are kept in the usual course of business by the producing party.  The key to this dichotomy is the assumption that in either case the documents *will be organized* – that records kept in the usual course of business would not be maintained in a haphazard fashion.
>
>         \*     \*     \*
>
> However, conducting an investigation – which is by its very nature not routine or repetitive – cannot fall within the scope of the "usual course of business." . . . [I]n its investigative capacity the [SEC] conducts tailored probes of a company . . . requiring the gathering of records from diverse sources.  Many if not most of the 1.7 million documents in the SEC production here were likely collected in the agency's investigatory role.  Thus it is no surprise that the complete collection is maintained as it was collected – in large disorderly databases.  The documents can only be provided in a useful manner if the agency organize or labels them to correspond to each demand.

The rationale for this is "***to prevent 'document dumps'*** . . . ." *Excellent Home Care Services, LLC v. FGA*, 2017 WL 9732082, \* 7 (E.D.N.Y. 2017) (emph. added).

Confronted with this authority, the SEC's response was to designate ***all*** of its more than four million pages of production as responsive to Brauser's broadest document request, stating: "[W]e . . . categoriz[e] the production" as "***all*** responsive to your Request for Production No. 1." *Email Exchange*, 8/7/19, **Exh. B** (emph. added).

The Honorable Edgardo Ramos
Page 2

This evasive maneuver has been tried and rejected. "[W]hen a party produces documents in response to discovery requests, [it] must identify specific documents that are responsive to each request . . . ." *Excellent Home*, 2017 WL 9732082 at *7. "[T]his is generally done by reference to documents identified by Bates-numbers." *Id.* Here, there are more than 4.2 million Bates numbers but the SEC has failed to correlate *any* to Brauser's 14 separate document requests, other than Request No. 1.

The SEC also agreed to provide an index to its massive production. *Email Exchange*, 7/12/19, **Exh. C**. But the "index" the SEC provided almost a month later was disingenuous at best. It was comprised of 11,480 *pages* containing more than 1.3 million *lines* of useless information. For example, this is the first of the 1.3 million lines, set in three columns headed "SECFIRST," "SECLAST" and "Producing Party": "SEC-LIT-EMAILS-000000001    SEC-LIT-EMAILS-000000001    SEC." *SEC Email*, 7/31/19 (attaching 1st page of "index"), **Exh. D**. After an additional meet and confer, the SEC agreed to provide something better. However, what the SEC then provided was a list of the hundreds of persons and entities from whom it obtained the documents from over its years-long investigation. This is the first entry: "SEC-LIT-EMAILS-00000001   SEC-LIT-EMAILS-000029788   SEC." *SEC Email*, 8/18/19, (attaching 1st page of "index"), **Exh. E**.

Brauser wants to know where the beef is in the SEC's allegations against him, which lack particularity as pleaded. For example, the SEC claims that "Brauser violated Section 9(a)(1) of the Exchange Act by, among other things, engaging . . . ***in matched trading*** of Company B shares" with others. *SEC's First Am. Compl.*, ¶ 246 (emph added) (ECF No. 105, p. 90). The SEC alleges that Brauser "entered an order or orders for the purchase and/or sale of [securities] of Company A, Company B and/or Company C with the knowledge that an order or orders of substantially the same size, at substantially the same time and substantially the same price, for the sale and/or purchase of such security, had been or would be entered by or for the same or different parties." *Id.* at p. 89-90, ¶ 244. However, nowhere in the SEC's 277-paragraph complaint does it allege, with particularity, a single matched trade between Brauser and any other person. *See Brauser Reply Memorandum Motion to Dismiss First Amended Compl.*, pp. 4-6 (ECF No. 175, pp. 8-10). All of the specific allegations of such matched trades, in the amended complaint, are between persons *other than Brauser*. *Id.* "To state a claim for manipulation under Section 9(a)(1), plaintiffs must specifically identify particular washed sales or matched orders." *Cohen v. Stevanovich*, 722 F.Supp 2d 416, 424 (S.D.N.Y. 2010).

Thus, Brauser requested that the SEC produce what should have been in its amended complaint – documents identifying the *generally* alleged "matched, coordinated, contemporaneous, or simultaneous trading between Defendant Michael Brauser and any person or entity in BioZone, MGT and/or MabVax [the three companies at issue] between March 1, 2010 and March 1, 2018." **Exh. A**, p. 9 at Req. # 3. The SEC must have that information. Otherwise the SEC would not have been able to allege – with a good faith basis in fact – that Brauser had engaged in such trading.

The SEC acknowledges that its 4.2 million pages of production is not fully searchable in the form in which it was produced, that reasonable searchability requires the application of costly document management software. *SEC Email*, 10/7/19, p. 1, **Exh. F**. Even then, searching the documents for the categories listed in Brauser's production request will be extremely costly, as well as hit and miss, given the mass of the SEC's production. *See Collins*, 256 F.R.D at 411

The Honorable Edgardo Ramos
Page 3

(unnecessary time and cost a factor; SEC already knows what is in production). "[D]ocuments that support the allegations in the [SEC's] Complaint" are essential for a defendant "to prepare his defense." *Id.* at 410. Brauser has repeatedly called this to the SEC's attention. *See, e.g., Brauser Email*, 8/7/19, p. 2, **Exh. B** ("Surely the SEC has some guide to the contents of this production and has organized it by separate topics. The SEC's failure to provide such information *has frustrated Brauser's ability to become familiar with the support for the SEC's claims and prepare his defense."*); *Brauser Email,* 9/6/19, **Exh. G** ("[W]e are continuing to struggle with the SEC's unwillingness to designate its production to anything other than the broadest language of the production request. . . . Without that information, we are hamstrung on the ability to prepare our client's defense." ).

Earlier this month Brauser reminded the SEC that "there is still the unresolved issue" as to "the SEC's four million plus pages of production," and the need for the SEC to categorize "it to Mr. Brauser's document requests. We previously provided you Southern District of New York authority explaining why such categorization, by the SEC, was required. You replied by designating the SEC's entire production as a response to Mr. Brauser's request for the SEC's investigative file, disregarding the eleven specified categories of the investigative file, and disregarding Request for Production Nos. 2, 3, and 4." *Brauser Email*, 10/4/19, **Exh H.** Brauser asked the SEC to "[p]lease reconsider and tell us which pages and/or documents are responsive to each of the document requests propounded by Mr. Brauser . . . ." *Id.* Brauser offered the SEC the alternative of providing "a table of contents." *Id.* And finally, Brauser asked: "If you will not do any of these, will you entertain a negotiated solution between us as to how you could break down the production? We need your cooperation on this in order to prepare Mr. Brauser's deposition." *Id.*

The SEC declined this entreaty, stating: [W]e have already provided what we undertook to provide – an index to the production by producing party." *SEC Email*, 10/7/19, **Exh. F**. That is exactly the "haphazard fashion" of production rejected in *Collins* regarding the SEC's "gathering of records from diverse sources." *Supra*, p. 1. Providing Brauser the hundreds of names of its sources of information defies the rule of law set forth in *Collins*.

Good faith discovery is not a game of "hide the ball." The SEC, wielding the tremendous power of the Government, should be doing it responsibly with respect for the rights of the defendants. As in *Collins &. Aikman Corp.*, 256 F.R.D. at 418, the SEC should be "ordered to produce or identify documents organized in response" to defendant's straightforward requests.

                              Respectfully submitted,

                              */s/ Dennis Richard*
                              DENNIS RICHARD

cc: Counsel of Record (via ECF)
W:\WDOX\CLIENTS\512\4467\00131280.DOCX