

Randall R. Lee  By ECF
+1 310 883 6485
randall.lee@cooley.com

November 4, 2019

The Honorable Edgardo Ramos
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 619
New York, New York 10007

*SEC v. Honig, et al.*, No. 1:18-cv-08175-ER

Dear Judge Ramos:

On behalf of Defendant Robert Ladd, we respectfully submit this reply to the letter the Securities and Exchange Commission submitted to the Court on October 16, 2019 (Dkt. No. 186) and in further support of the letter we submitted on October 11, 2019 (Dkt. No. 185).

Privilege Log

In refusing to produce a detailed privilege log for two categories of communications, the SEC simply ignores the case law holding that a blanket assertion of privilege over internal communications is improper. *See, e.g.*, *SEC v. Kovzan*, 2012 WL 4819011 (D. Kan. Oct. 10, 2012). The SEC's *entire description* on its privilege log for documents concerning its internal communications regarding relevant provisions of Section 13 of the Exchange Act and MGT's public filings is as follows:

> SEC staff communications regarding the application or interpretation of various provisions of the federal securities laws, SEC staff communications concerning the issuance of guidance, or the decision not to issue guidance concerning the interpretation of various provisions of the federal securities laws; . . . SEC staff communications concerning filings by MGT with the SEC.

Dkt. No. 185, Ex. A (Entry #83). The SEC now acknowledges that this single description is being used to shield production of tens of thousands of documents. Dkt. No. 186 at 1. The very existence of so many internal SEC emails concerning these issues confirms that they were being actively discussed within the SEC. Given the SEC's aggressive and implausible position that every one of the tens of thousands of communications on this topic are privileged, a document-by-document privilege log is necessary so that we and the Court can evaluate the validity of the SEC's privilege assertions.

The SEC's only response is that Mr. Ladd did not explain how the SEC's internal communications would show uncertainty by market participants about the meaning and



application of Section 13.  *Id.*  To be clear: documents showing that the SEC itself was uncertain about the application of Section 13 would be compelling exculpatory evidence, refuting the SEC's charges that Mr. Ladd was reckless in violating a highly technical provision of the securities laws for which the SEC has provided virtually no public guidance.

With respect to Mr. Ladd's request for a privilege log of withheld internal SEC communications concerning the review of MGT's SEC filings by staff in the SEC's Division of Corporation Finance (which reviews public company filings), the SEC contends that Mr. Ladd "does not specify what defense he plans to assert" and suggests that the only possible relevance of such documents would be to an affirmative defense of "'laches' or 'equitable estoppel.'"  *Id.* at 1-2.  Aside from any affirmative defense, however, internal SEC communications about MGT's filings by those responsible for reviewing such filings would have important evidentiary value even if the staff within the Division of Corporation Finance did not communicate directly with MGT about such filings.

Notably, the SEC's refusal to prepare a detailed log stands in marked contrast to the position it takes when it conducts its own investigations.  The SEC's Enforcement Manual directs its staff to request "a detailed privilege log" with respect to "each document" withheld from production and to "obtain additional information where entries in the privilege log are incomplete or do not otherwise provide sufficient information to determine whether the privilege has been properly asserted."  *See* SEC Enforcement Manual § 3.2.7.4.  Mr. Ladd simply asks that the SEC be held to the same standard it insists upon in its own investigations as to two discrete categories of documents where the categorical assertion of privilege is facially overbroad.

Public Statements

The SEC's attempt to distinguish between (a) public statements and presentations by "SEC officials" it claims are not speaking for the SEC and (b) official public statements and presentations by "the SEC" borders on nonsensical.  Dkt. No. 186 at 2.  Ironically, the SEC seeks to support this false distinction by quoting from the remarks of SEC Chairman Clayton that are *hosted on the SEC's own official website.  Id.*  That section of the SEC's website includes a subsection entitled "Public Statements," most of which do not have any disclaimer that the speaker is not speaking for the SEC.[1]  Some material posted to the "Speeches" subsection of the website contains no disclaimer.[2]  And much of the material posted to the "Testimony" subsection of the website either contains no disclaimer or else contains a *reverse disclaimer*, which is that the views expressed "are those of the U.S. Securities and Exchange Commission and do not necessarily represent the views of the President."[3]  Thus, the SEC's contention in its letter response that "as a matter of SEC policy, <u>any</u> public statement, presentation, or testimony by an

---

[1] *See, e.g.*, https://www.sec.gov/news/public-statement/clayton-2019-09-26-three-rulemakings.
[2] *See, e.g.*, https://www.sec.gov/news/speech/financing-small-medium-enterprises-and-challenges-crowdfunding.html.
[3] *See, e.g.*, https://www.sec.gov/news/testimony/testimony-electronic-communications-privacy-act.html (no disclaimer); https://www.sec.gov/news/testimony/testimony-regulatory-reforms-to-improve-equity-market-structure.html (same); https://www.sec.gov/news/testimony/testimony09-24-2019 (disclaimer quoted in text, *supra*).



November 4, 2019
Page Three

SEC official is preceded by a statement explicitly disclaiming his or her representation of the Commission or its views" is simply untrue. Dkt. No. 186 at 2 (emphasis added). The SEC cannot seriously argue that statements by high-level SEC officials are not relevant guidance for compliance with securities laws, when it highlights such material on its own website and SEC officials are highly sought-after speakers. Nor is it true that public statements and presentations are "equally available" to Mr. Ladd. *See id.* SEC officials routinely make speeches and give presentations that are not posted on the SEC's website or otherwise made public—a fact that the SEC's trial team acknowledged during a meet and confer. Finally, there is no "undue burden" here. *See id.* Mr. Ladd offered a compromise position to the SEC, targeting documents from a limited subset of SEC officials most likely to be making relevant public statements. The SEC's burden argument simply ignores that proposed compromise.

Notes of FD-302s

The SEC improperly claims that its notes of Form FD-302s can be withheld as "opinion" work product. *See* Dkt. No. 186 at 4. This court has rejected such an argument. *See, e.g.*, *Gruss v. Zwirn*, 296 F.R.D. 224, 231 (S.D.N.Y. 2013) ("Gibson Dunn's representations that every word in the interview memos constitutes 'core opinion work product' is not credible."). The SEC also contends that the "USAO has agreed to turn over at least some of the" 302s. Dkt. No. 186 at 3-4. Although it is true that Mr. Ladd issued a subpoena to the U.S. Attorney's Office for its 302s, no such production has yet been made, and the USAO stated that it will not produce the 302 for, among other witnesses, Mr. Ladd's co-defendant Barry Honig, who is alleged to be the orchestrator of a broad and far-reaching scheme that used MGT as a vehicle. Statements made by Mr. Honig are not work product and the SEC's notes memorializing those statements should not be withheld.

Very truly yours,

*/s/ Randall R. Lee*

Randall R. Lee


CC:    Counsel of Record (via ECF)