Randall R. Lee (*admitted pro hac vice*)
COOLEY LLP
1333 2nd Street
Santa Monica, CA 90401
randall.lee@cooley.com
Telephone: (310) 883-6485
Facsimile: (310) 883-6500

Christopher Johnstone (*admitted pro hac vice*)
WILMER CUTLER PICKERING HALE
  AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
chris.johnstone@wilmerhale.com
Telephone: (650) 858-6147
Facsimile: (650) 858-6100

*Attorneys for Defendant Robert Ladd*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) | Case No. 1:18-cv-08175-ER |
| v. | ) ) | |
| BARRY C. HONIG, *et al.* | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Defendants. | ) ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROBERT LADD'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND ...............................................................................2

    A.    MGT's Disclosures of the Investor Defendants...........................................2

    B.    Mr. Ladd's Form 4 and Form 144 Filings .................................................4

    C.    The Form 144 Filed on Behalf of Mr. Ladd's Father ...............................5

III.    PROCEDURAL HISTORY...................................................................................6

IV.    LEGAL STANDARD............................................................................................7

V.    ARGUMENT .......................................................................................................9

    A.    The SAC Still Fails to State a Fraud Claim in Connection with its "Group" Allegations ....................................................................................9

        1.    The SAC Still Relies on the Defective Theory that Mr. Ladd Failed to Disclose the "True Extent" of the Investor Defendants' Stock Ownership ........................................................9

        2.    The SAC Still Fails to Adequately Allege that Mr. Ladd's Omission was Material..................................................................12

    B.    The SEC Fails to Plead Materiality and Scienter for its Fraud Claims Predicated on Forms Filed by Mr. Ladd and His Father........................13

    C.    The SAC Fails to State a Fraud Claim in Connection with the Form 144 Filed on Behalf of Mr. Ladd's Father for Two Additional Reasons ...............................15

        1.    The Statutory Requirements that Apply to Rule 144 Filings....................16

        2.    The SAC Fails to Allege Falsity in Connection with Mr. Ladd's Father's Form 144....................................................................18

        3.    Mr. Ladd Had No Duty to Disclose His Own Stock Sales on His Father's Form 144....................................................................20

VI.    CONCLUSION....................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................7, 8

*DiVittorio v. Equidyne Extractive Industries, Inc.*,
   822 F.2d 1242 (2d Cir. 1987) ..........................................................................................8

*Howard v. Hui*,
   2001 WL 1159780 (N.D. Cal. Sept. 24, 2001) ..............................................................14

*In re JP Morgan Chase Securities Litigation*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) ...............................................................12, 14, 15

*In re Take-Two Interactive Securities Litigation*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008) ..............................................................................8

*In re Time Warner Securities Litigation*,
   9 F.3d 259 (2d Cir. 1993) ................................................................................................8

*Pehlivanian v. China Gerui Advanced Materials Group, Ltd.*,
   153 F. Supp. 3d 628 (S.D.N.Y. 2015) (Ramos, J.) ..........................................................9

*SEC v. Espuelas*,
   579 F. Supp. 2d 461 (S.D.N.Y. 2008) ..............................................................................8

*SEC v. Glantz*,
   1995 WL 562180 (S.D.N.Y. Sept. 20, 1995) ...................................................................9

*SEC v. Guenthner*,
   395 F. Supp. 2d 835 (D. Neb. 2005) ..............................................................................12

*SEC v. Jean-Pierre*,
   2015 WL 1054905 (S.D.N.Y. Mar. 9, 2015) ....................................................................8

*SEC v. Kern*,
   425 F.3d 143 (2d Cir. 2005) ..........................................................................................17

*SEC v. Lee*,
   720 F. Supp. 2d 305 (S.D.N.Y. 2010) ........................................................................9, 15

*SEC v. Longfin Corp.*,
   316 F. Supp. 3d 743 (S.D.N.Y. 2018) .........................................................16, 17, 18, 22

*SEC v. Lyon*,
   529 F. Supp. 2d 444 (S.D.N.Y. 2008) ........................................................................8, 20

*SEC v. Mattera*,
   2013 WL 6485949 (S.D.N.Y. Dec. 9, 2013) ....................................................16

*SEC v. Rio Tinto plc*,
   2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019) ................................................15

*SEC v. Thompson*,
   238 F. Supp. 3d 575 (S.D.N.Y. 2017)..............................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)................................................................................9, 15

## STATUTES, RULES, AND REGULATIONS

17 C.F.R.
   Part 229 ........................................................................................................11
   § 229.403 ......................................................................................................11
   § 229.403(a) .................................................................................................11
   § 230.144......................................................................................................4
   § 230.144(a)(1) .......................................................................................17, 18
   § 230.144(a)(2) ...........................................................................18, 19, 21, 22
   § 230.144(b) .................................................................................................17
   § 230.144(b)(2) ............................................................................................17
   § 230.144(e) .................................................................................................21
   § 230.144(e)(3) ............................................................................................21
   § 230.144(e)(3)(vi) .......................................................................................21
   § 230.144(h) .................................................................................................17
   § 230.144(h)(2) ............................................................................................4
   § 240.16a-3(a) ..............................................................................................5

15 U.S.C.
   § 77b(a)(11) .................................................................................................17
   § 77d(a)(1) ...................................................................................................16
   § 77e(a) ........................................................................................................16
   § 78m(d)(1) ..................................................................................................4
   § 78p(a)(1) ...................................................................................................5

## OTHER AUTHORITIES

J. William Hicks, *Resales of Restricted Securities* § 4:225 (Feb. 2020 update)............................21

Resales of Restricted and Other Securities, Release No. 6099, 17 SEC Docket 1422,
   1979 WL 174360 (Aug. 2, 1979)....................................................................19

Revisions to Rules 144 and 145, Release No. 8869, 92 SEC Docket 110, 2007
   WL 4270700 (Dec. 6, 2007) ..........................................................................21

## I.       INTRODUCTION

On February 25, 2020, the Court dismissed the SEC's core claim against Mr. Ladd, the

remaining Defendant in this case.  The Court determined that the SEC had failed to state a claim

in support of its theory that Mr. Ladd had failed to disclose the "true extent" of the stock

ownership of Barry Honig and several co-investors and their "collective control" over MGT

Capital Investment's management.  Amended Opinion & Order ("Op."), Dkt. No. 212, at 19.

Not only that, the Court found that the SEC had also failed to allege materiality in support of its

"group" claim.  *Id.*  The Court's opinion homed in on the key problem with the SEC's theory of

liability: that there is no requirement under the securities laws that a company disclose the "true

extent" of the holdings of investors.

The SEC has done almost nothing to salvage its "group" claim.  Despite the Court's

order, the SEC has doubled down in claiming that Mr. Ladd failed to disclose the "true extent" of

the Investor Defendants' stock ownership.  *See* Second Amended Complaint ("SAC"), Dkt. No.

233, ¶¶ 247, 253.  The SEC also makes no serious attempt to explain why such an alleged

omission would be material to investors, inserting one paragraph of conclusory allegations that

ignore the critical fact that the investments of Mr. Honig and the co-investors were disclosed by

MGT in its public filings.  *See id.* ¶ 165.  Because the SEC has now failed on several attempts to

articulate a coherent theory of liability, its "group" claim should be dismissed once and for good.

The SEC also misfires in its new claims relating to Mr. Ladd's trading disclosures.  The

SAC makes no attempt to allege why any of the specific statements and omissions would be

material to investors, nor does it attempt to allege that Mr. Ladd acted with scienter with respect

to each alleged false statement or omission.  Furthermore, the SEC fails to plead falsity with

respect to the Form 144 filed on behalf of Mr. Ladd's father because the responses made by Mr.

Ladd on his aging father's behalf were truthful under prevailing SEC regulations and public guidance.

At this late stage, the SEC has had ample opportunity to put forward a coherent theory supporting its claims in this case. The claims at issue in this Motion should be dismissed with prejudice, leaving the SEC with one claim of fraud the Court sustained in its previous order, which relates to MGT's May 9, 2016 announcement that John McAfee "sold his anti-virus company to Intel for $7.6 billion." Op. 5-7. Such a result would ensure that the SEC's fraud claims meet the requirements of Rule 9(b) and streamline this case for discovery.

## II.     FACTUAL BACKGROUND

### A.     MGT's Disclosures of the Investor Defendants

MGT Capital Investments, Inc. ("MGT")—described as Company B in the SAC—is a public company incorporated in Delaware and headquartered in Durham, North Carolina. *See* SAC ¶ 43. Defendant Robert Ladd served as CEO and a director of MGT during the time period relevant to this Motion. *See id.* ¶ 32.

The SAC alleges that in October 2015, Defendant Barry Honig organized and led a $700,000 financing of MGT. *See* SAC ¶¶ 137, 139. Defendants Michael Brauser, John Stetson, and John O'Rourke, along with "other Honig-approved investors," also participated in the financing. *See id.* On October 8, 2015, MGT filed a Form 8-K with the SEC disclosing that the company had "entered into separate subscription agreements . . . with accredited investors . . . relating to the issuance and sale of $700,000 of units" and that the "investment was led by Barry Honig, a private investor and a specialist in corporate finance." *Id.* ¶ 139. The Form 8-K was truthful and accurate, and the SEC does not contend otherwise.

On November 6, 2015, MGT filed a Form S-1 Registration Statement to register the sale of shares issued in the October 2015 financing. SAC ¶ 163. The Form S-1 included the

2

following disclosure identifying the selling stockholders (i.e., those who had acquired shares in the October 2015 financing) and their holdings:

| Name of Selling Stockholder | Common Stock Beneficially Owned Prior to the Offering (1) | Common Stock Covered by this Prospectus | Common Stock Owned Upon Completion of this Offering (1)(2) | Percentage of Common Stock Owned Upon Completion of this Offering (1)(3) |
|---|---|---|---|---|
| Grander Holdings, Inc. 401K (4) | 400,000 (5) | 1,200,000 (6) | * | *% |
| LFR Trust LLC (7) | 200,000 (8) | 600,000 (9) | * | *% |
| Iroquois Master Fund Ltd. (10) | 1,339,096 (11) | 900,000 (12) | 1,039,096 (11) | 6% |
| GRQ Consultants, Inc. Roth 401K FBO Barry Honig (13) | 1,133,611 (14) | 2,400,000 (15) | 333,611 (16) | 1.9% |
| Melechdavid, Inc. (17) | 600,000 (18) | 1,800,000 (19) | * | *% |
| Stetson Capital Investments (20) | 250,000 (21) | 750,000 (22) | * | *% |
| ATG Capital LLC (23) | 250,000 (24) | 750,000 (25) | * | *% |

* represents less than 1%.

*See* RJN Ex. A at 43.[1]  In footnotes to this chart, the Form S-1 disclosed that "Michael Brauser is the trustee of Grander Holdings, Inc. 401K," "Barry Honig is the trustee of GRQ Consultants, Inc. Roth 401K FBO Barry Honig," "John Stetson is the president of Stetson Capital Investments Inc.," and "John O'Rourke is the manager of ATC [*sic*] Capital LLC."  *See id.* at 44-46.  In other words, the Form S-1 explicitly disclosed the very identities and shareholdings of each of the Defendants who comprised the alleged "group" (collectively, the "Investor Defendants")—a fact the SEC conveniently omits from the SAC.

The Form S-1 also disclosed that Barry Honig was a beneficial owner of more than five percent of the outstanding common stock of MGT, SAC ¶ 163; RJN Ex. A at 42, as shown below.  This disclosure too was truthful and accurate.

| | Numbers of shares beneficially owned | Percentage of Common equity beneficially owned |
|---|---|---|
| 5% beneficial owners: | | |
| Iroquois Capital Management, LLC (1)(2) | 1,339,096 | 8% |
| Barry Honig (3) | 1,133,611 | 7% |
| Total 5% beneficial owners: | 2,472,707 | 14% |

---

[1] Copies of materials cited in this brief that can be judicially noticed are attached as Exhibits to the Declaration of Randall Lee filed in support of the Request for Judicial Notice filed concurrently herewith ("RJN").  *See also* Op. 3 n.4 (taking judicial notice of SEC filings).

Similarly, MGT's 2015 Form 10-K, filed on April 14, 2016, truthfully and accurately identified Mr. Honig as a shareholder, as required under Section 13(d)(1) of the Securities Exchange Act of 1934 (the "Exchange Act"), which requires disclosure of the ownership of shares of persons who own more than five percent of a company's stock. *See* 15 U.S.C. § 78m(d)(1). In the section of the Form 10-K entitled "Security Ownership of Certain Beneficial Owners," MGT disclosed the shareholdings of the only three shareholders who owned more than five percent—Mr. Ladd, Mr. Honig, and an institutional investor not at issue here, RJN Ex. B at 26-27, as shown below.

| | Numbers of shares beneficially owned | Percentage of Common equity beneficially owned |
|---|---|---|
| **5% beneficial owners** | | |
| Iroquois Capital Management, LLC (1)(2) | 1,787,204 | 9.9% |
| Barry Honig (3) | 1,557,823 | 8.6% |
| Robert Ladd (4) | 896,074 | 5.0% |

In sum, both the Form S-1 and the Form 10-K plainly and accurately disclosed the identity and shareholdings of the very individual whom the SEC accuses of having orchestrated an undisclosed "pump-and-dump" scheme.

### B.   Mr. Ladd's Form 4 and Form 144 Filings

The SAC adds new allegations relating to one Form 144 and three Forms 4 filed by Mr. Ladd. A Form 144 is a "notice of proposed sale" that is filed pursuant to 17 C.F.R. § 230.144 ("Rule 144") under the Securities Act of 1933 (the "Securities Act") when an affiliate of an issuer (as defined in Rule 144) has "a bona fide intention to sell the securities referred to in the notice within a reasonable time after the filing of such notice." 17 C.F.R. § 230.144(h)(2). On May 25, 2016, Mr. Ladd submitted a Form 144 disclosing his intent to sell shares of MGT stock. *See* RJN Ex. C.

A Form 4 is a "statement of changes in beneficial ownership" filed by a person "who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security . . . or who is a director or an officer of the issuer of such security." 15 U.S.C. § 78p(a)(1); 17 C.F.R. § 240.16a-3(a). On October 9, 2015, Mr. Ladd filed a Form 4 disclosing a change in his beneficial ownership by acquiring 200,000 shares of MGT stock. *See* RJN Ex. D. On December 1, 2015, Mr. Ladd filed a Form 4 disclosing a change in his beneficial ownership by disposing of 100,000 shares of MGT stock. *See* RJN Ex. E. On May 31, 2016, Mr. Ladd filed a Form 4 disclosing a change in his beneficial ownership based on several transactions of MGT stock in May 2016. *See* RJN Ex. F. The SEC alleges that the May 2016 Form 144, the October 2015 Form 4, the December 2015 Form 4, and the May 2016 Form 4 constitute violations of Section 16(a) of the Exchange Act, *see* SAC ¶ 303, and also that they serve as the basis for fraud claims under Section 10(b) of the Exchange Act (and Rule 10b-5(b) thereunder) and Section 17(a)(2) of the Securities Act, *see id.* ¶¶ 247, 253.

## C.   The Form 144 Filed on Behalf of Mr. Ladd's Father

The SEC also bases fraud claims on a Form 144 that was filed by Mr. Ladd on behalf of his elderly (now deceased) father. During the period at issue in the SAC, Mr. Ladd's mother (referred to in the SAC as "Relative A") and his father (referred to in the SAC as "Relative B") held an account at TD Ameritrade (the "TD Account"). SAC ¶¶ 9, 167. On June 9, 2015, Mr. Ladd and his parents executed a trading authorization for the TD Account, giving Mr. Ladd trading authority in the TD Account and appointing him as his parents' "attorney-in-fact for the purchase and sale of securities." *Id.* ¶ 167. That trading authorization form accurately disclosed Mr. Ladd's affiliation to MGT. *Id.*

The SEC alleges that Mr. Ladd, acting on behalf of his parents, sold shares of MGT stock held by his parents in the TD Account on May 12, 2016. SAC ¶ 168. In connection with the

sales from the TD Account, on May 10, 2016, at TD Ameritrade's request and even though his father was not legally required to submit a Form 144, Mr. Ladd signed (as his father's attorney-in-fact) and submitted to TD Ameritrade a Form 144 stating his father's intent to sell MGT shares from the TD Account (the "Relative B Form 144").  *Id.* ¶ 175; RJN Ex. G.  On the Relative B Form 144, consistent with the definition of an "affiliate" of an issuer in the governing regulation, Rule 144, Mr. Ladd truthfully answered "NONE" to a question asking for his father's "relationship to [MGT]."  *Id.*  Mr. Ladd also did not list on the Relative B Form 144 any of the sales of MGT stock Mr. Ladd had made personally in his own brokerage accounts in the prior three months, as Rule 144 did not require him to do so.  *Id.*

## III.    PROCEDURAL HISTORY

On June 19, 2019, Mr. Ladd filed a motion to dismiss the SEC's First Amended Complaint ("FAC"), Dkt. No. 105, pursuant to Federal Rule of Civil Procedure 12(b)(6), and a motion to strike pursuant to Federal Rule of Civil Procedure 12(f).  *See* Dkt. Nos. 146-49.  On February 25, 2020, the Court granted Mr. Ladd's motion to dismiss in part, denied his motion to dismiss in part, and denied his motion to strike.  *See* Op. 25.

As relevant here, the Court granted Mr. Ladd's motion to dismiss the SEC's claim that Mr. Ladd had violated Section 10(b) of the Exchange Act (and Rule 10b-5(b) thereunder) and Section 17(a)(2) of the Securities Act by failing to disclose an alleged "group" of investors because "the SEC has failed to properly allege that Ladd had a duty to disclose the beneficial ownership of a group of investors, or that the omission of the existence of the group was material."  Op. 2.  The Court granted the SEC leave to file a Second Amended Complaint repleading its securities fraud claims "as they pertain to Ladd's failure to report the Honig Group's alleged beneficial ownership in MGT's 10-K and S-1 filings."  *Id.* at 25.

6

On March 16, 2020, the SEC filed its Second Amended Complaint.  *See* Dkt. No. 233.

The SAC largely repeats the same factual allegations against Mr. Ladd relevant to the Investor

Defendants' alleged beneficial ownership.  The SAC also includes several new claims based on

Mr. Ladd's trading in MGT shares and alleged deficiencies in Forms 4 and 144 filed by Mr.

Ladd.  The SEC alleges that this conduct constitutes violations of the securities laws not only

under Section 5 of the Securities Act and Sections 13(d) and 16(a) of the Exchange Act (*see*

SAC ¶¶ 277, 287-88, 303), but also as fraud under Section 10(b) of the Exchange Act (and Rule

10b-5(b) thereunder) and Section 17(a)(2) of the Securities Act (*see* SAC ¶¶ 247, 253).

Mr. Ladd now moves to dismiss the SEC's claims that Mr. Ladd violated Section 10(b)

of the Exchange Act (and Rule 10b-5(b) thereunder) and Section 17(a)(2) of the Securities Act

because: (1) Mr. Ladd's alleged failure to disclose the "true extent" of the Investor Defendants'

stock ownership and their "collective control" over MGT's management and policies rests on a

legally insufficient duty to disclose and lacks an adequate allegation of materiality; (2) the SEC

does not sufficiently allege that Mr. Ladd's statements or omissions on his May 2016 Form 144,

his October 2015 Form 4, his December 2015 Form 4, his May 2016 Form 4, and his father's

May 2016 Form 144 were material or made with fraudulent intent; and (3) Mr. Ladd did not

make a false statement or omit to disclose information he had a duty to disclose on his father's

Form 144.

## IV.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient

factual matter to state a claim to relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  A claim is facially plausible only when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.  *Id.*  The court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Id.*

Claims sounding in fraud are also subject to the heightened pleading standard set forth in Rule 9(b), which requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake."  *SEC v. Lyon*, 529 F. Supp. 2d 444, 449 (S.D.N.Y. 2008).  The SEC must (1) specify the statements it contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.  *Id.*  Where multiple defendants are alleged to have engaged in fraud, the complaint must specify, as to each defendant, the nature of his alleged participation in the fraud.  *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Cases brought under Section 10(b) of the Securities Exchange Act (and Rule 10b-5(b) thereunder) and Section 17(a)(2) of the Securities Act premise liability on an allegedly material misrepresentation or omission.  *See SEC v. Jean-Pierre*, 2015 WL 1054905, at *8 (S.D.N.Y. Mar. 9, 2015).  To survive a motion to dismiss a Rule 10b-5(b) disclosure violation, the SEC must plausibly allege that the defendant (1) made a misstatement of material fact or omitted to state one or more material facts that he had a duty to disclose; (2) with scienter; (3) in connection with the purchase or sale of securities.  *See SEC v. Thompson*, 238 F. Supp. 3d 575, 591 (S.D.N.Y. 2017).  "Omissions are actionable under Rule 10b-5 only where the omitted information was material and the [defendant] was subject to a duty to disclose such information."  *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 263 n.8 (S.D.N.Y. 2008) (citing *In re Time Warner Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)).  A plaintiff must allege sufficient facts to create a "strong inference" of scienter.  *SEC v. Espuelas*, 579 F. Supp. 2d 461, 470 (S.D.N.Y. 2008).  A "strong inference" of scienter is one that is "'more than merely plausible or

reasonable—it must be cogent and at least as compelling as any opposing inference of

nonfraudulent intent.'" *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp.

3d 628, 652 (S.D.N.Y. 2015) (Ramos, J.) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

551 U.S. 308, 314 (2007)); *SEC v. Lee*, 720 F. Supp. 2d 305, 335 (S.D.N.Y. 2010) (applying

*Tellabs* standard to SEC enforcement action).  The required elements to state a claim under

Section 17(a)(2) are similar to those necessary for Section 10(b), except that the SEC need not

plead scienter.  *See SEC v. Glantz*, 1995 WL 562180, at *5 (S.D.N.Y. Sept. 20, 1995).

## V.    ARGUMENT

### A.    The SAC Still Fails to State a Fraud Claim in Connection with its "Group" Allegations

The Court granted Mr. Ladd's motion to dismiss the FAC's allegations relating to alleged

omissions in the 2015 Form 10-K and the November 6, 2015 Form S-1 because they (1) were

premised on Mr. Ladd's failure to "disclose the 'true extent' of the stock ownership of

individuals"; and (2) failed to adequately allege that Mr. Ladd's "omission in reference to the

[Investor Defendants'] ownership is material."  Op. 19.  The SAC fails to correct either of these

deficiencies.  Having already had two opportunities to amend, the SEC's fraud claims related to

the 2015 Form 10-K and the November 6, 2015 Form S-1 should be dismissed with prejudice.

#### 1.    The SAC Still Relies on the Defective Theory that Mr. Ladd Failed to Disclose the "True Extent" of the Investor Defendants' Stock Ownership

In the FAC, the SEC alleged that Mr. Ladd violated the anti-fraud provisions of the

securities laws by "failing to disclose the true extent of the stock ownership of [the Investor

Defendants], and their collective control over [MGT's] management and policies" in MGT's

2015 Form 10-K and November 6, 2015 Form S-1.  *See* FAC ¶¶ 214, 220.  The Court rejected

this theory of liability, concluding that the SEC had failed to plead a cognizable duty to disclose. Op. 18-19.

Remarkably, the operative language of the SAC is *identical* to that of the FAC. The SAC continues to allege that Mr. Ladd failed to disclose the "true extent" of the Investor Defendants' stock ownership and the Investor Defendants' "collective control" over MGT's management and policies. *See* SAC ¶ 247 ("Ladd further violated Section 10(b) and Rule 10b-5(b) thereunder by knowingly or recklessly failing to disclose the true extent of the stock ownership of Honig, Brauser, Stetson, O'Rourke and other affiliates, and their collective control over Company B's management and policies, in Company B's 2015 Form 10-K and November 6, 2015 Form S-1, both of which Ladd signed."); *id.* ¶ 253 ("Ladd further violated Section 17(a)(2) by knowingly, recklessly or negligently failing to disclose the true extent of the stock ownership of Honig, Brauser, Stetson, O'Rourke and other affiliates, and their collective control over Company B's management and policies in Company B's 2015 Form 10-K and November 6, 2015 Form S-1, both of which Ladd signed."). Simply put, the SAC fails to address the fundamental flaw that this Court properly identified in dismissing those claims in the FAC—that there is no duty to disclose the "true extent" of stock ownership or "collective control" over MGT's management and policies.

In an attempt to prop up the fraud theory rejected by the Court, the SAC tacks on two short references to Item 403 of Regulation S-K. *See* SAC ¶ 51 (quoting from Item 403 of Regulation S-K); *id.* ¶¶ 163-64 (alleging that the November 6, 2015 Form S-1 and 2015 Form 10-K purported to disclose each person known by MGT to be the beneficial owner of more than 5% of MGT's stock as "required" by Item 403 of Regulation S-K). But these references to Item 403 cannot repair the fundamental defect in the SEC's theory.

Regulation S-K is a regulation under the Securities Act that sets forth a broad array of disclosure items that must be included in SEC filings by public companies. *See generally* 17 C.F.R. Part 229. Item 403 of Regulation S-K sets forth specific requirements for the disclosure of the securities ownership of "certain beneficial owners and management." 17 C.F.R. § 229.403. As relevant here, Item 403 requires the disclosure of any "person . . . known to the registrant to be the beneficial owner of more than five percent" of an issuer's securities. *See id.* § 229.403(a). Although Item 403 defines "person" to include a "group" within the meaning of Section 13(d)(3) of the Exchange Act, it *says nothing* about a duty to disclose the "true extent" of the stock ownership or "collective control" over a company's management and policies. *See id.*

In its Opinion, the Court does observe that the FAC failed to state a claim of fraud because, among other reasons, "neither Regulation S-K nor the requirement it prescribes is ever mentioned in the [FAC]." Op. 19. The SEC has apparently taken the Court's Opinion to mean that it need only reference Regulation S-K and its requirement in order to state a cognizable claim under its fraud theory. But the Court also correctly made clear that the "specific duty imposed by Item 403" was not coextensive with the claim at issue: an alleged duty to disclose the "true extent" of the stock ownership of the Investor Defendants. *See id.* ("But the [FAC] only alleges that Ladd had a duty to disclose the 'true extent' of the stock ownership of individuals; *this is not the more specific duty imposed by Item 403*." (emphasis added)). Accordingly, the references to Item 403 are insufficient to create a duty to disclose the "true extent" of the Investor Defendants' stock ownership and the Investor Defendants' "collective control" over MGT's management and policies, and thus those claims should be dismissed. *See* SAC ¶¶ 247, 253.

### 2.     The SAC Still Fails to Adequately Allege that Mr. Ladd's Omission was Material

The Court also dismissed the SEC's fraud claims against Mr. Ladd as they relate to the 2015 Form 10-K and the November 6, 2015 Form S-1 because the SEC failed to allege the materiality of the alleged failure to disclose a "group."  *See* Op. 19.  The SAC attempts to cure that fatal defect by inserting a single paragraph in which the concept of materiality is recited in a generic and conclusory fashion.  *See* SAC ¶ 165.  This is insufficient.

It is well established that securities fraud complaints "must comply with the particularity requirements of Federal Rule of Civil Procedure 9(b) . . .; the materiality of the alleged misstatements or omissions cannot be pled in conclusory or general fashion."  *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 626 (S.D.N.Y. 2005).  Here, the sum total of the SAC's new allegations of materiality is as follows:

> Company B's Form S-1 and Form 10-K thus hid from [MGT] investors material information regarding potential corporate control of [MGT].  Such information is especially important to investors evaluating microcap issuers such as [MGT] which are particularly susceptible to manipulation by undisclosed control persons.

SAC ¶ 165.  Nothing else.  The SAC makes a bare assertion that "potential corporate control" was material to investors, but fails to plead any facts explaining (1) what it means by "potential corporate control"; (2) why "potential corporate control" would be important to investors; (3) why MGT would be particularly susceptible to manipulation; and (4) who the "undisclosed control person" is who should have been disclosed in the Form S-1 and Form 10-K (other than Barry Honig, whose identity *was* disclosed) and why disclosure of that identity would be important to investors.  The SEC's "bare assertion that it is obvious that a reasonable investor would find [certain factors] important" is insufficient to establish materiality.  *SEC v. Guenthner*, 395 F. Supp. 2d 835, 848 (D. Neb. 2005); *JP Morgan Chase*, 363 F. Supp. 2d at 626 (materiality "cannot be pled in conclusory or general fashion").

Indeed, the very disclosures of Mr. Honig's ownership of more than five percent of MGT's shares in the 2015 Form 10-K and November 6, 2015 Form S-1 make plain the glaring deficiencies in the SEC's conclusory materiality allegation.  *See* RJN Ex. B at 26-27; RJN Ex. A at 42; *see also supra* Section II.A (screenshots of relevant portions).  The SAC does not plead any facts explaining why the disclosure of the combined ownership of the other members of the alleged group would have been important to investors when the ownership stake of Mr. Honig, the so-called "primary strategist" of the alleged scheme, *see* SAC ¶ 2, *was* disclosed by MGT. The SAC's allegations relating to the existence and operation of the alleged group focus almost entirely on Mr. Honig's role and plainly describe him as the orchestrator.  *See, e.g.*, *id.* ¶¶ 135-39; *see also id.* ¶ 2.  The SEC's failure to plead any facts showing why the disclosure of Mr. Honig's "associates" would matter where Mr. Honig was the "primary strategist" of the group and the other alleged group members were passive participants is fatal for the SEC's claim.  *See, e.g.*, *id.* ¶¶ 2-4 (containing repeated references to "Honig and his associates").  Because the SEC has failed adequately to plead materiality, this Court should once again dismiss the SEC's fraud claims against Mr. Ladd as they relate to the 2015 Form 10-K and the November 6, 2015 Form S-1.

**B.      The SEC Fails to Plead Materiality and Scienter for its Fraud Claims Predicated on Forms Filed by Mr. Ladd and His Father**

In its new allegations, the SEC attempts to buttress its fraud claims by latching on to various forms Mr. Ladd filed regarding his (and his father's) trading in MGT.  *See* SAC ¶¶ 174-83.  The SEC bases its claims of fraud on allegations that Mr. Ladd (1) stated on his May 25, 2016 Form 144 that he intended to sell MGT stock that day, and omitted his MGT stock sales during the previous three months; (2) attested on a Form 4 filed May 31, 2016 that he sold 157,300 shares of MGT stock on May 25, 2016, over which he acknowledged beneficial

ownership, and omitted the additional shares purchased and sold in his accounts since the last Form 4 filing; (3) filed Forms 4 on October 7, 2015 and December 1, 2015 regarding his MGT stock transactions that omitted "over twelve" open market purchases of MGT stock between August 20, 2015 and December 1, 2015; and (4) stated on his father's Form 144 that his father had no relationship to MGT and did not disclose his own sales of MGT stock in the prior three months. *See id.* ¶¶ 247, 253.

But to allege fraud claims based on these forms, the SEC must plead how the alleged false statements and omissions in the forms were material. The SAC contains no allegations concerning the materiality of the specific alleged false statements and omissions in these five forms. *See* SAC ¶¶ 174-83. Instead, the SEC alleges generically that "[d]isclosure of an insider's purchases and sales gives investors an indication of the insider's private opinion as to the prospects of the company." *Id.* ¶ 52. This conclusory allegation fails, among other reasons, because it does not individually address any of the specific false statements at issue. *See JP Morgan Chase*, 363 F. Supp. 2d at 626 ("the materiality of the alleged misstatements or omissions cannot be pled in conclusory or general fashion"). The SEC must plead the materiality of each specific statement or omission at issue. *See Howard v. Hui*, 2001 WL 1159780, at *5 (N.D. Cal. Sept. 24, 2001) (holding that the complaint "does not include any allegations that suggest that the statement signed in conjunction with the sale is information that a reasonable investor would consider important"). Failure to do so requires dismissal for failure to state a claim. *See id.* ("Plaintiffs do not cite a single case to support their assertion that rule 144 statements can give rise to section 10(b) liability.").

Here, the SEC fails to specify (1) how any particular alleged false statement or omission on any particular form failed to give investors an indication of Mr. Ladd's "private opinion" as to

14

the prospects of MGT; (2) which investors that opinion would be important to; (3) why the filing

of the form itself, even if it was incomplete, would not be enough to give investors an indication

of Mr. Ladd's private opinion as to the prospects of the company; and (4) what the "private

opinion" was (e.g., was it positive or negative?) that was supposedly misrepresented or

concealed.  Without any such allegations of materiality, the SEC fails to state a claim of fraud

based on the five forms at issue.  *See JP Morgan Chase*, 363 F. Supp. 2d at 626 (an allegation of

materiality "must comply with the particularity requirements of Federal Rule of Civil Procedure

9(b)").

      The SEC similarly fails to plead scienter with respect to the five forms.  The SAC

contains no allegations that Mr. Ladd acted with scienter in making the alleged false statements

or omissions at issue.  While the SEC alleges false statements and omissions, it does not allege

fraudulent intent specific to each false statement or omission.  *See SEC v. Rio Tinto plc*, 2019

WL 1244933, at *13 (S.D.N.Y. Mar. 18, 2019) (the SEC must allege fraudulent intent "with

respect to each statement or omission").  For instance, the SAC does not include any allegations

surrounding the preparation of the various forms that would support a strong inference that Mr.

Ladd had the intent to deceive investors, let alone any plausible explanation for why he would

file disclosure forms at all if he intended to deceive.  *See, e.g.*, *SEC v. Lee*, 720 F. Supp. 2d 305,

335 (S.D.N.Y. 2010) (strong inference of scienter "must be 'cogent and at least as compelling as

any opposing inference of nonfraudulent intent'" (quoting *Tellabs*, 551 U.S. at 314)).  Without

any such allegations of scienter, the SAC fails to state a claim for fraud based on the five forms.

**C.    The SAC Fails to State a Fraud Claim in Connection with the Form 144 Filed on Behalf of Mr. Ladd's Father for Two Additional Reasons**

      The SEC also fails to state a fraud claim specifically in connection with the Form 144

that Mr. Ladd filed on behalf of his aging father for two additional reasons.  On May 10, 2016,

"at TD Ameritrade's request," Mr. Ladd submitted a Form 144 stating his father's intent to sell MGT shares from the TD Account.[2] SAC ¶ 175.  The SEC's fraud theory related to this Form 144 is defective, and indeed is at odds with the plain language of Rule 144, in two ways: (1) Mr. Ladd's father was not an affiliate of MGT within the meaning of Rule 144, and thus Mr. Ladd's statement that his father was not an affiliate on the Relative B Form 144 was accurate; and (2) for the same reason, Mr. Ladd was under no duty to disclose his own sales of MGT stock on the Relative B Form 144 under Rule 144(e)—namely, because his father was not an affiliate of MGT.[3]

### 1.     The Statutory Requirements that Apply to Rule 144 Filings

By way of background, Section 5 of the Securities Act generally prohibits the sale of unregistered securities unless an exemption exists.  *See* 15 U.S.C. § 77e(a).  One of the common exemptions allows for the sale of unregistered securities if they are effected by a person "other than an issuer, underwriter, or dealer."  *Id.* § 77d(a)(1).  Thus, "a transaction is exempt from

---

[2] As discussed below, Mr. Ladd's father, who was not an officer, director, or 10% shareholder of MGT and did not share a home with any such controlling person of MGT, would not be required to file a Form 144 for any sales of MGT stock, because any such sales were exempt without the need for Rule 144's safe harbor.  *See SEC v. Longfin Corp.*, 316 F. Supp. 3d 743, 757 (S.D.N.Y. 2018) (A transaction "is exempt from Section 5's requirements if it is a trade by an ordinary investor.").  Although the question of *why* the Form 144 was filed on behalf of Mr. Ladd's father if it was not required is not at issue in this case, the SAC provides some indication.  When Mr. Ladd and his parents executed a trading authorization for Mr. Ladd over the TD Account, TD Ameritrade (erroneously, as explained in this Motion) designated the TD Account as having "affiliate" status with respect to trading in MGT stock.  SAC ¶ 167.  Thus, TD Ameritrade's "policies and procedures," rather than any statutory or regulatory authority, required Mr. Ladd's parents to file a Form 144 for their sales of MGT stock.  *Id.* ¶ 174; *see also id.* ¶ 175 (noting that the Form 144 was filed "at TD Ameritrade's request").  Notably, the SEC does not allege otherwise.

[3] Mr. Ladd does not interpret any of the other claims in paragraphs 247 or 253, or the SEC's Section 5 claims in paragraphs 277 and 278, to be concerning his parents' account or his father's Form 144.  To the extent those claims are premised on his parents' account or his father's Form 144, however, the same arguments apply and the SEC has failed to state a claim.  *See, e.g.*, *SEC v. Mattera*, 2013 WL 6485949, at *9 (S.D.N.Y. Dec. 9, 2013) ("A defendant may rebut the SEC's prima facie case for a section 5 violation by proving the applicability of an exemption from registration." (citing *SEC v. Cavanagh*, 445 F.3d 105, 111 n.13 (2d Cir. 2006))).

Section 5's requirements if it is a trade by an ordinary investor rather than by an issuer, underwriter, or dealer." *SEC v. Longfin Corp.*, 316 F. Supp. 3d 743, 757 (S.D.N.Y. 2018).

An "underwriter"[4] is defined as "any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking."  15 U.S.C. § 77b(a)(11).  "In order to provide greater certainty and security to issuers and investors, the [SEC] has limited the definition of 'underwriter' to exclude any person who meets the requirements of the Rule 144 safe harbor."  *SEC v. Kern*, 425 F.3d 143, 148 (2d Cir. 2005) (citing 17 C.F.R. § 230.144(b)).  As relevant here, an "affiliate of the issuer" is exempt from the definition of an "underwriter," and thus can sell unregistered securities, if the affiliate meets the requirements of Rule 144, including the filing of a Form 144 to provide notice of a proposed sale.  *See* 17 C.F.R. §§ 230.144(b)(2), 230.144(h); *see also Longfin*, 316 F. Supp. 3d at 764 n.24 (noting the requirement to file "notice to the SEC on SEC Form 144 when an affiliate sells shares").

Rule 144(a)(1) defines an "affiliate of an issuer"—the individual who must file a Form 144—as "a *person* that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer."  17 C.F.R. § 230.144(a)(1) (emphasis added).  Although the "hallmarks of an affiliate status" are "officer, director, or 10% shareholder," *Longfin*, 316 F. Supp. 3d at 759,[5] Rule 144 defines the term "person," when "used

---

[4] The SEC does not allege that either Mr. Ladd or his father was an "issuer" or a "dealer."

[5] Thus, for instance, the SEC correctly alleges that Mr. Ladd, as an officer of MGT, would be required to file a Form 144 for his *own* sales of MGT stock.  *See* SAC ¶ 174 ("Under Securities Act Rule 144(h), as CEO and a director of [MGT], Ladd was required to file with the Commission a notification form.").

with reference to a person for whose account securities are to be sold in reliance upon" Rule 144,
to include "[a]ny relative or spouse of such person, or any relative of such spouse, any one of
whom *has the same home* as such person."  17 C.F.R. § 230.144(a)(2) (emphasis added).

### 2.    The SAC Fails to Allege Falsity in Connection with Mr. Ladd's Father's Form 144

The SAC fails to allege falsity in connection with the Form 144 describing the stock sales
of Mr. Ladd's father because the statement that Mr. Ladd's father had no relationship to MGT
was in fact true under Rule 144.  Question 2(b) on the Form 144 asks about the filer's
"Relationship to Issuer."  *See* RJN Ex. G.  As explained above, Rule 144 requires the filing of a
Form 144 to provide notice of a proposed sale by (1) affiliates of the issuer and (2) certain
individuals with close relationships to affiliates, including family members who share "the same
home" as affiliates.  17 C.F.R. §§ 230.144(a)(1), 230.144(a)(2).  Because Mr. Ladd's father did
not share a home with Mr. Ladd, his father had no legal relationship to MGT under Rule 144.
Accordingly, the answer to Question 2(b) of "NONE" was accurate.  *See* RJN Ex. G.  Mr. Ladd's
father did not have a relationship with MGT, either as an "affiliate" or as an individual who was
considered the same "person" as an affiliate under Rule 144.

Although the SEC relies on one *instruction* on the Form 144 to support its claim, *see*
SAC ¶ 175, that instruction is in fact inconsistent with Rule 144 and contradicted by another
instruction on the same form.  As the SEC notes, Form 144 contains an instruction for Question
2(b) (relationship to issuer), as shown below.

2. (a)  **Name of person for whose account the securities are to be sold**
   (b)  **Such person's relationship to the issuer (e.g., officer, director, 10% stockholder, or member of immediate family of any of the foregoing)**
   (c)  **Such person's address, including zip code**

*See* RJN Ex. G.  Although this instruction may be intended to elicit how the seller is an affiliate,
*see Longfin*, 316 F. Supp. 3d at 759 (listing the "hallmarks of an affiliate status" as "officer,

director, or 10% shareholder"), its examples diverge from the actual definition of "affiliate" set forth in Rule 144. It is likely that the instruction is simply a mistake. In fact, the Form also correctly directs the filer to the definition of "person" in Rule 144, as shown below.

**INSTRUCTIONS:**
See the definition of "person" in paragraph (a) of Rule 144. Information is to be given not only as to the person for whose account the securities are to be sold but also as to all other persons included in that definition. In addition, information shall be given as to sales by all persons whose sales are required by paragraph (e) of Rule 144 to be aggregated with sales for the account of the person filing this notice.

*See* RJN Ex. G. It thus makes clear that family members who do not share "the same home" as affiliates have no relationship to the issuer that must be disclosed. To the extent the instruction does not comport with Rule 144, however, the SEC's Form 144 cannot itself broaden the definition of "affiliate" set forth in Rule 144 to include relatives who do not share the same home as the affiliate. No matter what the instructions printed on the form say, if the SEC wishes to re-define the definition of an "affiliate" for purposes of Rule 144 compliance, it must promulgate a regulation through the notice and comment process set forth in the Administrative Procedure Act.

Under Rule 144, a relative is only considered an affiliate if he "has the same home" as an affiliate. 17 C.F.R. § 230.144(a)(2). SEC guidance on Rule 144 makes clear that the definition of "person" in Rule 144(a)(2) was not meant to "aggregate members of a family who are independent of the seller." Resales of Restricted and Other Securities, Release No. 6099, 17 SEC Docket 1422, 1979 WL 174360, at *3 (Aug. 2, 1979). Specifically, it does not include relatives "who have established permanent homes of their own." *Id.* Thus, the father of an officer of an issuer who had a permanent home of his own is *not* an affiliate under the SEC's rules and would not have any legally significant relationship to the issuer that would need to be disclosed on a Form 144. The SEC does not allege (nor could it) that Mr. Ladd resided in the

19

same home as his father.  Thus, in answering "NONE" to a question about "Relationship to Issuer" on the Relative B Form 144, Mr. Ladd answered truthfully under Rule 144, and as such he could not have violated the securities laws by submitting such a form.

*SEC v. Lyon* is instructive.  *See SEC v. Lyon*, 529 F. Supp. 2d 444 (S.D.N.Y. 2008).  In that case, the SEC charged defendants with making false representations that their investments were in compliance with Section 5 of the Securities Act.  *Id.* at 449.  The defendants moved to dismiss, arguing that their representations of Section 5 compliance were not false, because their short sales did not constitute a "distribution" under the Securities Act.  *Id.* at 449-50.  This Court agreed with their position, holding that the sales did not violate Section 5.  *Id.*  Because their sales did not violate Section 5, their pledge of compliance with Section 5 was not false and the SEC had failed to state a plausible fraud claim.  *Id.* at 450-51.  Here, the SEC charges Mr. Ladd with making a false representation about his father's relationship to MGT.  Because Mr. Ladd's father does not have a relationship to MGT as that relationship is defined under Rule 144, the SAC fails to state a plausible fraud claim on this basis.

### 3. Mr. Ladd Had No Duty to Disclose His Own Stock Sales on His Father's Form 144

The SEC's new theory that Mr. Ladd was required to disclose his own sales on his father's Form 144 is flat wrong and inconsistent with the SEC's regulations.  In relevant part, the SEC alleges that "Form 144 requires disclosures of all sales by persons whose sales are required to be aggregated under Rule 144(e), which, under Rule 144(e)(3)(vi) includes those who 'agree to act in concert for the purpose of selling securities of an issuer,' as Ladd and his [parents] had agreed to do" and that Mr. Ladd "failed to disclose any of the sales he had made in his own [] accounts in the prior three months" on the Relative B Form 144.  SAC ¶ 175.

Contrary to the SEC's theory, however, under Rule 144(e), Mr. Ladd did not have a duty to disclose his stock sales on his father's Form 144. Rule 144(e) provides limitations on the "amount of securities sold for the account of an affiliate of the issuer." 17 C.F.R. § 230.144(e). Rule 144(e)(3) provides several considerations for determining the amount of securities that are being sold. *Id.* § 230.144(e)(3). Relevant here, Rule 144(e)(3)(vi) provides that when "two or more affiliates or other persons agree to act in concert for the purpose of selling securities of an issuer, all securities of the same class sold for the account of all such persons during any three-month period shall be aggregated for the purpose of determining the limitation on the amount of securities sold."[6] *Id.* § 230.144(e)(3)(vi). "Prior to the 2007 amendments to Rule 144, aggregation of sales under Rule 144(e)(3)(vi) extended to both affiliates and non-affiliates." J. William Hicks, *Resales of Restricted Securities* § 4:225 (Feb. 2020 update). "But, as a result of the 2007 amendments, 'the volume limitations in Rule 144(e) would apply only to affiliates.'" *Id.* (quoting Revisions to Rules 144 and 145, Release No. 8869, 92 SEC Docket 110, 2007 WL 4270700, at n.157 (Dec. 6, 2007)). Thus, Rule 144(e)(3)(vi)'s duty to disclose "is limited to resales by *affiliates* who act in concert."[7] *Id.* (emphasis added).

---

[6] While the language of Rule 144(e)(3)(vi) says "affiliates or other persons," the term "person," when "used with reference to a person for whose account securities are to be sold in reliance upon" Rule 144, is limited to relatives who have "the same home" as affiliates. 17 C.F.R. § 230.144(a)(2). Because Mr. Ladd's father did not share a home with Mr. Ladd, he would not be considered an "other person" under the Rule such that the requirement to aggregate sales with Mr. Ladd would be triggered.

[7] A letter of comment on the 2007 Proposing Release by Sullivan & Cromwell LLP (Sept. 6, 2007), at page 5 offered a policy defense for such a limited interpretation of Rule 144(e)(3)(vi): "Since a non-affiliate is never subject to a volume constraint, it is unclear why a non-affiliate should effectively be subject to a volume limitation simply because he or she sells securities in concert with an affiliate. From a policy perspective, there is no avoidance or evasive issue with respect to coordinated sales between affiliates and non-affiliates since the non-affiliate securities may be sold into the market without limit and the affiliate is always subject to the applicable Rule 144(e) volume limit. Accordingly, in no case will additional securities enter the market through the coordinated sales effort than would have entered the market if the same transaction occurred in an uncoordinated manner." J. William Hicks, *Resales of Restricted Securities* § 4:225 n.3.

Here, because the SAC does not (and could not) plead that Mr. Ladd's father was an affiliate of MGT, it fails to allege that there was a duty for Mr. Ladd to disclose his sales.  As Section V.B.2 explains, an "affiliate of the issuer" is defined as an "officer, director, or 10% shareholder," *Longfin*, 316 F. Supp. 3d at 759, and, as relevant here, family members who share "the same home" as those individuals, 17 C.F.R. § 230.144(a)(2).  Thus, Mr. Ladd's father was *not* an affiliate under the SEC's rules.  Accordingly, Mr. Ladd was under no duty to disclose his sales on his father's Form 144.  Absent any such duty to disclose, this allegation cannot support a claim of fraud.

## VI.    CONCLUSION

For the foregoing reasons, Mr. Ladd respectfully requests that this Court dismiss the above-mentioned claims against him with prejudice pursuant to Rule 12(b)(6).

Dated:  April 30, 2020                                   Respectfully submitted,


/s/ Randall R. Lee
Randall R. Lee (*admitted pro hac vice*)
COOLEY LLP
1333 2nd Street
Santa Monica, CA 90401
randall.lee@cooley.com
Telephone: (310) 883-6485
Facsimile: (310) 883-6500

Christopher Johnstone (*admitted pro hac vice*)
WILMER CUTLER PICKERING HALE
     AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
chris.johnstone@wilmerhale.com
Telephone: (650) 858-6147
Facsimile: (650) 858-6100

*Attorneys for Defendant Robert Ladd*