UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,    :
                                       :
                       Plaintiff,      :
                                       :    18 Civ. 8175 (ER)
        – against –                    :
                                       :    ECF CASE
BARRY C. HONIG, ROBERT LADD,           :
ELLIOT MAZA, BRIAN KELLER,             :
JOHN H. FORD, GRQ CONSULTANTS, INC.    :
and HS CONTRARIAN INVESTMENTS, LLC,    :
                                       :
                       Defendants.     :
------------------------------------------------------------------------x

## DECLARATION OF NANCY A. BROWN

I, Nancy A. Brown, pursuant to 28 U.S.C. § 1746, under penalty of perjury, do hereby declare as follows:

1. I am employed as Senior Trial Counsel in the Enforcement Division in the New York Regional Office of Plaintiff Securities and Exchange Commission (the "Commission"). I submit this Declaration in support of the Commission's opposition to Defendant Robert Ladd's motion to compel the deposition of a Commission designee pursuant to Defendant's Rule 30(b)(6) Notice. I am fully familiar with the facts and circumstances herein.

Defendant's Failure to Meet and Confer in Good Faith

2. In response to Defendant's request for a date for the Rule 30(b)(6) Deposition of a Commission designee, my colleague, Commission Trial Counsel Jack Kaufman, sent an email to Defendant's counsel dated January 27, 2020, notifying them that the Commission objected on several grounds to the requested deposition (including relevance, and proportionality, and various privileges), providing numerous authorities for the Commission's objections, and asking for a meet and confer telephone call.

...

3.       On February 14, 2020, I and Mr. Kaufman participated in a telephonic meet and confer with Michael Berkovits and Chris Johnstone, counsel for Defendant, ostensibly to discuss Defendant's Rule 30(b)(6) Notice and other issues relating to discovery. That call began by Mr. Johnstone announcing that they had our position on the Rule 30(b)(6) Notice from Mr. Kaufman's January 27, 2020 email and saw no reason to discuss it further. Mr. Johnstone then steered the discussion to other matters.

The Commission's Efforts to Accommodate Defendant's Discovery Demands

4.       Defendant's Second Request for Production sought much of the information it now seeks by Rule 30(b)(6) Deposition, including internal and third-party communications the Commission staff has had regarding the interpretation and application of Section 13(d) of the Securities Exchange Act of 1934 and its "group" concept, the decision to issue or not to issue guidance regarding that provision, its public statements regarding its interpretation of that provision, communications with the New York Stock Exchange ("NYSE"), and internal communications among staff of the Commission's Division of Corporation Finance ("Corp. Fin.") about MGT filings. Compare Defendant's Second Request for the Production of Documents, (a true and correct copy of which is appended hereto as Exhibit A), Request No. 7 ("All documents and communications concerning issuing guidance, or concerning the decision not to issue guidance, concerning the interpretation of [various provisions of Section 13(d)]") with Defendant's 30(b)(6) Notice (appended as Exhibit A to the Declaration of Randall R. Lee, executed May 4, 2020 (DE 248), Topic No. 1 ("The issuance of guidance, or decision not to issue guidance, regarding [various provisions of Section (13(d)]").

5.       While challenging the relevance of all of these document requests, and noting that most intruded on the Commission's deliberative process, attorney client and other privileges and

protections, Commission counsel has strived to work with Defendant's counsel to provide them with relevant documents.

6. To that end, the Commission searched through six years of external emails of the staff members of Corp. Fin.'s Office of Mergers and Acquisitions ("OMA") — the Commission office charged with interpreting Section 13(d) and responding to public inquiries regarding its interpretation — using as search terms the relevant provisions of Section 13(d) and "group." As a result, on August 2, 2019, the Commission produced 94 documents to Defendant.

7. Defendant then insisted that the Commission search Corp. Fin.'s Office of the Chief Counsel for similar third party communications. The Commission again agreed, reserving its relevance and privilege objections, and on November 5, 2019, produced a thirty-page Corp. Fin. compilation of public inquiries to that office concerning the interpretation and application of Section 13(d).

8. Similarly, the Commission searched through five years of emails of both Corp. Fin. and the Division of Trading and Markets for any communications between those Divisions and the NYSE concerning MGT (from January 1, 2012 through October 31, 2016). As I reported to Defendant's counsel by letter dated October 2, 2019, that search produced no responsive documents.

9. On October 11, 2019, Defendant filed a pre-motion letter seeking permission to file a motion to compel the Commission to provide an itemized, document-by-document privilege log of all of its internal communications relating to its application and interpretation of Section 13(d). See Lee Letter, dated October 11, 2019 (DE 185). The Commission responded, noting that a search for "'13(d),' or '13(g)' or '13D' or '13G' and 'group'" from 2012 through September 7, 2018 produced 26,000 internal emails, a volume too burdensome to log one by one. Brown Letter, dated October 16, 2019, at 1 (DE 186).

10. The Court held a pre-motion conference on November 7, 2019. Prior to that conference, Defendant reached out to Commission counsel in an effort to come to some compromise of the issues detailed in his October 11, 2019 letter. At the November 7 conference, the parties reported that they were engaging in discussions on various topics, including new search terms designed to narrow the burden on the Commission, and for this reason, the Court reserved ruling on the Defendant's request for an itemized privilege log for those communications. Tr. at 8 (DE 198).

11. At that November 7, 2019 Conference, however, the Court did rule on the Defendant's request for production of all of the Commission's public statements regarding its interpretation of the various subsections of Section 13(d) and the Rules thereunder. The Court ruled that such a request was unduly burdensome. Tr. at 21 (DE 198) ("I find that that request, given the nature of the case, is too broad, too burdensome.").

12. After the conference, the parties again worked to find a compromise on the search Defendant demanded that the Commission conduct through Corp. Fin.'s communications. Ultimately, the Commission agreed to run the following new search terms through its Corp. Fin. database of emails for the period October 1, 2012 through May 31, 2016:

> (13(d) or 13(g) or 13D or 13G) and (group or partnership or syndicate or pool or "in concert") and (confusing or ambiguous or clarity or clear or unclear or disagree*) or ((minimal or little or paucity or absence) /5 guidance))

That effort required the Commission's IT staff to use its email search systems (which are different from typical document management systems) to run each individual search term, search term by search term, through the millions of records in its email database, a process that required coordination with other SEC offices to accommodate Commission-wide IT processing demands, and took considerable time to effect.

13. However, and as explained in my letter to Mr. Lee, dated April 22, 2020, (a true and correct copy of which is appended hereto as Exhibit B), Defendant's new search terms failed to narrow significantly the number of emails, returning 30,087 documents (or 88,899 documents when those documents are considered with their "families") — more than 23,000 of which are internal communications among Corp. Fin. staffers, or between Corp. Fin. staffers and domestic and foreign regulators and law enforcement agencies.

14. In response to my report to Defendant on the results of the application of their search terms, on May 20, 2020, Defendant's counsel returned with minor modifications to the searches, asking that we apply defense counsel's new search terms to the collection amassed by application of their broader terms. Having done so, the results are lower, but not significantly, still producing thousands of emails, most of which are internal. The modified search terms resulted in 16,480 emails (or 73,080 documents with associated families), of which 80%, or 13,130 emails, are internal.

15. To prepare a Commission witness for a Rule 30(b)(6) deposition, the Commission would have to review all 73,080 documents to ensure that privileged communications were not shared with the designated witness in the course of preparation. Thus, the Commission's task would be only slightly less burdensome than the preparation of an itemized privilege log and would consume, at the least, hundreds of hours of attorney time.

16. At the same time, because, among other reasons, Defendant's Rule 30(b)(6) Notice seeks testimony on "the issuance of guidance, or decision not to issue guidance" on the various subsections of Section 13(d), many of the 13,130 internal emails (and their associated families) are likely to be privileged. If Corp. Fin. staffers debated the wisdom or utility of issuing guidance on Section 13(d), those communications are deliberative and pre-decisional. To the extent any of the 13,130 internal emails includes recommendations made to the Commission, or any of

Commissioners' counsel, to issue or not issue guidance, they would also be covered by the attorney client privilege.  And emails between the Commission staff and other regulators (both domestic and foreign), also included in the 13,130 emails results, are also likely to be privileged, under the common interest, law-enforcement privilege and the deliberative process privilege.

Defendant's Subpoena to the USAO-NDCA for 302s

17.   On August 30, 2019, Defendant served a Rule 45 document subpoena on the United States Attorney's Office for the Northern District of California (the "DOJ"), seeking all 302s concerning the "individuals, entities, or events described in [the Commission's] Complaint . . .; [and] that reflect interviews which the Securities and Exchange Commission attended."  A true and correct copy of that Subpoena (redacted to shield the identity of the proffer witnesses) is appended hereto as Exhibit C.

18.   I understand that Defendant and the DOJ came to an understanding by which the DOJ agreed to provide most of the 302s to the Commission for production to Defendant, pursuant to a Stipulation of confidentiality between DOJ and Defendant.  On November 18, 2019, the Commission produced to Defendant all of the 302s that DOJ provided to the Commission.

19.   I further understand that Defendant agreed with the DOJ that the DOJ would not provide the Commission with any 302s of Defendant Barry Honig's proffers, if any, other than the 302 of Honig's April 23, 2019 proffer. Consequently, the Commission has produced to Defendant all 302s in its possession.

The Commission's Production of Notes of Its Interview with Honig

20.   On March 2, 2020, the Commission produced to Defendant its notes of an interview that Commission counsel conducted of Honig (at which the DOJ was not present).  The Commission produced those notes, however, after Defendant's counsel agreed on February 24, 2020

not to argue that the Commission's production of those notes waived the Commission's claims of privilege.

Case Law on Exchange Act 13(d) and "Group"

21. On May 28, 2020, I performed a Westlaw search for cases in the Securities Law library of Westlaw in which the term "13(d)" appeared in the same paragraph as "group." That search produced 331 federal securities cases, including one decided on May 20, 2020 by the Second Circuit, Rubenstein v. Int'l Value Advisers, LLC, __ F.3d __, 2020 WL 2549507 (2d Cir. May 20, 2020).

Pursuant to 28 U.S.C. § 1746, I declare that the foregoing is true and correct.

Dated: New York, New York
       June 3, 2020

                                               s/   Nancy A. Brown
                                                    Nancy A. Brown