UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION


                        Plaintiff,                              Case No. 1:18-cv-08175-ER

v.


BARRY C. HONIG,
*et al.*


                        Defendants.
----------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
ROBERT LADD'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................i-ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................3

   I.    The SEC Has Not Cured Its Defective "True Extent" Theory ............................................3

   II.   The SAC's Generic "Materiality Concepts" Referenced In Paragraph 165 Do Not
       Adequately Allege Materiality Related to the Forms 10-K and S-1 ...................................4

   III.  The SAC Includes No Allegations of Materiality or Scienter With Respect to Ladd's
       Form 144 or Form 4 or Ladd's Father's Form 144 .............................................................5

   IV.  The SEC Essentially Acknowledges Its "Immediate Family Member" Theory Is
       Defective, and Its Reformulated "Acting in Concert" Theory Does Not Salvage Its
       Claims Related to Ladd's Father's Form 144 .....................................................................8

CONCLUSION........................................................................................................................10

# TABLE OF AUTHORITIES

*Basic, Inc. v. Levinson*,
   485 U.S. 224 (1988)...................................................................................................4

*In re Zagg*,
   797 F.3d 1194, 1201 (10th Cir. 2015) ......................................................................8

*Roanoke Tech.*,
   2006 WL 2470329 ......................................................................................................5

*SEC v. Fraser*,
   2009 WL 2450508 (D. Ariz. Aug. 11, 2009)............................................................6

*SEC v. Patel*,
   2009 WL 2015794 (D.N.H. July 7, 2009) ................................................................6

*SEC v. Roanoke Tech. Corp.*,
   2006 WL 2470329 (M.D. Fla. Aug. 24, 2006) .........................................................4

*SEC v. Takeyasu*,
   2018 WL 2849777 (S.D.N.Y. June 11, 2018) ..........................................................8


Statutes:

Rule 144(e)(3)(vi) .................................................................................................................2

17 C.F.R. § 230.144(a)(2).....................................................................................................9

Defendant Robert Ladd ("Ladd") submits the following reply memorandum of law in further support of his motion to dismiss the Securities and Exchange Commission's Second Amended Complaint (the "SAC"), pursuant to F.R.C.P. 12(b)(6), for failure to state a claim on which relief may be granted.

**INTRODUCTION**

The SEC's opposition brief conspicuously fails to address the reasons given by the Court for dismissing the core allegations and claims in the First Amended Complaint (the "FAC") as highlighted in Ladd's opening memorandum.  Instead, the SEC satisfies itself by merely reciting statutory language, thus, falling woefully short of addressing the SAC's legal deficiencies. Significantly, the SAC fails to correct the SEC's defective "true extent" theory, which seeks to impose liability on Ladd for failing to disclose the "true extent" of the holdings of investors.

Regarding the "group" claim, the SEC fails to come to terms with Rule 9(b)'s requirement that it alleges materiality with particularity.  Instead, the SEC points this Court to only two paragraphs alleging "that such information is material to investors." Opp. pg. 8.  First, the SEC references paragraph 56, but this paragraph does no more than generically describe the reasons behind "Item 403 of Regulation S-K and other federal securities law provisions," which are intended "to protect investors."  *Id.* Second, the SEC points the Court to paragraph 165.  But this paragraph, too, merely recites generic and conclusory reasons, claiming that "[MGT's] Form S-1 and Form 10-K [] hid from [MGT] investors material information regarding potential corporate control" and "microcap issuers…are particularly susceptible to manipulation." *Id.* True, the SAC sets forth the purpose of that law, suggests which industries are "particularly susceptible to manipulation," and notes that investors—in general—are concerned with the nebulous and noticeably undefined concept of "potential corporate control."  But, even assuming

the SAC sufficiently alleges the "group" disclosure *could have been material*, it forgets to offer

reasons why it *actually was material*.  This failure is fatal.

More egregiously, the SEC's opposition does not point to a single allegation in support of

its claim that the alleged omissions and misstatements in the Form 144 and Form 4 were

material.  Rather, it makes a purely circular argument: since "Forms 144 assist the SEC in

monitoring Rule 144 stock sales," any required disclosure must be material or the form would

not require it.  Opp. pg. 20.  Noticeably, the SEC points to no legal support for the proposition

that information required in SEC Forms 144 or 4 is, as a matter of law, a material omission for

purposes of a fraud claim.  The SEC cannot even articulate what facts support its belief these

statements and omissions were material, let alone *with particularity* that would allow the Court

to determine whether the facts are sufficient to support the belief they were fraudulent.  Opp. pg.

19–20.

As a final point in reply, the SEC was unable to allege an actual violation related to

Ladd's father's filings.  So, it now tries to move the target.  In the SAC, these allegations rely on

the incorrect premise that Ladd's father had a disclosure obligation "because of Affiliate status,"

since he was "an immediate member of Ladd's family."  SAC ¶ 176; Opp. pg. 16 n.9; Mem. pgs.

18–19, 22.  But as Ladd pointed out in his opening brief, the SEC's position conflicts with Rule

144(e)(3), which imposes no statutory disclosure requirement on Ladd's father; since Ladd's

father did not live in the same house, he is not defined under Rule 144(e)(3) as an "immediate

member of Ladd's family."  Mem. pgs. 18–19, 22.  Confronted with the legally flawed premise

of its argument, the SEC now maintains, "mistake or not" (Opp. pg. 16 n.9), that Ladd's father's

"disclosure" obligation arose for a different reason: namely, because Ladd and his father "were

acting in concert under Rule 144(e)(3)(vi)."  Opp. pg. 13 (internal quotation marks omitted).  As

explained more fully below, this change in position fails for two reasons: First, the SAC does not contain these allegations, and second, the new provision now being relied on is inapposite, as it addresses aggregation of shares for determining volume limitations, *not disclosure obligations*. The SEC's new pleading, like the old one, remains patently defective.

## ARGUMENT

### I.    The SEC Has Not Cured Its Defective "True Extent" Theory

The SEC urges the Court to reverse course and find the SEC has cured its defective "true extent" theory by including new allegations concerning "MGT's regulatory disclosure obligations."  Opp. pg. 6.  The SEC directs the Court to ¶¶ 51, 163, and 164, arguing that its reference to Item 403 disclosure requirements in the Form S-1 and Form 10-K corrects the deficiencies that caused the Court previously to dismiss this claim.  *Id.*  To this end, the SEC argues that its claim that Ladd was obligated to yet failed to "disclose the 'true extent' of the Honig Group's MGT share ownership" is a "broad allegation in the SAC's final 'claims' paragraphs (¶¶ 247, 253) [that] does not negate the specific, new SAC allegations contained in the earlier factual paragraphs…."  Opp. pg. 7.

In other words, the SEC relies on the same theory put forth in the FAC, which the Court previously dismissed as defective.  Specifically, ¶¶ 247 and 253 seek to impose liability on Ladd for failing to disclose the "true extent" of the holdings of investors.  But no such requirement exists under any provision of the securities laws.  Ladd was required to disclose the holdings of certain investors, and he did.  The SEC had the opportunity to cure its defective pleading, and instead chose to double down, seeking to premise liability in Counts V and VI on Ladd's purportedly "knowingly or recklessly failing to disclose the true extent of the stock ownership of Honig, Brauser, Stetson, O'Rourke and other affiliates…."  Cmplt. ¶ 247; *see also* ¶¶ 226, 236,

248, 253, 254, 258, 259, 263, and 264 (alleging in each paragraph the SEC's "true extent" theory).  The SEC's reference to Item 403 and other noticeably unidentified "specific, new allegations" does not make the "true extent" claims viable.  Indeed, the factual allegations underlying the "true extent" claims are exactly the same in the SAC as in the FAC.  The SEC was given the opportunity to cure this defect, if it could, yet failed to do so.

**II.    The SAC's Generic "Materiality Concepts" Referenced in Paragraph 165 Do Not Adequately Allege Materiality Related to the Forms 10-K and S-1**

According to the SEC, it "alleges the materiality of Ladd's false statements and omissions in two distinct ways."  Opp. pg. 8.  Specifically, it suggests that (1) "*such information is material to investors in* any *public company to help them determine who actually controls the company*" and (2) "for investors in microcap issuers such as MGT, *such information* is particularly important to help ferret out *potential stock manipulation schemes*."  Opp. pg. 8 (emphasis added).  In other words, the SEC does not allege that Ladd's purported statements and omissions were **actually material**, but rather were **potentially material** based on hypothetical concerns about "potential corporate control" and generalities about "microcap issuers'" "potential stock manipulation schemes."  For this reason, the SAC fails to allege materiality.

For this claim to survive, the SEC must allege that the specific purported statements or omissions at issue are material, not merely that *such information could potentially be material*. *See, e.g.*, *SEC v. Roanoke Tech. Corp.*, 2006 WL 2470329, at \*4 (M.D. Fla. Aug. 24, 2006) ("While it is clearly possible that an omitted fact might be material even if it does not directly impact the value of the company's stock, the SEC has failed to show that such is the case here.").  Indeed, the Supreme Court has stated that to raise a "plausible inference" that a "group" potentially could have had "corporate control," the SEC was required to allege a high "indicated probability that [it] would occur." *See Basic, Inc. v. Levinson*, 485 U.S. 224, 238 (1988).

4

Both the allegations in the SAC as well as judicially noticeable facts contradict the notion that the alleged "group," led by Honig, probably would have taken control of MGT.  It bears repeating that the SAC alleges that "Honig was the primary architect of the three schemes," conceding that MGT's Form 8-K disclosed that the "investment was led by Barry Honig."  SAC ¶¶ 61, 137.  Yet, as the SEC knows, Honig *sued* Ladd and MGT in March 2017, alleging that "Ladd and MGT" took actions to and did "maintain *their control*…of MGT's management…." *Honig v. Ladd, et al.*, No. 1:17-cv-184, Dkt. 1., ¶ 4 (March 3, 2017).  Honig brought another suit against MGT, Ladd, and McAfee, among others, alleging in detail how Honig lacked any control of MGT and this lack of control allegedly cost Honig and others $45 million in purported profit. *See ATG Capital, et al. v. MGT Capital Invs., Inc., et al.*, No. 1:17-cv-02440, Dkt. 1 (S.D.N.Y. April 4, 2017).  So much for the probability that Honig, acting through the "group," would have taken control of the company.

The problem with the SEC's theory becomes plain: while it alleges that the "group" omission could have been material because it could have informed investors about "potential corporate control," it fails because the "group" did not exercise actual control, nor was a high probability indicated that the "group" would do so.  This renders the purported omission immaterial as a matter of law.  *See Roanoke Tech.*, 2006 WL 2470329, at *4 ("Instead of explaining *how* the omitted information was material…the SEC has simply stated that the information was material *because* the reasonable investor would have wanted to know about it. This is not sufficient.") (emphasis original).  The Court should dismiss the "group" claim based on the SEC's failure to allege with particularity that this alleged omission was material.

III.    **The SAC Includes No Allegations of Materiality or Scienter With Respect to Ladd's Form 144 or Form 4 or Ladd's Father's Form 144**

Neither the SAC nor the SEC's opposition brief make any attempt to set forth why the alleged misstatements in Ladd's and Ladd's father's Form filings are material to investors. Instead, the SEC sets forth a purely circular argument as to why the purported Form 144 and Form 4 statements and omissions were material.  It argues that "Forms 144 assist the SEC in monitoring Rule 144 stock sales of company insiders," and thus, "as a matter of law, accurate and timely Form 4 filings by public company officers…are material to investors and potential investors."  Opp. pgs. 12, 20, 24.  The SEC fails to allege why *these particular* purported statements and omissions were material, and instead asks the Court to hold that *any* omission in a Form 144 or Form 4 is *de jure* material and, therefore, can form the basis of a fraud claim.  If the SEC's position is correct, then every filing with an error can form the basis of a fraud claim, eviscerating the statutes' materiality requirement.  This novel argument has not found traction in any other court.

The Court should reject these extreme positions for legal and factual reasons.  As a legal matter, Rule 9(b)'s particularity requirement prohibits the SEC from relying on "vague" and "nebulous" assertions when alleging materiality.  *SEC v. Fraser*, 2009 WL 2450508, at *8, 16 (D. Ariz. Aug. 11, 2009).  Indeed, Rule 9(b) requires the SEC to "state particularized theories of liability against specific defendants," rather than generalized conclusions that merely reiterate the purpose of the securities laws, *SEC v. Patel*, 2009 WL 2015794, at *1 (D.N.H. July 7, 2009), which is precisely what the SEC has done here.  A finding to the contrary would negate Rule 9(b)'s particularity requirement.

The SEC's materiality arguments fail as a factual matter as well.  The SEC argues that Ladd filed false forms to avoid "stock trading volume limitations."  Opp. pg. 19, 24.  According

to the SEC, Ladd did not file his Form 144 (regarding stock sales on May 9 through 12) until "two weeks later on May 25."  Opp. pg. 4, 19, 24.  The SEC puts forth the same claim regarding Ladd's father's Form 144. ("Thus, all of the Rule's requirements, including the accurate completion of the Form 144 and the volume limitations, were directly applicable to Seymour's sales….")  Opp. pg. 18.  Thus, the gravamen of the SEC's accusation is that "Ladd filled out, executed, and submitted false SEC Forms 144 and Form 4 regarding his May 9–12 MGT stock sales in his and his father's accounts…to avoid certain stock sale volume restrictions applicable to him as MGT's CEO."  Opp. pg. 4.

But even assuming that Ladd filed false forms to avoid certain stock sale volume restrictions (he did not), Ladd's (and his father's) stock sales from May 9–12 (disclosed in their entirety thirteen days later on May 25 in Ladd's Form 144) *were not material*.  The trouble with the SEC's theory is that investor conduct and MGT's stock price undermine it.  Critically, as of May 13, 2016, MGT shares were valued at $1.72.[1]  If the SEC is correct that investors would have viewed these sales as "potential 'abuse' of a public company officer's trading on 'insider information'" and would have given "investors important information about how an insider views the company's prospects" (Opp. pg. 23), the market for MGT shares as well as their price should have decreased following Ladd's May 25, 2016 disclosure of his (and his father's) sales.

The opposite happened.  MGT shares continued to increase in price following Ladd's sales *and his disclosure of these sales*.  On May 27, 2016, MGT stock closed at $2.35.  In the following two months MGT stock experienced a nearly 200% increase, closing at $4.29 on July 8, 2016.  The stock did not close at below $1.72, the May 13, 2016 share price, until October 7,

---

[1] *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000) (finding courts "may take judicial notice of well-publicized stock prices….").  Stock prices cited herein were obtained from www.finance.yahoo.com.

2016.  By that time, investors had known about Ladd's and his father's sales for five months, a time period that reflected trading in MGT stock of approximately 500 million shares.  In other words, after Ladd disclosed his sales, reasonable investors arrived at the opposite conclusion of that urged by the SEC: the stock was *more valuable* than when Ladd had sold his shares.  This undermines the notion that a reasonable investor would have viewed these sales as "an indication of [Ladd's] private opinion as to the prospects of the company."  Opp. pg. 23.

The SEC's theory on scienter is equally dubious.  The SEC claims that Ladd's "false" forms evince a "reckless disregard for the truth."  Opp. pg. 24.  But this argument completely misperceives the law, which concerns itself with a "defendant's intent to deceive or defraud," and permits establishing scienter through recklessness only under extremely limited circumstances.  *See In re Zagg*, 797 F.3d 1194, 1201 (10th Cir. 2015).  As several courts have explained, "[r]ecklessness in the context of securities fraud is a high bar," and is "defined by conduct that is an extreme departure from the standards of ordinary care, and which presents *a danger of misleading buyers or sellers* that is either known to the defendant or so obvious that the actor must have been aware of it."  *See id.* (emphasis added).  That is, to properly bring a fraud claim the SEC must allege **"conscious disregard" that investors would be deceived or misled by the misstatement or omission**, not merely a "reckless disregard for the truth" or for SEC filing requirements, which is all that the SEC alleges here.  *See* Opp. pg. 24.

For this reason alone, the SEC has not properly alleged scienter.  Simply put, the SEC's belief that Ladd was "reckless" in failing to make timely filings or as to their "truth" does not support the inference that Ladd was reckless in his disregard of the danger that investors would be "deceive[d] or defraud[ed]" by those filings or the statements or omissions contained therein. *See SEC v. Takeyasu*, 2018 WL 2849777, at \*17 (S.D.N.Y. June 11, 2018) (finding "inference of

scienter" must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged"). The SAC falls woefully short of alleging materiality and scienter as to the Forms 144 and Form 4.

### IV. The SEC Essentially Acknowledges Its "Immediate Family Member" Theory Is Defective, and Its Reformulated "Acting in Concert" Theory Does Not Salvage Its Claims Related to Ladd's Father's Form 144

The SEC all but concedes that Form 144 contains a "mistake," but still seeks to impose *fraud liability on Ladd* for his father's filing not disclosing that he was "a member of [Ladd's] immediate family," even though Ladd fully disclosed his father's sales in Ladd's Form 144. Opp. pg. 16 n.9. As set forth in Ladd's opening memorandum, the SAC fails because the securities laws do not require such a disclosure, and even if they did, any such omission was entirely immaterial because Ladd's own filed Form 144 disclosed his father's sales. Mem. pg. 18–22.

The SEC, desperate to save its position, now argues for the first time that Ladd's disclosure obligation arose "because he and [his] father were acting in concert." Opp. pgs. 12–13. But this argument muddles concepts. The "acting in concert" provision referenced by the SEC is relevant only to "determin[ing] whether [Ladd's] sales exceed Rule 144(e)'s volume limitations" (Opp. pg. 13), without answering the antecedent question of whether Ladd's father had an obligation to disclose the transaction. Accordingly, none of the SEC's allegations of acting in concert would establish Ladd's father's obligation to report the transactions, even if the allegations were true. Having confused the issue, the SEC falls back on its position that "[i]n any event, [Ladd's father] was deemed an MGT affiliate by operation of law…." Opp. pg. 16.

For all its work conflating provisions and confusing arguments, the SEC has failed to address squarely Ladd's argument that the securities law would have required the "affiliate"

disclosure *only if* he was living in the same house as Ladd, which he indisputably was not.  *See*

17 C.F.R. § 230.144(a)(2).  For this reason, neither Ladd nor his father were under any obligation

to make these disclosures on his father's Form 144.  And of course Ladd's father's stock sales

were all fully disclosed in Ladd's Form 144 on May 25, so the public was fully informed of these

sales.  It speaks volumes as to the inadequacy of the SEC's case against Ladd that it seeks to

premise *fraud* claims against him on such a precarious foundation.  The new counts against Ladd

based on his and his father's forms all fail as a matter of law.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Ladd's opening memorandum of

law, Ladd respectfully requests the Court dismiss the above-mentioned claims against him with

prejudice, pursuant to Rule 12(b)(6), and award any other relief deemed just and proper.


Dated:   July 10, 2020                                    Respectfully submitted,

                                                          FORD O'BRIEN, LLP


                                                          _____
                                                          Adam C. Ford, Esq.
                                                          Matthew A. Ford, Esq.
                                                          Kevin J. O'Brien, Esq.
                                                          575 Fifth Ave, Fl. 17
                                                          New York, NY 10017
                                                          Tel: (212) 858-0040
                                                          aford@fordobrien.com
                                                          mford@fordobrien.com
                                                          kobrien@fordobrien.com