

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NEW YORK
REGIONAL OFFICE

January 8, 2021

**VIA ECF**
The Honorable Edgardo Ramos
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY  10007

      Re:    <u>SEC v. Honig, No. 18 Civ. 8175 (ER) (S.D.N.Y.)</u>

Dear Judge Ramos:

      Pursuant to the Court's Individual Practice Rule 2.A.ii., Plaintiff Securities and Exchange Commission ("SEC") respectfully requests a pre-motion conference regarding its proposed motion for partial summary judgment against Robert Ladd ("Ladd"), the sole Defendant in this case whose liability remains in dispute.[1] The SEC's proposed motion concerns only the SEC's non-fraud, strict-liability claims against Ladd in this case — under Section 5 of the Securities Act of 1933 ("Securities Act") and Sections 13(d) and 16(a) of the Securities Exchange Act of 1934 ("Exchange Act") (and Rules 13d-2 and 16a-3 thereunder) — as to which no material fact dispute exists. The SEC has conferred with Ladd's counsel, who objects to the SEC's proposed motion at this juncture.

**I.**      **Procedural History**

      The SEC filed this case on September 7, 2018, charging Ladd with participating in fraudulent pump-and-dump schemes regarding the stock of MGT Capital Investments, Inc. ("MGT"), for which Ladd served as chief executive officer and director. On March 8, 2019, the SEC filed its Amended Complaint, which Ladd moved to dismiss. On February 25, 2020, the Court denied Ladd's motion in part, granting the SEC leave to re-plead certain claims. On March 16, 2020, the SEC filed its Second Amended Complaint ("SAC") (DE 233), which maintained the SEC's original fraud claims and added new claims against Ladd, including strict-liability claims under Securities Act Section 5 and Exchange Act Sections 13(d) and 16(a). On April 30, 2020, Ladd moved to dismiss the fraud claims but not the strict-liability claims (DE 241-242). Ladd's Answer will be due upon resolution of his pending motion to dismiss.

      Under the June 10, 2020 Amended Scheduling Order (DE 263), fact discovery closed on November 23, 2020, subject only to potential additional SEC discovery

---

[1]      The SEC has fully settled its claims against several other Defendants in this case and has partially settled its claims against the remaining Defendants (leaving open only certain relief issues).

concerning any defense Ladd might assert in his Answer.[2]

## II. The SEC's Proposed Motion for Partial Summary Judgment

The SEC proposes seeking partial summary judgment as to only liability against Ladd regarding the claims under Securities Act Section 5 (SAC Claim for Relief 11) and Exchange Act Sections 13(d) and 16(a) and Rules 13d-2 and 16a-3 thereunder (SAC Claims for Relief 13 and 17). Because these strict-liability claims do not require proof of Ladd's knowledge or intent — and because no material fact dispute otherwise exists regarding them — they are particularly appropriate for summary judgment, and their resolution now will streamline the trial.

### A. Ladd Violated Securities Act Section 5.

The SEC claims that, from May 9-12, 2016, Ladd violated Section 5 by engaging in a series of MGT stock sales for which no registration statement existed and as to which no exemption from registration applied. Section 5 protects potential investors by requiring stock sellers to file with the SEC a pre-sale registration statement containing disclosures regarding the proposed sale and the company that issued the securities. *See SEC v. Caledonian Bank Ltd.*, 145 F. Supp. 3d 290, 305 (S.D.N.Y. 2015). To make out its *prima facie* Section 5 case, the SEC need only establish that Ladd engaged in an unregistered stock sale and made use of interstate commerce means such as telephone or email. *See SEC v. Sayid*, 17-cv-2630 (JFK), 2019 WL 6307367, at *4 (S.D.N.Y. Nov. 25, 2019). The SEC need not establish Ladd's scienter because "Section 5 imposes strict liability on . . . sellers of unregistered securities regardless of any degree of fault, negligence or intent on the seller's part." *SEC v. Bronson*, 14 F. Supp. 3d 402, 408 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).

No genuine dispute exists that, from May 9-12, 2016, Ladd sold a total of 435,000 MGT shares from his E*TRADE account (and received sale proceeds of $414,448.39), and that no registration statement existed for those sales.[3] These indisputable facts establish the SEC's *prima facie* Section 5 claim against Ladd.[4]

Once the SEC establishes its *prima facie* case, the burden shifts to Ladd to prove an applicable Section 5 exemption from registration. *See SEC v. Longfin Corp.*, 316 F.

---

[2] Neither party identified an expert by the December 14, 2020 deadline set forth in the Scheduling Order. Accordingly, no need currently exists for expert discovery, subject to any expert discovery necessitated by any defenses Ladd's Answer asserts.

[3] As the SAC alleges, Ladd's May 2016 stock sales were the final step in his and his co-Defendants' fraudulent MGT pump-and-dump scheme. Ladd facilitated the scheme through his issuance of a materially false May 9, 2016 press release — designed to pump up artificially MGT's stock price — followed immediately by Ladd's (and other Defendants') large MGT stock sales.

[4] In addition to Ladd's MGT stock sales from his E*TRADE account, the SAC alleges that, during the same time period, Ladd further violated Section 5 by selling an additional 340,000 MGT shares from his parents' trading account — over which Ladd possessed trading authority and for which Ladd received from his parents $325,000 of the sale proceeds. The SEC's proposed summary judgment motion would not include Ladd's stock sales in his parents' account.

Supp. 3d 743, 756 (S.D.N.Y. 2018). For his May 2016 MGT stock sales, Ladd purported to rely on the "safe harbor" exemption of Securities Act Rule 144. As a matter of law, however, Ladd could not rely on that exemption because the 435,000 MGT shares he sold exceeded Rule 144's trading-volume limitation for company officers such as Ladd.[5] Moreover, no other registration exemption applied to Ladd's May 2016 MGT stock sales. Thus, summary judgment is appropriate on the SEC's Section 5 claim against Ladd.

### B.    Ladd Violated Exchange Act Sections 13(d) and 16(a).

In addition to his Section 5 violations, no genuine dispute exists that Ladd violated Sections 13(d) and 16(a), and Rules 13d-2 and 16a-3 thereunder, by failing to file certain required reports with the SEC regarding his MGT stock purchases and sales in 2015 to 2016. Like Section 5, Sections 13(d) and 16(a) are strict-liability provisions and, thus, do not require the SEC to prove Ladd's knowledge or intent. *See SEC v. E-Smart Tech., Inc.,* 82 F. Supp. 3d 97, 104 (D.D.C. 2015); *SEC v. Verdiramo*, 890 F. Supp. 2d 257, 274 n.14 (S.D.N.Y. 2011).

Under Section 16(a) and Rule 16a-3 thereunder, MGT's officers (including Ladd) were required periodically to file certain forms with the SEC disclosing any purchases or sales of MGT stock. No dispute exists that Ladd failed to disclose a series of open-market MGT stock purchases and sales he made in his own brokerage accounts in 2015 and 2016. Thus, summary judgment is appropriate against Ladd on these claims.

Section 13(d)(1) required Ladd to file with the SEC a Schedule 13D regarding his beneficial ownership of 5% or more of MGT stock within 10 days of acquiring that stock. Section 13(d)(2) and Rule 13d-2(a) thereunder further required Ladd to file "promptly" amended Schedules 13D regarding any material changes to the prior disclosures he had made. Under Rule 13d-2, such a "material" change included Ladd's purchase or sale of 1% or more of MGT stock. According to MGT's SEC filings, as of April 11, 2016 at the latest, Ladd beneficially owned 5% of MGT's stock. Furthermore, no dispute exists that, from May 9-12, 2016, Ladd sold 2.6% of MGT's outstanding shares when he sold 435,000 MGT shares through his own brokerage account. Because no dispute exists that Ladd failed to file the requisite Schedule 13D or amendment regarding those sales, summary judgment against Ladd regarding the SEC's Section 13(d) claim is appropriate as well.

> Respectfully submitted,
> */s/ Jack Kaufman*
> Jack Kaufman
> Senior Trial Counsel

cc:    All defense counsel of record (by ECF).

---

[5]    Under Rule 144(e), Ladd's May 9-12, 2016 sales could not exceed the greater of: (a) 1% of MGT's reported stock outstanding; or (b) the stock's average weekly trading volume during the four calendar weeks preceding May 9, 2016. Ladd's sale of 435,000 shares exceeded both 1% of MGT's outstanding shares (180,982) and MGT's average weekly trading volume during that four-week period (392,109 shares).