

January 14, 2021

**VIA ECF**
The Honorable Edgardo Ramos
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: <u>SEC v. Honig, No. 18 Civ. 8175 (ER) (S.D.N.Y.)</u>

Dear Judge Ramos:

      Defendant Robert Ladd writes to oppose the U.S. Securities and Exchange Commission's ("SEC's") request, by letter dated January 8, 2021 (Dkt. No. 271), for a pre-motion conference on its proposed motion for partial summary judgment. The proposed summary judgment motion is premature and it is based on factual and legal errors that would doom such a motion were it to be brought.

      The SEC's proposed motion is premature because another motion – Mr. Ladd's motion to dismiss the fraud-based claims in the Second Amended Complaint ("SAC"), filed on April 30, 2020 (Dkt. Nos. 241, 266) – is pending before the Court. While the earlier-filed motion is not directed to the non-fraud, strict liability claims on which the SEC hopes to move for summary judgment, there is a significant overlap between the two. As the SEC alleges in its letter, the May 2016 stock sales that are the subject of its proposed motion are *also* "the final step in his and his co-Defendants' fraudulent MGT pump and dump scheme." (Ltr. at fn. 3.) Since Mr. Ladd's motion to dismiss would excise the allegations of this "scheme" from the SAC – because, among other reasons, it does not sufficiently allege that Mr. Ladd knowingly did anything wrong in transacting these sales – it makes no sense to proceed with a summary judgment motion that rests on the same transactions. Mr. Ladd's motion to dismiss should logically be decided first.

      Moreover, the two non-fraud claims that the SEC asserts are ripe for summary judgment are in fact materially incorrect and therefore cannot be the basis for summary judgment at all.

      First, the SEC's allegations under Securities Act Section 5 run afoul of the fact that Mr. Ladd's sales were within the trading-volume limitations of Securities Act Rule 144, and therefore qualified for the "safe harbor" exemption of that rule.

      Rule 144 permits public resales of "restricted securities" without registration under Section 5 of the Securities Act. Under Rule 144(e), Mr. Ladd's sales of MGT stock could not

exceed the greater of (a) 1% of MGT's reported stock outstanding; or (b) the stock's average weekly trading volume, during the four calendar weeks preceding the filing of the Form 144. Here, Mr. Ladd's sales did not exceed the greater amount. The SEC incorrectly asserts that MGT's average weekly trading volume for the four proceeding weeks was 392,109 because the relevant four weeks are those that precede May 9, 2016.  However, Mr. Ladd filed his Form 144 on *May 25, 2016*. (Dkt. 243-3).  The average weekly trading volume for MGT stock during the four-week period proceeding May 25, 2016, was 122,111,6289.[1]  The number of MGT outstanding shares during this period was 23,798,517 (Dkt. 243-3).  Mr. Ladd sold 435,000 MGT shares, which does not exceed the greater of the two (122,111,628).  Thus, Mr. Ladd's sales of MGT stock did not exceed the greater of the two metrics for the relevant four-week period, and therefore Mr. Ladd is protected under the "safe harbor" exemption available under Rule 144.

Second, the SEC's allegations under Exchange Act Sections 13(d) and 16(a) also fail because Mr. Ladd never crossed the 5% threshold for ownership of MGT common stock.

Section 13(d)(1) makes clear that "beneficial ownership of *more than 5%* of a class of equity securities…" (emphasis added) is necessary to trigger the Schedule 13D reporting requirement.  Excerpts from MGT's 2016 Form 10-K show that the company had 18,098,221 shares of common stock issued and outstanding as of April 11, 2016 (Dkt. 243-2, p. 47).  Mr. Ladd beneficially owned 896,074 shares (*Id.*).  A simple calculation will show that Mr. Ladd in fact owned 4.95% of MGT stock, *not* "more than 5%."  As the SEC noted, MGT's 2016 Form 10-K reported that Mr. Ladd beneficially owned 5% of MGT stock (rounded up from 4.95%), but this fact alone does not implicate Section 13(d) because at no point did Mr. Ladd own "more than 5%" of MGT stock.  In short, Mr. Ladd did not cross the 5% threshold, and therefore had no obligation to file a schedule 13D regarding his ownership of MGT stock as the SEC mistakenly claims.

For all of these reasons, Mr. Ladd respectfully requests that the Court decline the SEC's request to schedule a pre-motion conference regarding its proposed motion for partial summary judgment until after this Court decides Mr. Ladd's motion to dismiss and after Mr. Ladd's Answer is filed.

                                                Respectfully submitted,

                                                FORD O'BRIEN LLP

                                                Kevin J. O'Brien
                                                Adam C. Ford

---

[1] https://finance.yahoo.com/quote/MGTI/

FORD O'BRIEN LLP
575 Fifth Avenue, Floor 17
New York, NY 10017
kobrien@fordobrien.com

cc: All counsel of record (by ECF).