L465sechonigC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

           v.                              18 Civ. 8175 (ER)
                                           Telephone Conference
BARRY C. HONIG, et al.,

                Defendants.
------------------------------x
                                           New York, N.Y.
                                           April 6, 2020
                                           11:00 a.m.

Before:

                    HON. EDGARDO RAMOS,

                                        District Judge

                        APPEARANCES


SECURITIES AND EXCHANGE COMMISSION
BY:  NANCY A. BROWN
BY:  JACK KAUFMAN
     KATHERINE S. BROMBERG

FORD O'BRIEN, LLP
     Attorneys for Defendant Ladd
BY:  ADAM C. FORD
```

1    (The Court and all parties appearing telephonically)

2    THE COURT:  Good morning, everyone.

3    THE DEPUTY CLERK:  Counsel, please state your name for
4  the record.  Counsel for plaintiff?

5    MS. BROWN:  Good morning, your Honor.  It is Nancy
6  Brown for the Securities and Exchange Commission, and with me
7  are my colleagues Jack Kaufman and Katherine Bromberg.

8    THE COURT:  Good morning.

9    THE DEPUTY CLERK:  For defendant?

10   MR. FORD:  Good morning, your Honor.  It is Adam Ford
11  on behalf of defendant Robert Ladd.  My client, Mr. Ladd, is
12  also on the call.

13   THE COURT:  Good morning to you all.  This matter is
14  on for pre-motion conference.  Before we get going I note for
15  the record that it is being conducted by telephone because of
16  the pandemic.  We are also being assisted by a court reporter,
17  so when you speak I ask that you please state your name, speak
18  slowly and clearly so that everything can be taken down
19  accurately.  And with that, Ms. Brown, let me begin with you.
20  I understand you want to move for partial summary judgment,
21  correct?

22   MS. BROWN:  We do, your Honor.  There are two other
23  issues I think before the Court, one is the issue that we
24  raised in our letter that we filed last week which regards our
25  intention to file motion to strike Mr. Ladd's assertion of an

advice of counsel defense unless he effects all necessary waivers, and I think and not just speak for the defendants, that Mr. Ladd also proposed making a motion for partial summary judgment as well.

So, those are the three issues before the Court, as I see them, this morning.

THE COURT: So let's start with you, with your proposed motion.

MS. BROWN: Okay.

So, I would like to start with the motion to strike. So, I think the Court is familiar with the letters. What Ladd's letter makes clear is that he essentially concedes that his good faith reliance defense is in fact an advice of counsel defense but argues that he has just asserted it provisionally, that he is going to wait to actually trigger it. I'm not sure that I understand how that works. I mean, typically one files an answer and the consequences of that answer become effective on filing. If his view is that he can wait until his motions for summary judgment are unsuccessful and then trigger it are they then to, a few years from now, start taking discovery on his advice of counsel defense, or worse, is he going to wait until trial and then trigger it then and so you have to take a break in the trial to get that discovery? So, I think that's one issue. The second issue is even if it is not a classic advice of counsel defense -- and we discussed this in our

letter -- the law is pretty clear in the Second Circuit that, you know, putting advice of counsel at issue by asserting a good faith defense means that the waiver is triggered nonetheless, whether you assert the actual words "advice of counsel" or not.  So, I think in this situation we are entitled to probe what Ladd asks this Court to accept at a face value on his say-so which is that there is simply no evidence that Mr. Ladd possessed additional information regarding Honig and the other status as a group.  Under Balestreri the Court, nor we, are required to accept that assertion at face value.

THE COURT:  I take it that from your perspective this issue is not mooted by Mr. Ladd's more recent letter?

MS. BROWN:  Not at all, your Honor.  I think in his recent letter he makes these concessions, as I note, that it actually is an advice of counsel defense that even if it is not it certainly puts that issue at issue.

THE COURT:  Again, we can ask Mr. Ford in a minute, but as I read the letter it says the advice of counsel defense in the answer isn't is an advice of counsel defense.  But that's not what I am relying on, right?

MS. BROWN:  I'm not sure I understand the Court's question.  I did see him as saying that he was in fact relying on his good faith belief that there was no group, for example, and by asserting that what the Courts in this circuit have held is that that puts advice of counsel at issue because we are

entitled to probe everything surrounding his good faith belief that he --

        THE COURT: I just want to make sure that we are all using the same language.

        MS. BROWN: Okay. I'm sorry.

        THE COURT: He is saying that he is not asserting a classic advice of counsel defense, correct?

        MS. BROWN: Yes. He is asserting that although he does drop some footnotes indicating that if he were asserting a classic advice of counsel defense he is not asserting it now, he is just saving -- he is asserting a placeholder for it.

        THE COURT: Right. And so what he is saying, therefore, because I didn't hear him to concede the point at all -- I mean I could be wrong but I didn't hear him concede the point at all, that he is not asserting a classic advice of counsel defense and he is relying on his good faith belief.

        MS. BROWN: Right. And so if you proceed from that juncture, I would submit that we still are in the same place which is that we still get to probe that good faith and we can't probe it without interfering with the privilege because that -- you know, what he learned from his counsel obviously goes to his good faith belief that he was acting in conformity with law.

        THE COURT: Let's go to Mr. Ford. Mr. Ford, are you or are you not relying on whatever he may have learned from his

1 lawyers?

2 MR. FORD: Thank you, your Honor. This is Adam Ford
3 speaking.

4 Your Honor got it exactly right. Obviously you read
5 our letter and understood it. We are not asserting the classic
6 advice of counsel defense where we are discussing privileged or
7 intention to rely on privileged communications between him and
8 his lawyer. What we are saying -- I mean, we did put it in, it
9 was an affirmative defense, we are required to put it in, but I
10 have been speaking with the SEC and Ms. Brown for at least six
11 months about this exact issue. My position has never wavered.
12 What we have here, this case is a little unusual in that you
13 have a situation where there is two sides of a transaction,
14 obviously not aligned, they're on opposite sides of the
15 transaction. They happen to have the same law firm. They have
16 different lawyers working on it and they basically, as I
17 understand it, sort of treat it as proper walls and they treat
18 it as they're sort of adverse and on account of that -- and it
19 is the law firm of Sichenzia. The SEC subpoenas Sichenzia and
20 Sichenzia says to the SEC, as I understand it, we have two
21 different clients, each with privileged communications. We are
22 going to maintain those for each of the clients but where those
23 clients are talking to each other, that's not privileged, we
24 are going to treat that as if it is with an outside law firm
25 and we were asked our position, we agreed with that, that makes

1    sense from a privilege perspective.  And what you get -- and

2    these are hundreds and hundreds of e-mails within Sichenzia but

3    with two different sides, and what is clear from these e-mails

4    that are not privileged is that the other side was representing

5    the Honig side that they were not acting as a group.  Right?

6    And my client was told this and my client, along with all of

7    the other non-privileged information, the fact that Sichenzia

8    was hired specifically to advise them and assist with the

9    proper filing, the fact that Sichenzia is an expert, the fact

10   that Sichenzia filed these documents, these are all

11   non-privileged facts that I am, I submit, absolutely allowed to

12   present and as part of my presentation that my client was

13   acting in good faith with no intentions, no knowledge, to

14   violate any of the securities laws.  And, as your Honor knows

15   from my letter because I referenced it, I was involved in the

16   Platinum case and this exact issue came up and it was frankly

17   hotly contested and Judge Cogan had absolutely agreed with our

18   position that you are allowed to describe interactions with

19   counsel on a certain general level as part of your presentation

20   and that does not waive privilege and we are seeking to do the

21   exact same thing here, we are simply going to present, based on

22   non-privileged communication, that my client was acting in good

23   faith.  And there is -- you know, your Honor, the other big

24   part of this as we say in our letter, there is no evidence that

25   my client believed that these guys were a group.  There is no

evidence.  The SEC didn't -- they didn't seek to depose anyone.  There is no testimony, there is no documents.  And so, the reason that the SEC is now coming before the Court and saying, look, we need to waive privilege, we need to do discovery, because they're not holding anything right now.  So --

      THE COURT:  But that's a very different issue, correct?

      MR. FORD:  Yes.

      THE COURT:  The issue and the problem as I see it -- I understand your position -- but essentially it comes down to, yeah, I was talking to lawyers but they were all sort of very less than formal discussions and they were not privileged, and therefore even though I base my good faith, at least in part on those communications with lawyers, it is not really attorney-client privilege.

      MR. FORD:  Right, because some of those communications even weren't with his counsel but with other counsel, counsel from the other -- counsel from the other side of the deal -- I mean from -- it's Barry Honig's counsel that is saying they're not agreeing and there is no way that communication is privileged.  Even his own lawyer says Barry Honig's counsel tells me this and that --

      THE COURT:  I understand.

      So, Ms. Brown, strictly speaking, the communications described by Mr. Ford are not attorney-client so what is it

that you want to know beyond that?

MS. BROWN: Right. So, thank you, your Honor. It is Nancy Brown speaking.

I think what we have heard from Mr. Ford is the problem here, it is only half the story. So, yes, we have these non-privileged communications that informed Mr. Ladd's good faith but we don't know what else informed or disinformed Mr. Ladd's good faith. So, for example, did he have further communications with MGT's counsel regarding whether to disclose Honig's group's ownership in SEC filings? We know that was an issue because Honig -- MGT's counsel raised that issue which is the only time the topic was raised. What questions did he ask his own counsel regarding what independent duty he had to investigate things that Honig's counsel was telling him? Did MGT's counsel understand that Mr. Honig's counsel himself had co-invested with Honig in numerous Honig deals? Did they discuss that fact with Ladd? Did Ladd know that Kesner frequently invested with Honig? Did he disclose that fact to MGT's lawyers at Sichenzia?

THE COURT: Have these people been deposed?

MS. BROWN: No, because the privilege was asserted.

THE COURT: How about Mr. Ladd?

MS. BROWN: Mr. Ladd has been deposed and he, as we put in our letter, disclosed that he was relying in fact on counsel -- advice he received from his own counsel and advice

L465sechonigC

1  he received from Honig's counsel.
2           THE COURT: And then when was that? I guess I am
3  asking this because why is this coming up now?
4           MS. BROWN: Well, your Honor, it came up in October.
5  We, as soon as Mr. Ladd testified to those facts, we again
6  asked Mr. Ford and Mr. Ford is absolutely correct that we have
7  been pressing this issue for some time whether he was, in light
8  of Mr. Ladd's testimony, waiving the privilege and he assured
9  he was not.
10          THE COURT: Okay. Well, look. Obviously I'm going to
11 require some additional briefing on this so we will set a
12 schedule for this. Do you want to talk about your partial
13 motion for summary judgment now, Ms. Brown?
14          MS. BROWN: Sure.
15          I am going to call on Mr. Kaufman if I need him for
16 substance but the motion is the same as the one that we
17 detailed for the Court in our letter of a few months ago, it is
18 on the non-scienter claim that is Section 5, Section 16, and
19 Section 13(d) and relate to Mr. Ladd's trading in May 2016 in
20 his own and his father's account which we contend violated
21 Section 5. And, in connection with his filings of false
22 Form 4s which detail what his transactions were in MGT
23 Securities. We contend that he filed false Form 4s in
24 violation of Section 16. And, we also allege that he failed to
25 disclose his own holdings of MGT in excess of 5 percent which

1   is a requirement of Section 13(d).  And, as I say, none of

2   these are scienter-based so they appear to be ripe for summary

3   judgment because there really are no issues of fact.

4         THE COURT:  Very well.  So, we will schedule that as

5   well and both motions will be on a three-week, three week, one

6   week schedule which is to say, Ms. Brown, you can make your --

7   you will be given three weeks to make the motion, Mr. Ford will

8   be given three weeks to respond, and you will have one week to

9   reply.

10        Now, Mr. Ford, given that there is going to be

11  additional briefing on this advice of counsel issue and given

12  that your proposed motions deal with those claims that are

13  scienter-based, it seems to me that it is probably premature

14  for you to make that partial motion for summary judgment at

15  this time.  Do you disagree?

16        MR. FORD:  Thank you, Judge.  This is Adam Ford

17  responding.

18        My first response, your Honor, is based on the way you

19  framed it, it does make sense although I would -- I guess sort

20  of, from my position, discovery is closed.  The SEC had all the

21  time that it requested to take all of the discovery that it

22  wanted.  It made certain decisions not to depose certain

23  people -- a lot of -- by the way, a lot of what Ms. Brown had

24  argued in the last segment about Mr. Kesner, frankly, is

25  completely new to me.  I don't -- I don't even -- I don't

1  believe it is in the complaint, I just -- I don't remember
2  exactly but the focus on that, the idea that Mr. Kesner had
3  these interactions, I don't even think I am aware of that.  I
4  don't know where it comes from, it hasn't been in discovery.
5  Certainly, if the SEC believes that Mr. Kesner was, that the
6  lawyer, right, was somehow involved in this scheme I would have
7  expected him to have been, frankly, added as a defendant or
8  some sort of reference to it.  That is all new.  In any event,
9  they absolutely had an opportunity to depose Mr. Kesner and ask
10 him about non-privileged communications because all of his
11 communications with counsel for MGT on these are not privileged
12 and the SEC had that opportunity and, frankly, they had the
13 opportunity to take Mr. Kaplowitz' -- MGT's lawyer's --
14 deposition and ask him about non-privileged communications that
15 he had with Mr. Kesner or other members.  So, this idea that
16 the SEC is all of a sudden needs, is somewhat surprised in our
17 position that they have known about from the first day since I
18 got involved in this case and now take more discovery on this,
19 to me, seems, as I argued, not appropriate.
20          So, on one hand I would sort of suggest discovery is
21 over, the SEC has not obtained any evidence to date, we do
22 think it is appropriate for us to file our motion for summary
23 judgment based on the discovery to date.  That would be our
24 first position.  To the extent your Honor is I guess sort of
25 going to consider this issue of waiver and whether there needs

1  to be more discovery then it might be premature but I think I
2  would still put before the Court that it would be -- I know we
3  would still like to file our motion for summary judgment
4  because discovery is over and now is the time and it is only
5  now that the SEC is first trying to get more discovery after
6  the close.
7           THE COURT:  So, let me ask this.  Presumably part of
8  your motion for summary judgment, if it were to be made, would
9  be you have indicated that the SEC has no -- had no evidence of
10 knowledge of group activity and presumably you will also make
11 the argument that the record is clear that Mr. Ladd made these
12 decisions in good faith.
13          MR. FORD:  That's correct.
14          THE COURT:  If you make the motion we will probably be
15 right back where we are.  But -- go ahead.
16          MR. FORD:  Do you mean we will be right back where we
17 are because -- I'm not certain I understand that.
18          THE COURT:  The SEC will say, you know, they've raised
19 this issue, it's a disputed fact, and either it should be
20 denied on that basis or we should be entitled to further
21 discovery.
22          MR. FORD:  But I guess I am a little -- the way I want
23 to respond to that is the SEC, in order for them to say it's
24 disputed fact, they're going to have to point to some sort of
25 evidence and we assert that there simply is none, other than

1    that these two e-mails that we highlight, which we will
2    address, but for a party to be able to say well, wait a second,
3    your defendant raises that we have no evidence and now we would
4    like to go take more discovery, that's not a -- this is a civil
5    litigation and when discovery closes, just because one side is
6    able to step forward and say, look, the plaintiffs have failed
7    to meet the burden here, there is no material dispute of fact,
8    I am not certain how the SEC gets to simply say, well, then
9    allow us to take more discovery because that would sort of meet
10   with an endless cycle of discovery for a losing side at least.
11   Discovery is over.  There is no evidence.  We are going to
12   prove that in our papers.  And I guess if the SEC wants to
13   respond by saying we would like to take more discovery, I think
14   I would still propose that we do brief this and if that's the
15   right result and the SEC can prove that they are entitled to
16   more discovery based on the briefing, then I guess we would be
17   prepared to accept that as a possibility; that we file a brief
18   that is ultimately either held in abeyance or mooted pending
19   further discovery.  But I think that's the right way to proceed
20   here rather than waiting.  Otherwise, maybe I would -- I think
21   the flipside, I would propose that all summary judgment motions
22   be stayed pending -- if we want to deal with the privilege
23   issue first my sense is we should either deal with the
24   privilege issue and whatever that result is move to summary
25   judgment motions, or we should all do our summary judgment

L465sechonigC

1  motions, I guess, in conjunction with the privilege issue.

2  THE COURT: Ms. Brown, do you have a view on that
3  proposed approach?

4  MS. BROWN: Your Honor, I actually came prepared this
5  morning to say that I think that's fine as long as we deal with
6  the discovery issues first. And, just one point I don't want
7  to be lost, Mr. Ford keeps saying we have raised this issue
8  after discovery is closed. Well, there is a very good reason
9  for that, as I am sure the Court is aware and as has been part
10 of our scheduling order since the beginning, which is that
11 there was always the idea that once the defendant answered
12 there may be additional time for discovery as needed and here
13 Mr. Ford and Mr. Ladd's answer raised the issue that we need
14 discovery on. So, it is not like we sat back and waited for
15 this opportunity to reopen discovery.

16 I just don't want that to be lost on the Court.

17 THE COURT: Okay. So, you are in general agreement
18 that we should deal with this issue first and then the parties
19 can move for summary judgment.

20 MS. BROWN: I'm fine with that, your Honor.

21 THE COURT: Okay. So then we will move on that issue
22 first and the other, the dueling summary judgment motions, will
23 be held in abeyance.

24 Ms. Rivera, do we have the date for the motion?

25 THE DEPUTY CLERK: Yes. The motion is due April 27th,

L465sechonigC

1    the opposition is due May 18th, and the reply is due May 25.
2                THE COURT:  Okay.  So you all have the dates, it will
3    be in the minute entry.
4                We are adjourned.  Everyone, please, stay well.
5                                   o0o