UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,  :
:
                  **Plaintiff,**  :
:      18 Civ. 8175 (ER)
    – against –  :
:      ECF CASE
BARRY C. HONIG, ROBERT LADD,  :
ELLIOT MAZA, BRIAN KELLER,  :
JOHN H. FORD, GRQ CONSULTANTS, INC., and  :
HS CONTRARIAN INVESTMENTS, LLC,  :
:
                  **Defendants.**  :
------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**<u>MOTION TO STRIKE AFFIRMATIVE DEFENSE</u>**

                              SECURITIES AND EXCHANGE COMMISSION
                              Nancy A. Brown
                              Jack Kaufman
                              Katherine Bromberg
                    200 Vesey Street, Suite 400
                    New York, New York 10281
                    (212) 336-1023 (Brown)

                    Attorneys for Plaintiff

April 27, 2021

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

BACKGROUND .......................................................................................................................2

I.     The Commission's Fraud Claims Against Ladd................................................................2

II.    Ladd's Answer and Related Discovery.............................................................................4

ARGUMENT .............................................................................................................................7

A.     Standard of Review..........................................................................................................7

B.     Ladd's Advice-of-Counsel Defense Requires Him to Waive the Privilege and to Obtain Honig's Waiver of His Privilege Regarding the Advice on Which He Relies ...........................................................................................................9

C.     In Asserting His Good Faith, Ladd Has Put His Communications with MGT Counsel at Issue and Fairness Dictates that He Make a Full Disclosure of All Privileged Communications or His Defense Should Be Stricken ...........................11

CONCLUSION........................................................................................................................16

# TABLE OF AUTHORITIES

**Page**

**CASES**

Abromovage v. Deutsche Bank Secs., Inc., 18 Civ. 6621 (VEC),
    2019 WL 6790513 (S.D.N.Y. Dec. 11, 2019) ............................................................. 8, 10, 12

Arista Records LLC v. Lime Grp. LLC, No. 06 Civ. 5936 (KMW),
    2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) ............................................................ 10-11, 12

E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc., 90 F. Supp. 2d 277 (S.D.N.Y. 2000) ............... 11

GEOMC Co., Ltd. v. Calmare Therapeutics, Inc., 918 F.3d 92 (2d Cir. 2019) ............................. 7

In re Cty. of Erie, 546 F.3d 222 (2d Cir. 2008) ...................................................................... 10, 11

In re Gaming Lottery Secs. Litig., No. 96 Civ. 5567 (RPP),
    2000 WL 340897 (S.D.N.Y. Marr. 30, 2000) ....................................................................... 13

In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.,
    14 MD 2542 (VSB)(HBP), 2019 WL 2724269 (S.D.N.Y. July 1, 2019) .................... 8, 12, 14

MBIA Ins. Corp. v. Patriarch Partners VIII LLC, No. 09 Civ. 3255 (RWS),
    2012 WL 2568972 (S.D.N.Y. July 3, 2012) .................................................................. 8, 12-13

Meskunas v. Auerbach, No. 17 Civ. 9129 (VB) (JCM),
    2020 WL 7768486 (S.D.N.Y. Dec. 30, 2020) ....................................................................... 13

Nokaj v. N.E. Dental Mgt., LLC, No. 16 Civ. 3035 (KMK),
    2019 WL 634656 (S.D.N.Y. Feb. 14, 2019) .......................................................................... 10

Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.,
    14 Civ. 4394 (AJN) (BCM), 2017 WL 9802844 (S.D.N.Y. Sept. 15, 2017) ...................... 7-8

Scott v. Chipotle Mexican Grill Inc. 67 F. Supp. 3d 607 (S.D.N.Y. 2014) ................................... 12

SEC v. Lek Secs. Corp., No. 17 Civ. 1789 (DLC),
    2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019) ..................................................................... 13-14

State Street Glob. Advisors Trust Co. v. Visbal, 462 F. Supp. 3d 435 (S.D.N.Y. 2020) ................ 7

Stolarik v. NY Times Co., No. 17 Civ. 5083 (PGG),
    2019 WL 4565070 (S.D.N.Y. Sept. 20, 2019) ......................................................................... 5

United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991) ....................................................... 11, 12

**Page**

United States v. Wells Fargo Bank N.A., No. 12 Civ. 7527 (JMF),
2015 WL 3999074 (S.D.N.Y. June 30, 2015) .................................................................. 9-10

United States v. Wells Fargo Bank N.A., 132 F. Supp. 3d 558 (S.D.N.Y. 2015) ......................... 10

Wang v. The Hearst Corp., No. 12 Civ. 793 (HB);
2012 WL 6621717 (S.D.N.Y. Dec. 19, 2012) ...................................................................... 13

**STATUTES AND RULES**

Securities Act of 1933

    Section 5, 15 U.S.C. § 77e ................................................................................................... 3

        Rule 144, 17 C.F.R. § 230.144 .................................................................................... 3

Securities Exchange Act of 1934

    Section 13(d), 15 U.S.C. § 78m(d) ................................................................................... 6, 9

Fed. R. Civ. P. 12(f) .......................................................................................................................... 7

Pursuant to the briefing schedule set by the Court at the parties' April 6, 2021 conference, Plaintiff Securities and Exchange Commission ("Commission") respectfully submits this memorandum of law in support of its motion to strike the Amended Answer of Defendant Robert Ladd ("Ladd") to the extent Ladd asserts any defense to any of the Commission's claims in this case related to, or based on, his reliance on any advice of legal counsel.  In the alternative, if Ladd were to obtain all necessary privilege waivers, the Commission would request an order scheduling discovery for the limited period necessary for the Commission to explore Ladd's defense.

## PRELIMINARY STATEMENT

The Commission charges Ladd with both scienter-based (fraud) and non-scienter-based claims in this case.  This motion concerns Ladd's attempt to raise in his Answer an advice-of-counsel or "good-faith" defense to the Commission's scienter-based claims by asserting that he relied upon certain communications he received from counsel for his company, MGT Capital Investments, Inc. ("MGT"), and/or from counsel for his co-Defendant, Barry Honig.  To assert that defense in this Circuit, Ladd must first afford the Commission the opportunity to take adequate discovery on this issue which, in turn, requires Ladd to obtain the requisite attorney-client privilege waivers from MGT and Honig.  Ladd, however, has refused to do so, asserting MGT's and his own attorney-client privilege throughout discovery in this case, and in the wake of his recently-filed Amended Answer (DE 281 ("Answer").)  For these reasons, the Commission seeks to strike from Defendant Ladd's Answer his affirmative defense to fraud that he "relied in good faith upon the judgment, advice, and counsel of professionals" — as well as all references in his Answer to such reliance.

Whether he asserts a formal advice-of-counsel defense, or a good-faith defense, Ladd has

put at issue the alleged legal advice he received. If permitted to bar the Commission from complete discovery regarding the nature and circumstances of that advice, Ladd would unfairly wield the privilege as both sword and shield: Ladd could present to the jury a version of events that serves his defense, while insulating himself from discovery and cross examination about the advice and his reliance on it that could negate his good faith, resulting in undue prejudice to the Commission. The Court should therefore grant the Commission's motion to strike Ladd's reliance defense (or, if he obtains all the necessary privilege waivers, permit the Commission additional time to take discovery concerning his defense).

## BACKGROUND

### I.  The Commission's Fraud Claims Against Ladd

The Commission's Second Amended Complaint ("SAC") alleges that Ladd participated in two back-to-back MGT stock pump-and-dump schemes with Honig and his group of co-investors (the "Honig Group") in February and May 2016. Ladd principally participated in two ways. First, Ladd signed MGT's false November 6, 2015 Form S-1 registration statement ("Form S-1") and 2015 Form 10-K, filed on April 14, 2016 ("Form 10-K"). The Form S-1 and Form 10-K purported to list all beneficial owners of more than 5% of MGT's stock — and identified Honig as holding 8.6% — but falsely omitted the Honig Group's collective beneficial ownership of 12% and over 16%, respectively, of MGT's stock. (¶¶ 51, 56, 163-65, 247, 253, 258, 263.)[1] Second, Ladd issued MGT's May 9, 2016 press release, which falsely exaggerated the past financial success of John McAfee, whose company (and purported expertise) MGT announced that it was acquiring. (¶¶ 146-54, 247, 253, 258, 263.)

An essential part of the Honig Group's fraud scheme was their collective control of a

---

[1]  "¶ __" refers to paragraphs of the SAC, unless otherwise specified.

sizeable portion of MGT's stock and consequent influence over MGT's management and policies. (¶ 127.) The Honig Group acted in concert to effectuate their pump-and-dump schemes, and its members took steps to conceal the concerted nature of those efforts from the investing public — including by failing to file with the Commission required disclosures of their collective ownership of more than 16% of MGT's stock. (¶¶ 155-62.) Ladd, knowing of the Honig Group's collective MGT stock ownership, and its direction of MGT's management and policies, helped hide the Honig Group's control of MGT from the public by filing the false Form S-1 and Form 10-K. (¶¶ 155, 157, 163-65.)

The May 2016 pump-and-dump scheme culminated in Ladd's May 9 issuance of the false MGT press release about McAfee — which artificially inflated MGT's stock price by 34% — and Ladd's and the Honig Group's collective dumping on the public of millions of shares of their MGT stock shortly thereafter. (¶¶ 149-54.) From May 9 to 31, 2016, Ladd personally sold a total of 852,863 MGT shares, from both his own and his father's trading accounts, for total proceeds of $1,184,662.68. (¶ 153.) Ladd sold the bulk of those shares (775,000) from May 9 to 12, 2016, for total proceeds of $966,427.83. (¶ 172.)

In addition to these fraudulent acts, Ladd executed, and submitted a false Form 144 and a false Form 4 regarding his May 9-12 MGT stock sales — intentionally creating for the Commission and the public the false appearance that those stock sales occurred weeks later than they actually did.[2]  (¶¶ 177, 178, 183.)  As further explained below, the SAC alleges that Ladd did so primarily to avoid certain stock sale volume restrictions applicable to him as MGT's CEO — imposed by Securities Act Section 5 and Rule 144.  Those restrictions, which Ladd

---

[2]    Ladd also failed to disclose his earlier MGT stock sales on both Forms 144 and Form 4. (¶¶ 178, 183).

intentionally violated, prohibited Ladd from selling (without registering the sales) approximately half of the 775,000 MGT shares he sold from May 9 to 12. (¶¶ 166-83).

## II. Ladd's Answer and Related Discovery

Due to the timing of Ladd's recent Answer — and the related discovery schedule in this case — the issues raised by this motion arose only recently.  On April 30, 2020, while fact discovery was ongoing, Ladd moved to dismiss the SAC.  (DE 241.)  On June 10, 2020, the Court issued an amended scheduling order (the "June 10 Order"), setting a November 23, 2020 cut-off date for completion of fact discovery, and a February 12, 2021 cutoff date for completion of expert discovery (the parties ultimately did not engage in expert discovery).  (DE 263.)  The June 10 Order further provided that, "[i]f an Answer has not been filed by February 12, 2021, the parties will confer and jointly propose, within one week after Defendant files his Answer, a schedule for additional Discovery."  (Id. ¶ 6.)

During discovery, in response to Commission document requests, Ladd invoked the attorney-client privilege. According to his privilege log, Ladd withheld, among other things, communications "gathering and providing information for the purpose of requesting and rendering legal advice regarding [MGT] SEC filings" and regarding "review of draft press release," "trading activity," and "issuance of company stocks or shares." (Declaration of Nancy A. Brown, executed April 26, 2021 ("Brown Decl."), Ex. A (Privilege Log, dated January 27, 2020), at Log Nos. 8, 20, 21, and 14.)

Yet, at his deposition on November 10, 2020, Ladd testified that he relied on advice of counsel.  Asked for the basis on which he concluded that Honig and his co-investors had not acted as a "group," Ladd testified that he had sought and obtained advice of counsel that they had not:

4

> Q: You said . . . that it had been represented to you that they weren't acting as a legal group or acting in concert. Who made those representations to you?
>
> A: . . . Based on the advice of my counsel, that was also a conclusion that I was able to reach. My counsel had the luxury, if you will, of also having a partner who was counsel for that, for Barry Honig, and that advice, or the outcome of that advice, was also that they were not acting in concert.

(Brown Decl., Ex. B (Excerpts from Deposition of Defendant Ladd ("Ladd Tr.") at 342:22-343:10).) [3]

Immediately following this testimony, Commission counsel asked Ladd whether he was thus "waiving privilege as to your communications with counsel about this topic." Ladd's counsel responded that Ladd was not waiving the privilege. (Brown Decl., Ex B (Ladd Tr.) at 343:19-23.)

On January 27, 2021, the Court issued its Order and Opinion on Ladd's Motion to Dismiss, granting in part and denying in part the Motion. (DE 275.)

Ladd filed his initial Answer on February 26, 2021. (DE 278.) Ladd's Answer asserts the following as an "affirmative defense": "Plaintiff's claims are barred in whole or in part because Defendant relied in good faith upon the judgment, advice and counsel of professionals."

---

[3] Pursuant to conflict waivers, different lawyers at the same law firm, Sichenzia Ross Ference LLP ("Sichenzia"), represented the Honig Group, as investors, and MGT as the financed entity in both the 2012 and 2015 financings alleged in the SAC (¶¶ 128-134; 135-144): Harvey Kesner and Tara Guarnini-Ferrara, representing the Honig Group, and Jay Kaplowitz and Arthur Marcus representing MGT. (Brown Decl., Ex. B (Ladd Tr.) at 347:6-15; 354:1-3; 359:6-17.) With respect to Ms. Guarnini-Ferrara, Ladd appears to have selectively produced some of her communications and withheld others. (See Brown Decl., Ex. A (Privilege Log) at Log No. 14 (reflecting withheld communications with, among others, Ms. Guarnini-Ferrara).) Selective waiver is an additional basis for determining that Ladd has waived the privilege. Stolarik v. NY Times Co., No. 17 Civ. 5083 (PGG), 2019 WL 4565070, at *3 (S.D.N.Y. Sept. 20, 2019) ("[w]hen there has been a selective disclosure . . . , courts typically find the party has waived privilege as to all documents pertaining to the subject disclosed.") (quotations omitted).

(Answer (DE 281) ¶ 310.)[4]  The Answer elsewhere makes it plain that, by "professionals," Ladd means at least attorneys (either his own, MGT's, or others'). And, in the narrative "Introduction," Ladd alleges that he "had no intention to violate the securities laws," because there were "times that Mr. Honig's counsel and [MGT's] counsel told Mr. Ladd that Honig and the others were <u>not</u> investing as a group under the legal requirements of Section 13(d)." (<u>Id.</u> at 3 (emphasis in original).) Elsewhere, Ladd's Answer alleges that "the filings at issue were all vetted by competent counsel <u>aware of all material facts</u>," (<u>id.</u> at 2) (emphasis supplied); and that Ladd's allegedly fraudulent May 9, 2016 press release "had been sent to counsel for review prior to its release." (<u>Id.</u> at 3.)[5]

Accordingly, pursuant to the June 10 Order, the Commission subsequently conferred with Ladd's counsel to determine: (1) whether Ladd intended to obtain the privilege waivers necessary to assert that defense; and, if so, (2) whether the parties could agree to a proposed additional discovery schedule regarding that defense. Ladd's counsel responded that Ladd would not seek such waivers, and that no additional discovery was necessary. (Brown Decl. ¶ 4.)

Despite testifying at his October/November deposition that he had relied on advice of counsel regarding core matters at issue in this case, Ladd now takes the position — in his April 6, 2021 letter to the Court ("Letter") (DE 284)— that he is not relying on "legal advice" for his defense in this case. At the same time, he continues to assert his reliance on (1) a brief 2012 email colloquy (on which he was copied) between counsel for MGT and counsel for the Honig

---

[4]   In all respects relevant to this motion, Ladd's initial Answer (DE 278) and Amended Answer (DE 281) are identical.

[5]   While Ladd's Answer does not specifically mention his consultation of MGT's lawyers respecting his May 2016 MGT stock sales, he testified that MGT counsel prepared the Form 4 that he filed with the Commission. (Brown Decl., Ex B (Ladd Tr.) at 74:15-75:20.)

6

Group, in which the latter responds "No!" to the question of whether Mr. Honig and his co-investors were acting as a "group." (Letter at 3, and attachment); (2) evidence that MGT's counsel approved Ladd's disclosure in company filings while allegedly in possession of all material facts; (3) evidence that Ladd's counsel reviewed and signed off on his May 9, 2016 press release; and (4) evidence that Ladd consulted with his lawyers, and they prepared, disclosure of his May 2016 trading in MGT securities.

## ARGUMENT

**A.    Standard of Review**

Under Fed. R. Civ. P. 12(f), a court should exercise its discretion to strike an "insufficient defense" where (1) the factual allegations supporting it are "implausible"; (2) there is "no question of law that might allow the defense to succeed"; and (3) the plaintiff would be "prejudiced by the inclusion of the defense." State Street Glob. Advisors Trust Co. v. Visbal, 462 F. Supp. 3d 435, 438-39 (S.D.N.Y. 2020) (quotations omitted). "[A]n affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." GEOMC Co., Ltd. v. Calmare Therapeutics, Inc., 918 F.3d 92, 98 (2d Cir. 2019).

Where a defendant asserts the defense of good faith reliance on counsel but refuses to waive privilege, courts conclude that neither an issue of fact nor a question of law would allow the defense to succeed (absent a waiver), and that the defense should be stricken to avoid prejudice to the plaintiff. E.g., Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co., 14 Civ. 4394 (AJN) (BCM), 2017 WL 9802844, at *6 (S.D.N.Y. Sept. 15, 2017) (striking advice-of-counsel defense where defendant refused to waive privilege, holding that defendant had withheld all documents that could potentially support the defense, leaving neither question of

fact or law which might allow defense to succeed, and prejudiced plaintiff by leaving open the possibility that defendant might one day assert it).

In determining whether Ladd's defense implies a waiver of the privilege, the burden is on Defendant to establish that it does not. See MBIA Ins. Corp. v. Patriarch Partners VIII, LLC, No. 09 Civ. 3255 (RWS), 2012 WL 2568972, at *9 (S.D.N.Y. July 3, 2012) (on motion to compel production of privileged communications, defendant that asserted its intention to present state of mind evidence bore burden to show that it had not waived the privilege by asserting the defense) (citing cases).

The Commission's motion seeks only to strike Ladd's defense of advice of counsel (and all references to his reliance on any counsel's advice in his Answer) if Ladd blocks discovery into the nature and circumstances of that advice by refusing or failing to obtain the necessary privilege waivers. Courts in this district have ordered, in the alternative, either full disclosure of privileged materials surrounding advice in the face of similar good-faith reliance defenses, or defendants' withdrawal of the defense. E.g., Abromovage v. Deutsche Bank Secs., Inc., 18 Civ. 6621 (VEC); 2019 WL 6790513, at *5 (S.D.N.Y. Dec. 11, 2019) (ordering defendant to waive privilege and produce documents relating to good-faith defense, or, in the alternative, allowing defendant to withdraw its defense); In re Keurig Green Mountain Single Serve Coffee Antitrust Litig., 14 MD 2542 (VSB)(HBP), 2019 WL 2724269, at *1 (S.D.N.Y. July 1, 2019) (motion to compel disclosure of communications with attorneys granted unless plaintiff "withdraws its good faith defense"). Ladd chose to assert the good-faith reliance affirmative defense, presumably knowing its consequences. He should therefore be ordered to obtain all necessary waivers of the privilege to allow full discovery, or his defense must be stricken.

8

**B.     Ladd's Advice-of-Counsel Defense Requires Him to Waive the Privilege and to Obtain Honig's Waiver of His Privilege Regarding the Advice on Which He Relies**

Ladd's Answer asserts a classic advice-of-counsel defense, which requires him either to waive privilege or forfeit the defense. He asserts: "Plaintiff's claims are barred in whole or in part because Defendant relied in good faith upon the judgment, advice and counsel of professionals." (Answer ¶ 310.) Moreover, in his Answer's "Introduction" and in his Letter, Ladd makes clear that he will rely on advice of MGT's own counsel to defend against the Commission's claims. For example, Ladd alleges that he had no intention to violate the securities laws because "[MGT's] counsel told Mr. Ladd that Honig and the others were not investing as a group under the legal requirements of Section 13(d)." (Answer at 3 (emphasis in original).) He adds that all of MGT's SEC filings were "vetted by competent [MGT] counsel aware of all material facts." (Id. at 2; see also Letter at 2 (confirming that Ladd intends to offer evidence that Sichenzia (including MGT's team) "did not have information suggesting that Honig and the others were acting as a group . . . [and] would not have made a false filing with the SEC").) Thus, Ladd intends to adduce evidence that MGT's lawyers advised Ladd (MGT's CEO) concerning Honig's membership in a "group" and MGT's consequent disclosure obligations under Commission rules, and that they possessed knowledge of the relevant material facts necessary to that advice.[6]

To do so, however, Ladd must waive the privilege protecting MGT's communications with its lawyers. Where a party asserts an advice-of-counsel defense, "that party impliedly

---

[6]     Ladd's Letter and Answer make clear that he will rely on advice from MGT's counsel regarding additional conduct the Commission alleges was fraudulent. E.g., Letter at 2 (Sichenzia filed the May 9, 2016 8-K attaching Ladd's false press release); Answer at 3 ("press release had been sent to counsel for review prior to its release").) In addition, Ladd testified that MGT counsel prepared the Form 4 that Ladd signed in connection with his May 2016 trading. (Brown Decl., Ex B (Ladd Tr.) at 74:15-75:20.)

9

waives any privilege that would otherwise attach to communications between him and his counsel." United States v. Wells Fargo Bank N.A., No. 12 Civ. 7527 (JMF), 2015 WL 3999074, at *1 (S.D.N.Y. June 30, 2015) (citations omitted). That is because to establish the defense, the proponent must show: "(1) that he made a complete disclosure to counsel; (2) sought advice from counsel as to the legality of his actions; (3) received advice that his conduct was legal; and (4) relied on such advice in good faith." Nokaj v. N.E. Dental Mgt., LLC, No. 16 Civ. 3035 (KMK), 2019 WL 634656, at *13 (S.D.N.Y. Feb. 14, 2019) (citations omitted). Assertion of the defense, then, is a "'quintessential' at-issue waiver because good-faith reliance on privileged information is a required element of the defense." Abromovage, 2019 WL 6790513, at *3 (citing In re Cty. of Erie, 546 F.3d 222, 228 (2d Cir. 2008) (citation omitted)).

No different rule applies to a defendant who asserts reliance on advice of someone else's counsel. In Wells Fargo, the court precluded a defendant from asserting the defense as to advice he allegedly received while an employee of a bank because the bank refused to waive its privilege protecting the nature and circumstances of that advice. 132 F. Supp. 3d at 566. While recognizing that the employee's inability to provide his adversary full disclosure of communications with the company's lawyers would result in forfeiture of his defense, the court nonetheless ruled that the defendant "may not assert an advice-of-counsel defense over [the employer's] objection" to disclosure of its privileged communications. Id. at 559.

Thus, to assert an advice-of-counsel defense, Ladd must waive privilege over his communications with MGT's counsel and procure Honig's privilege waiver regarding his communications with his lawyers at Sichenzia. Otherwise, he must forfeit that defense.[7]

---

[7]   Ladd argues that, to the extent his Answer appears to assert a classic "advice of counsel" defense, it does so "for preservation purposes only." (Letter at 2 & n.3.) But a party who fails timely to waive privilege in connection with a defense of reliance on advice of counsel forfeits that defense. Arista Records LLC v. Lime Grp. LLC, No. 06 Civ. 5936 (KMW), 2011 WL

### C. In Asserting His Good Faith, Ladd Has Put His Communications with MGT Counsel at Issue and Fairness Dictates that He Make a Full Disclosure of All Privileged Communications or His Defense Should Be Stricken

Ladd maintains that, rather than asserting a classic "advice of counsel" defense, his is a good-faith defense—that he believed in good faith that he was acting lawfully— and that he will establish it solely through non-privileged communications, making a waiver unnecessary. (Letter at 2, 3.) In this Circuit, however, Ladd's distinction makes no difference. Because Ladd's good-faith defense puts his (and Honig's) counsel's advice at issue, fairness dictates that he make full disclosure of the nature and circumstances of all advice he received on any matter as to which he asserts the defense so that a jury has all the facts necessary to assess Ladd's good faith, not just the non-privileged facts Ladd prefers to adduce.

Where the proponent asserts a good faith belief in the lawfulness of his actions, he will have waived the privilege, even without expressly invoking counsel's advice. United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (affirming district court's order refusing to preclude prosecution from cross examining defendant about his counsel's advice where defendant sought to testify to his good faith belief that he had complied with law); accord In re Cty. of Erie, 546 F.3d at 228-29 (reaffirming Bilzerian and holding that "assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney client privilege").

---

1642434, at *2 (S.D.N.Y. Apr. 20, 2011) ("'[h]aving blocked his adversary from conducting discovery on this issue, [the defendant] will not now be heard to advance reliance on counsel'") (quoting E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc., 90 F. Supp. 2d 277, 296 n. 133 (S.D.N.Y. 2000)). Thus, the Court should order the defense asserted now (and direct Ladd to obtain waivers of privilege over all communications with lawyers on whom he relied), or the Court should strike the defense. Any other ruling would prejudice the Commission; were discovery delayed any longer, the Commission would likely be confronted with memories that have dimmed and documents that no longer exist.

11

Underlying these decisions is the principle of fairness. "[I]t would be unfair for a party asserting contentions [of good faith] to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions." Arista Records, 2011 WL 1642434, at *2-3 (precluding defendant from testifying to his good-faith belief in the lawfulness of his actions where he had asserted the privilege to block discovery into counsel's advice). Also informing these decisions is the courts' concern with protecting the integrity of the process and ensuring that the jury is presented with the full story, not just the one the defendant finds most favorable. As the Second Circuit held in Bilzerian in affirming the trial court's decision to allow inquiry into the advice counsel had provided defendant, "if [defendant] asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal." 926 F.2d at 1294.

Ladd's assurance that he will offer only non-privileged evidence of his good faith is insufficient to avoid the waiver that his assertion of the good-faith defense effects. Numerous courts in this district have rejected similar promises by parties to restrict their evidence in this way, holding that their assertion of good faith opens the door to full discovery of anything— including counsel's advice— that might have colored their state of mind. See, e.g., Abromovage, 2019 WL 6790513, at *4 (rejecting defendant's argument that it did not intend to rely on advice of counsel in establishing its good faith and ordering production of privileged communications or withdrawal of defense); Scott v. Chipotle Mexican Grill Inc. 67 F. Supp. 3d 607, 618 (S.D.N.Y. 2014) (same); see also In re Keurig, 2019 WL 2724269, at *4 (rejecting plaintiff's offer to restrict its proof of good faith defense to counter-claims to non-privileged evidence that it had consulted counsel about its rights and obligations, holding privilege waived); MBIA Ins. Corp., 2012 WL 2568972, at *6-8 (plaintiff corporation waived privilege over its

12

attorney's advice when it offered non-privileged testimony from employees regarding their interpretation of contract); Wang v. The Hearst Corp., No. 12 Civ. 793 (HB), 2012 WL 6621717, at *2 (S.D.N.Y. Dec. 19, 2012) (rejecting defendant's offer to establish good-faith defense with evidence other than privileged advice of counsel, and finding waiver of privilege as to communications with attorneys).[8]

This is so even where the defendant alleges a good-faith reliance on someone else's counsel, as Ladd does here. A defendant who claims reliance on advice from another party's attorney to show his lack of scienter must disclose the advice he received from any other attorney on that topic, even his own. In re Gaming Lottery Secs. Litig., No. 96 Civ. 5567 (RPP), 2000 WL 340897, at *2 (S.D.N.Y. Mar. 30, 2000). In Gaming Lottery, defendants maintained that they had relied on the advice of their counter-party's attorney that their acquisition of an entity need not be disclosed to various regulators. Id. at 1-2. Granting plaintiff's motion to compel discovery about advice defendants received from their own attorneys on the disclosure issues, the court held that defendants' reliance on the non-privileged communications with the seller's attorneys waived their privilege with "respect to communications from attorneys or anyone else that bear on their state of mind" in proceeding with the transaction, including their own. Id. at *2; cf. Meskunas v. Auerbach, No. 17 Civ. 9129 (VB) (JCM), 2020 WL 7768486, at *5 (S.D.N.Y. Dec. 30, 2020) (in malpractice case, plaintiffs' claim that they relied on defendant's negligent advice waived their privilege regarding "any advice they received from other counsel," during the same time period because it "'bears on the issue of reasonable reliance.'") (quoting Gaming Lottery, 2000 WL 340897, at *3). And more recently, in SEC v. Lek Secs. Corp., No. 17 Civ. 1789 (DLC), 2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019), the court rejected the defense entirely

---

[8] Both Ladd's Answer and his Letter make clear that Ladd actually intends to rely on much more than non-privileged evidence, as discussed above.

where defendant had blocked discovery into its reliance on its customer's attorney's advice, holding that "legal advice given to another does not establish good faith as a matter of law." Id. at *1, 4.  The court reasoned that because a defendant relying on the advice of another's lawyer cannot know what information the lawyer's client had provided him and what that lawyer had told his clients, the defendant could not rely on the advice in good faith.  Id. at *4.

      For Ladd to be permitted to assert a defense of good-faith reliance on either MGT's or Honig's lawyers, the Commission should be entitled first to explore the nature and circumstances of the advice through full discovery, unimpeded by any privilege claim.  See In re Keurig, 2019 WL 2724269, at *4 ("Thus, in assessing whether [the client] exercised good-faith in connection with its marketing, the fact finder is entitled to know both what [the client] told [the lawyer] and what [the lawyer] told [the client].")  First, regarding the single email purportedly containing the advice Ladd relied on from Kesner, (Letter, Ex. A), what conversations did Ladd and his own counsel have about Kesner's representation?  Did Kaplowitz or Marcus (MGT's lawyers) advise Ladd that he could rely on Honig's counsel that Honig and his co-investors were not acting as a group?  Or did they explore with him his own duties of inquiry regarding that question in disclosing Honing's ownership in MGT filings?  And since that Kesner email dates back to 2012, years before Ladd's charged conduct occurred, did Ladd and his lawyers ever discuss the issue again between 2012 and MGT's 2015 S-1 and 2016 10-K?  Did they ask Kesner for a reassessment at any time in the more than three years that had elapsed?

      As part of his alleged good-faith defense, Ladd also cites his own lawyers' sign off on his MGT filings and points to their knowledge of "all material facts" in doing so.  (Answer at 3; see also Letter at 2 (noting that Ladd will present evidence that Sichenzia "did not have information suggesting that Honig and the others were acting as a group").)  But on what does Ladd base that

14

assertion?  In discovery, Ladd withheld untold numbers of documents reflecting conversations between him and his lawyers, Kaplowitz and Marcus, about SEC filings.  (Brown Decl., Ex. A (Privilege Log) at Log No. 8.)  Did Ladd make complete disclosure to his own counsel concerning what he knew about:

- Honig's investments in other companies with the same investors who participated in the MGT financings;

- Honig's relationship to the 2012 and 2015 investors;

- Ladd's lack of interaction with most of Honig's co-investors in negotiating the terms of either the 2012 or 2015 financings;

- Honig and his co-investors' attempt to negotiate a private group sale of their MGT securities after the 2012 transaction;

- Honig and his co-investors' near simultaneous sales of stock in April 2013 after co-Defendant John Ford's allegedly fraudulent 2013 Seeking Alpha article on MGT was published at Honig's direction[9];

- Honig and his co-investors' near simultaneous sales of stock in early 2016 after the publication of the MGT promotion in Small Cap Leader that Ladd (through MGT) had paid for at Honig's direction;

- Kesner's frequent investments alongside Honig and other members of the group without his own Schedule 13D disclosures identifying himself as a member of a group; and

- Ladd's conclusion that Honig was a predatory lender and "scum bag."[10]

Before Ladd is permitted to assert his alleged good-faith defense, the Commission should be provided the opportunity to take full discovery to explore all of the circumstances of the

---

[9] Ladd testified that he knew that Ford's Seeking Alpha article was false when he saw it and assumed that Ford had been paid to write it by Honig or another MGT investor.  (Brown Decl., Ex. B (Ladd Tr.) at 239:4-240:11; 242:8-16.)

[10] Similar questions about the advice Ladd sought from MGT's lawyers concerning his May 9, 2016 press release, and his May 2016 Forms 4 and 144, the facts he disclosed in seeking that advice, and what advice he received, should also be answered.

15

advice he received, unimpeded by any party's assertion of attorney-client privilege.

## **CONCLUSION**

For the foregoing reasons, the Court should strike Ladd's Answer to the extent it asserts as an affirmative defense any reliance on counsel, and all references to such reliance in his Answer, or, in the alternative, order Ladd to procure all necessary privilege waivers and re-open discovery for the limited purpose of exploring Ladd's good-faith defense.

Dated:  April 27, 2021  
       New York, NY

Respectfully submitted,

/s/ Nancy Brown  
Nancy A. Brown  
Jack Kaufman  
Katherine Bromberg  
200 Vesey Street, Suite 400  
New York, NY 10281  
(212) 336-1023 (Brown)  
Attorneys for Plaintiff Securities and Exchange Commission