UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION

                         Plaintiff,                          Case No. 1:18-cv-08175-ER

v.

BARRY C. HONIG,
*et al.*

                         Defendants.
-------------------------------------------------------------x

## ROBERT LADD'S MEMORANDUM OF LAW IN OPPOSITION TO THE SEC'S MOTION TO STRIKE A PLEADING

FORD O'BRIEN LLP
Adam C. Ford
Anjula S. Prasad
575 Fifth Avenue
17th Floor
New York, New York 10017
aford@fordobrien.com
(212) 858-0040

*Attorneys for Defendant Robert Ladd*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................ii-iii

BACKGROUND AND PRELIMINARY STATEMENT ..............................................1

ARGUMENT..........................................................................................7

  I.   THE SEC'S MOTION SHOULD BE DENIED AS UNTIMELY ...................................7

  II.  THE SEC HAS NOT MET ITS BURDEN UNDER 12(F) TO STRIKE LADD'S AFFIRMATIVE DEFENSE, OR TO COMPEL A WAIVER...........................................8

      A.  Legal Standard.....................................................................8

      B.  Ladd's Affirmative Defense and Sections of His Answer Should Not Be Stricken Because the SEC Cannot Meet Its Burden to Strike ................................8

          1.  *Admissible evidence exists in support of Ladd's allegations* ...................11

          2.  *Ladd's defense has a bearing on the issues in the case and its ultimate outcome*...................................................................................11

          3.  *The SEC will not be prejudiced if portions of Ladd's Answer are not stricken*...................................................................................12

  III.  LADD DOES NOT ASSERT THE CLASSIC ADVICE OF COUNSEL AFFIRMATIVE DEFENSE AND HIS ASSERTION OF GOOD FAITH DOES NOT WAIVE PRIVILEGE.........................................................................................14

      A.  The Facts Here Do Not Fit a Classic Advice of Counsel Defense .......................15

      B.  Ladd's Good Faith Defense Does Not Require Him to Waive His Privilege Because He Is Not Asserting That He Relied On His Own Attorney's Legal Advice to Excuse Filing an SEC Form with a Material Omission.......................16

      C.  Ladd Is Incapable of Obtaining Waivers for Honig's Privilege for the SEC........18

      D.  The SEC Will Not Be Prejudiced if It Is Not Permitted to See Ladd's and Honig's Privileged Communications with Their Attorneys.................................23

CONCLUSION .....................................................................................24

# TABLE OF AUTHORITIES

*Abromovage*,
    2019 WL 6790513 ................................................................................................. 17

*Arch Ins. Co. v. Precision Stone, Inc.*,
    584 F.3d 33 (2d Cir. 2009) ....................................................................................... 9

*Arista Recs. LLC v. Lime Grp. LLC*,
    2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) ......................................................... 16

*Coach, Inc. v. Kmart Corps.*,
    756 F. Supp. 2d 421 (S.D.N.Y. 2010) ..................................................................... 12

*Geomc Co. v. Calmare Therapeutics Inc.*,
    918 F.3d 92 (2d Cir. 2019) ...................................................................................... 12

*Holland v. Chase Bank USA*, N.A., No. 19 CIV. 233 (PAE),
    475 F. Supp. 3d 272 (S.D.N.Y. July 28, 2020)......................................................... 7

*In re Cty. of Erie*,
    546 F.3d at 228–29 .................................................................................................. 17

*In re Gaming Lottery Secs. Litig.*,
    No. 96 Civ. 5567 (RPP), 2000 WL 340897 (S.D.N.Y. Mar. 30, 2000) ................... 21

*In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*,
    14 MD 2542 (VSB)(HBP) (S.D.N.Y. Jul. 1, 2019)................................................. 16

*In re Sims*,
    534 F.3d 117, 132 (2d Cir. 2008) ............................................................................ 17

*John Doe Co. v. United States*,
    350 F.3d 299 (2d Cir. 2003) .................................................................................... 17

*Kochan v. Kowalski*,
    478 F. Supp. 3d 440 (W.D.N.Y. 2020)...................................................................... 7

*Landesbank Baden-Württemberg v. RBS Holdings USA Inc.*,
    14 F. Supp. 3d 488 (S.D.N.Y. 2014) ......................................................................... 8

*Meskunas v. Auerbach*,
    No. 17 Civ. 9129 (VB) (JCM), 2020 WL 7768486 (S.D.N.Y. Dec. 30, 2020)........ 21

*Nokaj v. N.E. Dental Mgt., LLC*,

No. 16 Civ. 3035 (KMK), 2019 WL 634656 (S.D.N.Y. Feb. 14, 2019) ................................ 15

*Patterson v. New York*,
   432 U.S. 197 (1977) .............................................................................................................. 9

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co*.,
   14 Civ. 4394 (AJN) (BCM), 2017 WL 9802844 (S.D.N.Y. Sept. 15, 2017) ...................... 12

*Saks v. Franklin Covey Co.*,
   316 F.3d 337, 350 (2d Cir. 2003) .......................................................................................... 9

*Scott v. Chipotle Mexican Grill Inc.*,
   67 F. Supp. 3d 607 (S.D.N.Y. 2014) .................................................................................... 17

*SEC v. Lek Secs. Corp.*,
   No. 17 Civ. 1789 (DLC), 2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019) ............................. 22

*State St. Glob. Advisors Tr. Co. v. Visbal*,
   431 F. Supp. 3d 322, 347 (S.D.N.Y. 2020) ........................................................................... 8

*Travellers Int'l, A.G. v. Trans World Airlines, Inc.*,
   41 F.3d 1570 (2d Cir. 1994) ................................................................................................... 9

*United States v. Beech-Nut Nutrition Corp.*,
   871 F.2d 1181 (2d Cir. 1989) ............................................................................................... 15

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) ............................................................................................... 16

*United States v. Sakr*,
   17-CV-907S, 2 (W.D.N.Y. Apr. 20, 2021) ............................................................................ 8

*United States v. Scully*,
   877 F.3d 464 (2d Cir. 2017) ................................................................................................... 9

*United States v. Wells Fargo Bank, N.A.*,
   132 F. Supp. 3d 558 (S.D.N.Y. 2015) .................................................................................. 21


Rules and Statutes:

17 C.F.R. § 240.13d–5(b)(1) (2000) ............................................................................................ 1

Fed. R. Civ. P. 12(f) ...................................................................................................................... 7

Black's Law Dictionary 451 (8th ed. 2004) ...................................................................................9

## BACKGROUND AND PRELIMINARY STATEMENT

The SEC has a problem. It filed allegations against Robert Ladd that it was not able to substantiate with evidence by the end of discovery. As a result, the SEC now seeks to take more discovery, or prevent Ladd from defending himself by mischaracterizing his position, then moving to "strike" his defense. The Court should not entertain the SEC's attempt to circumvent the law to strike a pleading, and should deny its motion. With discovery over, Ladd is now entitled to move for summary judgment.

The SEC's problem is that its staff attorneys filed a Complaint against 20 defendants, principally alleging that Barry Honig and several other individuals (and their corporate entities)—not including Ladd—acted as a statutorily defined "group" under Section 13(d) of the Securities Exchange Act, and violated various securities laws in connection with three companies, two of which have nothing to do with Ladd. As of today, all of the defendants alleged to have invested as a group have settled with the SEC without admitting or denying the allegations. Out of the 20 defendants initially named, Ladd is the only remaining defendant in this case.

As this Court is well aware, the SEC defines a Section 13(d) group as "two or more persons agree[ing] to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer. . ." 17 C.F.R. § 240.13d–5(b)(1) (2000). The SEC's no action letters on the issue make abundantly clear that far more is required for the formation of a 13(d) group under the securities laws than simply evidence of individual and corporate investors consistently investing together, at times even working together at the same company or from the same office—an actual agreement to form a 13(d) group is required. But now discovery has closed, the defendants alleged to have been in a 13(d) group have settled without admitting they

ever made such agreement, and the SEC has not adduced any other evidence to demonstrate that Honig and the others were acting as a 13(d) group—let alone that Ladd knew they were, such that MGT had a filing requirement to disclose it. Compounding the issue, because these individuals all settled with an agreement with the SEC to not deny the allegations, Ladd does not have access to any of them for purposes of eliciting that denial in testimony.  The SEC's problem is further exacerbated by the fact that the law firm that filed Honig's Schedule 13(d) in October 2015, stating that Honig was not investing as a 13(d) group, also represented both Honig and Ladd's company (MGT), in 2012, at which time Honig's attorney disclosed in a non-privileged communication that Honig and the others were *not* investing as a group. Nowhere does the Complaint in this matter allege that any lawyer from Sichenzia knowingly made a false filing with the SEC.

Unlike the other defendants, Ladd has not settled. Ladd has done nothing wrong. The operative Complaint, however, alleges that he did. Specifically, it alleges, *inter alia*, even though Ladd was not part of any group, that Honig and the others were acting as a 13(d) group, and Ladd knew this, and therefore the Form 10-K and Form S-1 filed by MGT and its law firm, Sichenzia, should have disclosed this alleged group. The SEC alleges that this omission in these forms is evidence that Ladd on his own, and not as part of the alleged Honig group, engaged in a pump and dump of his own company's stock, and forms the predicate allegations of two separate scienter-based 10(b)-5 and non-scienter based 17(a) claims, as well as allegations of aiding and abetting the same violations against others.[1]

---

[1] It was not until the Second Amended Complaint that the SEC first made allegations that Ladd violated Rule 13(d), but importantly these allegations against Ladd are in reference to his own sales and reporting thereof, not his duty to report Honig's status.

Without any legal basis to reopen discovery, the SEC opens its brief on the erroneous assertion that it has just learned that Ladd intends to defend this case on the basis of advice of counsel. (SEC Memo pg. 1, 9 ("Ladd's Answer asserts a classic advice-of-counsel defense")). But as Ladd has consistently told the SEC for at least fifteen months, and asserted to the Court in no uncertain terms on April 6, 2021, Ladd is not asserting the classic advice of counsel defense, he asserts that he acted in good faith at all times, and the SEC has failed to prove otherwise. Ladd has consistently maintained that he listed the affirmative defense as a prophylactic measure, and indeed, made no mention of his own counsel.

In order to make its motion seeking part of Ladd's Answer stricken, or in the alternative, to compel Ladd to waive his privilege, the SEC conflates Ladd's arguments regarding his reliance on the advice of professionals in defending against fraud allegations with the reliance required when asserting the classic advice of counsel defense in non-fraud cases. Courts in this circuit are clear that reliance on counsel in defending against fraud is not an affirmative defense, it is evidence that can be accepted by the factfinder to conclude a lack of intent. Indeed, Ladd has stated his intention to use specific, non-privileged evidence in his defense, but this is not advice of counsel, as Ladd did not rely on advice from counsel as to the legality of omitting the disclosure of a 13(d) group that he was aware of in his own company filings. Rather, Ladd did not know of a 13(d) group, and the facts known at that time, including Honig's Schedule 13(d) (filed on EDGAR by the law firm of Sichenzia), did not suggest such a group existed. None of this is privileged and Ladd should not be forced to waive privilege to argue these facts in defense of the scienter-based claims the SEC has filed.

Not only does the SEC demand that Ladd waive his privilege, but that he also waives Honig's attorney-client privilege, although the SEC fails to articulate exactly how Ladd could

obtain such a waiver. Ladd obviously has no control over Honig's attorney-client privilege, making this demand absurd on its face. Moreover, the cases the SEC relies on to argue that Ladd must waive Honig's attorney-client privilege are misconstrued and off-the-mark. The law does not support such a proposition. In any event, Ladd had no insight into Honig's communications with his counsel at the time, so any such waiver would not lead to relevant evidence in this case.

This bizarre demand by the SEC that Ladd waive Honig's privilege appears not only related to Ladd's case, but indicates the agency's potential interest or investigation into the conduct of Honig's attorney, Harvey Kesner. While we have no benefit of insight into any non-public SEC investigation, the SEC's on-the-record statements on April 6, 2021, as well as assertions made in its memorandum, suggest that the SEC is questioning whether Kesner and Honig were a 13(d) group.  Of course, these allegations have never before been raised in either Amended Complaint, or any other document filed or produced in this litigation. There is no evidence in the record that Ladd had any reason to believe that Kesner was part of a 13(d) group with Honig, and specifically no evidence that Kesner made "frequent investments alongside Honig and other members of the group without his own Schedule 13(d) disclosures identifying himself as a member of a group" (SEC Memo pg. 15).  The first the SEC made this allegation was at the April 6, 2021 hearing.  If it is true, it is news to Ladd, and would only further his defense.  Either the SEC has invented a line of questioning for Ladd and his counsel which has no basis in fact, or the SEC has obtained documents in connection with this investigation (or another one) regarding Kesner that it intends to use in this litigation, but has not yet produced to Ladd in discovery.  In either scenario, the SEC's conduct in this regard would be problematic, to say the least.[2]

---

[2] This is not a rhetorical point.  Ladd respectfully requests that the Court order the SEC to disclose the factual basis for this assertion regarding Kesner's purported involvement, including any document or

Putting aside the nature of the request that Ladd convince Honig to waive his privilege, the SEC asserts that Ladd has waived his own privilege because either he has asserted advice of counsel as an affirmative defense—which he does not—or that he asserts good faith, which is not a basis to find a waiver of privilege. But the majority of case law cited by the SEC is inapposite, with the SEC repeatedly citing cases that hinge on factual predicates having nothing to do with what is at issue here. As discussed in more detail below, the advice of counsel cases relied upon by the SEC supporting a party's ability to obtain discovery into privileged documents are all based on a threshold factual predicate: that a defendant actually violated the law by making a misstatement or omission where the defendant is seeking to excuse otherwise unlawful conduct. In contrast to the SEC's cases upon which it relies, here, the SEC cannot even prove what it claims to be the "true extent" of Honig and the others' investments. That predicate fact, required to form the basis of the SEC's 10(b)-5 and 17(a) claims against Ladd with respect to its "true extent" theory, does not lie within any purported advice of counsel that is being withheld by Ladd.

The fundamental flaw with the SEC's allegations against Ladd, a flaw that weaves its way though its motion seeking to strike Ladd's affirmative defense or have him waive privilege, is that the SEC wants to impose legal obligations on Ladd (or perhaps even MGT's counsel) that are not found in any statute or case. Because Ladd is correctly not alleged to have been a member of the "Honig Group," 13(a) confers on MGT (for which Ladd was responsible) the duty to file only Form 10-Ks and S-1s.[3]  Significantly, Item 403 of Regulation S-K requires issuers to provide a table listing "any person (including any 'group' as that term is used in section 13(d)(3)

---

notes of interviews taken by the SEC. If no factual predicate for this assertion exists, the assertions should be stricken from the record, and this Court should consider appropriate sanctions.
[3] Exchange Act Regulation S-K at Item 10 sets out the information that an issuer is required to disclose in both forms. (17 C.F. R. § 229.10(a)).

of the Exchange Act) *who is known to the registrant* to be the beneficial owner of more than five percent of any class of the registrant's voting securities." (emphasis added). Similarly, Item 405 of Regulation S-K requires companies to report "*any known failure to file a required Form*" on the part of beneficial owners of more than 10% of stock. (emphasis added). MGT's (and Ladd's) duty to report is, quite logically, confined to what it (and he) knows. Regulation S-K does not impose an obligation on a registrant to conduct an inquiry and make an independent assessment of another individual's group status, contrary to what the 13(d) filer (and/or his counsel) has actually filed. Kesner, representing Honig, filed Honig's 13(g)[4] in October 2015 and there have been no allegations or evidence produced suggesting counsel for MGT, also Sichenzia attorneys, had reason to distrust their partner's assessment and filings or did anything unlawful themselves. (Ford Dec. ¶ 5, Ex. A).

For the foregoing reasons, in addition to being privileged, the list of questions the SEC suggests it should be entitled to ask regarding Ladd's communications with MGT counsel (SEC MOL, pg. 15) are all irrelevant. The relevant question is whether Ladd knew (or had reason to know) that Honig and the others had entered into an agreement that created a group under 13(d). With discovery closed, and no evidence to support the assumed factual underpinnings of this threshold allegation, the SEC now brings this motion either seeking additional discovery or preventing Ladd from arguing his defense. For the following reasons, the SEC's motion should be denied.

---

[4] Schedule 13G is shorter version of Schedule 13D with fewer reporting requirements.  For purposes of this motion, it has no effect on group reporting requirement.

## ARGUMENT

### I.   THE SEC'S MOTION SHOULD BE DENIED AS UNTIMELY

Since the SEC failed to procure evidence that it needs to successfully prevail on its charges against Ladd, the SEC raises this issue for the first time after the close of discovery.  The SEC misinforms this Court that "Due to the timing of Ladd's recent Answer [] the issues raised by this motion arose only recently." (SEC Memo pg. 4). This is not accurate. The issue that the SEC only raises now, over two-and-a-half years since the start of discovery, has been in issue since at least October 17, 2019, when Ladd filed his supplemental disclosures listing lawyers at Sichenzia as persons with discoverable information. Indeed, almost a year ago the SEC emailed the undersigned counsel for Ladd to ask "Has Mr. Ladd waived privilege over those communications [with Sichenzia]? If not, could you explain how Mr. Ladd will rely on the communications identified in the Supplemental Initial Disclosure." (Ford Dec. ¶ 6, Ex. B). On July 13, 2020, the undersigned here set forth Ladd's unwavering position to the SEC in an e-mail:

> "Mr. Ladd has not waived privilege with respect to these communications. In terms of explaining how Mr. Ladd would rely on communications without waiving privilege the answer is that he would rely on communications not subject to privilege, for example, communications involving a third party or the public, otherwise not intended to remain privileged, or other types of non-privileged communications." (*Id*).

So the SEC's potential advice of counsel issue, which the SEC tells this Court arose "recently," after Ladd filed his Answer, actually arose in mid-July 2020. The SEC knew of Ladd's position with approximately nine months of discovery remaining and made the strategic decision not to challenge it at that time. It should not be permitted to reopen discovery at this late hour.

## II.     THE SEC HAS NOT MET ITS BURDEN UNDER 12(F) TO STRIKE LADD'S AFFIRMATIVE DEFENSE, OR TO COMPEL A WAIVER

### A.     Legal Standard

Rule 12(f) of the Federal Rules of Civil Procedures allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[M]otions to strike under Rule 12(f) are generally disfavored and granted only if there is strong reason to do so." *Kochan v. Kowalski*, 478 F. Supp. 3d 440, 450-51 (W.D.N.Y. 2020) (citing *Holland v. Chase Bank USA*, N.A., No. 19 CIV. 233 (PAE), 475 F. Supp. 3d 272, 275 (S.D.N.Y. July 28, 2020) (quotation omitted)). *United States v. Sakr*, 17-CV-907S, 2 (W.D.N.Y. Apr. 20, 2021). To prevail on a motion to strike, "a party must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Landesbank Baden-Württemberg v. RBS Holdings USA Inc.*, 14 F. Supp. 3d 488, 497 (S.D.N.Y. 2014) (citation omitted). *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 347 (S.D.N.Y. 2020).

### B.     Ladd's Affirmative Defense and Sections of His Answer Should Not Be Stricken Because the SEC Cannot Meet Its Burden to Strike

The SEC's motion to strike is premised on a misrepresentation of Ladd's position: that he is asserting a classic affirmative defense of advice of counsel. He is not.  He is defending against fraud charges, which, under Second Circuit precedent holds that advice of counsel, is not an affirmative defense to fraud charges. In fairness to the SEC, if Ladd were to assert advice of counsel as an affirmative defense—that is, asserting that MGT's counsel at Sichenzia advised him that he did not have to disclose Honig and the others group status, despite Ladd's knowledge of their having entered into an agreement to acquire, hold, vote or dispose of equity securities of

8

an issuer—then as explained below in Section III, perhaps the SEC would have a valid argument. But the SEC *does not* have a valid argument, since Ladd is not asserting the defense of the affirmative defense of advice of counsel. Rather, his position has always been, and remains now, that there is no evidence that Honig and the others were in fact acting as a group, or if they were, there is no evidence that Ladd knew this, and as a result, MGT did not have a reporting obligation.[5] In other words, there was no violation of law that Ladd is seeking to have excused by virtue of having obtained legal advice, the *sine qua non* of the classic advice of counsel defense.

The Second Circuit has been clear on the distinction between an affirmative defense and an advice of counsel defense: "In a fraud case, [], the advice of counsel defense is not an affirmative defense that defeats liability even if the jury accepts the government's allegations as true. Rather, the claimed advice of counsel is evidence that, if believed, can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an "unlawful intent." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989). The SEC alleges fraud against Ladd and therefore, he can raise his non-privileged interactions with counsel as evidence that, if believed, demonstrate he did not have "unlawful intent."  See also, *United States v. Scully*, 877 F.3d 464, 477 (2d Cir. 2017) (explaining a proper jury instruction could read "You have heard evidence that the

---

[5] In addition to the fact that the SEC settled with all the members of the purported 13(d) group without anyone admitting or denying they were a member of the group, Michael Brauser (and his entity Grander Holdings) filed a motion to dismiss arguing the SEC failed to properly plead he was part of a 13(d) group. (Docket 144). During discovery, Brauser also produced a privilege log which disclosed he was withholding documents as privileged with the subject description of "Review of Form 13G" and "Review and Preparation of Forms 13G and 13D" around the relevant time period. Ford Dec. ¶ 4, Ex. C. In other words, Brauser, like Honig, obtained legal advice regarding Form 13 disclosures and he did not disclose he was part of a "group," filed a memorandum of law arguing the SEC failed to properly plead he was part of a group, and then settled the allegations that he was a member of the group without admitting those allegations.

defendant received advice from a lawyer and you may consider that evidence in deciding whether the defendant acted willfully and with knowledge…"),

Moreover, an affirmative defense is "'[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.' Black's Law Dictionary 451 (8th ed. 2004); see also *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003)." *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017), *see also Patterson v. New York*, 432 U.S. 197, 211 (1977) ("the long-accepted rule was that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant"). With that understanding, Ladd's counsel here was careful in crafting the language of the affirmative defense with which the SEC takes issue, and intentionally placed it with the panoply of other affirmative defenses asserted in Ladd's Answer. Significantly, "[t]he general rule in federal courts is that a failure to plead an affirmative defense results in a waiver." *Travellers Int'l, A.G. v. Trans World Airlines, Inc*., 41 F.3d 1570, 1580 (2d Cir. 1994)). "[W]hether a [particular] claim is properly characterized as an affirmative defense" is not the issue at the pleading stage: "it must be set forth in the pleadings to provide a basis for relief . . . ." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 42 (2d Cir. 2009) (citation omitted). To preserve his rights, Mr. Ladd raised the affirmative defense in his Answer, drafted in a manner to comport with the facts of this case.

Given this, as noted above, to prevail on its motion to strike portions of Ladd's Answer that do not suit the SEC, consistent with *Landesbank Baden-Württemberg,* the SEC must first demonstrate that no evidence in support of Ladd's defense would be admissible, that his allegations have no bearing on the issues in the case, and that the SEC would be prejudiced if allegations are not struck. The SEC fails on all three grounds.

### 1.      Admissible evidence exists in support of Ladd's allegations

This first factor is easily satisfied, since evidence in support of Ladd's defense will be admitted into the record. Indeed, the evidence on this point consists principally on three documents that the SEC challenges, but which are undoubtedly authentic, relevant, and admissible.

### 2.      Ladd's defense has a bearing on the issues in the case and its ultimate outcome

The second factor is equally fulfilled. Ladd does not argue that he relied on counsel's advice and therefore, that a violation of the law must be excused. Ladd is arguing that there is no evidence that Honig and others formed a 13(d) group, and all alleged members of the group have signed agreements with the SEC neither admitting nor denying such an agreement existed. And even if there was any such evidence, (there is not), there is no evidence that Ladd knew Honig and others were part of a Section 13(d) group, which compelled MGT to make such a disclosure in its forms 10-K and S-1. Ladd's filing disclosures were based on Honig's Schedule 13(g), filed on October 8, 2015, by the law firm Sichenzia, Ross Friedman Ference LLP ("Sichenzia"). It is a publicly available document, it is not privileged, and Ladd is entitled to rely on it in presenting his full factual defense.[6]

Stated plainly, if in fact Honig and the others were <u>not</u> operating as a group, *as the complete lack of evidence to establish they had entered into an agreement to acquire or dispose of MGT shares now indicates*, (or alternatively, that even if the SEC can prove at this stage that others were investing as a group, there is no evidence suggesting that Ladd knew this), the SEC

---

[6] The SEC's statement of facts suggests that Ladd "participated" in two pump-and-dump schemes, one in 2012 and one in 2016. A full rebuttal of the SEC's baseless statement of facts is beyond the scope of this memo (here again the SEC relies on endless repetition of the words "pump and dump" to inflame the reader when it lacks evidence of wrongdoing).

cannot proceed with its claims against Ladd. Basically, if the SEC cannot prove that Honig and the others were actually operating as a group—a predicate fact it must establish in order to prosecute its claims against Ladd—then the fact that "Ladd did not disclose that Honig and the others were operating as a group" contains no omissions, is not a misstatement, and therefore, its materiality, its statement or omission, or Ladd's mindset, all issues of law, are simply no longer issues at all. [7]

### 3.   *The SEC will not be prejudiced if portions of Ladd's Answer are not stricken*

As to the third factor, the SEC laments about the prejudice it will incur if Ladd is permitted to use non-privileged documents involving lawyers in his defense, unless it is able to obtain waivers to view Ladd's and Honig's privileged communications with their attorneys.

The court in *Geomc Co*. explained that "[w]hether the third factor, prejudice, should be a basis for dismissing or opposing the addition of an otherwise valid affirmative defense will normally depend on when the defense is presented. A factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation. A defendant with such a defense is entitled to a full opportunity to assert it and have it adjudicated before a plaintiff may impose liability." *Geomc Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98-99 (2d Cir. 2019). The court in *Geomc Co*. further explained that this type of prejudice is only *unacceptable* "where a defense is presented beyond the normal time limits of the Rules, especially at a late stage in the litigation[.]" *Id.* The

---

[7] The SEC also states, without any factual predicate, that Ladd intends to rely on advice of counsel regarding the May 9 McAfee press release. Again, Ladd has no intention of arguing that counsel gave him advice regarding this press release or the mistaken language; Ladd argues that the fact that he sent this press release to counsel prior to its publication suggests he did not realize the press release contained the scriber's error of stating that McAfee sold his company to Intel for $7.8B.

policy considerations behind this law are to allow a plaintiff to "properly tailor [its] discovery and motion practice as the case progresses." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425-26 (S.D.N.Y. 2010). Undoubtedly, Ladd gave the SEC over a year's notice of his position and the SEC had that entire time to "tailor its discovery and motion practice." Since the Commission has known Ladd's position and indeed exactly which documents in evidence Ladd intends to use, it cannot plausibly claim it will be prejudiced at trial. The SEC will not be prejudiced under the standard for 12(f) motions to strike, and therefore, its motion should be dismissed.

Despite that it cannot fulfill the requirements to strike a pleading under 12(f), the SEC seeks to unilaterally convert Ladd's defense to the classic advice of counsel affirmative defense, and argues such defense should be stricken, relying on *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 14 Civ. 4394 (AJN) (BCM), 2017 WL 9802844, at *6 (S.D.N.Y. Sept. 15, 2017). There, the court struck an advice of counsel affirmative defense as both insufficient and immaterial, satisfying prong two under the test to strike, and further holding that the plaintiff would be prejudiced otherwise, satisfying prong three. But in sharp contrast to Ladd's case, the defendant Deutsche Bank's counsel acknowledged that if they were to assert advice of counsel they would have to waive privilege. *Id*. Ladd makes no such acknowledgement because that is not his position. When probed, the Deutsch Bank defendants viewed the Court's request to answer as to whether it would assert advice of counsel as premature, so the Court gave Deutsche Bank a time period with which to decide whether it wanted to assert an advice of counsel defense or to maintain privilege. When Deutsche Bank let that deadline pass, but tried to continue to ask the court not to rule on the question because Deutsche Bank "did not yet have the information it needed to "apply the [advice of counsel] defense" (*Id.* at *3), the court ruled that the defense did

not have any "basis in fact."  But the driving facts there were that since Deutsche Bank could not identify any non-privileged documents that it intended to rely on for its position, it did not have any basis in the law that might support its defense. *Id.* at *5.  Given that, the court found that the plaintiff would be prejudiced if Deutsche Bank asserted an advice if counsel defense at trial. But that is precisely the opposite of the situation here, where, Ladd has identified non-privileged documents to support his position, and is not "withholding as privileged documents that might support such a defense." Quite the opposite, the SEC has the documents in hand and Ladd has identified them. *Deutsche Bank Nat'l Trust Co*. does not support the SEC's argument here.

## III.   LADD DOES NOT ASSERT THE CLASSIC ADVICE OF COUNSEL AFFIRMATIVE DEFENSE AND HIS ASSERTION OF GOOD FAITH DOES NOT WAIVE PRIVILEGE

Ladd's counsel has repeatedly pointed the SEC to exactly three non-privileged documents involving lawyers in evidence they intend to use in Ladd's defense, yet, through multiple assumptions made by and known only to the SEC, it insists that "Ladd intends to adduce evidence that MGT's lawyers advised Ladd (MGT's CEO) concerning Honig's membership in a 'group' and MGT's consequent disclosure obligations under SEC rules, and that they possessed knowledge of the relevant material facts necessary to that advice." But Ladd has no such intention and has repeatedly made that clear; Ladd has simply highlighted to the SEC, a publicly filed Schedule 13(d), filed on the SEC website EDGAR on October 8, 2015, by the law firm Sichenzia, which states Barry Honig's investment amount, making no election for his investment status as a group member under 13(d)—the same position maintained by both Honig and Kesner, as reflected by communications involving Ladd, Kesner, and Honig, produced in discovery.

The SEC also argues that Ladd's Answer "confirm[s] that Ladd intends to offer evidence

that Sichenzia (including MGT's team) 'did not have information suggesting that Honig and the others were acting as a group . . . [and] would not have made a false filing with the SEC'." First, Ladd has an email where Honig's lawyer says they were not a group, and all emails between Honig's lawyers and MGT's lawyers have been produced. Second, it is not Ladd's burden to prove that Honig and the others were *not* acting as a group; it is the SEC's burden to prove these individuals entered into an agreement, which it cannot do with the record as it now stands.

### A.    The Facts Here Do Not Fit a Classic Advice of Counsel Defense

Despite the SEC's insistence that Ladd's position impliedly asserts a "classic advice of counsel defense," and putting aside his insistence that he is not raising it, moreover, the facts here do not fit the requirements of that defense. To first establish the defense, the proponent must show: "(1) that he made a complete disclosure to counsel; (2) sought advice from counsel as to the legality of his actions; (3) received advice that his conduct was legal; and (4) relied on such advice in good faith." *Nokaj v. N.E. Dental Mgt., LLC*, No. 16 Civ. 3035 (KMK), 2019 WL 634656, at *13 (S.D.N.Y. Feb. 14, 2019) (citations omitted). But Ladd does not purport to have sought advice from MGT's counsel regarding whether Honig had formed a 13(d) group because there was no suggestion that he had and Honig was being represented by another lawyer in the same law firm who was filing Honig's SEC filing.  As he has stated time and time again, Ladd did not rely on the legal advice of his attorney, or Honig's attorney, to conclude Honig had not entered into a 13(d) group, but rather relied non-privileged facts and documents in the record that defeat the SEC's unsupported assertion that Honig and others invested as a group, and that Ladd knew this. Ladd has every right to rely on those documents in his determination of facts, and he has every right to rely on those documents in summary judgment (and if necessary, at trial), to negate a claim of fraudulent or unlawful intent that the SEC alleges.

Put succinctly, the distinction here versus the cases cited by the SEC in its memorandum is the following: In the cases the SEC relies on, it was acknowledged by the party asserting the advice of counsel defense (or impliedly waiving privilege) that she had made a misstatement or violated the law in some way, and claimed to rely upon the advice of her attorney in excusing that unlawful conduct. For example, the defendant in *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) violated the securities laws, but relied on his counsel's advice in a good faith attempt to comply with the law. Significantly, as the Court of Appeals noted, "the District Court's ruling in *Bilzerian* left the defendant's privileged communications intact if he merely denied criminal intent but did not assert good faith or if he argued good faith only through defense counsel and the examination of witnesses." *Id*. at 1293.  Ladd seeks the same here. The defendant in *In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*, which the SEC cites heavily to in its brief, misstated that his product was biodegradable when it wasn't, asserting that he relied on his counsel's advice. 14 MD 2542 (VSB)(HBP) (S.D.N.Y. Jul. 1, 2019).  In *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1642434, at *1 (S.D.N.Y. Apr. 20, 2011), the defendants believed in the legality of their *unlawful* conduct, basing their defense on attorney-client communications. These are not Ladd's facts and not his argument. He did not make an omission. He did not rely on the advice of his attorney as to whether he was doing something that violated the law. Ladd maintains that his actions did not violate the law, and if they did he did not know it.

### B.   Ladd's Good Faith Defense Does Not Require Him to Waive His Privilege Because He Is Not Asserting That He Relied On His Own Attorney's Legal Advice to Excuse Filing an SEC Form with a Material Omission

Not only does the SEC seek to unilaterally transform Ladd's defense into the classic affirmative defense of advice of counsel, it seeks to place the burden on Ladd to show that his

privilege has not been waived. The SEC insists that by merely asserting good faith as a defense, Ladd has waived his privileged communications with his attorney. The SEC purports to rely on Second Circuit cases that affirm that "the assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege." *In re Cty. of Erie*, 546 F.3d at 228–29. But the law is clear in this Circuit that a party "does not forfeit [the attorney-client privilege] merely by asserting to his adversary that he believes he has done nothing wrong," *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008), as Ladd asserts here.

Moreover, even if Ladd were asserting an advice of counsel defense—which he is not—merely pleading a claim or defense does not operate as a waiver of all protected information relevant to the claim or defense, unless the party asserting the privilege relies, to some extent, on the protected information to advance that claim or defense. *In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (quoting *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003)). Since Ladd does not intend to argue that a material omission should be legally excused because he relied on advice of his counsel, he can easily establish that his privileged communications with his attorney have not been waived.

The SEC cites to two particularly inapposite cases, *Scott v. Chipotle Mexican Grill Inc*. 67 F. Supp. 3d 607, 618 (S.D.N.Y. 2014) and *Abromovage*, 2019 WL 6790513, to propose that "numerous courts in this district . . . [have held] that [a defendant's] assertion of good faith opens the door to full discovery of anything—including counsel's advice," if a party offers "non-privileged evidence of his good faith." But the distinction in these cases is too significant to overlook. *Abromovage* dealt with a "Kolstad" defense, which is an affirmative defense insulating an employer from punitive damages liability if it has made good faith efforts to enforce an

antidiscrimination policy; and the court in *Chipotle Mexican Grill Inc.* addressed Section 260 of the FLSA's statutory defense, allowing an employer who failed to pay appropriate wages an opportunity to show that it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing its acts or omissions did not violate the FLSA. In both of these cases, raising the defense of good faith triggered an inquiry, *by statute*, into communications supporting that defense, including privileged communications. Ladd's defense does not trigger such an inquiry by statute or otherwise.

### C.     Ladd Is Incapable of Obtaining Waivers for Honig's Privilege for the SEC

It has now become evident from the SEC's latest motion to strike Ladd's affirmative defense that the SEC would like to use Ladd to access *Honig's communication* with *Honig's counsel* to obtain facts not only to continue this litigation against Ladd, but apparently to continue its investigation into Kesner. Indeed, it is unclear how Honig's privileged communications with his counsel, which obviously Ladd had no insight into at the time, could possibly provide relevant evidence here. Nonetheless, the SEC argues that "[f]or Ladd to be permitted to assert a defense of good-faith reliance on either MGT's or Honig's lawyers, the SEC should be entitled first to 'explore the nature and circumstances of the advice through full discovery, unimpeded by any privilege claim'" (SEC Memo. pg. 14, citing to *In re Keurig*, 2019 WL 2724269, at \*4), included into Honig's privileged communications. But as explained above, *In re Keurig* addressed a violation of law, reliance on privileged communications, and has no relevance here. Critically, during discovery, the SEC obtained all communications between Honig's counsel and MGT's counsel from Sichenzia, as those communications were deemed non-privileged pursuant to executed waivers.[8] But Ladd was not privy to Honig's

---

[8] Ladd agreed that these communications were not privileged and did not object to their production when asked.

communications with his attorneys at that time, or ever, and any information garnered after the relevant time simply has no bearing on any issue in dispute.

Aside from a publicly filed Schedule 13(d), the SEC refers to the single email from 2012 that the SEC itself purports to "contain[] the advice Ladd relied on from Kesner." But Ladd does not purport to rely on legal advice from Kesner; he "relied" upon a non-privileged email exchange between his and Honig's attorney where he told him Honig was not investing as a group.  Ladd had no reason to believe that MGT's lawyer's law partner would lie to him as part of a securities fraud.  Ladd was entirely justified in relying on this factual statement, not legal advice. Furthermore, Ladd did not make 2012 conduct an issue in this case—the SEC did. The SEC seeks to offer evidence from 2012, claiming (i) to prove that Ladd had knowledge that Honig and the others violated the securities laws, and (ii) to support its predicate assumption that Honig and the others historically invested as a 13(d) group. But this Court found that the statute of limitations barred the SEC from using these allegations to support any actual claim of securities law violations, but the allegations survived as evidence of Ladd's "knowledge that Honig and the others worked together in the past." That evidence is not conclusive of Honig's past group investment (or Ladd's knowledge), and certainly not conclusive of any securities law violation by Ladd.

A critical issue is that the SEC advanced these allegations from 2012 to support their faulty factual assumption (imbedded in its allegations)—without evidence—that Honig and the others had invested as a group (*and that Ladd knew it*). Ladd provided an email between his counsel and Honig's counsel stating they were not, which directly refutes the SEC's allegations that Honig and the others were investing as a 13(d) group in 2013, and if they were, that they hid that fact from Ladd and MGT's counsel (partners at the same law firm as Honig's counsel). The

SEC's 2012 allegations go to Ladd's alleged "prior knowledge," not Ladd's violation of the securities laws. As such, the SEC has no right to inquire into Ladd's privileged communications in 2012-2013, as they could not possibly form the basis of any defense advanced by Ladd to negate an element of the violations charged.

The remainder of the SEC's questions highlight what the SEC really seeks: some piece of evidence that Honig and the others invested as a 13(d) group, *and that Ladd knew this*—evidence needed to avoid dismissal on summary judgment. Through Ladd, the SEC seeks more information about *Honig's* investments in other companies with the same investors who participated in the MGT financings, *Honig's* relationship to the 2012 and 2015 investors, *Honig* and his co-investors' near simultaneous sales of stock in early 2016 after the publication of the MGT promotion in Small Cap Leader, and *Kesner's* frequent investments alongside *Honig* and other members of the group without his own schedule 13(d) disclosures identifying himself as a member of a group. Regardless, the answers to these questions have no relevance to its claims against Ladd. The SEC inquires solely to obtain circumstantial evidence that individuals entered into a Section 13(d) group. But Ladd is not alleged to have been part of this group and cannot be held to the same legal standard of knowledge as those alleged to have been part of the group. Again, this information lies in communications between Honig and his co-investors or Honig and his attorney—individuals that the SEC either settled with, without any of them admitting to agreeing to have been in a group, or declined to charge.[9]

To state the obvious, Ladd has no claims to the privileged communications between Honig and his counsel and is not in a position (by law) to waive that privilege or compel Honig

---

[9] The only evidence the SEC seeks regarding Ladd is evidence of Ladd's lack of interaction with most of Honig's co-investors in negotiating the terms of either the 2012 or 2015 financings. However, the SEC already possesses this information.

to do so. Since well-established law of all circuits tends to protect the sanctity of the attorney-client privilege, there is little case law to support the proposition that Ladd should, let alone can, obtain a waiver of Honig's privileged communications with *his* attorney. Nonetheless, the SEC misconstrues inapposite case law to make it appear to be applicable. It is not.

To support its theory that Ladd may obtain a waiver over Honig's privilege, the SEC first cites *United States v. Wells Fargo Bank, N.A.*, 132 F. Supp. 3d 558, 559 (S.D.N.Y. 2015), where the court addressed "whether, or under what circumstances, an employee may pursue an advice of counsel defense where doing so requires disclosures of privileged communications and the employer owns the privilege." *Id.* at 559.  Obviously, Honig is not Ladd's employer, and no such relationship exists between the two of them. In any event, the court in *Wells Fargo Bank* held that the employer's privilege did not extend to the employee.

The SEC next claims the law supports its position that a defendant who claims reliance on advice from another party's attorney to show his lack of scienter must disclose the advice he received from any other attorney on that topic, citing *In re Gaming Lottery Secs. Litig.*, No. 96 Civ. 5567 (RPP), 2000 WL 340897, at *2 (S.D.N.Y. Mar. 30, 2000). But *In re Gaming* does not say that. *In re Gaming* was a 10(b)-5 claim brought by the *company's shareholders against the company's attorneys* who claimed to rely on legal advice of opposing attorneys in a transaction. In asserting that they relied on that advice to negate scienter, the Gaming company attorneys triggered the advice of counsel defense, despite there being no privilege between the parties' communications. However, since the reasonableness of this advice became an issue, the advice of counsel defense opened the door to communications with any attorneys, including privileged communications with their own attorneys. The law requires a defendant claiming advice of counsel to waive privilege with all counsel on that particular subject matter—it does not support

the SEC's novel proposition that if Ladd relied on a factual statement by Honig's attorney in conjunction with other non-privileged facts, he must obtain a waiver from Honig to access his privileged communications on the same subject matter.

The SEC equally misconstrues the law in *Meskunas v. Auerbach*, No. 17 Civ. 9129 (VB) (JCM), 2020 WL 7768486, at *5 (S.D.N.Y. Dec. 30, 2020) by claiming that plaintiffs' reliance on one counsel's advice waived privilege regarding any advice they received from other counsel during the same time period. The defendant, Aucher, was an attorney who was sued by a client he represented in handling separation of assets shared by her and her spouse, namely a Real Estate, LLC, during their divorce. Tasked with making the client's mortgage payments for their property, Aucher defaulted, and the client subsequently lost the property. Aucher demanded access to privileged communications between his client and her divorce attorney on the subject matter of defaulting on mortgage payments; the Court deemed that would be appropriate, holding that if a party waives privileges with one attorney, that party waives privilege with all attorneys on that subject matter. This is distinguishable from the SEC's proposition that all parties involved in a particular subject matter waive privilege with their attorneys on that matter. The correct analogy would be if Ladd engaged both Kesner and his own attorney separately on the issue of whether he needed to report disclosures from a 13(d) filed on EDGAR in his own company's 10-K or S-1 filings and then tried to waive with one attorney but not the other.

Lastly, the SEC relies on *SEC v. Lek Secs. Corp.*, No. 17 Civ. 1789 (DLC), 2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019), to argue that "legal advice given to another does not establish good faith as a matter of law." *Id.* Again, *Lek* bears no relation to this case. In *Lek*, there were two sets of defendants. The first set of defendants were charged with a non-scienter based 20(a) violation, which has an affirmative defense built in, shifting the burden to the defendant to prove

his good faith once a plaintiff has made out a prima facie showing—a classic affirmative defense. The second set of defendants were charged with 10(b)-5 and 9(a)(2) violations—scienter based fraud claims with no statutory good faith affirmative defense. The second set of defendants wanted to rely on a privileged communication (where none of them were included) between the first set of defendants and their attorneys involving a determination of their good faith, as an affirmative defense against their 20(b) violation allegations. The court held the defendants charged with fraud could not rely on evidence of another defendant's 20(a) affirmative defense, citing to *United States v. Scully* to enumerate the distinctions between an affirmative defense of good faith versus an advice of counsel defense. The SEC's reliance on such completely inapposite cases is telling of the strength of their legal arguments here.

**D.      The SEC Will Not Be Prejudiced if It Is Not Permitted to See Ladd's and Honig's Privileged Communications with Their Attorneys**

The fairness considerations in the *Bilzerian* and *Arista Recs. LLC,* cases relied upon by the SEC, are not present in Ladd's case. Underlying any determination that a privilege should be forfeited is the notion of unfairness. Forfeiture of this type is premised on the *unfairness* to the adversary of *having to defend* against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." *John Doe Co. v. U.S.*, 350 F.3d 299, 304 (2d Cir. 2003). This notion implicates only "the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decision maker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *John Doe Co*., 350 F.3d at 306. 229. But here, Ladd is not in possession of privileged material to rebut allegations of what facts he was told. On the other hand, if in fact the SEC is in possession of evidence regarding Kesner that has thus far been withheld from Ladd in discovery, the SEC's assertion of prejudice it will incur unless Ladd is denied access to non-privileged

evidence potentially capable of rebutting its assertion is particularly egregious. The SEC seems to cry unfairness for itself while seeking to impart the type of unfairness implicated in case law onto Ladd. The SEC cannot plausibly argue that it will be prejudiced if Ladd uses non-privileged documents already in evidence.

## CONCLUSION

In its motion, the SEC is asking this Court, after the close of discovery, to continue to accept all of its allegations as true without an evidentiary basis. But the Court is no longer able to do that now that this litigation is beyond the motion to dismiss stage and discovery has closed. On the eve of summary judgment motions, the SEC must come forward with some dispute of material fact to support its allegations.  It cannot. While the SEC's instant motion purports to seek to strike Ladd's defense of advice of counsel (and all references to his reliance on any counsel's advice in his Answer), what the SEC really seeks is Ladd's waiver and additional discovery to procure evidence it does not currently have. This is because, even if this Court were to strike any references to his affirmative defense and any "allegations" supporting such defense, Ladd's defense in this case remains in tact as defendants accused of fraud are allowed to raise advice of counsel without it being turned into an affirmative defense. Obviously, the SEC cannot expect to prevent Ladd from presenting a defense that consists of non-privileged documents and non-privileged facts, even where attorneys are involved. But more importantly, even if the SEC were to prevail on its motion to strike Ladd's affirmative defense, the result would be inconsequential to what is really at issue here: the SEC's absolute lack of evidence supporting what it has alleged in the Second Amended Complaint. For the forgoing reasons the SEC's Motion should be denied.

Furthermore, Ladd respectfully requests that the Court order the SEC to disclose the

factual basis for this assertion regarding Kesner's purported investments with Honig or evidence that it believes suggests he was part of a group, including any document or notes of interviews taken by the SEC. If no factual predicate for this assertion exists, the assertions should be stricken from the record, and this Court should consider appropriate sanctions.

Dated: New York, New York
      May 18, 2021

                              Respectfully submitted,

                              FORD O'BRIEN LLP
                              Adam C. Ford
                              Anjula S. Prasad
                              575 Fifth Avenue
                              17th Floor
                              New York, New York 10017
                              aford@fordobrien.com
                              aprasad@fordobrien.com
                              (212) 858-0040

                              *Attorneys for Defendant Robert Ladd*