UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                                    Plaintiff,

            – against –

BARRY C. HONIG, MICHAEL BRAUSER,
JOHN STETSON, JOHN R. O'ROURKE III,
ROBERT LADD, ELLIOT MAZA,
BRIAN KELLER, JOHN H. FORD,
ATG CAPITAL LLC, GRQ CONSULTANTS,
INC., HS CONTRARIAN INVESTMENTS,
LLC, GRANDER HOLDINGS, INC., *and*
STETSON CAPITAL INVESTMENTS INC.,

                                    Defendants.

**OPINION & ORDER**

18 Civ. 8175 (ER)

RAMOS, D.J.:

        At all times relevant to this motion, Defendant Robert Ladd was the CEO and

director of MGT Capital Investments, Inc. (MGT).[1]  In this action, the SEC has alleged

that he participated in a "pump and dump" scheme with Defendants Barry C. Honig,

Michael Brauser, John Stetson, and John R. O'Rourke III (collectively the "Honig

Group") to unlawfully inflate MGT's stock price.  The SEC brought these claims under

Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §

78j, SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and Section

17(a)(2) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q.  In

addition, the SEC alleged that Ladd aided and abetted the Honig Group in violation of

Section 15(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 20(e) of the Exchange

---

[1] The Securities and Exchange Commission's (SEC's) Second Amended Complaint ("SAC") refers to MGT as "Company B."

Act, 15 U.S.C. § 77o(e).  *See SEC v. Honig*, No. 18 Civ. 8175 (ER), 2020 WL 906383, at *1 (S.D.N.Y. Feb. 25, 2020).

In an Order dated February 25, 2020, the Court granted in part and denied in part Ladd's first motion to dismiss the SEC's fraud claims against him.  *See id.*  The Court denied Ladd's motion regarding allegedly false statements he made on May 9, 2016 about the appointment of John McAfee[2] as CEO of MGT.  However, the Court granted his motion, with leave for the SEC to replead, regarding his omission of the "true extent" of members of the Honig Group's beneficial ownership of MGT stock in SEC filings.

In its SAC, the SEC re-alleged its securities fraud claims based both on Ladd's statement about McAfee and his failure to disclose the beneficial ownership interest of the Honig Group.  The SEC also added new allegations of securities fraud in connection with unregistered stock sales in May 2016, and Ladd's failure to disclose changes to his own beneficial ownership of MGT on several occasions.  *See* SAC, Doc. 233, at ¶¶ 247, 253.  Ladd moved to dismiss all of these new fraud allegations except for those in connection with the McAfee announcement that the Court addressed in its February 25, 2020 Order.

In an Order dated January 27, 2021, the Court granted in part and denied in part Ladd's second motion to dismiss.  *See SEC v. Honig*, No. 18 Civ. 8175 (ER), 2021 WL 276155 (S.D.N.Y. Jan. 27, 2021).  Specifically, the Court granted the motion regarding the Fifth and Sixth causes of action, which related to (1) Ladd's failure to disclose stock sales on Forms 4 filed on October 7 and December 1, 2015; and (2) statements and omissions made on his father's Form 144 filed May 10, 2016.  His motion to dismiss

---

[2] McAfee is referred to as "Cybersecurity Innovator" in the SAC.

claims stemming from all other alleged events under the Fifth and Sixth causes of action was denied.  The Court also denied his motion to dismiss claims relating to the Seventh and Eighth causes of action.

On March 25, 2021, Ladd filed an amended answer to the SAC ("Answer"), asserting seven affirmative defenses.  *See* Answer, Doc. 281.  Approximately one month later, on April 27, 2021, the SEC moved to strike the Answer to the extent Ladd asserts any defense to any of the SEC's scienter-based (fraud) claims based on his reliance on any advice of legal counsel.  *See* Memorandum of Law in support of Plaintiff's Motion to Strike Affirmative Defense ("Motion") ("Mot."), Doc. 289, at 1.  Specifically, the SEC seeks to preclude the following affirmative defense, and all references related thereto: "Plaintiff's claims are barred in whole or in part because Defendant relied in good faith upon the judgment, advice, and counsel of professionals."  Answer at ¶ 310.  Alternatively, if Ladd were to obtain all necessary privilege waivers, the SEC would request an order scheduling discovery for a limited period to explore Ladd's defense.  *See* Mot. at 1.

For the reasons discussed below, the SEC's motion is GRANTED in part and DENIED in part.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Factual Background

The facts underlying this case are described in detail in this Court's February 25, 2020 and January 27, 2021 Orders, familiarity with which is assumed, and will not be repeated here.  *See Honig*, 2020 WL 906383; *Honig*, 2021 WL 276155.

For present purposes, the Court provides an abbreviated summary.  The SEC alleges that Ladd committed fraud by violating Section 10(b) of the Exchange Act and Rule 10b-5(b) promulgated thereunder, Section 17(a)(2) of the Securities Act, and by aiding and abetting other violations by the Honig Group.  *See* SAC at Fifth, Sixth, Seventh, and Eighth Claims for Relief.  The SEC also alleges several other strict liability violations of the securities laws based on the same conduct.  *See id.* at Eleventh, Thirteenth, Fourteenth, and Seventeenth Claims for Relief.

In support of its fraud claims, the SEC contends that Ladd allegedly provided false information in MGT's November 6, 2015 Form S-1 and April 14, 2016 Form 10-K as to the disclosure of all beneficial owners of more than 5% of outstanding common stock, MGT's May 9, 2016 Form 8-K attaching a press release announcing the appointment of McAfee as CEO of MGT, and Ladd's May 25, 2016 Form 144 and May 31, 2016 Form 4 in connection with his May 2016 trading.

## B.    Procedural History

During discovery, in response to the SEC's requests for the production of documents, Ladd invoked attorney-client privilege with respect to certain categories of documents.  According to Ladd's privilege log dated January 27, 2020, Ladd withheld, for example, communications for the purpose of requesting and rendering legal advice regarding "company SEC filings," "issuance of company stocks or shares," "review of draft press release," and "review of trading activity."  Declaration of Nancy A. Brown in support of the Motion dated April 26, 2021 ("Brown Decl."), Ex. A (Ladd Privilege Log dated January 27, 2020), Doc. 288-1, at Log Nos. 8, 14, 20, 21; *see* Mot. at 4.

On July 10, 2020, in connection with Ladd's supplemental disclosures, which listed lawyers at Sichenzia Ross Ference LLP ("Sichenzia")[3] as persons with discoverable information, the SEC emailed his counsel asking whether Ladd had waived privilege over communications with Sichenzia.  Memorandum of Law in opposition to the Motion dated May 18, 2021 ("Opp. Brief"), Doc. 291, at 7 (quoting Declaration of Adam C. Ford in support of the Opposition Brief dated May 18, 2021, Ex. B, Doc. 291-3).  On July 13, 2020, Ladd's counsel informed the SEC that Ladd had not waived privilege with respect to the communications with Sichenzia.  *Id.*  In response to the SEC's question about how Ladd would rely on such communications if he had not waived privilege, Ladd's counsel explained that Ladd would rely on "communications not subject to privilege, for example, communications involving a third party or the public, otherwise not intended to remain privileged, or other types of non-privileged communications."  *Id.*

On October 15, 2020, at Ladd's deposition, when asked about the Forms 4 filed on October 7 and December 1, 2015, and May 31, 2016, he testified that while he "approved [their] issuance," "Mr. Kaplowitz or someone at Sichenzia actually filled out these forms and [he] then reviewed them and approved them."  Brown Decl., Ladd Deposition, at Tr. 74:4–23.  On November 10, 2020, at the continuation of his deposition, in response to a question about who had represented to Ladd that the Honig Group was not acting as a "group," he testified, in part, that "[b]ased on the advice of [his] counsel,

---

[3] Different attorneys at the same law firm, Sichenzia, represented the Honig Group and MGT in connection with the relevant transactions, after receiving waivers from both parties:  Harvey Kesner and Tara Guarnini-Ferrara represented the Honig Group, and Jay Kaplowitz and Arthur Marcus represented MGT.  Brown Decl., Ex. B (Ladd Deposition Testimony dated October 15-16, 2020 and November 10, 2020) ("Ladd Deposition"), Doc. 288-2, at Tr. 347:6–15, 353:24–354:3, 359:6–17.

that was also a conclusion that [he] was able to reach.  [His] counsel had the luxury . . . of also having a partner who was counsel for . . . Honig, and that advice, or the outcome of that advice, was also that they were not acting in concert."  *Id.* at Tr. 342:22–343:18. Ladd further testified that he received advice on whether the Honig Group was acting as a "group" from "the counsel of MGT . . . by the name of Arthur Marcus and then Jay Kaplowitz."  *Id.* at Tr. 347:6–19.  Finally, in response to a question about who informed MGT that Honig and his brother were separate investment entities, Ladd pointed to MGT's attorneys.  *Id.* at Tr. 352:24–353:16.  Following Ladd's testimony that MGT's counsel represented to him that the Honig Group was not acting as a "group," the SEC asked whether Ladd was thus "waiving privilege as to [his] communications with counsel about this topic."  *Id.* at Tr. 342:22–343:21; *see* Mot. at 4–5.  Ladd's counsel responded that Ladd was not waiving the privilege.  Brown Decl., Ladd Deposition, at Tr. 343:23; *see* Mot. at 5.

On February 26, 2021, Ladd filed his initial answer, which contained the advice-of-counsel defense.  Answer dated February 26, 2021, Doc. 278, at ¶ 310.  Accordingly, on March 1, 2021, the SEC contacted Ladd's counsel to discuss "the further discovery [the SEC] believed was necessary in light of Ladd's affirmative advice-of-counsel defense."  Brown Decl., Doc. 288, at ¶ 4.  In a meet and confer on March 8, 2021, the SEC asked Ladd to waive his attorney-client privilege regarding the documents withheld on that basis and testimony relating to his affirmative defense and to obtain waivers from applicable third parties.  *Id.*; *see* Mot. at 6.  His counsel advised that Ladd was not waiving privilege, and that no additional discovery was necessary.  Mot. at 6; *see* Brown Decl. at ¶ 4.

On March 25, 2021, Ladd filed his Answer, which raises the same defense at issue in the motion.  Answer at ¶ 310.  In addition, the Answer contains references to communications with MGT's counsel and Honig's counsel as well as the involvement of counsel in the relevant transactions and filings at issue.  *See* Mot. at 5–6.  For example, in the Answer, Ladd made the following allegations as to the involvement of counsel:

> (1) "The gravamen of the SEC's allegations is that Mr. Ladd failed to disclose in public filings that Mr. Honig and others investing with him were a 'group' as defined under Section 13(d) of the Exchange Act.  But the filings at issue were all vetted by competent counsel aware of all material facts . . . .";
>
> (2) "[T]he Commission chooses to ignore the other times that Mr. Honig's counsel and [MGT's] counsel told Mr. Ladd that Honig and the others were *not* investing as a group under the legal requirements of Section 13(d).  Mr. Ladd had no intention to violate the securities laws, nor did he do so."; and
>
> (3) "[The SEC] now seeks to hold Mr. Ladd liable for violating the securities laws on account of this one unintentional drafting error.  In addition to promptly correcting the mistake, the press release had been sent to counsel for review prior to its release."

Answer at 2, 3 (emphasis in original); *see* Mot. at 6.

The SEC filed a letter on March 31, 2021, requesting a pre-motion conference regarding, in part, its proposed motion to strike the affirmative defense.  Pre-motion Letter dated March 31, 2021, Doc. 282.

In Ladd's letter-response to the Court dated April 5, 2021 (Doc. 284) ("April 5, 2021 Letter"), he explained that he is not asserting the "classic" advice-of-counsel defense and that "his defense is the simple one that he lacked the knowledge and intent necessary to prove he violated the intent-based securities laws claims."[4]  April 5, 2021 Letter at 1–2.  Furthermore, Ladd's defense is allegedly based on the absence of any

---

[4] Moreover, as to Ladd's affirmative defense at issue, Ladd's counsel alleged that "[t]o the extent Mr. Ladd referenced a reliance on professionals in the affirmative defense section of his Amended Answer it was for preservation purposes only."  April 5, 2021 Letter at 2.

evidence proving that the Honig Group was acting as a "group" as defined under Section 13(d) or that Ladd had any knowledge of such a "group." *Id.* at 2.  In fact, Ladd pointed to non-privileged communications between Honig's counsel and MGT's counsel that the Honig Group was not acting as a "group." *Id.* at 2, 3.  Moreover, Ladd intends to rely on allegedly non-privileged information including, but not limited to:  Sichenzia's role in and responsibility for filing MGT's and Honig's SEC filings, Sichenzia's reputation as a "well-respected law firm with significant experience in advising public companies in connection with public SEC filings," and the fact that Sichenzia "did not have information suggesting that Honig and the others were acting as a group," and "would not have made a false filing with the SEC." *Id.* at 2.  In support of these claims, Ladd noted the documents that Sichenzia produced to the SEC, including non-privileged emails in which Sichenzia lawyers representing Honig communicated with Sichenzia lawyers representing MGT. *Id.*

Furthermore, Ladd argues that he "did not intend to, nor did he, convey to the SEC that he received advice through a privileged communication with his attorney and acted thereupon." *Id.* at 3.  Ladd alleged that he has always represented that "professionals on both sides of the transaction engaged in *non-privileged* communications with one another and made the appropriate SEC filings in good faith according to knowledge in their possession." *Id.* (emphasis in original).

## II.  TIMELINESS OF A MOTION TO STRIKE

The SEC alleges that "[d]ue to the timing of Ladd's recent Answer — and the related discovery schedule in this case — the issues raised by this motion arose only recently."  Mot. at 4.  In opposition, Ladd argues that the motion should be denied as

untimely. Ladd contends that the concerns raised in the motion have been at issue since at least October 17, 2019, when he filed his supplemental disclosures listing lawyers at Sichenzia as persons with discoverable information. Opp. Br. at 7. Ladd further argues that the SEC knew of his position and its potential advice-of-counsel issue in mid-July 2020 when the SEC and Ladd's counsel communicated regarding his supplemental disclosures. *Id.*

The SEC argues that the motion is not untimely, because Ladd has continuously denied that he was contemplating waiving his attorney-client privilege despite the SEC's attempts to confirm whether Ladd intended to assert an advice-of-counsel defense or a defense of good faith. Reply Memorandum of Law in further support of the Motion dated May 24, 2021 ("Reply Br."), Doc. 292, at 2. Accordingly, the SEC alleges that it did not previously raise this issue, because prior to the initial answer, Ladd did not assert an advice-of-counsel defense, nor did he waive privilege. The SEC further alleges that although it inquired on numerous occasions as to the attorney communications and involvement at issue, Ladd alleged that he would rely solely on communications not subject to privilege, without further explanation. Moreover, the SEC contends that it "sought to protect itself from just this kind of post-discovery assertion of a defense that raised new issues for discovery," as evidenced by the original and amended Scheduling Orders, which included a provision that reserved a period for potential additional discovery once Ladd answered. *Id.*; *see* Scheduling Order dated May 20, 2019, Doc. 126, at ¶ 13; Amended Scheduling Order dated June 10, 2020, Doc. 263, at ¶ 6.

Throughout this time period, Ladd routinely withheld documents and testimony on the basis of attorney-client privilege, informed the SEC on multiple occasions that he

was not waiving privilege, and did not assert an advice-of-counsel or good faith defense

until his initial answer.  Therefore, although Ladd filed his initial answer on February 26,

2021 and the SEC filed the motion on April 27, 2021, the SEC moved in a timely fashion

based on the parties' Scheduling Orders and communications.

## III.    MOTION TO STRIKE AN AFFIRMATIVE DEFENSE

### Legal Standard

Under Rule 12(f), the court "may strike from a pleading an insufficient defense or

any redundant, immaterial, impertinent, or scandalous matter."  In doing so, the court

may act on its own or on motion made by a party either before responding to the pleading

or, if a response is not allowed, within 21 days after being served with the pleading.  Fed.

R. Civ. P. 12(f).

"An affirmative defense is an 'assertion of facts and arguments that, if true, will

defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true.'"

*Tradewinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901 (JFK), 2013 WL 6669422, at *2

(S.D.N.Y. Dec. 17, 2013) (quoting Black's Law Dictionary 482 (9th ed. 2009)).

Although a court may strike "an insufficient defense or any redundant, immaterial,

impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), "courts should not tamper with

the pleadings unless there is a strong reason for so doing."  *Lipsky v. Commonwealth

United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).  Motions to strike an affirmative defense

are generally disfavored, *Cty. Vanlines Inc. v. Experian Info. Sols., Inc.*, 205 F.R.D. 148,

152 (S.D.N.Y. 2002), and "will not be granted unless it appears to a certainty that

plaintiffs would succeed despite any state of the facts which could be proved in support

of the defense."  *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984)

(citation and internal quotation marks omitted), *vacated and remanded on other grounds*,

478 U.S. 1015 (1986).

To prevail on a motion to strike, the moving party must satisfy a stringent three-

pronged test:  "(1) there must be no question of fact that might allow the defense to

succeed; (2) there must be no substantial question of law that might allow the defense to

succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense."

*Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005).[5]

In considering the first and second prongs, courts apply the same legal standard as that

applicable to a motion to dismiss under Rule 12(b)(6).  *Coach, Inc. v. Kmart Corps.*, 756

F. Supp. 2d 421, 425 (S.D.N.Y. 2010).  The "sufficiency of a defense is to be determined

---

[5] In *GEOMC Co. v. Calmare Therapeutics Inc.*, the Second Circuit considered each of the three factors relevant to striking an affirmative defense, as worded in *S.E.C. v. McCaskey*, 56 F. Supp. 2d 323 (S.D.N.Y. 1999) and thereafter repeatedly relied on by district courts in this Circuit "initially in identical wording and later with only slight variations, in a series of decisions," including *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109 (S.D.N.Y. 2005).  918 F.3d 92, 96–97 (2d Cir. 2019).  As to the first factor, the Second Circuit held that "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense, but with recognition that, as the Supreme Court explained in *Iqbal*, applying the plausibility standard to any pleading is a 'context-specific' task."  *Id.* at 98 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Therefore, a party must "support these defenses with some factual allegations to make them plausible."  *Id.* at 99.  "[R]elevant to the degree of rigor appropriate for testing the pleading of an affirmative defense" are the following factors:  (1) the amount of time given to gather facts necessary to satisfy the plausibility standard (which is ordinarily between 14 and 21 days for a defendant pleading an affirmative defense in response to a plaintiff's complaint) and (2) the nature of the affirmative defense and whether the facts needed to plead the defense are readily available.  *Id.* at 98.  As to the second factor, the Second Circuit held that it "needs no revision," in that "[t]here is no dispute that an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims."  *Id.*  As to the third factor, whether prejudice "should be a basis for dismissing or opposing the addition of an otherwise valid affirmative defense will normally depend on when the defense is presented."  *Id.*  The Second Circuit opined that "[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation."  *Id.*  "On the other hand, prejudice may be considered and, in some cases, may be determinative, where a defense is presented beyond the normal time limits of the Rules, especially at a late stage in the litigation, and challenged by a motion to dismiss or opposed by opposition to a Rule 15(a) motion."  *Id.* at 99 (citing *Anderson v. National Producing Co.*, 253 F.2d 834, 838 (2d Cir. 1958)).  Federal courts have discretion in deciding whether to strike an affirmative defense.  *Id.*  For the purposes of the SEC's motion to strike Ladd's affirmative defense, the Second Circuit's findings in *GEOMC Co.* do not change the Court's analysis for the following reasons:  (1) Ladd first pled this affirmative defense on February 26, 2021 after the discovery period closed and nearly a year after the SAC was filed on March 16, 2020; and (2) it is the SEC – not Ladd – who is seeking to expand the scope of the litigation in light of the waiver of privilege implicated by the affirmative defense.

solely upon the face of the pleading," and the Court "accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the [non-moving party's] favor." *Id.* (citations and internal quotation marks omitted). In evaluating the third prong, the Court may consider whether inclusion of the legally insufficient defense would needlessly increase the "time and expense of trial" or "duration and expense of litigation." *Id.* at 426 (citing *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 272 (S.D.N.Y. 1999)); *see S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999) ("An increase in the time, expense and complexity of a trial may constitute sufficient prejudice to warrant granting a plaintiff's motion to strike.").

## IV.   ATTORNEY-CLIENT PRIVILEGE

### Legal Standard

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (citing *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)). The purpose of attorney-client privilege is "to encourage attorneys and their clients to communicate fully and frankly and thereby to promote 'broader public interests in the observance of law and administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "The availability of sound legal advice inures to the benefit not only of the client who wishes to know his options and responsibilities in given circumstances, but also of the public which is entitled to compliance with the ever growing and increasingly complex body of public law." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1036–37 (2d Cir. 1984).

Courts should construe the attorney-client privilege narrowly, in light of its effect in making relevant information undiscoverable, applying it "only where necessary to achieve its purpose."  *In re Cty. of Erie*, 473 F.3d at 418 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

A party invoking the privilege bears the burden of establishing its applicability.  *Id.* (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000)).  To invoke the attorney-client privilege, the proponent must establish the following three elements: "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice."  *Id.* at 419 (citing *Constr. Prods. Research, Inc.*, 73 F.3d at 473).

## V.   WAIVER OF ATTORNEY-CLIENT PRIVILEGE

### Legal Standard

To the extent that the attorney-client privilege applies to a communication, "[a] client may . . . by his actions impliedly waive the privilege or consent to disclosure."  *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987).  Generally, courts have identified waiver by implication in the following three scenarios:  "when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense."  *In re Cty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (quoting *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982)).

"The key to a finding of implied waiver in the third instance is some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense."  *Id.*

(emphasis in original).  "The assertion of an 'advice-of-counsel' defense has been properly described as a 'quintessential example' of an implied waiver of the privilege." *Id.* (quoting *In re Kidder Peabody*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996)).

As to the question of whether there has been a waiver of attorney-client privilege, "[t]he party seeking to assert a claim of privilege has the burden of demonstrating both that the privilege exists and that it has not been waived."  *Granite Partners v. Bear, Stearns & Co.*, 184 F.R.D. 49, 52 (S.D.N.Y. 1999) (citing *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987); *Smith v. Conway Org.*, 154 F.R.D. 73, 77 (S.D.N.Y. 1994); and *Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 191 (S.D.N.Y. 1988)).

As the attorney-client privilege is one of the "oldest recognized privileges for confidential communications," *In re Cty. of Erie*, 546 F.3d at 228 (quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998)), and its purpose is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice," *id.* (quoting *Swidler*, 524 U.S. at 403), "rules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust, should be formulated with caution."  *Id.*  Furthermore, the question of whether there has been an implied waiver of the attorney-client privilege should be "decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted."  *In re Grand Jury Proceedings*, 219 F.3d at 183.

## VI.    ADVICE-OF-COUNSEL DEFENSE

### A.    Legal Standard

As discussed above, an advice-of-counsel defense is a "'quintessential example' of an implied waiver of the privilege." *In re Cty. of Erie*, 546 F.3d at 228 (quoting *In re Kidder Peabody*, 168 F.R.D. at 470).  To invoke a defense based on reliance upon the advice of counsel, the proponent must show that "he made complete disclosure to counsel, sought advice as to the legality of his conduct, received advice that his conduct was legal, and relied on that advice in good faith." *Markowski v. S.E.C.*, 34 F.3d 99, 104–05 (2d Cir. 1994) (citing *S.E.C. v. Savoy Indus., Inc.*, 665 F.2d 1310, 1314 n.28 (D.C. Cir. 1981)).  Even if these elements are established, in the context of a civil securities action, "reliance is not a complete defense, but only one factor for consideration." *Id.* at 105 (citing *Savoy Indus., Inc.*, 665 F.2d at 1314 n.28); *see S.E.C. v. Enters. Sols., Inc.*, 142 F. Supp. 2d 561, 576 (S.D.N.Y. 2001) (same).  Thus, "[a] defense of reliance on advice of counsel is available only to the extent that it might show that a defendant lacked the requisite specific intent." *S.E.C. v. Cavanagh*, No. 98 Civ. 1818 (DLC), 2004 WL 1594818, at *27 (S.D.N.Y. July 16, 2004), *aff'd on other grounds*, 445 F.3d 105 (2d Cir. 2006).

Courts in this Circuit require the timely assertion of a defense of reliance on the advice of counsel (and the corresponding waiver of attorney-client privilege) such that the non-asserting party will not face unfair prejudice in conducting discovery and managing the case.  Where the asserting party either declines to definitively assert the defense or raises the defense after having routinely withheld documents and deposition testimony based on the attorney-client privilege, courts have found that the party waived

the defense, and will not be permitted to assert it. Relatedly, courts generally grant motions to strike such a defense, including any evidence or argument concerning the party's reliance on the advice of counsel, unless the party waives the attorney-client privilege over the evidence at issue. For example, in *Royal Park Investments SA/NV v. Deutsche Bank National Trust Company*, the court adopted Magistrate Judge Moses' report and recommendation recommending that the court grant the plaintiff's motion to strike the defendant's affirmative defense of reliance on the advice of counsel. No. 14 Civ. 4394 (AJN), 2018 WL 1750595, at *21–22 (S.D.N.Y. Apr. 11, 2018) (citing Magistrate Judge Moses' Report and Recommendation, *Deutsche Bank*, No. 14 Civ. 4394 (AJN) (S.D.N.Y. Sept. 15, 2017) (Doc. 471) ("Report and Recommendation")); *see also Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, No. 14 Civ. 8175 (LGS), 2017 WL 6403862, at *2 (S.D.N.Y. Dec. 14, 2017) (adopting Magistrate Judge Netburn's Report and Recommendation, *HSBC Bank*, No. 14 Civ. 8175 (LGS) (S.D.N.Y. May 8, 2017) (Doc. 343) ("Magistrate Judge Netburn's Report and Recommendation"), at 4 (opining that the deadline by which defendant was required to assert an advice-of-counsel defense was "set to build in enough time in the discovery schedule to allow for the possibility of [the defendant] asserting the defense" and "for the plaintiffs to review [otherwise privileged evidence] and conduct depositions accordingly")).

In *Deutsche Bank*, the defendant pled as an affirmative defense that "Plaintiff's claims are barred, in whole or in part, because the [defendant] relied upon the work, advice, professional judgment, and opinions of others." Report and Recommendation at 2–3 (quoting Defendant's Answer, *Deutsche Bank*, No. 14 Civ. 4394 (AJN) (S.D.N.Y. Mar. 18, 2016) (Doc. 113), at 52). Throughout the fact discovery period, the defendant

repeatedly withheld documents and instructed deposition witnesses not to respond on the basis of the attorney-client privilege. *Id.* at 3. In response to the plaintiff's motions to compel the defendant to provide communications involving defendant's in-house lawyers, the defendant routinely argued that such evidence was protected by the attorney-client privilege, and that it did not yet have the information it needed to determine whether it would assert the defense so as to include the advice of counsel. *Id.* at 3–6. Relying, in part, on similar cases in which defendants were required to decide whether they intended to assert an advice-of-counsel defense (and waive any corresponding privilege) or forfeit the defense, Magistrate Judge Moses gave the defendant a deadline which would provide the parties with months before the end of fact discovery. *Id.* at 6–7. On the date of the deadline, the defendant advised that, at that time, it did not intend to assert an advice-of-counsel defense, and that its affirmative defense should not be so interpreted. *Id.* at 7. Furthermore, the defendant noted that discovery was still ongoing and reserved the right to seek leave of the court to assert the defense in the future. *Id.* Afterward, the plaintiff moved to strike the affirmative defense of advice of counsel from the defendant's answer. *Id.* at 8.

In the Report and Recommendation, Magistrate Judge Moses recommended that the defense be stricken, noting that "[a] defense which the defendant has declined to assert, despite an explicit deadline for doing so, is both insufficient and immaterial." *Id.* at 10. In reaching the recommendation, Magistrate Judge Moses applied the three-pronged test detailed in *Specialty Minerals, Inc.* With respect to the first and second prongs, in light of the fact that the defendant "ha[d] consistently invoked the attorney-client privilege to withhold all documents that could potentially support an advice of

17

counsel defense, there [was] now no question of law, and no evidence, 'which might allow the defense to succeed.'" *Id.* at 10–11 (quoting *McCaskey*, 56 F. Supp. 2d at 326). With respect to the third prong, "to permit [the defendant] to change its mind at some point in the future and assert a defense that would necessarily require the reopening of fact discovery, the production of documents previously withheld on privilege grounds, and the recall of deposition witnesses who were previously instructed not to testify about any legal advice they received" would be "unfair to [the plaintiff]" and "wildly inefficient." *Id.* at 11.

Moreover, Magistrate Judge Moses opined that "[t]aking [the defendant] at its word – that its pleading *does not assert* any advice of counsel defense – it is difficult to imagine any ground on which it could credibly oppose [the plaintiff's] motion [to strike]." *Id.* at 10 (emphasis in original).

## B.   Discussion

### i.   The SEC Seeks to Strike Ladd's Advice-of-Counsel Affirmative Defense

The instant motion seeks to strike from the Answer the following affirmative defense:  "Plaintiff's claims are barred in whole or in part because Defendant relied in good faith upon the judgment, advice, and counsel of professionals."  Answer at ¶ 310. The SEC alleges that the term "professionals" includes, at the very least, attorneys (Ladd's, MGT's, or Honig's).  Mot. at 6.  The motion further seeks to strike references related to advice of counsel, including good faith based on advice of counsel.  As discussed above, Ladd made certain allegations in the Answer as to the involvement of counsel.

The thrust of the SEC's argument for striking this defense and any related references is that Ladd impermissibly and unfairly seeks to wield attorney-client privilege as both sword and shield, such that he "could present to the jury a version of events that serves his defense, while insulating himself from discovery and cross examination about the advice and his reliance on it that could negate his good faith, resulting in undue prejudice to the Commission." *Id.* at 2.

In opposition, Ladd contends that he is not asserting a "classic" advice-of-counsel defense to the SEC's scienter-based claims. Opp. Br. at 9. Instead, he argues that he acted in good faith, which was based on, in part, his communications with MGT's counsel and Honig's counsel as well as such counsel's involvement in and review of the filings at issue. *Id.* at Section III. Ladd further alleges that he intends to support his good faith defense by relying solely on non-privileged evidence. *See id.* at 14 ("Ladd's counsel has repeatedly pointed the SEC to exactly three non-privileged documents involving lawyers in evidence they intend to use in Ladd's defense"). This evidence includes:

(1) "a publicly filed Schedule 13(d), filed . . . on October 8, 2015, by the law firm Sichenzia, which states Barry Honig's investment amount, making no election for his investment status as a group member under 13(d)";

(2) "an email between [MGT's] counsel and Honig's counsel stating [the Honig Group] were not [investing as a group], which directly refutes the SEC's allegations that Honig and the others were investing as a 13(d) group"; and

(3) "[MGT's] October 8, 2015 8-K, the November 6, 2015 S-1, the April 14, 2016 10-K, and the May 9, 2016 8-K . . . [and] Honig's SEC filings . . . [which relate to] the SEC allegations that Mr. Ladd defrauded investors by hiding the 'Honig Group' and mischaracterizing John McAfee's role in his prior company."[6]

---

[6] Although Ladd alleges that there are "three non-privileged documents involving lawyers in evidence they intend to use in Ladd's defense," it is not clear from Ladd's opposition brief which three specific documents he is referring to. Opp. Br. at 14. Upon review of Ladd's opposition brief, April 5, 2021 Letter, and Answer, the Court interprets the three specific documents to include Honig's Schedule 13(d) and Schedule

*Id.* at 14, 19; April 5, 2021 Letter at 2.

> ii.    **The SEC Alleges that Ladd's Deposition Testimony and April 5, 2021 Letter Indicate His Intent to Raise an Advice-of-Counsel Defense**

The SEC alleges that Ladd's assertions in the opposition brief that he is not asserting an advice-of-counsel defense or relying on any privileged communications with counsel to establish his defense of good faith are recently fabricated.  *See* Mot. at 4–7, 9, 11.  In its argument refuting Ladd's claim that he does not intend (nor has he ever intended) to raise an advice-of-counsel defense, the SEC points to Ladd's testimony from his depositions dated October 15-16, 2020 and November 10, 2020, and his April 5, 2021 Letter.  *See id.* at 4–7, 9; *see also* Brown Decl., Ladd Deposition; April 5, 2021 Letter.

The SEC alleges that Ladd's deposition testimony and April 5, 2021 Letter, as discussed further above, evidence an intent to rely on communications from and involvement of MGT's counsel in support of his defense.  *See* Mot. at 4–7, 9 n.6.  The SEC further argues that such reliance on communications between MGT's counsel and Honig's counsel as well as MGT's preparation and review of relevant public filings constitutes reliance on advice of counsel.  *Id.* at 6–7, 9.  Finally, the SEC challenges Ladd's characterization of that evidence as non-privileged, stating that "Ladd ignores his own deposition testimony that he relied on Honig's and his own counsel's advice, and his April 5, 2021 Letter to the Court . . . in which he made various claims he now disavows about Honig's counsel's advice and how he planned to rely on both it and MGT's counsel's advice to support his defense."  Reply Br. at 1.  Accordingly, the SEC alleges

---

13(g), the email between MGT's counsel and Honig's counsel, and the public filings that MGT's counsel reviewed and filed on behalf of MGT and Ladd.

that Ladd's assertions in the record, in conjunction with the Answer, contradict his claim

that he does not intend to raise an advice-of-counsel defense.

### iii.      To the Extent that Ladd's Allegations Assert an Advice-of-Counsel Defense, Such Defense is Stricken

Ladd has repeatedly asserted that he does not intend to raise an advice-of-counsel

defense notwithstanding his affirmative defense stating that "Plaintiff's claims are barred

in whole or in part because Defendant relied in good faith upon the judgment, advice, and

counsel of professionals."[7]  Answer dated February 26, 2021, Doc. 278, at ¶ 310; Answer

at ¶ 310; *see* April 5, 2021 Letter at 1–2; Opp. Br. at 14–15.  In light of Ladd's assertions,

which bear a striking resemblance to the defendant's assertions in *Deutsche Bank*, the

Court similarly finds that "it is difficult to imagine any ground on which [Ladd] could

credibly oppose [the SEC's] motion [to strike]."  Report and Recommendation at 10.

Furthermore, pursuant to Rule 12(f), this defense of advice of counsel, which

Ladd has repeatedly disclaimed, is both "insufficient" and "immaterial."  *Id.*  Under the

three-pronged test in *Specialty Minerals, Inc.*, given that Ladd has "consistently invoked

the attorney-client privilege to withhold all documents that could potentially support an

advice of counsel defense, there is now no question of law, and no evidence, 'which

might allow the defense to succeed'" under the first and second prongs.  *Id.* at 10–11

(quoting *McCaskey*, 56 F. Supp. 2d at 326).  Under the third prong, to permit Ladd to

assert a defense that necessarily requires the reopening of fact discovery after having

withheld documents on privilege grounds and instructed deposition witnesses not to

---

[7] In the opposition brief, Ladd contends that he has "consistently maintained that he listed the affirmative defense as a prophylactic measure, and indeed, made no mention of his own counsel."  *Id.* at 3.

testify about allegedly privileged information would be unfair to the SEC and inefficient. *Id.* at 11.

Moreover, as to counsel's allegation that "[t]o the extent Mr. Ladd referenced a reliance on professionals in the affirmative defense section of his Amended Answer it was for preservation purposes only," such preservation of the right to assert an advice-of-counsel defense after the asserting party has, throughout the fact discovery period, routinely withheld documents and testimony on the basis of attorney-client privilege is generally disfavored and not permitted.  April 5, 2021 Letter at 2; *see, e.g.*, *Deutsche Bank*, 2018 WL 1750595, at *21–22; Magistrate Judge Netburn's Report and Recommendation at 5–6 (recommending that defendant "be found to have forfeited any right to assert that defense in the future" and that the court "strike such affirmative defenses" where defendant alleged it was "currently not asserting an advice of counsel defense and [was] relying on its privilege to shield otherwise relevant discovery").

Thus, in light of Ladd's continued assertions that he is not invoking an advice-of-counsel defense and his withholding of evidence as privileged, the Court finds that Ladd has forfeited any right to assert that defense in this litigation.  The Court further finds that to the extent any such affirmative defense exists in the Answer, it is stricken.

## VII.   GOOD FAITH DEFENSE

### A.   Legal Standard

Notwithstanding its significance, "the attorney-client privilege cannot at once be used as a shield and a sword."  *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (citing *In re von Bulow*, 828 F.2d at 103).  Thus, courts have held that "the [attorney-client] privilege may implicitly be waived when [a] defendant asserts a claim

that in fairness requires examination of protected communications." *Id.* In the determination of whether fairness requires the forfeiture of a privilege, courts must consider the notion of unfairness to the adversary that results "when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *In re Cty. of Erie*, 546 F.3d at 229 (quoting *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003)). This determination of whether fairness requires disclosure is made "on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *Id.* (quoting *In re Grand Jury Proceedings*, 219 F.3d at 183).

In *Bilzerian*, the defendant alleged that he did not intend to violate the securities laws at issue and that the testimony he sought to introduce to establish his good faith in complying with the laws did not implicate any privileged communications. *Bilzerian*, 926 F.2d at 1291. The court found that the waiver principle applied here where the defendant planned to testify that he thought his actions were legal, thereby putting his knowledge of the law and the basis for his understanding of what the law required in issue. *Id.* at 1292. Finding that the attorney-client privilege was implicated, the court further opined that "[the defendant's] conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent." *Id.* (affirming the district court's ruling that "[defendant's] own testimony as to his good faith would open the door to cross-examination, possibly including inquiry into otherwise privileged communications with his attorney," but that "[d]efendant was free to deny criminal intent either without asserting good faith or to argue his good faith defense by means of defense counsel's

opening and closing statements and by his examination of witnesses," *id.* at 1293).[8]

Accordingly, "the assertion of a good-faith defense involves an inquiry into state of mind,

which typically calls forth the possibility of implied waiver of the attorney-client

privilege." *In re Cty. of Erie*, 546 F.3d at 228–29.

Although an advice-of-counsel defense will not result in waiver unless the

proponent relies on privileged advice, *see id.* at 229, "[c]ourts within this Circuit, relying

on *Bilzerian*, have reaffirmed the broader principle that forfeiture of the privilege may

result where the proponent asserts a good faith belief in the lawfulness of its actions, even

without expressly invoking counsel's advice." *Scott v. Chipotle Mexican Grill, Inc.*, 67 F.

Supp. 3d 607, 611 (S.D.N.Y. 2014) (quoting *Favors v. Cuomo*, 285 F.R.D. 187, 199

(E.D.N.Y. 2012)).  In other words, the privilege holder need not attempt to make use of a

privileged communication to implicate waiver – the proponent "may waive the privilege

if he makes factual assertions the truth of which can only be assessed by examination of

the privileged communication." *In re Kidder Peabody*, 168 F.R.D. at 470 (citing

*Bilzerian*, 926 F.2d at 1292).  The rationale underlying this waiver principle is that "it

would be unfair for a party asserting contentions [of good faith] to then rely on its

privileges to deprive its adversary of access to material that might disprove or undermine

the party's contentions." *Arista Recs. LLC v. Lime Grp. LLC*, No. 06 Civ. 5936 (KMW),

2011 WL 1642434, at *3 (S.D.N.Y. Apr. 20, 2011) (alterations in original) (quoting

*Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 106

---

[8] Affirming the district court's refusal to grant the defendant protection from an implied waiver of the attorney-client privilege, the court held that "[t]he trial court's ruling left defendant free to testify without getting into his state of mind, but correctly held that if he asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

(S.D.N.Y. 2009)) (precluding defendants from offering evidence or argument at trial regarding their purported belief in the lawfulness of their conduct even if defendants did not rely on advice of counsel for their good faith defense).

In line with *Bilzerian* and *Erie*, courts within this Circuit have generally upheld the preclusion of parties from invoking a defense based on the good faith belief in the lawfulness of their actions, even where such parties argue that they intend to rely solely on non-privileged evidence to support their defense. *See, e.g.*, *S.E.C. v. Ripple Labs, Inc.*, No. 20 Civ. 10832 (AT) (SN), 2021 WL 2323089, at *4–5 (S.D.N.Y. May 30, 2021) (opining that "a 'good faith' defense is grounded in a party's subjective belief that its behavior complied with the law, thus putting at issue any legal advice" and that the "critical question" in finding privilege waiver is "whether [the defense] puts at issue questions about the defendant's state of mind or their reliance on counsel's advice, regardless of whether the defense is stylized as 'good faith' or something else"); *Brown v. Barnes & Noble, Inc.*, No. 16 Civ. 7333 (MKV) (KHP), 2020 WL 5037573, at *2–3 (S.D.N.Y. Aug. 26, 2020) (finding that "this formulation of the good faith defense [that defendant should not be required to produce otherwise privileged communications unless they assert a defense of 'good faith reliance on counsel'] is too narrow and ignores contrary law" and that "[w]hen a defendant invokes a good faith defense, he necessarily puts the mindset of the decision maker at issue" (citing *Wang v. Hearst Corp.*, No. 12 Civ. 793 (HB), 2012 WL 6621717, at *2 (S.D.N.Y. Dec. 19, 2012))) (affirming orders granting plaintiff's motion to compel production of documents withheld as privileged in light of defendant's defense of good faith); *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 501 (S.D.N.Y. 2019) ("The waiver doctrine, however, does not apply exclusively to

situations where a party explicitly relies – or states that it intends to rely – on attorney-client communications.").[9]

While courts within this Circuit have followed the broader principle that waiver of privilege may result where the proponent asserts a good faith belief in the lawfulness of its actions, as described above, courts have also recognized the limitations of this principle.  While a party is not required to explicitly assert "reliance on counsel" to put evidence protected by the attorney-client privilege at issue, "[n]either, however, does every claim of good faith open up inquiries into privileged communications," because "[n]ot every assertion of good faith implicates the legal understanding of the party making the claim."  *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, No. 93 Civ. 1317 (LMM) (RLE), 1996 WL 173138, at *3–4 (S.D.N.Y. Apr. 12, 1996) (finding no waiver of privilege where defendant's affirmative defense was based on defendant's knowledge of facts, not knowledge of law); *see, e.g.*, *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assurance Co.*, No. 12 Civ. 6808 (KMK) (PED), 2016 WL 1060336, at *2 (S.D.N.Y. Mar. 11, 2016) ("post-*Erie* caselaw confirms that such implied

---

[9] Courts have found waiver where a party raises a good faith defense, because the party makes assertions the truth of which can only be assessed by examination of the privileged evidence.  *See MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 Civ. 3255 (RWS), 2012 WL 2568972, at *7 (S.D.N.Y. July 3, 2012) ("After *Erie*, the Southern District has continued to recognize the broader waiver principles endorsed by the Second Circuit.") (granting defendants' motion *in limine* and finding implied waiver of attorney-client privilege where plaintiff sought to introduce evidence reflecting its witnesses' intent, beliefs, and understanding); *Arista Recs. LLC v. Lime Grp. LLC*, No. 06 Civ. 5936 (KMW), 2011 WL 1642434, at *3 (S.D.N.Y. Apr. 20, 2011) (granting plaintiffs' motion *in limine* and finding waiver of privilege even where defendant's good faith defense was allegedly based on non-privileged evidence, because plaintiffs were entitled to know if defendant ignored counsel's advice); *Leviton Mfg. Co. v. Greenberg Traurig LLP*, No. 09 Civ. 8083 (GBD) (THK), 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010) (holding that "advice of counsel may be placed in issue where, for example, a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim of defense" and that "[b]ecause legal advice that a party received may well demonstrate the falsity of its claim of good faith belief, waiver in these instances arises as a matter of fairness") (denying defendants' motion to compel and holding that there was no waiver of privilege by plaintiff where plaintiff did not intend to rely on its state of mind to advance its claims), *objections overruled*, No. 09 Civ. 8083 (GBD) (THK), 2011 WL 2946380 (S.D.N.Y. July 14, 2011).

reliance is confined to situations involving a party's state of mind concerning a question of law, such as the party's belief as to the lawfulness of its conduct") (finding no forfeiture of privilege where plaintiff invoked facts he knew or should have known, not his state of mind concerning question of law).

      With respect to the scope of the implied waiver of attorney-client privilege resulting from the assertion of a good faith defense, courts have held that such waiver "should be formulated with caution," *In re Cty. of Erie*, 546 F.3d at 228, and "decided . . . on a case-by-case basis." *In re Grand Jury Proceedings*, 219 F.3d at 183. Therefore, determinations of waiver should be made "in the specific context in which the privilege has been asserted, rather than on the basis of generalizations." *Leviton Mfg. Co. v. Greenberg Traurig LLP*, No. 09 Civ. 8083 (GBD) (THK), 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *John Doe Co.*, 350 F.3d at 302), *objections overruled*, No. 09 Civ. 8083 (GBD) (THK), 2011 WL 2946380 (S.D.N.Y. July 14, 2011); *see Enea v. Bloomberg L.P.*, No. 12 Civ. 4656 (GBD) (FM), 2015 WL 4979662, at *6 (S.D.N.Y. Aug. 20, 2015) (describing scope of waiver arising from good faith defense as "ordinarily [] quite 'narrow'" (quoting *Seyler v. T-Systems N.A., Inc.*, 771 F. Supp. 2d 284, 287–88 (S.D.N.Y. 2011))). For example, in *Foster v. City of New York*, where the plaintiffs filed a motion to compel the production of documents and testimony seeking not only communications between counsel for the defendant and defendant's employees, but also internal communications and other information not communicated to the defendant, the court found that "information not communicated to the [defendant] need not be disclosed." No. 14 Civ. 4142 (PGG) (JCF), 2016 WL 524639, at *1 (S.D.N.Y. Feb. 5, 2016).

### B.  Discussion

#### i.  Ladd's Assertion of a Good Faith Defense Implicates Waiver of Attorney-Client Privilege

In defending against the SEC's scienter-based fraud claims, Ladd alleges that he acted in good faith based on his reliance on communications with Honig's counsel and MGT's counsel in which they told him "that Honig and the others were *not* investing as a group under the legal requirements of Section 13(d)" and the fact that the public filings at issue were "all vetted by competent counsel aware of all material facts" and "sent to counsel for review prior to [] release."  Answer at 2, 3 (emphasis in original).  In support of his good faith defense, Ladd allegedly intends to rely on the fact that he "did not know of a 13(d) group, and the facts known at that time, including Honig's Schedule 13(d) . . . did not suggest such a group existed."  Opp. Br. at 3.  Ladd further contends that "his position has always been, and remains now, that there is no evidence that Honig and the others were in fact acting as a group, or if they were, there is no evidence that Ladd knew this, and as a result, MGT did not have a reporting obligation," and was not "compelled [] to make such a disclosure in its forms 10-K and S-1."  *Id.* at 9, 11.  Thus, Ladd alleges that he "had no intention to violate the securities laws."  Answer at 3.

Ladd's contention that his defense of good faith is not a basis to find a waiver of privilege is contrary to the well-settled precedent in this Circuit.  Opp. Br. at 5; *see generally In re Cty. of Erie*, 546 F.3d at 228–29 ("the assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege"); *Scott*, 67 F. Supp. 3d at 611 ("[c]ourts within this Circuit, relying on *Bilzerian*, have reaffirmed the broader principle that forfeiture of the privilege may result where the proponent asserts a good faith belief in

the lawfulness of its actions, even without expressly invoking counsel's advice" (quoting *Favors*, 285 F.R.D. at 199)).

In response, the SEC cites to, among other cases, *Abromavage v. Deutsche Bank Sec. Inc.*, No. 18 Civ. 6621 (VEC), 2019 WL 6790513 (S.D.N.Y. Dec. 11, 2019), *Scott*, and *In re Keurig Green Mountain Single Serve Coffee*, No. 14 MD 2542 (VSB) (HBP), 2019 WL 2724269 (S.D.N.Y. July 1, 2019) as precedent that courts in this district have required either the production of privileged materials surrounding advice in the face of similar good-faith reliance defenses, or defendants' withdrawal of the defense, notwithstanding the defendants' claimed reliance on solely non-privileged evidence. Mot. at 8, 12.  Ladd distinguishes *Abromavage* and *Scott* as being "particularly inapposite."  Opp. Br. at 17–18.  While *Abromavage* involved the assertion of an affirmative defense of good faith under a statute, the court in finding waiver opined that the defendants' knowledge of the law and belief as to the lawfulness of their actions were at least as central to their statutory affirmative defense as the privileged communications were to the defendant's *mens rea* in *Bilzerian*.  *Abromavage*, 2019 WL 6790513, at *3 (noting that the at-issue waiver principle is a "broader rule in this circuit, which applies to other defenses that rely on the defendant's good faith").  Similarly, while the Court recognizes that *Scott* also involved the assertion of an affirmative defense of good faith under a statute, the court relied on the "broader waiver principles endorsed by the Second Circuit" under *Bilzerian*, *Erie*, and their progeny in finding waiver.  *Scott*, 67 F. Supp. 3d at 610–11 (quoting *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 Civ. 3255 (RWS), 2012 WL 2568972, at *7–8 (S.D.N.Y. July 3, 2012)).  Thus, Ladd's argument that

these cases are inapposite, because his defense does not trigger an inquiry by statute or otherwise, is not accurate.  Opp. Br. at 17–18.

Ladd further distinguishes two cases, *In re Keurig* and *Arista Recs. LLC*, as being inapplicable.  *Id.* at 16.  In *In re Keurig*, the court granted the defendant's motion to compel the production of communications between the plaintiff and its attorneys unless the plaintiff formally withdrew its good faith defense.  While it is true that the plaintiff's "sole basis for claiming that it acted in good faith [was] the advice it received from [its counsel]," the court opined that it was "aware of no authority . . . suggesting that the existence of waiver turns on what other evidence is available or what inferences can be drawn from the other evidence."  *In re Keurig*, 2019 WL 2724269, at *4.  In fact, the court cited with approval cases recognizing the broader waiver principles endorsed by the Second Circuit.  *Id.* at n.3 (quoting *MBIA Ins. Corp.*, 2012 WL 2568972, at *6–7).  In *Arista Recs. LLC*, the court granted the plaintiffs' motion *in limine* to preclude the defendants from offering any argument or evidence at the trial regarding the defendants' alleged good faith belief in the lawfulness of their conduct.  Although the defendants argued that their good faith defense was separate from and not based on the advice of counsel, the court held that the defendants' assertion that *Bilzerian* therefore did not apply misread the law, and opined that advice of counsel may be placed in issue where a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim of defense.  *Arista Recs. LLC*, 2011 WL 1642434, at *3 (quoting *Leviton Mfg. Co.*, 2010 WL 4983183, at *3).  Thus, Ladd's assertion that he did not know

of a "group" and therefore did not believe he had a legal requirement to disclose such status falls within *Bilzerian* and its progeny, and is not contradicted by these two cases.[10]

Here, similar to the defendant in *Bilzerian*, Ladd alleges that he did not intend to violate the securities laws and that the evidence he seeks to introduce to establish his good faith in complying with the laws is not privileged. *Bilzerian*, 926 F.2d at 1291. Ladd's proffered evidence that he believed there was no "group" as contemplated under Section 13(d) and therefore no legal requirement to disclose such information puts his knowledge of the law and the basis for his understanding of what the law required at issue. *Id.* at 1292. Thus, Ladd's communications with MGT's counsel on this subject would have been directly relevant in determining the extent of his knowledge and, as a result, his intent. *Id.*

Although Ladd asserts that his good faith defense is based solely on publicly available filings and non-privileged communications, he "may waive the privilege if he makes factual assertions the truth of which can only be assessed by examination of the

---

[10] Furthermore, Ladd distinguishes several cases the SEC cites in support of its argument that his reliance on communications with Honig's counsel waives privilege with respect to communications from any other attorney on the same topic or in the same time period. Ladd emphasizes that he "relied on a factual statement by Honig's attorney," as opposed to legal advice, and that he was not relying on Honig as his attorney. Opp. Br. at 21–22. In *In re Gaming Lottery*, the court held that "[s]ince the defendants claim they were relying on [the seller's counsel's] legal advice as their attorney [as a defense on the issue of scienter], the legal advice they received from any other lawyers on that subject relates to the reasonableness of defendants' reliance and is not subject to the attorney/client privilege." No. 96 Civ. 5567 (RPP), 2000 WL 340897, at *2 (S.D.N.Y. Mar. 30, 2000); *see Meskunas v. Auerbach*, No. 17 Civ. 9129 (VB) (JCM), 2020 WL 7768486, at *5 (S.D.N.Y. Dec. 30, 2020) (finding that by alleging reliance on defendants' legal advice, plaintiffs waived their privilege regarding any advice they received from other counsel, because such advice bears on the issue of reasonable reliance). Relatedly, the SEC relies on *S.E.C. v. Lek Sec. Corp.* for the proposition that a defendant cannot rely on the advice of another's lawyer to establish good faith. No. 17 Civ. 1789 (DLC), 2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019) (granting the SEC's motion *in limine* precluding defendants from relying on co-defendants' consultations with co-defendants' counsel to establish good faith where defendants did not receive such communications, and did not discuss subject matter of such communications with co-defendants' counsel). The Court recognizes Ladd's arguments distinguishing these cases from the facts at issue and the SEC's arguments as to whether Ladd relied on facts or legal advice. *See* Mot. at 13–14; Opp. Br. at 21–23; Reply Br. at 8–9. Nonetheless, Ladd's alleged reliance on the representations of Honig's counsel and MGT's counsel—facts or legal advice—and the public filings at issue implicates the waiver of privilege under *Bilzerian*.

privileged communication." *In re Kidder Peabody*, 168 F.R.D. at 470 (citing *Bilzerian*, 926 F.2d at 1292).

The truth as to Ladd's belief regarding the existence of the Honig Group and his corresponding duty to disclose can only be assessed by examination of the privileged communications between Ladd and MGT's counsel. His defense implicates privileged communications because the SEC is entitled to know if Ladd ignored MGT's counsel's advice. *Arista Recs. LLC*, 2011 WL 1642434, at *3. Furthermore, the legal advice that Ladd received may well demonstrate the falsity of his claim of good faith belief. *Leviton Mfg. Co.*, 2010 WL 4983183, at *3.

Throughout the fact discovery period, Ladd has routinely withheld documents and deposition testimony on the basis of attorney-client privilege. Ladd continues to assert privilege while raising a good faith defense based on his belief in the lawfulness of his actions. Here, where Ladd is attempting to use the attorney-client privilege as a shield and sword, the Court finds that the waiver principle applies, as it would be unfair for him to assert good faith and to then rely on privilege to deprive the SEC of access to material that might disprove or undermine his contentions. *Arista Recs. LLC*, 2011 WL 1642434, at *3 (quoting *Newmarkets Partners, LLC*, 258 F.R.D. at 106).

  ii. **The Scope of the Implied Waiver of Attorney-Client Privilege Includes Communications Between Ladd and MGT's Counsel, Not Communications Between Honig and Honig's Counsel**

Having found that Ladd's defense of good faith results in an implied waiver of the attorney-client privilege, the Court must determine the scope of that waiver. The SEC's motion seeks the preclusion of Ladd's defense or the production of the following categories of information: (1) communications between Ladd and MGT's counsel

regarding the Honig Group and its status as a "group" as well as MGT's related disclosure obligations;[11] (2) communications between Ladd and MGT's counsel regarding MGT's May 9, 2016 Form 8-K attaching the press release containing allegedly false information; (3) communications between Ladd and MGT's counsel regarding Ladd's Form 4 and Form 144 in connection with his May 2016 trading; and (4) communications between Honig and Honig's counsel regarding the Honig Group's status as a "group." Mot. at 10, 14–15.  Furthermore, the SEC alleges that seeking such categories of information requires Ladd to obtain attorney-client privilege waivers from MGT and Honig concerning his communications with their counsel. *Id.* at 1, 9, 10.  The SEC requests these communications for the period between October 18, 2012, when Honig's counsel sent an email concerning the status of the Honig Group, to MGT's counsel[12] and the filing of MGT's 2015 Form S-1 and 2016 Form 10-K. *Id.* at 14.

Based on the specific context in which the attorney-client privilege has been asserted, the Court finds that the scope of waiver includes the privileged communications between Ladd and MGT's counsel as to the categories described above, but not privileged communications between Honig and Honig's counsel. *See Leviton Mfg. Co.*, 2010 WL 4983183, at *3 (citing *John Doe Co.*, 350 F.3d at 302).  In light of Ladd's defense of good

---

[11] With respect to the SEC's references to Honig's counsel Kesner in the motion (*see* Mot. at 14–15), Ladd requests that the Court order the SEC to disclose the factual basis for its assertion regarding Kesner's alleged investments with Honig or evidence that it believes suggests Kesner was part of a group.  Opp. Br. at 24–25.  Ladd further requests that if no factual predicate for this assertion exists, it should be stricken from the record, and this Court should consider appropriate sanctions.  *Id.* at 25.  In response, the SEC alleges that it has turned over all relevant information on this topic in its possession.  Reply Br. at 10 n.10. This issue is not fully briefed, so the Court declines to address it at this time.

[12] While the SEC does not bring charges for the 2012 events alleged in the SAC, it alleges that these events provide relevant context to the other allegations.  *See* SAC at ¶¶ 129–33.  The Court allowed these events to be included in the pleadings as background in its February 2020 Order.  *See SEC v. Honig*, No. 18 Civ. 8175 (ER), 2020 WL 906383, at *6 (S.D.N.Y. Feb. 25, 2020).

faith based on the representations of Honig's and MGT's counsel, it would be unfair for him to then rely on the privilege to deprive the SEC of access to material that might disprove or undermine his contentions. *Arista Recs. LLC*, 2011 WL 1642434, at *3 (quoting *Newmarkets Partners, LLC*, 258 F.R.D. at 106). Here, Ladd's communications with MGT's counsel have the potential to disprove or rebut his assertions about his good faith belief. Therefore, if Ladd persists in his defense of good faith, he must seek MGT's waiver of the privilege, because the privilege at issue belongs to MGT and only MGT can elect to waive it. *See United States v. Wells Fargo Bank, N.A.*, 132 F. Supp. 3d 558, 566–67 (S.D.N.Y. 2015).[13]

In contrast, the scope of the implied waiver should not include any communications between Honig and Honig's counsel, as they would not potentially undermine Ladd's contentions of good faith. Similar to the court's ruling in *Foster*, where the plaintiffs sought information not communicated to the defendant as falling within the scope of waiver arising from the defendant's good faith defense, the Court finds that information not communicated to Ladd need not be disclosed. 2016 WL 524639, at *1. Given that Ladd was not privy to the communications between Honig and Honig's counsel, such communications do not place in issue Ladd's state of mind, and therefore cannot demonstrate the falsity of his claim of good faith belief. *Leviton Mfg. Co.*, 2010 WL 4983183, at *3. Moreover, the SEC appears to rely on several cases in arguing that the Court should find a waiver of privilege over Honig's communications

---

[13] In *United States v. Wells Fargo Bank, N.A.*, the court held that an employee's right to pursue an advice-of-counsel defense that requires disclosure of the employer's privileged communications was not sufficient to overcome the employer's assertion of attorney-client privilege over communications between the employee and employer's counsel. 132 F. Supp. 3d 558 (S.D.N.Y. 2015).

with his counsel resulting from Ladd's alleged reliance on the advice of Honig's counsel. The Court does not find this persuasive.[14]

## VIII.   CONCLUSION

For the reasons set forth above, the SEC's motion is GRANTED in part and DENIED in part.  It is hereby ordered that:

(1) the SEC's motion is GRANTED to the extent that it seeks to strike an advice-of-counsel defense from Ladd's Answer and any evidence or argument related thereto;

(2) the SEC's motion is GRANTED to the extent that it seeks a formal withdrawal of the defense of good faith or, in the alternative, the production of privileged communications between Ladd and MGT's counsel related to the categories described above; and

(3) the SEC's motion is DENIED to the extent that it seeks the production of privileged communications between Honig and Honig's counsel.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 289.

It is SO ORDERED.

Dated:   November 30, 2021
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

---

[14] Ladd appears to construe the SEC's reliance on these cases, specifically *In re Gaming Lottery*, *Wells Fargo Bank, N.A.*, and *Lek Sec. Corp.*, as support for its arguments that Ladd must obtain a waiver from Honig to access Honig's privileged communications with Honig's counsel in order to assert his defense of good faith.  Opp. Br. at 21–23; Reply Br. at 9–10.  To the extent that Ladd's representations of the SEC's arguments are correct, the Court does not find these cases applicable.  Honig and Ladd do not share the same employer-employee relationship as in *Wells Fargo Bank, N.A.*  Nor do the cases stand for the proposition that where one relies on the advice of a third party's attorney, communications between the third party and its attorney must be disclosed in order for one to assert a good faith defense.  Furthermore, for the aforementioned reasons, the Court formulates the scope of waiver to exclude privileged communications between Honig and Honig's counsel.