# EXHIBIT I

| | |
|---|---|
| From: | Robert Ladd |
| Sent: | Wednesday, October 17, 2012 6:40 AM EDT |
| To: | Jay Kaplowitz |
| CC: | Robert Traversa |
| Subject: | Re: MGT |

The good news is this appears to me to be legal bullshit.  This is why people hate lawyers Jay. Also these protections all seem to insinuate that we will steal their money. Ironic in that we both know that these docs were prepared by the lead investor.
Am I right?
So ask Harvey how he wants to handle it.  Waste more money, or just close?
These are the only business issues I see:
Number 1 and all other escrow related questions: it is obviously the Company's desire and intention to close quickly, if not instantly. Amex doesn't want this dragging out either.
Number 3:  good point!!  Like The Producers, we apparently did give out 150% participation.  Barry needs to deal with Iroquois on this.
Number 9 is Barry's call.
Number 10 stands.


Robert Ladd
President and CEO
MGT Capital Investments, Inc.
500 Mamaroneck Avenue - suite 204
Harrison, NY  10528
(914) 630-7430
(914) 643-6855 cell

On Oct 17, 2012, at 6:10 AM, "Jay Kaplowitz" <jKaplowitz@srff.com> wrote:

> FYI
>
> Sent from my iPhone
> Jay M, Kaplowitz
>
> Begin forwarded message:
>
>> From: Harvey Kesner <Pdox74@hotmail.com>
>> Date: October 17, 2012, 12:02:57 AM EDT
>> To: Jay Kaplowitz <jKaplowitz@srff.com>, Arthur Marcus <amarcus@srff.com>
>> Cc: Tara Guarneri-Ferrara <tguarneri-ferrara@SRFF.COM>
>> Subject: Fw: MGT
>>
>>
>> Jay and Arthur -

I met with Barry this evening and summarize the comments on the documents below.
Ill leave to you guys to determine how/whether to address these with Robb and Robert.
This is my summary from my conversation with Barry and emanates from Iroquois – some points are not unreasonable.

1. Investors are depositing funds with no obligation of company to close.  Essentially appears to be an option till Dec 8 to close while funds are held interest free. [HK - I AM NOT CERTAIN THIS IS INTENTIONAL.  THEY WOULD LIKE A COMMITTED CLOSING DATE AND NOT THAT FUNDS CAN BE RETURNED AND HELD FOR AN EXTENDED PERIOD – I WOULD THINK THAT THE CO COULD AGREE TO CLOSE WITHIN 3 DAYS OF RECEIPT OF THE OFFERING FULL AMOUNT IN ESCROW, AND THAT WOULD CLOSE THE S3 TAKEDOWN CONTEMPORANEOUSLY]
2. The various Risk Factors in the Sub Docs regarding the deal are not typical for a PIPE, in particular: a)no limit in when keep information confidential [HK – THIS SHOULD TERMINATE WHEN THE COMPANY ANNOUNCES THE TRANSACTION.  IN ADDITION IT IS NOT UNCOMMON FOR THE CO TO AFFIRM THAT THE PIPE INVESTOR DOES NOT HAVE ANY MATERIAL NON PUBLIC INFO AND THIS SHOULD NOT BE PROBLEMATIC TO REVISE]; b) There should be an obligation to announce the deal closing [HK – THIS IS ALSO NOT UNUSUAL AND COULD BE ADDED THAT THE CO WILL FILE AN 8K WITHIN 2 DAYS – NOT A BIG DEAL AS I SEE IT] c) There could be a clause that will not provide investors with MNPI [HK – AGAIN, I DON'T SEE WHY ROBB WOULD CARE OR NOT BE AGREEABLE TO ADD THIS]
3. There is some objection voiced by the attorney about the limited procedures described for the Right of Participation for 2 years.  Seems like the 5 day period for a decision is too short.  There are inadequate procedures for how to resolve oversubscriptions.  There is not addressed at all how this right of participation interacts with the existing Iroquois Right of Participation [HK - THIS IS A GOOD POINT. HAVE EITHER OF YOU GIVEN THOUGHT TO WHICH TAKES PRIORITY?  DOES ONE OVERRIDE THE OTHER?  I THINK THIS NEEDS TO BE RESOLVED SUCH THAT IT IS CLEAR IF THIS TERMINATES THE PRIOR OR THIS IS NET OF THE PRIOR OR WHICH TAKES PRECEDENCE JUST SO THAT THE PARTIES KNOW HOW THEY INTERACT AND THERE ARE NOT DISPUTES IN THE FUTURE.  SOME MORE WORDS ARE IN ORDER.  NEITHER TARA OR I ARE AT ALL FAMILIAR WITH THE OLD RIGHTS, SO I THINK YOU GUYS WOULD WANT TO DISCUSS WITH ROBB AND SEE HOW THIS SHOULD BE MASSAGED].
4. There are Subscriber reps, some duplicative.  The ones in particular as to which objection was voiced are: 1) rep that you are purchasing for investment purposes and not with a view toward distribution (but there is no qualifier for view toward distribution not in violation of law [HK – I IMAGINE THIS COULD BE ADDED WITHOUT A PROBLEM – FOR EXAMPLE IF REGISTERED OF AN EXEMPTION]), 2) rep that have knowledge of all of the Company's risk factors in its public filings (not ideal and not typical they say)[HK – I DISAGREE AND WOULD NOT REMOVE THIS], 3) there are two non-typical risk factors that talk about (x) non-deal road shows and analyst reports, and that the Company is not responsible for any info given and (y) the fact that the Company may be deemed by the SEC or FINRA to be manipulating stock by certain

activities [HK - TARA MUST HAVE INCLUDED THIS FROM OUR SMALLER OTC ILLIQUID STOCKS THAT HAVE IR PROGRAMS – IT WOULD SEEM TO BE NOT NECESSARY HERE AND COULD BE DELETED].

5. 3(h) – The intro to the legend suggests that need to give a legal opinion to get legends removed that cover blue sky laws [HK - I CANT BELIEVE THAT IS WHAT IT REALLY SUGGESTS, BUT WORTH A LOOK AND SHOULD BE CONFORMED TO THE ACTUAL LEGEND].  Not typical and law firms don't typically give blue sky opinions [HK – AGREE WITH THAT].  The actual legend doesn't have that requirement, but there is no carve out from opinions for legend removal [HK – IM NOT SURE WOULD MAKE ANY CHANGES TO ALLOW FOR LEGEND REMOVAL GENERALLY, BUT FULLY EXPECT ONCE REGISTERED WOULD HONOR A REMOVAL REQUEST AND MAYBE CAN ADD THIS CONCEPT].  Also, there is no carve out for pledges to your brokers in margin accounts. [HK – THIS IS A BUS DECISION.  IT IS NOT AN ISSUE TO BARRY THAT I HAVE EVER KNOWN, BUT A MORE TRADITIONAL FUND WOULD WANT AND WOULD GENERALLY HAVE THE RIGHT TO PLEDGE].
6. 3(r) – asked to indemnify the Company for any breaches of the investor reps or covenants.  The indemnify is capped at the aggregate purchase price [HK – AGREE THIS DOES NOT NECESSARILY MAKE SENSE BUT GIVEN THE NATURE OF THE FUND INVESTORS, COULD CONSIDER REMOVING THIS – I AGREE INSTITUTIONAL INVESTOR FUND INDEMNITIES ARE NOT STANDARD].
7. Section 4 – The Company reps are very thin per counsel.  There is a 10b-5 rep about public filings, but many missing reps.  The Company indemnifies for breaches of its reps and covenants, but their liability is limited to your aggregate purchase price.  Obviously, a cap like that is not typical. [HK - I WOULD NOT ENTERTAIN CHANGES TO THIS AT THIS TIME]
8. 5(e) – There is a reservation of shares provision, but there is no cushion and no drop dead date as to when the reservation issue has to be fixed.  Assert that there should be language to file a proxy or info statement within 10 business days after the date on which the Company becomes aware that it may have an authorized share problem, but there are no liquidated damages if they fail and there are no consequences if they file but get stuck in SEC review. [HK – I DON'T HONESTLY SEE THE PROBLEM WITH THIS AS THERE IS NO ANTIDULUTION THAT COULD MAKE THIS RELEVANT IN THE MANNER IT USUALLY COMES UP]
9. 5(h) – For as long as any Preferred Shares remain outstanding, the Company is required to engage (i) an investor relations firm at a price not to exceed $210k per year and $10k per month after 1 year, and (ii) a public relations firm for a minimum of 6 months, at a price not to exceed $100k in the aggregate.  However, there is no approval right of either firm and no indication of what the firms are supposed to, or are required to, do.[HK – THIS SEEMS TO REFLECT THE BUS TERMS SET WITH BH AND I WOULD NOT ENTERTAIN A CHANGE UNLESS BARRY INSISTS, WHICH I HE WONT ON HIS OWN]
10. 5(j) – All D&Os and 10% beneficial holders are agreeing to not to sell stock for 180 days after the final closing date for a per share price less than $8.00.  Also, that same group is agreeing while at least 50% of the shares of Preferred Stock underlying the

initial Preferred Stock is outstanding not to sell in excess of 20% of their holdings at a per share price less than $8.00 and the remaining 80% at a per share price less than $10.00. [HK – LAWYER QUESTIONS THIS PROVISION, BUT I THINK IT IS FOURSQUARE THE BUS DEAL SO WOULD NOT REVISIT IT]

11. Conditions to closing – no opinions or certs. No requirement to deliver the Preferred Stock or Warrant cert by any particular time period. Company determines if all conditions are satisfied.[HK – I DON'T THINK THAT OPINIONS OR CLOSING BRINGDOWNS ARE NECESSARY COMPONENTS, BUT WOULD NOT BE UNUSUAL – WOULD INCREASE COSTS, OBVIOUSLY, IF WE NEED TO DELIVER OPINIONS. I AM NOT CONCERNED IF WE HAVE TO WE SHOULD AGREE AND DO THE WORK NECESSARY]
12. No fee reimbursement.[HK - USUALLY THERE IS A REIMBURSMENT OF INVESTOR COUNSEL – BUS POINT]
13. 8(g) – The Subscription Agreement is not assignable or transferrable by the Subscriber.[HK – NOR SHOULD IT BE. YOU WANT TO KNOW WHO YOUR INVESTORS ARE]
14. 8(h) – The Subscription Agreement can be amended by the Subscribers in the offering holding a majority of the initial Units. Are you OK having your Subscription Agreement being amended without your consent? There is not provision about not offering consideration to anyone without offering to everyone.[HK – IT WOULD SEEM OK THAT CAN NOT OFFER CONSIDERATION TO ONE THAT IS NOT OFFERED TO ALL]
15. Escrow Agreement - Sichenzia Ross is acting as the Escrow Agent. The Company has the sole ability to release funds from the escrow account. If the deal doesn't close or your subscription is rejected, they will promptly return the funds to you, but per the SPA, the drop dead can be extended by the board indefinitely.[HK – AS NOTED ABOVE, THE BOARD MIGHT NOT NEED TO INDEFINITELY OR AT ALL EXTEND THE CLOSING DATE]
16. Counsel suggests the whole escrow concept should be eliminated.[HK – I DISAGREE INASMUCH AS THE CO NEEDS TO HIT THE AMOUNTS IN THE TERM SHEETS BEFORE IT CLOSES.
17. Escrow Fees may be paid from the Escrow Funds at the first closing of the Offering. The Escrow Funds shouldn't be subject to attack.[HK – IT IS COMMON FOR DISBURSEMENTS TO INCLUDE COUNSEL FEES AND ESCROW FEES]
18. The Company and each of the Subscribers (and each of your affiliates) is jointly and severally agreeing to indemnify the Escrow Agent from any claims, liabilities, costs or expenses arising from its role as escrow agent unless they are found by final, nonappealable judgment to have resulted from the gross negligence, fraud or willful misconduct of the Escrow Agent. The Company should take care of the Escrow Agent out of its own pocket and you shouldn't be liable in any manner, but especially not jointly and severally with your affiliates.[HK – I HAVE NEVER SEEN AN ESCROW AGREEMENT FOR AN ESCROW AGENT THAT DOES NOT HAVE ALL PARTIES JOINTLY AND SEVERALLY INDEMNIFY – THAT'S NUTS TO SUGGEST OTHERWISE]

_____

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

For more information please visit http://www.giotech.co.uk

_____

MGT-SEC-2022-006046