# EXHIBIT AA

FOIA Confidential Treatment Requested by MGT Capital Investments, Inc.

| | |
|---|---|
| From: | Mark Groussman |
| Sent: | Thu 5/09/2013 8:13 AM (GMT-05:00) |
| To: | Reginald Averilla |
| Cc: | |
| Bcc: | |
| Subject: | FW: mtg notice of exercise |
| Attachments: | Image 1.pdf |

On 5/9/13 8:58 AM, "Mark Groussman" <mgman@bullhunterllc.com> wrote:

>

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

For more information please visit http://www.giotech.co.uk

FOIA Confidential Treatment Requested by MGT Capital Investments, Inc.   MGT_SEC_00016845

NOTICE OF EXERCISE

TO: MGT Capital Investments, Inc.
500 Mamaroneck Avenue, Suite 204
Harrison, NY 10528
Attn: President
Tel: (   )   -
Fax: (   )   -

(1)   The undersigned hereby elects to purchase _12,269_ shares of Warrant Stock of the Company pursuant to the terms of the attached Warrant to Purchase Common Stock, and tenders herewith payment of the exercise price in full, together with all applicable transfer taxes, if any.

(2)   Payment shall take the form of (check applicable box):

☑  in lawful money of the United States; or

☐  if permitted, the cancellation of _____ shares of Warrant Stock in order to exercise this Warrant with respect to _____ shares of Warrant Stock (using a VWAP of $ _____ for this calculation), in accordance with the formula and procedure set forth in subsection 1(c).

☐  if permitted, the cancellation of such number of shares of Warrant Stock as is necessary, in accordance with the formula and procedure set forth in subsection 1(c), to exercise this Warrant with respect to the maximum number of shares of Warrant Stock purchasable pursuant to a cashless exercise.

(3)   Please issue a certificate or certificates representing said shares of Warrant Stock in the name of the undersigned or in such other name as is specified below:

_____

The shares of Warrant Stock shall be delivered to the following DWAC Account Number, if permitted, or by physical delivery of a certificate to:

_Melechdavis Inc._
_DTC 0158_
_Account #    8373_

DOC ID - 19127764.4

- 14 -

FOIA Confidential Treatment Requested by MGT Capital Investments, Inc.    MGT_SEC_00016846

EXCHANGE AGREEMENT

This Exchange Agreement (this "**Agreement**") is entered into as of April ___, 2013, between MGT Capital Investments, Inc., a Delaware corporation, with headquarters located at 500 Mamaroneck Avenue, Suite 204, Harrison, NY 10528 (the "**Company**") and the investors listed on the signature page hereto (the "**Holder**").

RECITALS

A. The Holders are the owners of warrants issued in connection with the Company's November 2, 2012 financing agreements. The warrants entitle the holder to purchase the Company's Common Stock at an exercise price of $3.85 per Company share for a period of five years from their date of issuance (the "November Warrants").

B. The Company desires to have the Holder exercise a portion of the November Warrants at the stated exercise price and to exchange their remaining November Warrants for shares of the Company's common stock, on the basis of 5/8 of a share of common stock for each November Warrant exchanged.

AGREEMENT

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and the Holder hereby agree as follows:

1. **Exchange.** Subject to the satisfaction (or waiver) of the conditions set forth in Sections 5 and 6 of this Agreement, on the Closing Date, the undersigned Holder who exercised _12,267_ November Warrants hereby tenders an additional _2/527_ November Warrants of the Holder for _1,327_ shares of common stock (5/8 per November Warrant exchanged) (the "Exchange Shares").

2. **Closing.** The consummation of the transactions contemplated by this Agreement (the "**Closing**") shall occur at 10:00 a.m. (New York City time) on the date hereof, or such other dates and times as the parties agree upon in writing (the "**Closing Date**") but no later than May 30, 2013.

3. **Representations and Warranties of the Company.** The Company represents and warrants to the Holder as follows:

a. **Authorization; Enforceability.** (i) The Company has the requisite power and authority to enter into and perform its obligations under this Agreement and to consummate the transactions contemplated hereby, (ii) the execution and delivery of this Agreement by the Company and the consummation by the Company of the transactions contemplated hereby have been duly authorized by all necessary action on the part of the Company, and (iii) this Agreement constitutes a legal, valid and binding obligation of the Company, enforceable against it in accordance with its terms, except as such enforceability may be limited by general principles of equity or to applicable bankruptcy, insolvency, reorganization, moratorium, liquidation and

FOIA Confidential Treatment Requested by MGT Capital Investments, Inc.   MGT_SEC_00016847

other similar laws relating to, or affecting generally, the enforcement of applicable creditors' rights and remedies.

b. No Conflicts; Consents. The execution, delivery and performance of this Agreement by the Company and the consummation by the Company of the transactions contemplated will not (i) result in a violation of the Company's certificate of incorporation of the Company or its by-laws, (ii) conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Company is a party, or (iii) result in a violation of any law, rule, regulation, order, judgment or decree (including federal and state securities laws and regulations and the rules of the Principal Market, applicable to the Company or by which any property or asset of the Company is bound or affected). The Company is not required to obtain any consent, authorization or order of, or make any filing or registration with, any court, governmental agency or any regulatory or self-regulatory agency or any other Person in order for it to execute, deliver or perform any of its obligations under or contemplated by hereby, other than the filing by the Company of a listing application for the Exchange Shares with the Principal Market, which shall be done pursuant to the rules of the Principal Market.

c. Compliance with Securities Laws. The transactions provided for in this Agreement do not contravene any applicable securities laws and the rules and regulations promulgated thereunder, including but not limited to the Securities Act of 1933 as amended (the "1933 Act").

d. Exchange Shares. The Exchange Shares have been duly authorized and, when issued and delivered in accordance with the terms of this Agreement, will be validly issued, fully paid and non-assessable and free from all preemptive or similar rights, taxes, liens and charges with respect to the issue thereof.

e. Disclosure. The Company confirms that neither it nor any other Person acting on its behalf has provided the Holder or its agents or counsel with any information that constitutes or could reasonably be expected to constitute material, nonpublic information that will not be disclosed in, or prior to, the 8-K Filing (as defined below). The Company understands and confirms that the Holder will rely on the foregoing representations in effecting transactions in securities of the Company. No event or circumstance has occurred or information exists with respect to the Company or any of its subsidiaries or its or their business, properties, prospects, operations or financial conditions, which, under applicable law, rule or regulation, but for the passage of time, requires public disclosure or announcement by the Company but which has not been so publicly announced or disclosed. No Material Adverse Effect currently exists or is reasonably expected to occur.

4. **Representations and Warranties of the Holder.** The Holder represents and warrants to the Company as follows:

a. Title to November Warrants. The Holder has good, legal and marketable title to the November Warrants, free and clear of any and all liens or adverse claims. As of the Closing Date, the Holder shall not have assigned, conveyed or transferred any interest

2

FOIA Confidential Treatment Requested by MGT Capital Investments, Inc.   MGT_SEC_00016848

whatsoever (contingent or otherwise) in the November Warrants to any third party and the Warrants shall be delivered to the Company free and clear of any and all liens or adverse claims.

   b.   Acknowledgment of Restrictions.   The Holder acknowledges that the Exchange Shares will not be registered under the Securities Act of 1933, as amended or any state securities laws and will not be transferable absent registration or an applicable exemption. The Exchange Shares will bear the following legend.

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT") OR ANY STATE SECURITIES LAW, AND MAY NOT BE SOLD, TRANSFERRED, ASSIGNED, HYPOTHECATED OR OTHERWISE DISPOSED OF UNTIL A REGISTRATION STATEMENT WITH RESPECT THERETO IS DECLARED EFFECTIVE UNDER SUCH ACT OR THE COMPANY RECEIVES AN OPINION OF COUNSEL TO THE COMPANY THAT AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE 1933 ACT IS AVAILABLE.

   c.   Authorization; Enforceability.   (i) The Holder has the requisite power and authority to enter into and perform its obligations under this Agreement and to consummate the transactions contemplated hereby, (ii) the execution and delivery of this Agreement by the Holder and the consummation by the Holder of the transactions contemplated hereby have been duly authorized by all necessary action on the part of the Holder, and (iii) this Agreement constitutes a legal, valid and binding obligation of the Holder, enforceable against it in accordance with its terms, except as such enforceability may be limited by general principles of equity or to applicable bankruptcy, insolvency, reorganization, moratorium, liquidation and other similar laws relating to, or affecting generally, the enforcement of applicable creditors' rights and remedies.

   (d)   No Conflicts.   The execution, delivery and performance by the Holder of this Agreement and the consummation by the Holder of the transactions contemplated hereby will not (i) result in a violation of the organizational documents of the Holder or (ii) conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Holder is a party, or (iii) result in a violation of any law, rule, regulation, order, judgment or decree (including federal and state securities laws) applicable to the Holder, except in the case of clauses (ii) and (iii) above, for such conflicts, defaults, rights or violations which would not, individually or in the aggregate, reasonably be expected to have a material adverse effect on the ability of the Holder to perform its obligations hereunder.

   5.   Conditions to the Company's Obligations.   The obligation of the Company to make the exchange of the November Warrants for shares of the Company's common stock is subject to the satisfaction, at or before the Closing Date, of each of the following conditions thereto, provided that these conditions are for the Company's sole benefit and may be waived by the Company at any time in its sole discretion by providing the Holder with prior written notice thereof:

FOIA Confidential Treatment Requested by MGT Capital Investments, Inc.   MGT_SEC_00016849

a. Exercise of the November Warrants. The Holder shall have completed the Notice of exercise of [illegible] November Warrants along with the appropriate cash payment to the Company or to an attorney at Sichenzia, Ross, Friedman Ference LLP for the benefit of the Company.

b. Delivery of the November Warrants being exchanged. The Holder shall have delivered the November Warrants being exchanged to the Company or its counsel for cancellation.

c. Representations and Warranties. The representations and warranties of the Holder shall be true and correct in all respects as of the date when made and as of the Closing Date, except for representations and warranties that are expressly made as of a particular date, which shall be true and correct in all material respects as of such date.

d. No Prohibition. No litigation, statute, rule, regulation, executive order, decree, ruling or injunction shall have been enacted, entered, promulgated or endorsed by or in any court or governmental authority of competent jurisdiction or any self-regulatory organization having authority over the matters contemplated hereby which prohibits the consummation of any of the transactions contemplated by this Agreement.

6. **Conditions to the Holder's Obligations.** The obligation of the Holder to exercise the November Warrants and exchange any additional November Warrants for shares of common stock at the closing is subject to the satisfaction, at or before the Closing Date, of each of the following conditions, provided that these conditions are for the Holder's sole benefit and may be waived by Holder at any time in its sole discretion by providing the Company with prior written notice thereof:

a. Exchange Shares. The Company shall have duly authorized the issuance of the Exchange Shares and shall immediately file an additional listing application with the NYSE/AMEX covering the Exchange Shares.

b. Representations and Warranties. The representations and warranties of the Company shall be true and correct in all material respects as of the date when made and as of the Closing Date, except for representations and warranties that speak as of a particular date, which shall be true and correct in all material respects as of such date.

c. Mutual Release. The Company shall have executed and delivered to FSI Delaware, Inc. the letter attached hereto as Exhibit B, and a copy of such executed letter shall have been delivered to the Holder.

d. No Prohibition. No litigation, statute, rule, regulation, executive order, decree, ruling or injunction shall have been enacted, entered, promulgated or endorsed by or in any court or governmental authority of competent jurisdiction or any self-regulatory organization having authority over the matters contemplated hereby which prohibits the consummation of any of the transactions contemplated by this Agreement.

4

FOIA Confidential Treatment Requested by MGT Capital Investments, Inc.   MGT_SEC_00016850

7. Covenants.

a. Disclosure of Transactions and Other Material Information. On or before 8:30 a.m., New York City time, on the first Business Day following the date of this Agreement, the Company shall issue a press release and file a Current Report on Form 8-K describing the terms of the transactions contemplated hereby in the form required by the 1934 Act (including all attachments, the "8-K Filing"). Upon the filing of the 8-K Filing with the SEC, the Holder shall not be in possession of any material, nonpublic information received from the Company, any of its subsidiaries or any of its respective officers, directors, employees or agents, that is not disclosed in the 8-K Filing. The Company shall not, and shall cause each of its Subsidiaries and its and each of their respective officers, directors, employees and agents, not to, provide the Holder with any material, nonpublic information regarding the Company or any of its subsidiaries from and after the filing of the 8-K Filing with the SEC without the express written consent of the Holder. If the Holder has, or believes it has, received any such material, nonpublic information regarding the Company or any of its Subsidiaries from the Company, any of its Subsidiaries or any of their respective officers, directors, affiliates or agents, it may provide the Company with written notice thereof. The Company shall, within two (2) Trading Days of receipt of such notice, make public disclosure of such material, nonpublic information. In the event of a breach of the foregoing covenant by the Company, any of its Subsidiaries, or any of its or their respective officers, directors, employees and agents, in addition to any other remedy provided herein, the Holder shall have the right to make a public disclosure, in the form of a press release, public advertisement or otherwise, of such material, nonpublic information without the prior approval by the Company, its Subsidiaries, or any of its or their respective officers, directors, employees or agents. The Holder shall not have any liability to the Company, its Subsidiaries, or any of its or their respective officers, directors, employees, stockholders or agents for any such disclosure. To the extent that the Company delivers any material, non-public information to the Holder without the Holder's consent, the Company hereby covenants and agrees that the Holder shall not have any duty of confidentiality with respect to, or a duty not to trade on the basis of, such material, non-public information. Subject to the foregoing, neither the Company, its Subsidiaries nor the Holder shall issue any press releases or any other public statements with respect to the transactions contemplated hereby; provided, however, that the Company shall be entitled, without the prior approval of the Holder, to make any press release or other public disclosure with respect to such transactions (i) in substantial conformity with the 8-K Filing and contemporaneously therewith and (ii) as is required by applicable law and regulations (provided that in the case of clause (i) the Holder shall be consulted by the Company in connection with any such press release or other public disclosure prior to its release).

b. Mutual Release of Claims. Effective as of the Closing, for good and valuable consideration, the sufficiency of which is hereby acknowledged, provided that the transactions contemplated by this Agreement, are valid and not challenged or subject to cancellation or recapture, the Company, for itself and its officers, directors, parents, subsidiaries, affiliates, shareholders, employees, agents, managers, members, legal representatives, successors and assigns, release, acquit and forever discharge the Holder and its respective officers, directors, parents, subsidiaries, affiliates, shareholders, employees, agents, managers, partners, members, legal representatives, successors and assigns, from any and all claims, causes of action, liability, responsibility and demands, whether in law or in equity, contract or tort, statutory or common

5

FOIA Confidential Treatment Requested by MGT Capital Investments, Inc.    MGT_SEC_00016851

law, including claims of indemnification or contribution, fixed or contingent, known or unknown, asserted or unasserted, related to the Warrants which they ever had, now have or hereafter can, shall or may have arising from any action or inaction from the beginning of the world to the date of this Agreement. Effective as of the Closing, for good and valuable consideration, the sufficiency of which is hereby acknowledged, provided that the transactions contemplated by this Agreement are valid and not challenged or subject to cancellation or, the Holder, for itself and its officers, directors, parents, subsidiaries, affiliates, shareholders, employees, agents, managers, members, legal representatives, successors and assigns, release, acquit and forever discharge the Company and its respective officers, directors, parents, subsidiaries, affiliates, shareholders, employees, agents, managers, partners, members, legal representatives, successors and assigns, from any and all claims, causes of action and liability, whether in law or in equity, contract or tort, statutory or common law, including claims of indemnification or contribution, fixed or contingent, known or unknown, asserted or unasserted, related to the transactions contemplated hereby which they ever had, now have or hereafter can, shall or may have arising from any action or inaction from the beginning of the world to the date of this Agreement. Notwithstanding anything to the contrary contained herein, nothing herein shall release any person or entity from any existing obligations under any contract or other instrument (other than those set forth in the Warrants).

    c. <u>Delivery of Exchange Shares.</u> No later than Two Trading Days after the date that the NYSE MKT approves the listing of the Exchange Shares, the Company shall duly issue and deliver the Exchange Shares to the Holder. If the Company has not duly issued and delivered the Exchange Shares to the Holder on or prior to June 30, 2013 (the "**Trigger Date**"), whether because the NYSE MKT has not approved the listing of the Exchange Shares by such date and the Company is listed on the NYSE MKT on such date or for any other reason, in lieu of delivering the Exchange Shares to the Holder, the Company shall return the November Warrants to the Holder.

    8. <u>Transaction Documents</u>.

    Except as otherwise expressly provided herein, the original transaction documents pursuant to which the November Warrants were issued are, and shall continue to be, in full force and effect and are hereby ratified and confirmed in all respects. The Holder's execution of this Agreement shall not constitute a novation, refinancing, discharge, extinguishment or refunding nor is it to be construed as a release, waiver or modification of any of the terms, conditions, representations, warranties, covenants, rights or remedies set forth in the original transaction documents, except as expressly provided herein.

    9. <u>Termination</u>. In the event that the Closing does not occur on or before two (2) Business Days from the date hereof, due to the Company's or the Holder's failure to satisfy the conditions set forth in Sections 5 and 6 hereof (and the non-breaching party's failure to waive such unsatisfied conditions(s)), the non-breaching party shall have the option to terminate this Agreement with respect to such breaching party at the close of business on such date without liability of any party to any other party.

FOIA Confidential Treatment Requested by MGT Capital Investments, Inc.  MGT_SEC_00016852

10. Miscellaneous.

a. Governing Law. All questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by the internal laws of the State of New York, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of New York or any other jurisdictions) that would cause the application of the laws of any jurisdictions other than the State of New York. Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in The City of New York, Borough of Manhattan, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof to such party at the address for such notices to it under this Agreement and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE, AND AGREES NOT TO REQUEST, A JURY TRIAL FOR THE ADJUDICATION OF ANY DISPUTE HEREUNDER OR IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREBY.

b. Counterparts; Signatures by Facsimile. This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other parties. This Agreement, once executed by a party, may be delivered to the other parties hereto by electronic mail or facsimile transmission of a copy of this Agreement bearing the signature of the party so delivering this Agreement.

c. Construction; Headings. This Agreement shall be deemed to be jointly drafted by the Company and the Holder and shall not be construed against any Person as the drafter hereof. The headings of this Agreement are for convenience of reference and shall not form part of, or affect the interpretation of, this Agreement.

d. Entire Agreement; Amendments. This Agreement contains the entire understanding of the parties with respect to the matters covered herein. No provision of this Agreement may be waived or amended other than by an instrument in writing signed by the parties.

e. Notices. Any notices, consents, waivers or other communications required or permitted to be given under the terms of this Agreement must be in writing and will be deemed to have been delivered: (i) upon receipt, when delivered personally; (ii) upon receipt, when sent by facsimile (provided confirmation of transmission is mechanically or electronically generated and kept on file by the sending party) or by electronic mail; or (iii) one Business Day after deposit with an overnight courier service, in each case properly addressed to the party to

7

receive the same. The addresses and facsimile numbers and e-mail addresses for such communications shall be:

If to the Company:

MGT Capital Investments, Inc.
500 Mamaroneck Avenue, Suite 204
Harrison, NY 10528
Telephone: (914) 630-7430
Facsimile: (914) 630-7532
Attention: Robert Ladd, President and CEO
E-mail: rladd@mgtci.com

With a copy (for informational purposes only) to:

Sichenzia Ross Friedman Ference LLP
61 Broadway – 32nd Floor
New York, NY 10006
Telephone: (212) 930-9700
Facsimile: (212) 980-9725
Attention: Arthur S. Marcus, Esq.
E-mail: Amarcus@srff.com

If to the Holder:

[          ]

With a copy (for informational purposes only) to:

[                    ]

or to such other address, facsimile number and/or e-mail address and/or to the attention of such other Person as the recipient party has specified by written notice given to each other party five (5) days prior to the effectiveness of such change. Written confirmation of receipt (A) given by the recipient of such notice, consent, waiver or other communication, (B) mechanically or electronically generated by the sender's facsimile machine or e-mail containing the time, date, recipient facsimile number and an image of the first page of such transmission or (C) provided by an overnight courier service shall be rebuttable evidence of personal service, receipt by facsimile or receipt from an overnight courier service in accordance with clause (i), (ii) or (iii) above, respectively.

8

FOIA Confidential Treatment Requested by MGT Capital Investments, Inc.    MGT_SEC_00016854

f. **Expenses**. Each party hereto shall be responsible for its own fees and expenses incurred in connection with the transactions contemplated by this Agreement.

g. **Successors and Assigns**. This Agreement shall be binding upon and inure to the benefit of the parties and their successors and assigns. The Company shall not assign this Agreement or any rights or obligations hereunder without the prior written consent of the Holder.

[SIGNATURE PAGE FOLLOWS]

9

FOIA Confidential Treatment Requested by MGT Capital Investments, Inc.    MGT_SEC_00016855

IN WITNESS WHEREOF, the Company and the Holder have caused this Agreement to be duly executed as of the date first above written.

Company:    MGT CAPITAL INVESTMENTS, INC.

By: _____
Name:
Title:

Holder:

By: _____
Name: Mark Groissman
Title: Melechdavio Inc
President

# of November Warrants being Exchanged

24,539

10

FOIA Confidential Treatment Requested by MGT Capital Investments, Inc.          MGT_SEC_00016856