# EXHIBIT HHH

From:        Joan Wu
Sent:        Fri 6/10/2016 2:39 PM (GMT-05:00)
To:          'Tanya.Hoos@theice.com'
Cc:          'Joseph.Pisano@theice.com'; 'Deoclides Machado'; 'Benjamin Sawyer'; 'John Carey'; Jay
             Kaplowitz; Robert Ladd
Bcc:
Subject:     FW: MGT Capital Investments, Inc. (MGT) - NYSE Regulation Information Request Letter
Attachments: NYSE response letter 10June2016-signed.pdf; MGT-DFMEDIA-Agreement 4May2016-
             signed.pdf; StockBeast2.pdf; StockBeast.pdf; 6 7 2016 - MGT_Nolan Bushnell final.docx

Tanya,

Please find attached the Company's responses to your letter request. Please let us know if you have any
questions.

Thanks and regards

**Joan Wu, Esq.**

Sichenzia Ross Friedman Ference LLP
61 Broadway | 32nd Floor | New York, NY 10006
T 212 930 9700  | F 212 930 9725

JWu@srff.com www.srff.com

-----Original Message-----
From: Tanya Hoos [mailto:Tanya.Hoos@theice.com]
Sent: Friday, May 20, 2016 4:32 PM
To: Robert Ladd <rladd@mgtci.com>
Cc: Joseph Pisano <Joseph.Pisano@theice.com>; Deoclides Machado
<Deoclides.Machado@theice.com>; Benjamin Sawyer <Benjamin.Sawyer@theice.com>; John
Carey <John.Carey@theice.com>
Subject: MGT Capital Investments, Inc. (MGT) - NYSE Regulation Information Request Letter

Hi Robert -

I know you've been speaking with my colleague Ben Sawyer from our Market Watch group this

CONFIDENTIAL



EXHIBIT
Onahai 12
3-5-20

MGT_SEC_00024985

week. Please note that this letter is a follow-up to those conversations. The letter is straightforward, but we're happy to discuss the requests if you'd like. You can call either me at 212-656-5391 or my colleague Joe Pisano 212-656-5861 to arrange that conversation. Otherwise, we would expect a written response (you can send electronically to the group on this email) no later than June 10, 2016.

Thanks very much -
Tanya

Tanya Hoos
Director, Issuer Oversight - NYSE Regulation New York Stock Exchange An Intercontinental Exchange Company (NYSE: ICE)
11 Wall St | 22nd Floor | New York, NY 10005
Tel: +1 212.656.5391
tanya.hoos@theice.com

---

This message may contain confidential information and is intended for specific recipients unless explicitly noted otherwise. If you have reason to believe you are not an intended recipient of this message, please delete it and notify the sender. This message may not represent the opinion of Intercontinental Exchange, Inc. (ICE), its subsidiaries or affiliates, and does not constitute a contract or guarantee. Unencrypted electronic mail is not secure and the recipient of this message is expected to provide safeguards from viruses and pursue alternate means of communication where privacy or a binding message is desired.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.



MGT Capital Investments, Inc.

June 10, 2016

NYSE Regulation
11 Wall Street
New York, NY 10005

Attention:  Tanya Hoos, CPA
            Director

            Re:    MGT Capital Investments, Inc.

Ladies and Gentlemen:

MGT Capital Investments, Inc. (the "Company"), hereby submits this letter as the Company's response to the request for comments and further information set forth in the letter dated May 23, 2016 from NYSE Regulation of the New York Stock Exchange (the "Exchange"). For your convenience, we have set forth your requests below with our responses following each comment.

1.  Please comment on whether the Company engaged in any promotional activity in the last twelve months, and what amounts, if any, were paid to individuals or firms engaging in promotional activity. If the Company did engage in promotional activity, please provide copies of:

    (a) Any engagement letters/contracts entered into by the Company.
    (b) Copies of any public disclosures or promotional materials issued by individuals or stock promotion firms.
    (c) Whether any directors, officers or key executives purchased or sold MGT stock during the period when a promotional firm was engaged.

Response:

    (a) The Company engaged DF Media ("DF") on May 4, 2016 in connection with a paid campaign to improve the Company's visibility and awareness among small-cap investors. The Company agreed to fees for services provided in the amount of $125,000 cash for a three-month period.  The Consulting Agreement (the "Agreement") by and between the Company and DF is attached hereto as Exhibit A.
    (b) DF Media sent descriptive emails to potential investors in order to raise the Company's visibility. Emails from "StockBeast" are attached hereto as Exhibit B, which reported the D-Vasive transaction.
    (c) We refer you to the Section 16 filings made by our directors and/or key executive, Messrs. Ladd and Onghai, with the Securities and Exchange Commission ("SEC") on or about June 1, 2016.

2.  Please provide any additional information that is available regarding the Company's pending acquisition of D-Vasive, including expected timing for closing the transaction, any drafts of pro-forma financial statements that reflect the effect of the transaction, and whether there are any anticipated board or management changes for MGT (apart from John McAfee).

Response:

The Company expects to file this information in its Preliminary Proxy Statement on Schedule 14A with the SEC as soon as practicable. D-Vasive and Demonsaw are both working with the Company and its auditors, Friedman LLP to complete the pro forma consolidation. We also refer you to the press release, attached hereto as Exhibit C, regarding the addition of Nolan Bushnell as an independent director.

MGT CAPITAL INVESTMENTS, INC. (NYSE MKT: MGT)
500 Mamaroneck Avenue  Suite 320  Harrison, NY 10528
tel: (914) 630-7430  email: rladd@mgtci.com  web: www.mgtci.com

CONFIDENTIAL



MGT Capital Investments, Inc.

3. We noted that Barry Honig directly and indirectly, through GRQ Consultants, Inc., owns approximately 9.1% of the Company's common shares. Please describe the nature of MGT's relationship with this individual, as well as how and when he acquired his ownership position.

<u>Response:</u>

Mr. Honig is a well-known investor in small-cap companies, and invested in MGT securities through two private placements, one in May 2012 and the other in October 2015. Mr. Honig's 9.1% position was acquired through an October Private Investment in Public Equity (PIPE) transaction that the Company conducted as well as open market purchases. To the Company's knowledge, he has fully disclosed his ownership in various Section 13 filings, and the Company has disclosed such holdings in its various Proxy Statements and S-1 Registration Statements.

4. Separately, we also noted that Michael Brauser directly and indirectly, through Grander Holdings, Inc., owns approximately 7.4% of the Company's common shares. Please describe the nature of MGT's relationship with this individual, as well as how and when he acquired his ownership position.

<u>Response:</u>

Mr. Brauser is a well-known investor in small cap companies, and invested in MGT securities through the private placement in October 2015. Mr. Brauser's 7.4% position was acquired through an October Private Investment in Public Equity (PIPE) transaction which the Company conducted as well as open market purchases. To the Company's knowledge, he has fully disclosed his ownership in various Section 13 filings.

5. Please identify any disagreements that arose in the last three years with either Friedman LLP ("Friedman"), the Company's current auditors for 2015, or the predecessor audit firm, Marcum LLP, who opined on fiscal 2013 and 2014. Please also address the Company's plans to address Friedman's going concern emphasis paragraph included in the 2015 audit opinion.

<u>Response:</u>

The Company is not aware of any disagreements, and we have stated as much in our SEC filings regarding our change in auditors. We believe the need for a qualified opinion will be eliminated for the period ending June 30, 2016 by recent warrant exercises and sales of marketable securities, which, in the aggregate, raised over $2 million in capital. This equity raise, combined with cost cuts relating to the sale of DraftDay and corporate overhead, provided the Company with more than the necessary 12 months of liquidity. Moreover, the Company expects to raise capital, when permitted, pending the closing of the D-Vasive transaction.

6. State whether the Company is currently the subject of any investigation, inquiry or proceeding initiated, conducted or being conducted by any federal or state regulatory, civil or criminal authority, agency or body or any self-regulatory organization (including but not limited to the Securities and Exchange Commission ("SEC"), Financial Industry Regulatory Authority ("FINRA"), state securities regulators, the Commodities Futures Trading Commission, Department of Justice, state bar associations, state boards of accountancy or any foreign regulatory, civil or criminal authority). For each such ongoing investigation, inquiry or proceeding, provide, on an ongoing and continuing basis, all correspondence, information, records and/or documents received by or furnished to the agency, body or organization in question as well as copies of all deposition transcripts.

CONFIDENTIAL



MGT Capital Investments, Inc.

<u>Response:</u>

To the Company's knowledge, we are not the subject of any investigation, inquiry or proceeding initiated, conducted or being conducted by any federal or state regulatory, civil or criminal authority, agency or body or any self-regulatory organization (including but not limited to the SEC, Financial Industry Regulatory Authority ("FINRA"), state securities regulators, the Commodities Futures Trading Commission ("CTFC"), Department of Justice ("DOJ"), state bar associations, state boards of accountancy or any foreign regulatory, civil or criminal authority.

Very Truly Yours,

Robert B. Ladd
Chief Executive Officer

Copies to:
Jay Kaplowitz, Esq.

Encl.

CONFIDENTIAL

MGT_SEC_00024989

05/04/2016

# CONSULTING AGREEMENT

**THIS CONSULTING AGREEMENT** (the "Agreement") is made and entered into effective the 4th day of May 2016 by and between DF Media (the "Consultant") and MGT Capital Investments, Inc. (the "Client").

**WHEREAS**, the Consultant is in the business of consulting in corporate positioning, media relations, content creation, product and company launches and financial media advertising /social media communications, (the "Services"); and

**WHEREAS**, the Client wishes to retain the Consultant to provide the Services; and

**WHEREAS**, the Consultant is ready, willing and able to render the Services to the Client.

**NOW, THEREFORE**, in consideration of the mutual promises and covenants set forth in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows.

1.      **Consulting Services**. The Client hereby retains the Consultant to perform the Services with respect to MGT Capital Investments, Inc. (trading symbol "MGT") (the "Company"), and the Consultant hereby accepts and agrees to such retention. Consultant shall provide its Services in a professional manner  using  reasonable  commercial efforts, and it shall be liable to Client only for its gross  negligence.

It is acknowledged and agreed by the Client that the Consultant carries no professional licenses, and is not rendering, or undertaking to render, any legal or investment advice nor is it acting as an investment advisor or broker/dealer within the meaning of the applicable federal and state securities laws. The Client acknowledges and agrees that (a) it and its affiliates each have relied and will continue to rely on the advice of its own legal, regulatory, and securities law advisors for all matters and (b) neither the Client nor any of its affiliates has received, or has relied upon, the advice of Consultant or any of its affiliates regarding legal, regulatory, or securities law matters.

The Services of the Consultant shall not be exclusive to the Client, and the Client acknowledges that Consultant will be performing similar Services for other clients and Consultant shall be free to perform Services for such other persons.

1

CONFIDENTIAL

MGT_SEC_00024990

2.    **Independent Contractor.** Nothing contained herein shall be considered as creating a relationship of agent-principal, employer-employee or joint venturers between the Consultant and either the Client or the Company. The Client shall not make social security, worker's compensation or unemployment insurance payments on behalf of Consultant. Consultant at all times shall act hereunder as an independent contractor and not as a fiduciary of the Client. The engagement of Consultant hereunder is not deemed to be on behalf of, and is not intended to confer rights upon, the Company or any stockholder of the Company or any other person not a party hereto as against Consultant or any of Consultant's members, directors, officers, agents or employees.

3.    **Compensation.** As consideration for the performance of the Services hereunder, upon the date of the execution and delivery of this Agreement the Client shall pay to the Consultant the sum of USD $125,000 for an additional three months of consulting service. Such consideration shall be deemed earned in full upon receipt and shall be nonrefundable in the event of the termination of this Agreement for any reason whatsoever. Consultant shall be responsible for all out-of-pocket expenses incurred or paid in connection with its performance of the Services hereunder.

4.    **Termination.** This Agreement shall automatically terminate upon the bankruptcy or insolvency of the Client or the Consultant. Consultant may terminate this Agreement at any time upon the occurrence of any material adverse change in the business or affairs of the Company or upon the occurrence of any event which causes Consultant to believe that the Advertisement contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements therein not misleading.

5.    **Work Product.** All information and materials produced for the Client shall be the property of the Consultant, free and clear of all claims thereto by the Client or the Company, and the Client and the Company each shall have no claim of authorship therein.

6.    **Information.** In connection with Consultant's performance of its Services Consultant will rely on the Company's press releases and the Company's most recent reports, if any, filed with the Securities and Exchange Commission (collectively, the "Company Information"). The Client hereby acknowledges and agrees that, in performing its Services hereunder, Consultant will be using and relying on the Company Information without independent verification thereof.

2

MGT_SEC_00024991

7.     **No Broker-Dealer Activities**. The Client acknowledges that it understands that Consultant is not a registered broker-dealer or investment advisor and will not engage in any activities on behalf of the Client that require it to be registered as a broker-dealer or investment advisor. Nothing contained herein shall be deemed a commitment or undertaking of any kind on the part of Consultant or any of its affiliates to underwrite, sell, place or purchase any securities, to provide any debt or equity financing or to participate in any transaction, or a recommendation to buy or sell any securities.

8.     **Disclaimer of Responsibility**. In no event or circumstances shall the Consultant be liable or be made liable for any expense incurred or loss suffered by the Company as a consequence of Consultant's performance of the Services. In no event shall Consultant be liable for any indirect, incidental, special or consequential damages, whether in an action in contract or in tort.

9.     **Indemnification**. In connection with engagements such as this, it is the policy of the Consultant to receive indemnification and contribution. In executing this Agreement, the Client agrees to the provisions with respect to Consultant's indemnity and other matters set forth in Annex A attached hereto, which are incorporated herein and made a part hereof.

10.    **Representations.** Client represents that it is not a party to any existing agreement that will conflict with this Agreement.

The Client also represents that it has the full power, authority and ability to enter into this Agreement.

11.    **Notices**. Any notice or other communication required or permitted to be given to either party hereunder shall be in writing and shall be given to such party at such party's address set forth below or such other address as such party may hereafter specify by notice in writing to the other party. Any such notice or other communication shall be addressed as aforesaid and given by (a) certified mail, return receipt requested, with first class postage prepaid, (b) hand delivery, or (c) reputable overnight courier. Any notice or other communication will be deemed to have been duly given (i) on the fifth (5th) day after mailing, provided receipt of delivery is confirmed, if mailed by certified mail, return receipt requested, with first class postage prepaid, (ii) on the date of service if served personally or (iii) on the business day after delivery to an overnight courier service, provided the notifying party specifies next day delivery and receipt of delivery has been confirmed:

3

12.      **Waiver of Breach.** Any waiver by either party of a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach by any party.

13.      **Assignment.** Neither this Agreement nor any of the rights, interests or obligations hereunder may be assigned by either party hereto without the prior written consent of the other party, which will not be delayed or withheld unreasonably; provided that the Client shall not be required to consent to any assignment by Consultant of its cash and compensation payable pursuant to Section 4 hereof. Any assignment without such consent, when required, shall have no legal validity; subject to the foregoing, this Agreement and all of the provisions hereof will be binding upon and inure to the benefit of the parties to this Agreement and their respective successors and permitted assigns.

14.      **Governing Law and Jurisdiction.** The internal laws, without regard to conflicts of laws principles, of the State of North Carolina shall govern all questions concerning the construction, validity, interpretation and performance of this Agreement. Each party voluntarily submits to the exclusive jurisdiction of the United States District Court in any action or proceeding with respect to this Agreement, but if such Court lacks subject matter jurisdiction then each party voluntarily submits to the exclusive jurisdiction of the courts sitting in Raleigh, North Carolina having subject matter jurisdiction. Each party hereto waives, and agrees not to assert, any objection that it may have to the location of the aforesaid North Carolina court in which an action or proceeding has been commenced in connection with this Agreement and further waives any right it may have to a trial by jury. The Client agrees that it may be served by registered mail with process at its address set forth herein in Section 11 above for the giving of notice, as from time to time changed on notice duly given.

15.      **Entire Agreement.** This Agreement contains the complete agreement between the parties with respect to the subject matter hereof and supersedes any prior proposals, understandings, agreements or representations by or between the parties, written or oral.

16.      **Severability.** Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held by any court of competent jurisdiction to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

4

MGT_SEC_00024993

17.     **Waiver and Modification**. Any waiver, alteration, or modification of any of the provisions of this Agreement shall be valid only if made in writing and signed by the parties hereto.

18.     **Counterparts and Facsimile Signatures**. This Agreement may be executed in one or more counterparts, any one of which need not contain the signatures of more than one party, and all such counterparts taken together shall constitute one and the same instrument. Any signature on this Agreement communicated by facsimile transmission shall be binding upon the party transmitting it. Execution and delivery of this Agreement by exchange of facsimile copies bearing the facsimile signature of a party hereto shall constitute a valid and binding execution and delivery of this Agreement by such party. Such facsimile copies shall constitute enforceable original documents.

**IN WITNESS WHEREOF**, the parties hereto have a duly executed and delivered this Agreement, effective as of the date set forth above.

DAVID FISHER MEDIA

By: _David Fisher_____

_David Fisher_

MGT Capital Investments, Inc.

By: _____

Print Name: _Robert Ladd_____

Position:_President and CEO_____

5

MGT_SEC_00024994

ANNEX A

<u>Indemnification Provisions</u>

In connection with the engagement of Consultant by the Client, the Client hereby agrees as follows:

1.      The Client agrees to indemnify and hold harmless Consultant, its affiliates and their respective directors, officers, managers, members, employees,   owners, agents and controlling persons (each an "Indemnified Party") to the fullest extent permitted by law from and against any and all losses, claims, damages, judgments, awards and liabilities, joint or several (collectively, "Losses") to which any Indemnified Party may become subject in connection with or arising out of or relating to, directly or indirectly, the engagement of Consultant and its performance of the Services under the Agreement, or any actions taken or omitted in connection therewith as contemplated by or in connection with the Agreement, and to reimburse each Indemnified Party promptly upon demand for costs and expenses (including fees and expenses of legal counsel) as they are incurred in connection with the investigation of, preparation for or defense of any pending or threatened claim, or any action in  respect  thereof  (including  any  security holder claim, action, suit or proceeding and any action, suit or proceeding brought by or in the right  of  the  Company),  including  any amount  paid  in  settlement of  any  action,  suit  or  proceeding  of  any  nature  or  description  whatsoever administrative (collectively, a "Proceeding"), commenced or threatened, to which settlement the Client shall have consented in writing (such consent not to be unreasonably withheld or delayed), whether or not any Indemnified Party is   a party  and  whether  or  not  liability  resulted  from  such  Proceeding;  provided, however,  that  the  Client  shall  not  be  liable  under  the  foregoing  indemnity agreement to an Indemnified Party in respect of any Loss, to the extent that a court having competent jurisdiction shall have determined by a final judgment (not subject to further appeal) that such Loss resulted directly and primarily from the gross negligence of such Indemnified Party. Without limiting the generality of the foregoing, the reliance and use by Consultant of the Company Information or any other Company statement or information or any directions furnished by the Client shall not constitute gross negligence under any circumstances.

2.      In the event that any Indemnified Party is made a defendant in or party to any Proceeding instituted by any third party to which any Indemnified Party may be entitled to indemnification pursuant to paragraph 1 hereof, one of the Indemnified Parties (the "Notifying Party") shall give the Client prompt notice thereof. The failure to give such notice shall not affect any Indemnified Party's ability to seek reimbursement unless and except to the extent that the Client's ability to defend against such Proceeding is materially prejudiced as a result of such failure to give notice. The Client shall be entitled to contest and defend such  Proceeding provided that notice of the intention so to contest and defend shall be given by the Client to the Notifying Party within ten (10) business days after the Notifying

6

Party's notice of such Proceeding (but, in all events, at least ten (10) business days prior to the date that an answer to such Proceeding is due to be filed). Such contest and defense shall be conducted by reputable attorneys employed by the Client at its sole cost and expense. The Indemnified Parties shall be entitled at any time, at their own cost and expense, to participate in such contest and defense and to be represented by attorneys of their own choosing. If any of the Indemnified Parties elects to participate in such defense, such Indemnified Party will cooperate with the Client in the conduct of such defense. Except with the prior written consent of the Indemnified Party, which consent shall not be unreasonably withheld or delayed, the Client, in the defense of any such Proceeding, shall not consent to entry of any judgment or order, interim or otherwise, or enter into any settlement that provides for injunctive or other nonmonetary relief affecting the Indemnified Party. Notwithstanding the foregoing, if the subject matter of a Proceeding relates to the ongoing business of any such Indemnified Party, which Proceeding, if decided against such Indemnified Party, would materially adversely affect the ongoing business of such Indemnified Party, or if the Proceeding seeks injunctive relief against an Indemnified Party, then such Indemnified Party alone shall be entitled, at the cost and expense of the Client, to contest, defend and (subject to the reasonable approval of the Client, which approval shall not be unreasonably withheld or delayed) settle such Proceeding in the first instance. If any Indemnified Party reasonably determines that the Client, because of a conflict of interest, may not adequately represent any interests of such Indemnified Party in a Proceeding, such Indemnified Party shall be entitled at any time, at the sole cost and expense of the Client, to participate in such contest and defense and to be represented by attorneys of its own choosing. In the event any Indemnified Party should have a claim against the Client under paragraph 1 hereof that does not involve a Proceeding, the Notifying Party shall deliver a notice of such claim with reasonable promptness to the Client and the Client shall respond to such notice with reasonable promptness.

3.    In the event that the indemnity provided for in paragraphs 1 and 2 hereof is held unenforceable or is unavailable or insufficient to hold any Indemnified Party harmless, then the Client shall contribute to amounts paid or payable by an Indemnified Party in respect of such Indemnified Party's Losses, as to which the indemnity provided for in paragraphs 1 and 2 hereof is unavailable (i) in such proportion as appropriately reflects the relative benefits received by the Client on the one hand, and such Indemnified Party on the other hand, in connection with the matters as to which such Losses relate, or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as appropriately reflects not only the relative benefits referred to in clause (i) but also the relative fault of the Client, on the one hand, and such Indemnified Party on the other hand as well as any other relevant equitable considerations. The amount paid or payable by the party in respect of Losses referred to above shall be deemed to include any legal or other fees and expenses incurred in defending any litigation, proceeding or other action or claim; provided, however, that

CONFIDENTIAL

MGT_SEC_00024996

notwithstanding the foregoing, under no circumstances shall the Indemnified Parties be required to contribute any amount in excess of the amount of cash fee actually paid to Consultant under Section 3 of the Agreement.

4.  No Indemnified Party shall have any liability to the Client for any Loss, except to the extent that a court having competent jurisdiction shall have determined by a final judgment (not subject to further appeal) that such Loss resulted directly and primarily from the gross negligence of such Indemnified Party.

5.  These indemnification provisions shall remain in full force and effect and shall survive the termination or expiration of the Agreement, and shall be in addition to any liability that the Client might otherwise have to any Indemnified Party under the Agreement or otherwise.

CONFIDENTIAL

MGT_SEC_00024997

**Robert Ladd**

| | |
|---|---|
| **From:** | |
| **Sent:** | Monday, May 9, 2016 7:10 PM |
| **To:** | Robert Ladd |
| **Subject:** | Fwd: NYSE: MGT  Beastmode engaged - John McAfee driving the Bus |

Sent from my iPhone

Begin forwarded message:



Monday, May 9th, 2016

## Hello Fellow Stock Beast,

**Guess who's back????**

When I was young, I used to watch Jeopardy and I would try to guess at the answers.  I was pretty good at it.  Well if I am ever watching and see  this answer come up -"This man is the most universally known name in Cybersecurity, sold his startup company to Intel for $7.6BB, is frequently on CNBC, Fox News, Bloomberg, Wall St Journal, and recently became the CEO of a $9MM company and renamed it after himself," I will hit the buzzer, wager all of my money and say "Alex, Who is John McAfee"?

1

MGT_SEC_00025002

Folks, it's rare that we get an opportunity like this to get involved in a potential behemoth with amazing implications in our day to day life, as well as our portfolio. Imagine investing in Computing, Or Internet at its infancy. Imagine the returns. Well those returns have been generated by traders, investors, and funds who invested in John McAfee in the beginning, and here is your opportunity to follow his lead.

***Are you worried about cybersecurity? Well you should be.***

Are you concerned about an organization using your own computer or cell phone - to spy on you? Well you should be.

Are you the least bit afraid that your private pictures will somehow end up on the web because that app you just downloaded granted access to your gallery? Well you should be.

Notice the trend. I will keep this simple. Every app, software, and computer program has the capacity to send your information out. How do you think Facebook makes money? Google? Have you ever read the thousand page(s) of Terms and Conditions? I haven't yet. Maybe I should!

Now we don't have to worry. Internet Privacy is a huge dilemma. And now that dilemma is also a HUGE opportunity for us to capitalize. The IT security space is big enough to allow for new entrants. When it comes to Device Security, investors can now take look at what internet security and information privacy pioneer John McAfee's Future Tense Secure Systems has developed with its <u>D-Vasive</u>.

How do you think the company is going to react as these new products are released and the company grows? MGT is currently sitting at around $0.50 and will have pro forma fully diluted 50 MM Outstanding shares. This is simple math. John McAfee sold his last company for $7.6BB. This is big big big!

***Stop Being Spied On!***

Everyday more and more invasive apps are being released. These invasive apps want to silently turn on your microphone to record your voice as well as turn on your camera to video record your activities.

2

CONFIDENTIAL

D-Vasive operates in a unique way, allowing you complete control in managing your internal hardware. So that way, when a potential malicious application tries to open your Camera, Mic, Bluetooth or WiFi and spy on you, D-Vasive lets you know, and lets you completely lock them down.

For those savvy investors who like to dig further, the entire 8K is here for your perusal: http://yahoo.brand.edgar-online.com/displayfilinginfo.aspx?filingid=11369637&tabindex=2&type=html

I wouldn't be surprised if we see a full media blitz with interviews and media dedicated to this story. Could this be just the beginning of a MGT rally?

Sincerely,
**Stock Beast**

DISCLAIMER
PLEASE NOTE WELL: This report/release/advertisement is a commercial advertisement and is for general information purposes only. We are engaged in the business of marketing and advertising companies for monetary compensation.

StockBeast.com and its employees are not a Registered Investment Advisor, Broker Dealer or a member of any association for other research providers in any jurisdiction whatsoever and we are not qualified to give financial advice. The disclaimer is to be read and fully understood before using our site, or joining our email list. Never invest in any stock featured on our site or emails unless you can afford to lose your entire investment. All content in our releases is for informational purposes only and should not be construed as an offer or solicitation of an offer to buy or sell securities. Neither the information presented nor any statement or expression of opinion, or any other matter herein, directly or indirectly constitutes a solicitation of the purchase or sale of any securities. StockBeast.com sponsored advertisements do not purport to provide an analysis of any company's financial position, operations or prospects and this is not to be construed as a recommendation by StockBeast.com Network or an offer or solicitation to buy or sell any security. Viewers should always consult with a licensed securities professional before making any type of investment decision. StockBeast.com does not provide trading, investment or tax advice, and readers shall not rely on statements by StockBeast.com employees which purport to provide such advice. Investing in micro-cap securities is highly speculative and carries an extremely high degree of risk.

StockBeast.com is often times compensated to feature certain companies. StockBeast.com has been compensated for this report/news updates/social media/corporate communications on MGT the sum total of $125,000 from the Issuer (MGT Capital Investments, Inc.) for a two month MGT contract (May 6, 2016 - July 5th, 2016). This compensation constitutes a conflict of interest as to our ability to remain objective in our communication regarding the profiled company.

Release of Liability: Through use of this website or email viewing or using you agree to hold StockBeast.com, its operators owners and employees harmless and to completely release them from any and all liability due to any and all loss (monetary or otherwise), damage (monetary or otherwise), or injury (monetary or otherwise) that you may incur. The information contained herein is based on sources which we believe to be reliable but is not guaranteed by us as being accurate and does not purport to be a complete statement or summary of the available data. StockBeast.com encourages readers and investors to supplement the information in these reports with independent research and other professional advice. All information on featured companies is provided by the companies profiled, or is available from public sources and StockBeast.com makes no representations, warranties or guarantees as to the accuracy or completeness of the disclosure by the profiled companies. None of the materials or advertisements herein constitute offers or solicitations to purchase or sell securities of the companies profiled herein and any decision to invest in any such company or other financial decisions should not be made based upon the information provide herein. Instead StockBeast.com strongly urges you conduct a complete and independent investigation of the respective companies and consideration of all pertinent risks. Readers are advised to review SEC periodic reports: Forms 10-Q, 10K, Form 8-K, insider reports. Forms 3, 4, 5 Schedule 13D. StockBeast.com is compliant with the Can Spam Act of 2003. StockBeast.com does not offer such advice or analysis, and StockBeast.com further urges you to consult your own independent tax, business, financial and investment advisors. Investing in micro-cap and growth securities is highly speculative and carries and extremely high degree of risk. It is possible that an investor's investment may be lost or impaired due to the speculative nature of the companies profiled.

All direct and third party compensation received will be disclosed within each individual email in accordance with section 17(b) of the 1 9 3 3 Securities Act. Any compensation constitutes a conflict of interest as to our ability to remain objective in our communication regarding the

3

MGT_SEC_00025004

profiled companies. StockBeast.com has not investigated the background of the third party, the hiring company. Anyone viewing our website and advertisement should assume that the hiring party and affiliates of the hiring party own shares of the profiled company of which they plan to liquidate, further understanding that the liquidation of those shares will most likely impact the share price of the profiled company negatively. StockBeast.com affiliates may at any time have a position in the securities mentioned herein and may increase or decrease such positions without notice which will negatively affect the share price of the security.

None of the materials or advertisements herein constitute offers or solicitations to purchase or sell securities of the companies profiled herein and any decision to invest in any such company or other financial decisions should not be made based upon the information provide herein. Instead StockBeast.com strongly urges you conduct a complete and independent investigation of the respective companies and consideration of all pertinent risks. Readers are advised to review SEC periodic reports: Forms 10-Q, 10K, Form 8-K, insider reports, Forms 3, 4, 5 Schedule 13D. StockBeast.com is compliant with the Can Spam Act of 2003. StockBeast.com does not offer such advice or analysis, and StockBeast.com further urges you to consult your own independent tax, business, financial and investment advisors. Investing in micro-cap and growth securities is highly speculative and carries and extremely high degree of risk. It is possible that an investor's investment may be lost or impaired due to the speculative nature of the companies profiled.

Some of the content in this release contains forward-looking information within the meaning of Section 27 A of the Securities Act of 1 993 and Section 21 E of the Securities Exchange Act of 1 934 including statements regarding expected continual growth of the profiled company and the value of its securities. In accordance with the safe harbor provisions of the Private Securities Litigation Reform Act of 1 995 it is hereby noted that statements contained herein that look forward in time which include everything other than historical information, involve risk and uncertainties that may affect a company's actual results of operation. A company's actual performance could greatly differ from those described in any forward looking statements or announcements mentioned in this release. Factors that should be considered that could cause actual results to differ include: the size and growth of the market for the company's products; the company's ability to fund its capital requirements in the near term and in the long term; pricing pressures; unforeseen and/or unexpected circumstances in happenings; etc. and the risk factors and other factors set forth in the company's filings with the Securities and Exchange Commission. However, a company's past performance does not guarantee future results. The Private Securities Litigation Reform Act of 1995 provides investors a 'safe harbor' in regard to forward-looking statements. Any statements that express or involve discussions with respect to predictions, expectations, beliefs, plans, projections, objectives, goals, assumptions or future events or performance are not statements of historical fact may be "forward looking statements". Forward looking statements are based on expectations, estimates, and projections at the time the statements are made that involve a number of risks and uncertainties which could cause actual results or events to differ materially from those presently anticipated. Forward looking statements in this action may be identified through use of words such as "projects", "foresee", "expects", "will", "anticipates", "estimates", "believes", "understands", or that by statements indicating certain actions "may", "could", or "might" occur. Understand there is no guarantee past performance will be indicative of future results.

In preparing this publication, StockBeast.com has relied upon information supplied by its customers, public information, and press releases which it believes to be reliable; however, such reliability cannot be guaranteed. Investors should not rely on the information contained in this website. Further specific financial information, filings and disclosures as well as general investor information about the profiled company, advice to investors and other investor resources are available at the Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA"). Investors should use the information contained in this website or email as a starting point for doing additional independent research on the featured companies. The advertisements in this website are believed to be reliable, however, StockBeast.com and its owners, affiliates, subsidiaries, officers, directors, representatives and agents disclaim any liability as to the completeness or accuracy of the information contained in any advertisement and for any omissions of materials facts from such advertisement. Factual statements, or the similar, made by the profiled companies are made as of the date stated and are subject to change without notice and StockBeast.com Network has no obligation to update any of the information provided. StockBeast.com Network, its owners, officers, directors, contractors and employees are not responsible for errors and omissions. From time to time certain content in our releases or website is written and published by our employees or third parties. In addition to information about our profiled companies, from time to time, our releases and website will contain the symbols of companies and/or news feeds about companies that are not being profiled by us but are merely illustrative of certain activity in the micro-cap market that we are highlighting. Viewers are advised that all analysis reports and news feeds are issued solely for informational purposes. Any opinions expressed are subject to change without notice. It is also possible that one or more of the companies discussed or profiled in our release or on our website may not have approved certain or any statements within the website or email. StockBeast.com encourages viewers to supplement the information obtained from this release and our website with independent research and other professional advice. StockBeast.com is not responsible for any claims made by the companies advertised herein, nor is StockBeast.com responsible for any other promotional firm, its program or its structure.

By accessing, viewing, or using the website or communications originating from this release, you agree that StockBeast.com, its owners, officers, directors, contractors and employees, are not responsible for any content, associated links, resources, or services associated with a third party website. You further agree that StockBeast.com, its owners, officers, directors, contractors and employees shall not be liable for any loss or damage of any sort associated with your use of third party content. Links and access to these sites are provided for your convenience only. StockBeast.com uses third parties to disseminate information to subscribers. Although we take precautions to prevent others from obtaining our subscriber list, there is a risk that our subscriber list, through no wrong doing on our part, could end up in the hands of an unauthorized party and that subscribers will receive communications from unauthorized third parties. You agree to hold StockBeast.com, its operators, owners and employees harmless and to completely release them from any and all liability due to any and all loss (monetary or otherwise), damage (monetary or otherwise), or injury (monetary or otherwise) that you may incur arising out of the use of our website or the information in our press releases, profiles and opinions. You agree that use of our website or email is at your sole risk. StockBeast.com disclaims all warranties of any kind, express or implied.

Third Party Web Sites and Information

4

CONFIDENTIAL

StockBeast.com and newsletter may provide hyperlinks to third party websites or access to third party content. StockBeast.com does not control, endorse, or guarantee content found in such sites. You agree that StockBeast.com is not responsible for any content, associated links, resources, or services associated with a third party site. You further agree that StockBeast.com, Inc. shall not be liable for any loss or damage of any sort associated with your use of third party content. Links and access to these sites are provided for your convenience only.



STOCK**B**    2016    All Rights Reserved

218 E. Park Ave
Suite 643
Long Beach NY 11561
USA

Unsubscribe | Change Subscriber Options

5