# EXHIBIT S

```
                                                                    1
 1         UNITED STATES DISTRICT COURT
 2         SOUTHERN DISTRICT OF NEW YORK
 3
 4    SECURITIES AND EXCHANGE COMMISSION, )
 5                   Plaintiff,           )
 6    v.                                  ) Case No.
 7    BARRY C. HONIG, ROBERT LADD, ELLIOT ) 18 Civ. 8175(ER)
 8    MAZA, BRIAN KELLER, JOHN H. FORD,   )
 9    GRQ CONSULTANTS, INC., AND HS       )
10    CONTRARIAN INVESTMENTS, LLC,        )
11                   Defendants.          )
12    _____)
13
14                     VOLUME 1
15      VIDEOTAPED DEPOSITION OF JOAN WU
16              VIA VIDEOCONFERENCE
17              Wednesday, June 22, 2022
18
19
20
21
22
23
24       Diversified Reporting Services, Inc.
25                 (202)467-9200
```

```
                                                                    2

 1           UNITED STATES DISTRICT COURT

 2           SOUTHERN DISTRICT OF NEW YORK

 3

 4   SECURITIES AND EXCHANGE COMMISSION, )

 5                  Plaintiff,           )

 6   v.                                  ) Case No.

 7   BARRY C. HONIG, ROBERT LADD, ELLIOT ) 18 Civ. 8175(ER)

 8   MAZA, BRIAN KELLER, JOHN H. FORD,   )

 9   GRQ CONSULTANTS, INC., AND HS       )

10   CONTRARIAN INVESTMENTS, LLC,        )

11                  Defendants.          )

12   _____)

13

14

15         Videotaped deposition of Joan Wu,

16   taken on behalf of the Plaintiff, all parties appearing

17   remotely via Webex, beginning at 10:02 a.m. EST and

18   ending at 12:14 p.m. EST, on Wednesday, June 22, 2022.

19

20

21

22

23

24         Diversified Reporting Services, Inc.

25                  (202)467-9200
```

```
                                                                    3
 1    APPEARANCES:
 2
 3    On behalf of the Securities and Exchange Commission:
 4         NANCY A. BROWN, ESQ.
 5         JACK KAUFMAN, ESQ.
 6         Securities and Exchange Commission
 7         Division of Enforcement
 8         100 Pearl Street, Suite 20-100
 9         New York, New York 10004
10
11    On behalf of the Witness:
12         MARK DAVID HUNTER, ESQ.
13         Hunter Taubman Fischer & Li LLC
14         48 Wall Street, Suite 1100
15         New York, New York 10005
16
17    On behalf of Mr. Ladd:
18         ADAM FORD, ESQ.
19         ANJULA PRASAD, ESQ.
20         Ford O'Brien Landy LLP
21         275 Madison Avenue, Floor 24
22         New York, New York 10016
23
24    Also Present:
25         Robert Ladd
```

1          A    Yes.

2          Q    Thank you.  You need to answer audibly and

3    verbally, so gestures and, you know, mumblings, you don't

4    talk, the court reporter can't take that down as an

5    answer.  So just try to keep that in mind.

6               And also, if you want to take a break at any

7    time, just let me know, and if there's no question

8    pending, we'll be happy to accommodate you.  All right?

9          A    Okay.

10         Q    Great.  Thank you.  So Ms. Wu, you're familiar

11   with a person named Rob Ladd, are you not?

12         A    Yes, I -- I know this person.

13         Q    All right.  And, in fact, you assisted in

14   helping Mr. Ladd file Form 4.  Is that correct?

15         A    Correct.

16         Q    Have you ever helped other clients in filing

17   Form 4?

18         A    Yes.

19         Q    What did you understand their purpose to be?

20         A    It's to report the beneficial ownership of that

21   reporting persons in a certain issuer.

22         Q    Does it also reflect purchases and sales by

23   that person?

24         A    Yes, yes.  It's a Section 16 report, so it

25   should capture the disposition, acquisition of the

1   securities.
2       Q    And do you have an understanding of the purpose
3   of that disclosure?
4       A    Yes.  It's to -- it's to accurately report
5   the -- the activities of that reporting person, and if
6   there's any -- if there's any short sale, it should be --
7   there are consequences.
8       Q    All right.  Thank you.  All right.  What was
9   your responsibility in preparing Form 4 for assessing the
10  accuracy of the information disclosed?
11      A    Can you say that again?
12      Q    Sure.  So I'm talking in general terms, not
13  necessarily with Mr. Ladd's Form 4.  But what was your
14  responsibility?  How did you understand your
15  responsibility for assessing the accuracy of the
16  information disclosed on those forms?
17      A    My responsibility would be to make sure the
18  information being filed is accurate.
19      Q    And how do you do that?
20      A    So I would collect the information from the
21  reporting person, asking all the questions.  If the
22  information that was provided is incomplete or seemingly
23  inconsistent with the other filings, either by that
24  particular reporting person or the issuer or some other
25  person -- or other reporting person in that issuer's

9

1    filing, and I will ask those questions.  If there's
2    anything that the reporting person is not giving me the
3    full information, then I need to discuss with my
4    supervising partner or my colleague and -- to assess
5    whether we should go ahead and make the filing or just
6    to -- just tell them we don't have the -- enough
7    information to prepare the particular filing.
8        Q    In the course of your work filing Forms 4 for
9    clients, did you ever ask them for their trading records?
10       A    Yes.  I usually ask for the trading records,
11   yes. If there's trading, that they told us that there is
12   trading or there was trading.
13       Q    All right.  So let's look, if we can -- I don't
14   know how you were provided the exhibits, but we sort of
15   gave them in PDFs and numbered them.  So I'll give you
16   both the number that we assigned to them in your PDF file
17   and also what they've been marked as an exhibit as. All
18   right?
19            So if we look at the document that we marked as
20   number 1, which has previously been marked as Plaintiff's
21   Exhibit Ladd Exhibit 16.
22       A    Yeah.
23       Q    All right.  So I'm assuming -- well, let me ask
24   you, do you have any familiarity with the first two pages
25   of Ladd Exhibit 16?

10

1   A   No.

2   Q   All right. Let's look at the third page, if we
3   can. Can you identify what that is?

4   A   Yeah. It's a Form 4 filed by Robert -- Mr.
5   Robert Ladd on May 31st, 2016.

6   Q   And is this the Form 4 for which you helped Mr.
7   Ladd prepare?

8   A   I don't remember until you -- until I was
9   provided with these PDFs. Then I went back to look at
10  the -- the form and the e-mails with Mr. Ladd, and I
11  think that that's the one that I helped with.

12  Q   All right. So if we could look at the first
13  line of Table 1, so Table 1 says, "Nonderivative
14  securities acquired, disposed of, or beneficially owned."

15      And the first line says, "Common stock," and
16  it's -- the date is 5/25/2016. So what do you understand
17  that date to represent?

18  A   That's the transaction date, which there was
19  a -- which means there is either an acquisition or
20  disposition occurred.

21  Q   All right. And in this instance, what did you
22  do to verify that that was the actual date of the
23  transaction?

24  A   I don't remember because this was six years
25  ago.

25

1  this manner.
2     Q    Did he tell you that Laddcap didn't actually
3  have 622,000 shares, but rather only 433,000 shares?
4     A    I don't remember.
5     Q    Again, do you not remember anything about that,
6  or did he say something like that to you?
7     A    I don't remember anything that was being told
8  to me.  It's six years ago.  I don't remember.  I mean --
9     Q    Well, let me put it a different way.  If he had
10 told you that Laddcap Value, on May 1, only held 433,000
11 shares rather than 622,000 shares, would you have filled
12 out the Form 4 the way you filled it out?
13    A    No.
14    Q    Did he tell you that he had sold 435,000 shares
15 out of his E-Trade account between May 9th and May 12th,
16 2016?
17    A    I don't remember.  There should have been a
18 Form 4 filed the next day if those transactions did
19 occur.
20    Q    And you don't recall filing a Form 4
21 reflecting --
22    A    No.
23    Q    -- those transactions?
24    A    No.
25    Q    And again, would you have filled out the Form 4

[6/22/2022 10:02 AM] Wu, Joan - Vol. I.Amended.20220622.38...

26

1  the way you filled it out if you had known that Mr. Ladd
2  sold 435,000 shares out of that E-Trade account between
3  May 9 and May 12, 2016?
4      A   Yes, it will be a late reporting, but if I was
5  provided with those information, I would -- I would have
6  include those information in this Form 4.
7      Q   Okay.  Now, we talked a little bit about the
8  codes and we even looked at the instruction form for Form
9  4, which is reflected in Wu Exhibit 3.  And I want to ask
10 you, do you recall Mr. Ladd asking you any questions
11 about the codes?
12     A   I don't remember.
13     Q   Did he indicate to you any confusion about the
14 codes or anything else on the form?
15     A   I don't remember.
16     Q   All right.  Do you have a memory of reviewing
17 any trading records for Mr. Ladd in connection with
18 filling out this Form 4?
19     A   I don't have any memory.
20     Q   If you had looked at trading records, would
21 that be something that would be in your e-mail?
22     A   I guess.  I -- you know, sometimes people give
23 me printouts of documents, not necessarily through
24 e-mail.  Back then, we -- everybody was in the office.
25     Q   Do you have a memory of Mr. Ladd handing you

27

1  trading records to fill out the Form 4?
2       A    I don't remember.
3       Q    Do you have a memory of Mr. Ladd ever handing
4  you trading records?
5       A    No.
6       Q    If Mr. Ladd had told you that he had sold all
7  of the Laddcap shares rather than distributing them,
8  would the form you filled out on May 31st looked the
9  same?
10      A    No.
11      Q    Would you have included the dates of sale?
12      A    Correct.
13      Q    And would have included a price notation?
14      A    Yes.
15      Q    And would you have used the code J?
16      A    No, if it's a sale, it should not be J.  If
17 it's an open market or private transaction sale, it
18 should be S.
19      Q    And if you had been told by Mr. Ladd that he
20 sold the shares on different dates from what is reflected
21 on the Form 4, would you have still put the dates you put
22 on this Form 4?
23      A    No.
24      Q    Now, on May 31st, did you and Ladd speak about
25 Laddcap and how you should fill out the form?  Do you

56

1  release.
2      Q   And what backup documents do you recall
3  receiving about the second sentence in the second
4  paragraph regarding Mr. McAfee's sale of his company to
5  Intel for $7.6 billion?
6      A   I don't recall.
7      Q   Did you ever have a discussion with Mr.
8  Kaplowitz in which he indicated to you that he had
9  approved the press release in its final form?
10     A   I don't recall.
11     Q   Do you recall Mr. Ladd telling you at any time
12 that a short seller had claimed that his press release
13 was false because it created the misleading impression
14 that McAfee had sold his company to Intel for $7.6
15 billion, when, in fact, McAfee had been gone from his
16 company for several years before it was sold to Intel?
17     A   I don't remember.
18     Q   Do you recall any discussions at all after the
19 press release was released about its accuracy with Mr.
20 Ladd?
21     A   I don't remember.
22     Q   How about with Mr. Kaplowitz?
23     A   I don't remember.
24     Q   Do you recall working on MGT's 10-Q for the
25 first quarter of 2016?

57

1      A    I don't remember.
2      Q    All right.  Let's look at the document marked
3  13, which has been previously marked as Holmes Exhibit
4  27.
5      A    Yes.
6      Q    Do you recognize Holmes Exhibit 27?
7      A    This is a 10-Q for the quarter ended March
8  31st, 2016 of MGT Capital Investment.
9      Q    Do you recall working on it?
10     A    I don't -- I don't remember.
11     Q    All right.  Directing your attention at the
12 top, again it says page blank of 29.  So I'm at page 9 of
13 29.
14     A    Page 9.  Yes.
15     Q    So the penultimate paragraph on that page
16 contains, in the second-to-last sentence --
17     A    Yes.
18     Q    -- it referenced Mr. McAfee and it says, "He
19 founded McAfee associates in 1987, which was acquired by
20 Intel corporation for 7.6 billion in 2010."
21          Do you see that?
22     A    Yes.
23     Q    Does that refresh your recollection about
24 having a discussion with Mr. Ladd about the accuracy of
25 the press release?