# EXHIBIT 57

```
 1                UNITED STATES DISTRICT COURT
 2                SOUTHERN DISTRICT OF NEW YORK
 3                          --o0o--
 4  SECURITIES AND EXCHANGE            )
    COMMISSION,                        )
 5                                     )
                 Plaintiff,            )
 6                                     ) Case No.
          vs.                          ) 18 Civ. 8175 (ER)
 7                                     )
    BARRY C. HONIG, ROBERT LADD,       )
 8  ELLIOT MAZA, BRIAN KELLER,         )
    JOHN H. FORD, GRQ CONSULTANTS,     )
 9  INC. and HS CONTRARIAN             )
    INVESTMENTS, LLC,                  )
10                                     )
                 Defendants.           )
11  _____)
12
13
14
15                      DEPOSITION OF
16                      HARVEY KESNER
17                VIA REMOTE VIDEOCONFERENCE
18                  MONDAY, AUGUST 8, 2022
19
20
21
22
23
    Stenographically Reported by:
24  Victoria L. Valine, CSR, RMR, CRR, RSA
    California CSR License No. 3036
25  Job No. 220808VV
```

                                                                1

```
 1                    REMOTE APPEARANCES:

 2


 3   FOR PLAINTIFF:

 4           SECURITIES AND EXCHANGE COMMISSION
             BY:  Nancy A. Brown, Esq.
 5                Jack Kaufman, Esq.
             100 Pearl Street, Suite 20-100
 6           New York, New York 10004
             212-336-1023
 7           BrownN@SEC.gov

 8


 9   FOR DEFENDANT ROBERT LADD:

10            FORD O'BRIEN, LLP
              Attorneys at Law
11            BY:  Adam Ford, Esq.
                   Anjula Prasad, Esq.
12            575 Fifth Avenue, Floor 17
              New York, New York  10017
13            212-858-0040
              AFord@fordobrien.com
14

15   Also Present:  Robert Ladd

16

17

18

19      (All parties appeared remotely via videoconference.)

20

21

22

23

24

25
                                                                    2
```

```
 1                           INDEX
 2    WITNESS:  HARVEY KESNER
 3    EXAMINATION BY COUNSEL                               PAGE
 4    Examination By Ms. Brown:                              9
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                 UNITED STATES DISTRICT COURT
 2                SOUTHERN DISTRICT OF NEW YORK
 3                         --o0o--
 4  SECURITIES AND EXCHANGE              )
    COMMISSION,                          )
 5                                       )
              Plaintiff,                 )
 6                                       ) Case No.
         vs.                             ) 18 Civ. 8175 (ER)
 7                                       )
    BARRY C. HONIG, ROBERT LADD,         )
 8  ELLIOT MAZA, BRIAN KELLER,           )
    JOHN H. FORD, GRQ CONSULTANTS,       )
 9  INC. and HS CONTRARIAN               )
    INVESTMENTS, LLC                     )
10                                       )
              Defendants.                )
11  _____)
12                         --o0o--
13         BE IT REMEMBERED, that on Friday, August 8,
14  2022, commencing at the hour of 10:01 a.m., Eastern
15  Daylight Time, all parties appearing via WebEx
16  videoconference, before me, Victoria L. Valine,
17  Certified Shorthand Reporter of the State of California,
18  appeared:
19                       HARVEY KESNER
20  called as a witness by the Plaintiff, who, being by me
21  remotely sworn, was thereupon examined and interrogated
22  as hereinafter set forth.
23                         --o0o--
24
25
                                                              7
```

```
 1  that was executed in connection with the MGT 2012
 2  representation.
 3           Do you recall that?
 4      A.   Okay.  Not -- not specifically, but it
 5  certainly would have been something that I would have
 6  insisted on and the firm would have insisted on --
 7      Q.   And what --
 8      A.   -- if Mr. Honig or other people had been
 9  investing.  That's normal firm practice.  It's not an
10  outlier.
11      Q.   And what was the potential conflict if
12  Mr. Honig was an investor?
13      A.   There's no articulated specific potential
14  conflict, but there are always, you know, risks of
15  claims that can arise if someone's investment goes bad
16  or they're not happy and, you know, that could be --
17  many people sue over many things with a very low bar and
18  threshold for those lawsuits.
19           Routine practice at every firm I've been in is
20  if you're representing an issuer in which you've
21  previously had a relationship as a representation -- an
22  investor, you'll get a conflict waiver from both sides.
23           The example I'd give you is if, you know,
24  Citibank was giving a mortgage to Ms. Brown, and then
25  later I was representing Ms. Brown in connection with a
```

85

1       A.   Yes.
2       Q.   And, in fact, it represents that you had some
3  interaction with Deo at NYSE.  Does that help refresh
4  your recollection about Mr. Machado and having some
5  interactions with him?
6       A.   It does not.  It may very well be that I was
7  reviewing an email from him of some sort.  It doesn't
8  really indicate what the activity was.  And, again, I
9  don't even recall the name Deo.
10      Q.   All right.  So the PIPE part of this
11 transaction closed before the registered direct portion
12 of it, didn't it?
13      A.   I don't recall.
14      Q.   All right. Can you tell us why MGT -- why
15 you're billing time to MGT?
16      A.   I cannot tell you why I was billing time to
17 MGT other than I spent time on MGT.
18      Q.   In other transactions that you worked on where
19 you were representing Mr. Honig, did you bill your time
20 on occasion to the issuer?
21      A.   Ask that again.
22      Q.   On other transactions that you worked on
23 representing Mr. Honig, did you bill the time that you
24 spent on those transactions to the issuer?
25      A.   If Mr. Honig was my client involved in a

159

1  sometimes file on behalf of the investors their
2  beneficial holdings, their forms, as a matter that they
3  assume the cost of.
4         So without looking at the -- you know, the
5  other documentation, the purchase agreement for the RD,
6  or any side letter, I mean I just -- I can't say.
7         I do know that Hudson Bay routinely asks that.
8  And if they were the genesis of this documentation set,
9  it's very possible that they have -- the issuer has an
10 obligation to, you know, assist or at least to help
11 assist in these filings.
12    Q.   Okay.  So in the circumstances you're
13 recounting right there where Hudson Bay has a
14 contractual obligation with the issuer for the issuer to
15 file Schedule 13Gs on its behalf, and you carry out that
16 filing for Hudson Bay and the issuer, whose interests
17 are you representing when you fill out the Schedule 13G
18 for Hudson Bay?
19    A.   You're pursuing the interest of truth and
20 accuracy.  This is not an advocacy situation.  You're
21 not -- you're not taking a position for anybody.  You're
22 receiving inputs from people, and because the
23 familiarity with the form, you're putting numbers in a
24 form and helping people understand the answers to the
25 questions that represent the instructions to the form.

168

```
 1        Q.   And from your understanding that means that
 2   Kaplowitz representing Ladd and MGT couldn't disclose
 3   confidential matters to someone representing Honig?
 4        A.   Repeat that.
 5        Q.   That language means, to you, that Kaplowitz
 6   representing MGT couldn't disclose confidential
 7   communications he learned in that representation to
 8   someone representing Honig?
 9        A.   Not without the consent of Ladd -- of MGT.
10   You shouldn't do that.
11        Q.   Okay.  All right.  Did you have any
12   discussions with Mr. Kaplowitz about any of this
13   language?
14        A.   I don't recall.
15        Q.   And do you recall any conversations with
16   Mr. Ladd about any of this language?
17        A.   I had very limited contact with Mr. Ladd.
18   It's highly unlikely.  And this is pro forma
19   boilerplate, so, you know, you don't usually have many
20   discussions about this at all.  This is the language we
21   use, that's that.
22        Q.   Okay.  So looking at the second paragraph of
23   this conflict waiver, it lists certain investors and it
24   says,
25             "You specifically acknowledge that we
```

177

```
 1        STENOGRAPHIC SHORTHAND REPORTER'S CERTIFICATION
 2                              - - -
 3             I, VICTORIA L. VALINE, CSR NO. 3036, RMR, CRR,
 4   RSA, certify:  That the foregoing proceedings were
 5   remotely taken before me via videoconference at the time
 6   herein set forth; at which time the witness was duly
 7   sworn; that a record of the proceedings was made by me
 8   using machine shorthand which was thereafter transcribed
 9   under my direction; and that the transcript is a true
10   record of the testimony so given.
11             Further, the foregoing pertains to the
12   original transcript of a deposition in a federal case,
13   before completion of the proceedings, review of
14   transcript not requested.
15             The dismantling, unsealing, or unbinding of
16   the original transcript will render the Stenographer's
17   Certificate null and void.
18             I further certify that I am not financially
19   interested in the action, and I am not a relative or
20   employee of any attorney of the parties, nor of any of
21   the parties.
22             Dated this 14th day of August, 2022.
23
24                       _____
                         Victoria L. Valine, CSR License #3036
25
```