# EXHIBIT 58

1                UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF NEW YORK

3

4    SECURITIES AND EXCHANGE COMMISSION,  )
                                         )
5                  Plaintiff,            )
                                         )
6         v.                             ) Case No.
                                         ) 18 Civ. 8175(ER)
7    BARRY C. HONIG, ROBERT LADD, ELLIOT )
     MAZA, BRIAN KELLER, JOHN H. FORD,   )
8    GRQ CONSULTANTS, INC., and HS       )
     CONTRARIAN INVESTMENTS, LLC,        )
9                                        )
                   Defendants.           )
10   _____)

11

12                     VOLUME 1

13          VIDEOTAPED DEPOSITION OF ROBERT LADD

14                 VIA VIDEOCONFERENCE

15             Thursday, October 15, 2020

16

17

18

19

20

21

22

23

24   REPORTED BY:
     GRACE CHUNG, CSR No. 6246, RMR, CRR, CLR
     VICTORIA L. VALINE, CSR 3036, RMR, CRR
25   JOB NO. 201015GCH

                                                      1

1                    UNITED STATES DISTRICT COURT

2                    NORTHERN DISTRICT OF NEW YORK

3

     SECURITIES AND EXCHANGE COMMISSION,   )
4                                          )
                         Plaintiff,        )
5                                          )
     v.                                    )   Case No.
6                                          )   18 Civ. 8175(ER)
     BARRY C. HONIG, ROBERT LADD, ELLIOT   )
7    MAZA, BRIAN KELLER, JOHN H. FORD,     )
     GRQ CONSULTANTS, INC., and HS         )
8    CONTRARIAN INVESTMENTS, LLC,          )
                                           )
9                        Defendants.       )
     _____)

10

11

12

13

14

15                   Videotaped deposition of ROBERT LADD,

16    taken on behalf of Plaintiff, all parties appearing

17    remotely via Webex, beginning at 10:07 a.m. EST and
      ending at 6:36 p.m. EST, on Thursday, October 15, 2020,
18    before GRACE CHUNG, CSR No. 6246, RMR, CRR, CLR, and

19    VICTORIA VALINE, CSR No. 3036, RMR, CRR.

20

21

22

23

24

25

                                                              2

```
 1                    A P P E A R A N C E S

 2     (All appearances via videoconference.)

 3

 4     For the Plaintiff:

 5     SECURITIES AND EXCHANGE COMMISSION
       BY: NANCY BROWN, ESQ.
 6          JACK KAUFMAN, ESQ.
            KATHERINE BROMBERG, ESQ.
 7     200 Vesey Street
       Suite 400
 8     New York, New York 10281
       (212) 336-1023
 9     BrownN@sec.gov

10

11     For the Defendant:

12     FORD O'BRIEN
       BY:  ADAM FORD, ESQ.
13          ANJULA PRASAD, ESQ.
       575 Fifth Avenue
14     Floor 17
       New York, New York 10017
15     (212) 858-0040
       aford@fordobrien.com
16

17

18     Also Present:   NANCY HOLMSTOCK, Videographer

19

20

21

22

23

24

25
                                                            3
```

1    BY MS. BROWN:

2        Q.   Did you entertain the possibility that

3    Mr. Honig was a recidivist stock promoter who

4    engaged in pump and dump?

5        A.   Now, his reputation, as I've seen it,

6    again, in the mid-2014 or '15 --

7             MR. FORD:  Rob, the question is at the

8    time of this email, November 14, 2012.

9             THE WITNESS:  Oh.

10            MR. FORD:  Stick to that time.

11       A.   Okay.  I mean, I recall the due diligence

12   showing merely that as a broker at Gruntal or

13   wherever he worked, he had one customer complaint.

14   To me, that's not a recidivist pump-and-dumper that

15   violates securities law.

16   BY MS. BROWN:

17       Q.   Okay.  So the answer is, no, you never

18   entertained that possibility.  Is that right?

19            MR. FORD:  Well, that's not what he said,

20   Nancy.  His answer was his answer.

21       A.   My answer is that anything can happen to

22   anyone.  And my job as a steward of MGT is to make

23   sure that, basically, Michael Einhorn [sic] is not

24   correct.

25   BY MS. BROWN:

28

1   brokerage accounts, that answer is no.

2        Q.   Okay.  So that first line, again we're back to

3   Exhibit 16 which shows the distribution, it says the

4   amount of securities beneficially owned following

5   reported transactions and it's 157,300.

6             Do you see that?

7             MR. FORD:  I'm sorry.  Nancy, can you just --

8   where are we again?

9             THE WITNESS:  It's 16 --

10            MS. BROWN:  We're on the first line of the

11  May 31 form 4.

12            MR. FORD:  Thank you.

13            THE WITNESS:  I see that.

14  BY MS. BROWN:

15       Q.   All right.  So that means that Laddcap Value

16  Partners III retained 157,300 shares following the

17  distribution; is that right?

18       A.   The truth is no amount of studying this form,

19  as it applies to funds, will make me understand it then

20  or now.  So my testimony is that this is so freaking

21  confusing, that I would recommend changes in form 4

22  reporting, but that's, I think, a different issue.

23            But, you know, again when calculating the

24  numbers the lawyers, you know, take away and add, and

25  when I filed it, it did not look materially wrong.  And,

                                                        82

1          STENOGRAPHIC SHORTHAND REPORTER'S CERTIFICATION

2                            - - -

3          I, VICTORIA L. VALINE, CSR NO. 3036, RMR, CRR,

4    RSA, certify:  That the foregoing proceedings were

5    remotely taken before me via videoconference at the time

6    herein set forth; at which time the witness was duly

7    sworn; that a record of the proceedings was made by me

8    using machine shorthand which was thereafter transcribed

9    under my direction; and that the transcript is a true

10   record of the testimony so given.

11          Further, that if the foregoing pertains to the

12   original transcript of a deposition in a federal case,

13   before completion of the proceedings, review of

14   transcript not requested.

15          The dismantling, unsealing, or unbinding of

16   the original transcript will render the Stenographer's

17   Certificate null and void.

18          I further certify that I am not financially

19   interested in the action, and I am not a relative or

20   employee of any attorney of the parties, nor of any of

21   the parties.

22          Dated this 26th day of October, 2020.

23

24   _____

25          Victoria L. Valine, CSR License #3036

```
 1   STATE OF  CALIFORNIA          )
                                   ) Ss
 2   COUNTY OF LOS ANGELES         )

 3           I hereby certify that the witness in the

 4   foregoing deposition was by me duly sworn to testify

 5   to the truth, the whole truth and nothing but the

 6   truth, in the within-entitled cause; that said

 7   deposition was taken at the time and place herein

 8   named; and that the deposition is a true record of the

 9   witness's testimony as reported by me, a duly

10   certified shorthand reporter and a disinterested

11   person, and was thereafter transcribed into

12   typewriting by computer; that the dismantling,

13   unsealing, or unbinding of the original transcript

14   will render the reporter's certificate null and void.

15           I further certify that I am not interested

16   in the outcome of the said action, nor connected with

17   nor related to any of the parties in said action, nor

18   to their respective counsel.

19           IN WITNESS WHEREOF, I have hereunto set my

20   hand this 26th day of October, 2020.

21   Reading and Signing was:

22   _____ requested  __ waived    X not requested

23   _____

24           Grace Chung, CSR. NO. 6246, RMR, CRR

25
```

172

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF NEW YORK

3                  - - -

4   SECURITIES AND EXCHANGE           )
    COMMISSION,                       )
5                                     )
                    Plaintiff,        )
6                                     ) Case No.
         vs.                          ) 18 Civ. 8175(ER)
7                                     )
    BARRY C. HONIG, ROBERT LADD,      )
8   ELLIOT MAZA, BRIAN KELLER,        )
    JOHN H. FORD, GRQ CONSULTANTS,    )
9   INC. and HS CONTRARIAN            )
    INVESTMENTS, LLC,                 )
10                                    )
                    Defendants.       )
11  _____)

12

13

14

15          VOLUME 2 - PAGES (173 - 335)

16          VIDEOTAPED DEPOSITION OF

17                ROBERT LADD

18        VIA REMOTE VIDEOCONFERENCE

19          FRIDAY, OCTOBER 16, 2020

20

21

22

23
    Stenographically Reported by:
24  Victoria L. Valine, CSR, RMR, CRR, RSA
    California CSR License No. 3036
25  Job No. 201016VV

                                              173

```
 1                    REMOTE APPEARANCES:

 2

 3  FOR PLAINTIFF:

 4          UNITED STATES SECURITIES AND EXCHANGE
            COMMISSION
 5          BY:  Nancy Brown, Esq.
                 Katherine Bromberg, Esq.
 6                 Jack Kaufman, Esq.
            200 Vessey Street, Suite 400
 7          New York, New York  10281
            BrownN@sec.gov
 8          BrombergK@sec.gov
            KaufmanJ@sec.gov

 9

10  FOR DEFENDANT ROBERT LADD:

11          FORD O'BRIEN
            Attorneys at Law
12          BY:  Adam Ford, Esq.
                 Anjula Prasad, Esq.
13          575 Fifth Avenue, Floor 17
            New York, New York 10017
14          (212) 858-0040
            Aford@fordobrien.com

15

16

17                    --o0o--

18

19

20

21  Videographer:  Sarah Howard

22

23    (All parties appeared remotely via videoconference.)

24

25

                                                        174
```

1                              INDEX

2                    EXAMINATION BY COUNSEL

3     WITNESS:   ROBERT LADD
                 VOLUME 2
4                                                    PAGE

5     Examination by Ms. Brown (Continued)          183

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                    175

```
 1   there's also a price given, right?

 2        A.   Correct.

 3        Q.   Okay.  So where's the price for the 465,171?

 4        A.   I don't believe you include the price for that

 5   J-type of transaction.  So I'm not --

 6        Q.   Okay.  So --

 7        A.   -- aware of what we did.

 8             I obviously relied on counsel to file this

 9   form.  So if there was supposed to be a price, and there

10   wasn't, then it's a mistake.

11             So I would say there's -- it's either

12   correctly stated at zero, the way it should be, or it's

13   wrong.

14        Q.   Well, if you sell securities, you usually get

15   a price for them, right?

16        A.   Sure.

17        Q.   Okay.  And there's no price listed here.

18        A.   Okay.

19        Q.   My question is:  Does this reflect a sale of

20   465,000 shares?

21        A.   It did, yes.

22        Q.   Even though no price is given?

23        A.   Yes.  That's correct.

24        Q.   And the code is J?

25        A.   Code is J.
```

190

 1      Q.   And looking to the last two pages of the

 2    exhibit -- or three pages of the exhibit, what do you

 3    recognize that to be?

 4      A.   Yeah, Exhibit 99.1 --

 5      Q.   Yes.

 6      A.   -- it's the press release as issued.

 7      Q.   All right.  And did you draft it?

 8      A.   I -- I either drafted it, or edited it, or I

 9    definitely was -- I was involved in producing it for

10    sure.

11      Q.   And do you recognize the word choice as your

12    own?

13      A.   Not every one, but keep going.

14      Q.   Well, I ask you that because in Ladd

15    Exhibit 302 on page 8 of 9, it's represented that you

16    told the FBI in March 2018 that you recognized the word

17    selection in the document as your own.

18           Is that what you told the FBI?

19      A.   I don't recall, but -- I mean, I have no

20    reason to -- to dispute that characterization.

21      Q.   All right.  Now, looking at the press release,

22    the second full paragraph, the second sentence says,

23    "Mr. McAfee, the visionary pioneer of internet security,

24    sold his anti-virus company to Intel for $7.6 billion."

25           Do you see that?

                                                        274

1      A.    Yes.

2      Q.    And you knew that that was not, in fact, true,

3  correct?

4      A.    I know now that it -- when you read it, it is

5  incorrect.  At the time I put it in, I unfortunately

6  missed the mistake.

7      Q.    And what part of it do you now know to be

8  inaccurate?

9      A.    Well, the way it reads in this release, is if

10  John McAfee himself sold McAfee Associates to Intel for

11  7.6 billion all at once, like that he was at McAfee

12  Associates, and that when it was sold, he was at McAfee

13  Associates.

14      Q.    And at the time this press release was issued,

15  you knew that McAfee sold his interest in McAfee

16  Associates or Inc. in the 1990s well before the company

17  was sold to Intel; isn't that correct?

18      A.    I knew that.  I think everyone knew that, but

19  yes.

20            The funny story is the highest viewed YouTube

21  video was how to -- how to uninstall McAfee anti-virus

22  done by John McAfee.

23      Q.    Right.

24      A.    So...

25      Q.    All right.  So I think you've just described

275

1        STENOGRAPHIC SHORTHAND REPORTER'S CERTIFICATION

2                              - - -

3        I, VICTORIA L. VALINE, CSR NO. 3036, RMR, CRR,

4   RSA, certify:  That the foregoing proceedings were

5   remotely taken before me via videoconference at the time

6   herein set forth; at which time the witness was duly

7   sworn; that a record of the proceedings was made by me

8   using machine shorthand which was thereafter transcribed

9   under my direction; and that the transcript is a true

10   record of the testimony so given.

11        Further, that if the foregoing pertains to the

12   original transcript of a deposition in a federal case,

13   before completion of the proceedings, review of

14   transcript was not requested.

15        The dismantling, unsealing, or unbinding of

16   the original transcript will render the Stenographer's

17   Certificate null and void.

18        I further certify that I am not financially

19   interested in the action, and I am not a relative or

20   employee of any attorney of the parties, nor of any of

21   the parties.

22        Dated this 27th day of October, 2020.

23

24   _____
         Victoria L. Valine, CSR License #3036

25

335

1                    UNITED STATES DISTRICT COURT

2                  SOUTHERN DISTRICT OF NEW YORK

3

4      SECURITIES AND EXCHANGE            )
       COMMISSION,                        )
5                                         )
                        Plaintiff,        )
6                                         )
            vs.                           ) Case No.
7                                         ) 18 Civ. 8175(ER)
       BARRY C. HONIG, ROBERT LADD,       )
8      ELLIOT MAZA, BRIAN KELLER,         )
       JOHN H. FORD, GRQ CONSULTANTS,     )
9      INC., and HS CONTRARIAN            )
       INVESTMENTS, LLC,                  )
10                                        )
                        Defendants.       )
11     _____)

12

13

14                          VOLUME 3

15              VIDEO DEPOSITION OF ROBERT LADD

16                    VIA VIDEOCONFERENCE

17              Tuesday, November 10, 2020

18

19

20

21

22

23

24     REPORTED BY:
       GRACE CHUNG, CSR No. 6246,
       RMR, CRR, CLR
25     JOB NO. 201110GCH

                                                          336

1                 UNITED STATES DISTRICT COURT

2               SOUTHERN DISTRICT OF NEW YORK

3

4   SECURITIES AND EXCHANGE     )
    COMMISSION,                )

5                       )
               Plaintiff,    )

6                       )
      vs.               ) Case No.

7                     ) 18 Civ. 8175(ER)
    BARRY C. HONIG, ROBERT LADD,   )

8   ELLIOT MAZA, BRIAN KELLER,    )
    JOHN H. FORD, GRQ CONSULTANTS,  )

9   INC., and HS CONTRARIAN      )
    INVESTMENTS, LLC,         )

10                     )
             Defendants.   )

11  _____)

12

13

14

15    Videotaped deposition of ROBERT LADD, Volume 3,

16  taken via videoconference on behalf of Plaintiff,

17  beginning at 10:04 a.m. EST and ending at 11:54 a.m.

18  EST, on Tuesday, November 10, 2020, before GRACE CHUNG,

19  CSR No. 6246, RMR, CRR, CLR.

20

21

22

23

24

25

                                       337

```
1                      A P P E A R A N C E S

2        (All appearances via videoconference.)

3

4        For the Plaintiff:

5        SECURITIES AND EXCHANGE COMMISSION
         BY: NANCY BROWN, ESQ.
6            JACK KAUFMAN, ESQ.
             KATHERINE BROMBERG, ESQ.
7        200 Vesey Street
         Suite 400
8        New York, New York 10281
         (212) 336-1023
9        BrownN@sec.gov
         KaufmanJ@sec.gov
10       BrombergK@sec.gov

11

12       For the Defendant:

13       FORD O'BRIEN
         BY:  ADAM FORD, ESQ.
14           ANJULA PRASAD, ESQ.
         575 Fifth Avenue
15       Floor 17
         New York, New York 10017
16       (212) 858-0040
         aford@fordobrien.com
17

18

19       Also Present:   TIM HUNTER, Videographer

20

21

22

23

24

25
                                                              338
```

10:14 1    that New York Stock Exchange, I'm pretty certain, had

10:15 2    under investigation.  And in this specific case,

10:15 3    again, it was Hudson Bay, Iriquois, and Barry Honig

10:15 4    being the three together that would be considered a

10:15 5    group under securities laws.

10:15 6         Q.   Thank you.  All right.  Just one more

10:15 7    question on the advice topic.  I just want to nail

10:15 8    down with whom you -- or from whom you received

10:15 9    whatever advice you received on the group issue.

10:15 10        A.   You mean what lawyer?

10:15 11        Q.   Yes.

10:15 12        A.   So there were -- I believe there were at

10:15 13   Sichenzia, but they were the counsel of MGT, a guy

10:15 14   by the name of Arthur Marcus and then Jay Kaplowitz

10:16 15   as well.

10:16 16        Q.   All right.  You received this advice in

10:16 17   2012, prior to signing the stock purchase

10:16 18   agreements with Mr. Honig and others?

10:16 19        A.   Yes.

10:16 20        Q.   Thank you.  All right.  So let's look at

10:16 21   exhibit -- tab behind 86, which we marked as Ladd

10:16 22   Exhibit 86.

23              (Deposition Exhibit 86 was marked for

24              identification by the reporter and is

25              attached hereto.)

347

10:21 1    that question with anyone?

10:21 2         A.   Not that I recall.

10:21 3         Q.   And other than your discussions with

10:21 4    counsel, what did you do in the 20 minutes between

10:21 5    receiving that question and answering it?

10:21 6         A.   So I guess when I talk about an elephant

10:21 7    in the room, these were not pop-up quiz questions

10:21 8    that I suddenly had to scramble for.  These were

10:21 9    pretty well-known answers.  And as long as

10:21 10   confirmed by counsel, that's what I would represent

10:21 11   to the New York Stock Exchange.

10:21 12        Q.   Okay.  And then number 2, you answered no,

10:22 13   that none of the investors was related.

10:22 14        A.   Yes.

10:22 15        Q.   Is that a fair interpretation of your

10:22 16   answer "no"?

10:22 17        A.   Correct.

10:22 18             MR. FORD:  Robert, I thought you just

10:22 19   testified that you understood that the related

10:22 20   parties were related to MGT, not related to each

10:22 21   other.

10:22 22             THE WITNESS:  No, that's what I mean, and

10:22 23   I think it's further shown in a subsequent email

10:22 24   that that's exactly what I said.  But I could be

10:22 25   mistaken.

351

```
 1   STATE OF  CALIFORNIA          )
                                   ) Ss
 2   COUNTY OF LOS ANGELES         )

 3              I hereby certify that the witness in the

 4   foregoing deposition was by me duly sworn to testify

 5   to the truth, the whole truth and nothing but the

 6   truth, in the within-entitled cause; that said

 7   deposition was taken at the time and place herein

 8   named; and that the deposition is a true record of the

 9   witness's testimony as reported by me, a duly

10   certified shorthand reporter and a disinterested

11   person, and was thereafter transcribed into

12   typewriting by computer; that the dismantling,

13   unsealing, or unbinding of the original transcript

14   will render the reporter's certificate null and void.

15              I further certify that I am not interested

16   in the outcome of the said action, nor connected with

17   nor related to any of the parties in said action, nor

18   to their respective counsel.

19              IN WITNESS WHEREOF, I have hereunto set

20   my hand this November 18, 2020.

21   Reading and Signing was:

22   X___ requested   __ waived   ___ not requested

23   _____

24          Grace Chung, CSR. NO. 6246, RMR, CRR

25
```

1              UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF NEW YORK

3                      --o0o--

4   SECURITIES AND EXCHANGE            )
    COMMISSION,                        )
5                                      )
              Plaintiff,               )
6                                      ) Case No.
        vs.                            ) 18 Civ. 8175 (ER)
7                                      )
    BARRY C. HONIG, ROBERT LADD,       )
8   ELLIOT MAZA, BRIAN KELLER,         )
    JOHN H. FORD, GRQ CONSULTANTS,     )
9   INC. and HS CONTRARIAN             )
    INVESTMENTS, LLC                   )
10                                     )
              Defendants.              )
11  _____)

12

13

14

15                  DEPOSITION OF

16                   ROBERT LADD

17          VOLUME 4 - PAGES (406-506)

18          VIA REMOTE VIDEOCONFERENCE

19            FRIDAY, AUGUST 5, 2022

20

21

22

23
    Stenographically Reported by:
24  Victoria L. Valine, CSR, RMR, CRR, RSA
    California CSR License No. 3036
25  Job No. 220805VV

                                                   406

```
1                          REMOTE APPEARANCES:

2

3    FOR PLAINTIFF:

4              SECURITIES AND EXCHANGE COMMISSION
               BY:  Nancy A. Brown, Esq.
5                   Jack Kaufman, Esq.
               100 Pearl Street, Suite 20-100
6              New York, New York  10004
               212-336-1023
7              BrownN@SEC.gov

8

     FOR DEFENDANT ROBERT LADD:
9
               FORD O'BRIEN, LLP
10             Attorneys at Law
               BY:  Adam Ford, Esq.
11                  Anjula Prasad, Esq.
               575 Fifth Avenue, Floor 17
12             New York, New York  10017
               212-858-0040
13             AFord@fordobrien.com

14

15

16

17

18
        (All parties appeared remotely via videoconference.)
19

20

21

22

23

24

25
                                                              407
```

1                          INDEX

2    WITNESS:  ROBERT LADD

3    EXAMINATION BY COUNSEL                    PAGE

4    Examination By Ms. Brown                   413

5    Examination By Mr. Ford                    489

6    Further Examination By Ms. Brown           499

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                      408

1          records show the following."

2             Do you see that?

3      A.   Yes.

4      Q.   And then at the end in the last paragraph you

5  say,

6             "For housekeeping purposes, Sichenzia

7             suggests and can assist with an updated

8             Iroquois Section 16 filing.  I believe your

9             latest filings, 13D/A and Form 3, were in

10            October of 2014.  There should have been a

11            Form 4 filed in early October 2015

12            following the PIPE deal."

13            Do you see that?

14     A.   Yes, I do.

15     Q.   And so were you suggesting to him that his

16  filings did not accurately reflect the ownership

17  interest of Iroquois in a complete manner?

18     A.   The way I read this now is that he was

19  delinquent in filing.  I think he must have been on the

20  board in October '15 so that he should have filed the

21  Form 4, but I would say I'm vigilant about things like

22  that.  So it makes sense that, if I found the mistake, I

23  would have it be corrected.

24     Q.   And were there any other investors whose

25  filings you questioned that you reached out to as you

427

1              Did you ever ask either Mr. Marcus or

2    Mr. Kaplowitz, at any time subsequently, whether a new

3    analysis of the group determination should be made?

4         A.   I don't remember asking specifically.  They

5    were the attorneys that knew much more than myself.  So

6    I believe there is -- I was under the assumption that

7    there would be no change in ownership or change in

8    status.

9         Q.   Did you rely on Mr. Kesner's response in that

10   October 18, 2012 email?

11        A.   I'm not sure if the word "rely" is some legal

12   term that I need to be aware of, but I guess I could put

13   it in more layman's terms is -- and, again, some of this

14   knowledge is from now -- they had superior information

15   than I did regarding the investors.

16        Q.   Who is the "they" -- who is the "they" in that

17   answer?

18        A.   Sichenzia, in general.

19        Q.   So in the fall of 2015, when you're about to

20   engage in another transaction with Mr. Honig and his

21   co-investors, you never brought up the issue again with

22   either Mr. Marcus or Mr. Kaplowitz about Mr. Honig's

23   status as a member of a group; is that -- is that

24   correct?

25        A.   I don't mean to be flip, but it's not --

459

1    BY MS. BROWN:

2        Q.   And so your Form 4 of May 31, 2016 told

3    investors that you distributed 465,000 shares for zero

4    consideration, right?

5        A.   Correct.

6        Q.   And, in fact, you sold the shares for hundreds

7    of thousands of dollars, right?

8        A.   Yes.

9        Q.   So why didn't you tell investors that?

10       A.   The net impact to ownership was the same in

11   that the shares were not controlled by me.  Between

12   myself and my partners we had an understanding they

13   would get the cash out in the next year or so.

14            So, in my view, it was creating the correct

15   numbers to the investor.  And -- but it's very

16   complicated when it gets down to fund reporting.  As you

17   may be aware that it's -- you know, these pecuniary

18   interests and all that thing, but I wanted to convey

19   correctly that there was no further ownership.

20       Q.   Okay.  So is it your testimony that no

21   investor would care that you actually received cash

22   consideration for the sale of those shares?

23            MR. FORD:  Object to form.

24            THE WITNESS:  I -- my testimony would be that

25   would be the least important bit of information that

                                                        487

1    Mr. Kaplowitz about the group issue.

2            Do you remember that?

3        A.   Yes.  I did not have recollection specifically

4    of a discussion.  But, as Ms. Brown just pointed out,

5    the -- Sichenzia was infused, if you will, with

6    knowledge of the investors with the concept of 13(d)'s,

7    with blockers.  So it's a pre -- it was something that

8    was omnipresent, let's say.  I don't like to use

9    elephant in the room because that's a negative.

10            But, you know, these are legitimate strategies

11   that every investor used with mainly the blocker issue,

12   to not be a legal group.  And, you know, particularly

13   having Sichenzia representing, not only myself -- the

14   company, but representing the investors, they would

15   be -- I think I said superior knowledge that they would

16   have if there was a group issue.

17       Q.   And you've -- in this case, you've asserted

18   your pleadings that you relied on professionals in

19   connection with the proper filing of your SEC filings;

20   is that an accurate statement?

21       A.   Yes.  They would normally draft, and review,

22   and --

23       Q.   Can you explain to me how you -- how you

24   relied -- what exactly you were relying on or how you

25   relied on them?

490

1      Q.   And so you do understand that, in terms of

2  representation, for example, the engagement letter is,

3  in fact, with the actual law firm; is that correct?

4           MS. BROWN:  Objection to the form.

5           THE WITNESS:  In practice, I assume -- I would

6  assume the law firm will represent my interests.

7  BY MR. FORD:

8      Q.   You do understand that Sichenzia was

9  representing MGT; is that accurate?

10          MS. BROWN:  Objection.

11          THE WITNESS:  It's not an understanding.  It's

12  the -- it is.  I mean, they were MGT's attorneys.

13  BY MR. FORD:

14     Q.   Right.

15          And, now with the foundation laid, you

16  understand that Sichenzia was fulfilling all of its

17  legal and ethical obligations when it was conducting

18  work on behalf of MGT?

19          MS. BROWN:  Objection.  Leading.

20          THE WITNESS:  So the answer is, yes, of

21  course.

22  BY MR. FORD:

23     Q.   And did you understand that -- did you

24  understand whether Sichenzia had conducted inquiry into

25  the question of whether any investors needed to be

                                                      493

1    listed as a group in connection with the 2012 filing?

2              MS. BROWN:  Objection to the form.  Which part

3    of Sichenzia?

4              MR. FORD:  The lawyers representing MGT.

5              THE WITNESS:  I think I testified, and the

6    evidence shows, they were involved with the New York

7    Stock Exchange representing the company.  You know,

8    certainly the group issue was important and researched

9    by them, and "them" still being Jay and Arthur, although

10   they're at Sichenzia.

11   BY MR. FORD:

12        Q.   Did you have an understanding as to whether

13   Sichenzia, specifically Mr. Marcus and Kaplowitz, had

14   conducted the requisite inquiry into whether any

15   investors needed to be listed as a group in connection

16   with the 2015 filings?

17             MS. BROWN:  Objection to the form.

18             THE WITNESS:  The answer to that is also, yes,

19   of course they did that research.  And, as I say, they

20   draft the forms, and we have to take meticulous care to

21   lay out the extent of each investor's ownership by name,

22   and by percentage, and by potential percentage if

23   exercised with blockers, without blockers.  It was one

24   of the most comprehensive disclosures that I've seen,

25   and, again, it was done, I believe, correctly by the law

                                                      494

1      STENOGRAPHIC SHORTHAND REPORTER'S CERTIFICATION

2                          - - -

3              I, VICTORIA L. VALINE, CSR NO. 3036, RMR, CRR,

4      RSA, certify:  That the foregoing proceedings were

5      remotely taken before me via videoconference at the time

6      herein set forth; at which time the witness was duly

7      sworn; that a record of the proceedings was made by me

8      using machine shorthand which was thereafter transcribed

9      under my direction; and that the transcript is a true

10     record of the testimony so given.

11             Further, the foregoing pertains to the

12     original transcript of a deposition in a federal case,

13     and before completion of the proceedings, review of

14     transcript not requested.

15             The dismantling, unsealing, or unbinding of

16     the original transcript will render the Stenographer's

17     Certificate null and void.

18             I further certify that I am not financially

19     interested in the action, and I am not a relative or

20     employee of any attorney of the parties, nor of any of

21     the parties.

22             Dated this 10th day of August, 2022.

23

24     _____

25             Victoria L. Valine, CSR License #3036

506