# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,       :
                                          :
                        **Plaintiff,**          :
                                          :      18 Civ. 8175 (ER)
      – against –                       :
                                          :      ECF CASE
BARRY C. HONIG, ROBERT LADD,              :
ELLIOT MAZA, BRIAN KELLER,                :
JOHN H. FORD, GRQ CONSULTANTS, INC., and  :
HS CONTRARIAN INVESTMENTS, LLC,           :
                                          :
                        **Defendants.**         :
------------------------------------------------------------------x

## PLAINTIFF'S RESPONSES TO DEFENDANT ROBERT LADD'S FIRST SET OF INTERROGATORIES TO PLAINTIFF

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Securities and Exchange Commission ("Commission") hereby responds to the First Set of Interrogatories (the "Interrogatories") of Defendant Robert Ladd ("Defendant" or "Ladd") as follows:

### PRELIMINARY STATEMENT

1. The Commission reserves the right at any time to revise, supplement, correct, clarify, or add to its responses and objections, as the Commission deems necessary and appropriate and as additional facts are ascertained and information collected in the course of this litigation, and after Defendant has served an Answer in this matter.

2. The Commission's responses and objections do not constitute an admission or acknowledgement that any particular Interrogatory seeks relevant, non-privileged, or admissible evidence, or that any statement or characterization of the facts, events, circumstances, or issues described in the Interrogatories is relevant, accurate, or complete.

3. The Commission makes these responses and objections subject to, and without

1

waiving, all objections as to competence, relevance, materiality, propriety, privilege, authenticity, or admissibility, and any and all other objections on any grounds that may be applicable at a trial of this action or any other proceeding, all of which objections and grounds the Commission expressly reserves and may interpose at any time in this action or in any other proceeding.

## GENERAL OBJECTIONS

The Commission asserts the following objections to the Interrogatories in their entirety:

1. The Commission objects to the Interrogatories, including the Definitions and Instructions, to the extent that they seek to expand upon or alter, or are inconsistent with, the Commission's obligations under the Federal Rules of Civil Procedure, the Local Civil Rules, or other applicable law or rules or Orders entered in this matter. The Commission will respond to the Interrogatories to the extent required by the Federal Rules of Civil Procedure, the Local Civil Rules, other applicable law or rules, and the terms of the Court's Orders.

2. The Commission objects to the Interrogatories, including the Definitions and Instructions, to the extent they seek information outside the time period relevant to this action, except as otherwise required by the Federal Rules of Civil Procedure.

3. The Commission objects to the Interrogatories to the extent that they seek information publicly available or equally available to, or within the knowledge, possession, custody or control of Defendant.

4. The Commission objects to the Interrogatories to the extent they seek information not relevant to any party's claims or defenses or that are not proportional to the needs of the case.

5. The Commission objects to the Interrogatories to the extent they are overly broad, duplicative, unduly burdensome, ambiguous, vague, seek information that is not described with

reasonable particularity or accurately premised, lack a readily discernible meaning, or require the Commission to speculate as to the information sought.

6. The Commission objects to the Interrogatories to the extent that they seek information protected by any privilege, protection or immunity, including without limitation the attorney-client privilege, work product doctrine, deliberative process privilege, common interest privilege, confidential informant privilege, or law enforcement privilege. To the extent information that is protected from disclosure is inadvertently disclosed in response to the Interrogatories, such disclosure shall not constitute a waiver of any privilege or any other ground for objection with respect to such information or the subject matter thereof. Inadvertent disclosure of such information shall not waive the Commission's right to object to the use of such information during any subsequent proceeding, whether related to this case or not. Upon the Commission's notification to Defendant of such inadvertent disclosure, or upon discovery thereof, Defendant shall refrain from using, sharing or disclosing such information.

7. The Commission objects to the Interrogatories to the extent that they require the Commission to respond by compiling, analyzing, computing, and/or summarizing voluminous data or information on the ground that they are unduly burdensome. The Commission further objects to the Interrogatories to the extent that responding to them would entail unreasonable expense by the Commission.

8. The Commission objects to the definition of "plaintiff," "SEC," "You," and "Your" to the extent those terms purport to include within their scope Commission divisions, offices, and persons not involved in the Commission's investigation and litigation of this matter, and is therefore overly broad and unduly burdensome.

9. Each of the General Objections above is incorporated into each of the Specific

Responses and Objections below to the Interrogatories.

## SPECIFIC RESPONSES AND OBJECTIONS

Subject to the foregoing Preliminary Statement and General Objections, and without waiving any of the General Objections, which are expressly preserved and incorporated by reference in each and every response below as if fully set forth herein, the Commission responds to each of the Interrogatories as follows:

### INTERROGATORY NO. 1:

IDENTIFY every MGT public filing in which Mr. Ladd purportedly "failed to disclose Honig's, Brauser's, Stetson's and O'Rourke's combined interest in, and control over, the company." (AC ¶¶ 137, 150)[1]

**Response:** The SEC objects to this Interrogatory to the extent it seeks any information beyond the allegations contained in the SEC's Second Amended Complaint in this case ("SAC"). Subject to and without waiving this objection, the Commission responds as follows. The Commission alleges in this case that Ladd failed to ensure that MGT Capital Investments, Inc. ("MGT") made the required disclosure of Honig's, Brauser's, Stetson's, and O'Rourke's (and their entities' and others') collective group interest in MGT stock in MGT's November 6, 2015 Form S-1 registration statement and in MGT's April 14, 2016 Form 10-K (for MGT's fiscal year 2015).

### INTERROGATORY NO. 2:

IDENTIFY all facts, documents, and witnesses that support YOUR contention that Mr. Honig and any of the INVESTOR DEFENDANTS "either explicitly or tacitly agreed to acquire, hold, vote, and/or dispose of their shares in coordination with one another" with respect to shares in MGT. (AC ¶ 2)

**Response:** The Commission objects to this Interrogatory because it is not a more practical method for obtaining the information sought than other discovery mechanisms. The Commission further objects to this Interrogatory as not a proper contention interrogatory, and as impermissibly broad and burdensome to the extent it requests that the Commission identify every single fact, document, and witness concerning the subject allegation of the Commission's First Amended Complaint in this case ("AC") or the SAC, and to the extent that it seeks a narrative explanation of such facts, documents,

---

[1] Defendant served his Interrogatories on January 14, 2020, prior to the filing of the Commission's Second Amended Complaint (DE 233) on March 16, 2020. (By Stipulation and Order, the Interrogatories were deemed served on October 8, 2020, and no response was due until November 9, 2020. (DE 263, ¶ 2.))

4

and witnesses. Subject to and without waiving these objections, the Commission further responds by identifying the following representative examples, but by no means all, of witnesses and documents that concern the subject allegation:

**Witnesses:** Ladd, Barry Honig, Michael Brauser, John Stetson, John O'Rourke, Mark Groussman, Drew Ciccarelli, John Ford, Hudson Bay Capital Management, Iroquois Capital Management LLC, Joshua Silverman, Grady Kittrell, Thomas Guscinski, Harvey Kesner, Jay Kaplowitz, Arthur Marcus, Jonathan Schechter, Joe Reda, Adam Selkin, and Robert Traversa.

**Documents:** Ladd Deposition Exhibits 2-4, 19-20, 27, 29-40, 47, 49-52, 54-55, 57-59, 61, 65-69, 72, 74-76, 78, 302; Robert Holmes Deposition Exhibits 10, 14-15, 21, 24, 26-29; Michael Onghai Deposition Exhibits 8, 10-12; 10/23/12-10/25/12 emails between Deoclides Machado and Ladd (LADD-MGT-00023864-65, LADD-MGT-00004736-38, LADD-MGT-00004866-67, LADD-MGT-00004925-36); 6/21/12 email from Joe Reda to Barry Honig (SEC-FBI-E-0045333-39); 10/21/12 email from Barry Honig to Ladd (FBI_STETSON0128-29); 10/23/12 email from Ladd to Harvey Kesner (LADD-MGT-00078270-72); 11/15/12 email from Ladd to John Stetson (SEC-FBI-E-0054213-14); 11/26/12 email from Craig Allison to Ladd (LADD-MGT-00098291-93); 10/12/12 email from John Stetson to Ladd (SEC-FBI-E-0030993); 10/1/15 email from Barry Honig to Ladd (SEC-FBI-E-0042502-03); 10/7/15 email from Ladd to Barry Honig (SEC-FBI-E-0088697-99); 9/29/15 email from Ladd to Jay Kaplowitz and others (MGT_SEC_00020422-23); 10/5/15 email from John Stetson to Ladd (MGT_SEC_00006794-95, plus attachment); 4/4/13 emails to and from Jonathan Schechter, Arthur Marcus and Ladd (Chardan_Honig 055084; 055277; 055287); 11/29/15 email from Barry Honig to Ladd (SEC-FBI-E-0059787-88); MGT 11/6/15 Form S-1 Registration Statement; Sichenzia Ross documents concerning representation of Defendants Ladd and Barry Honig (*e.g.*, LADD-MGT-00002464-2467); brokerage account statements and Bluesheet data regarding MGT stock sales by the "Investor Defendants" (as defined by the Interrogatories);[2] 5/5/16 Sichenzia Ross Letter

---

[2] Such documents include: Barry Honig February and May 2016 Tradestation Brokerage Statements (SEC-TSSI-E-0000028-71, SEC-TSSI-E-0000184-263); John O'Rourke February 2016 E*TRADE Securities LLC brokerage statement (SEC-ETRADE-E-0000028-39); ATG February 2016 Interactive Brokers Brokerage Statement (SEC-IB-E-0008780-8891); Michael Brauser and Betsy Brauser FBO Grander Holdings 401K May 2016 Fusion Analytics Securities brokerage statement (MB_0004487-93); Michael Brauser and Betsy Brauser May 2016 Fusion Analytics Securities brokerage statement (MB_0004480-86); Michael Brauser Fusion Analytics Securities brokerage statement (MB_0004474-79); Grander Holdings Inc. 401K May 2016 Viewtrade brokerage statement (SEC-APEX-E-0000001-11); GRQ May 2016 Delaney Equity Group brokerage statement (SEC-COR-E-0001435-42); Barry Honig May 2016 Delaney Equity Group brokerage statement (SEC-COR-E-0002705-17); GRQ Consultants Inc. 401K FBO Barry Honig May 2016 Delaney Equity Group brokerage statement (SEC-COR-E-0002597-2605); Melechdavid May 2016 Delaney Equity Group brokerage statement (SEC-COR-E-0002911-15); Stetson Capital Investments Delaney Equity Group brokerage statement (SEC-COR-E-0001667-73); O'Rourke I E*TRADE Securities LLC May 2016 brokerage account statement (SEC-

(MGT_SEC_00006169-71); 5/10/16 email from Ladd to Brauser and others (MGT_SEC_00009524-25); 5/10/16 email from Ladd to Brauser and others (MGT_SEC_0000953); 5/11/16 email from Groussman to Ladd (LADD00000005-6); and FBI 302s for Ford, Stetson, and John O'Rourke (SEC-FBI-E-152959-70, 0152980-85, 0152987-91, 0153034-48, 0153073-86, and 0153053-72).

In addition to the above witnesses and documents, the Commission refers Defendant to *SEC v. Honig*, 18-cv-8175 (ER), 2020 WL 906383, at *12-13 (S.D.N.Y. Feb. 25, 2020).

**INTERROGATORY NO. 3:**

IDENTIFY all facts, documents, and witnesses that support YOUR contention that any of the INVESTOR DEFENDANTS were involved in the operations of MGT, including YOUR contentions that any of the INVESTOR DEFENDANTS "directed [MGT's] management for their benefit" (AC ¶ 2), "exercise[d] control over the management and policies" of MGT, "collectively exercised control over Ladd" (AC ¶¶ 125, 152), or that there was a "false appearance that [MGT] was actually being controlled by its CEO" (AC ¶ 125).

**Response:** The Commission objects to this Interrogatory because it is not a more practical method for obtaining the information sought than other discovery mechanisms. The Commission further objects to this Interrogatory as not a proper contention interrogatory, and as impermissibly broad and burdensome to the extent it requests that the Commission identify every single fact, document, and witness concerning the subject allegation of the Complaint, and to the extent that it seeks a narrative explanation of such facts, documents, and witnesses. Subject to and without waiving these objections, the Commission further responds by identifying the following representative examples, but by no means all, of witnesses and documents that concern the subject allegation:

**Witnesses:** Ladd, Honig, Brauser, Stetson, O'Rourke, Groussman, Ciccarelli, Ford, Hudson Bay Capital Management, Iroquois Capital Management LLC, Silverman, Kittrell, Guscinski, and Traversa.

**Documents:** Ladd Deposition Exhibits 2-4, 27, 29-40, 47, 49-52, 54-55, 57-59, 61, 65-69, 72, 74-76, 78, and 302; Robert Holmes Deposition Exhibits 10, 14-15, 21, 24, 26-29; Michael Onghai Deposition Exhibits 8, 10-12; Documents regarding Sichenzia Ross representation of Ladd and Honig (*e.g.*, LADD-MGT-00002464-2467); 6/21/12 email from Joe Reda to Barry Honig (SEC-FBI-E-0045333-39); 10/21/12 email from Barry Honig to Ladd (FBI_STETSON0128-29); 10/23/12 email from Ladd to Harvey Kesner (LADD-MGT-00078270-72); 11/15/12 email from Ladd to John Stetson (SEC-

ETRADE-E-0000566-73); MGT Bluesheets (RCN_1602692_1; RCN_1602692_2; RCN_1701468_1; RCN_1606702_1; RCN_1606702_2; RCN_1606702_3; RCN_1606702_4; RCN_1607584, RCN_1701467; RCN_1702001; RCN_SEC000000004999_1; and RCN_SEC000000004999_2).

6

FBI-E-0054213-14); 11/26/12 email from Craig Allison to Ladd (LADD-MGT-00098291-93); 10/12/12 email from John Stetson to Ladd (SEC-FBI-E-0030993); 10/1/15 email from Barry Honig to Ladd (SEC-FBI-E-0042502-03); 10/7/15 email from Ladd to Barry Honig (SEC-FBI-E-0088697-99); 9/29/15 email from Ladd to Jay Kaplowitz and others (MGT_SEC_00020422-23); 10/5/15 email from John Stetson to Ladd (MGT_SEC_00006794-95, plus attachment); 11/29/15 email from Barry Honig to Ladd (SEC-FBI-E-0059787-88); MGT 11/6/15 Form S-1 Registration Statement; and FBI 302s for Stetson and O'Rourke (SEC-FBI-E-0153034-48, 0153073-86, and 0153053-72).

**INTERROGATORY NO. 4:**

IDENTIFY all facts, documents, and witnesses that support YOUR contention that any of the INVESTOR DEFENDANTS "ensur[ed] that the executives of [MGT] did not accurately report Defendants' collective control." (AC ¶ 4)

**Response:** The Commission objects to this Interrogatory because it is not a more practical method for obtaining the information sought than other discovery mechanisms. The Commission further objects to this Interrogatory as not a proper contention interrogatory, and as impermissibly broad and burdensome to the extent it requests that the Commission identify every single fact, document, and witness concerning the subject allegation of the Complaint, and to the extent that it seeks a narrative explanation of such facts, documents, and witnesses. Subject to and without waiving these objections, the Commission further responds by noting that the allegation should be read in its entirety:

> Honig and his associates had to conceal their plan to promote and dump stock for each scheme to work. They accomplished this concealment by, among other things, evading their reporting obligations under the federal securities laws and ensuring that the executives of Company A, Company B and Company C did not accurately report Defendants' collective control.

The Commission further responds by identifying the following representative examples, but by no means all, of witnesses and documents that concern the subject allegation:

**Witnesses:** Ladd, Honig, Brauser, Stetson, O'Rourke, Groussman, and Kesner.

**Documents:** Onghai Exhibits 8 and 10; 11/29/15 email from Honig to Ladd (SEC-FBI-E-0059787-88); MGT April 4, 2016 Form 10-K; MGT November 6, 2015 Form S-1; Honig October 19, 2015 Schedule 13G and February 2016 Amended Schedule 13G; and Brauser May 4, 2016 Schedule 13G.

**INTERROGATORY NO. 5:**

IDENTIFY in detail how YOU calculated that MGT's "pump and dump" generated more than $9.5 million for various defendants, entities, affiliates, and/or frequent co-investors,

7

including such detail for each person or entity that YOU are including in that total. (AC ¶ 8)

**Response:** The Commission alleges in this case that, all told, Honig, Brauser, Stetson, O'Rourke, Ladd and Mark Groussman (and their entities) grossed approximately $9.4 million from their May 2016 MGT pump and dump stock sale scheme. The Commission further alleges that Defendant Barry Honig and GRQ sold 3,783,001 MGT shares for proceeds of $2,393,915.52; and that Ladd sold 852,863 MGT shares for proceeds of $1,184,662.68. The Commission also alleges that Honig, Stetson, O'Rourke and Ladd grossed approximately $198,000 from their February 2016 MGT pump and dump stock sale scheme, and that Ladd sold 96,072 shares for gross proceeds of $46,061.82. For a further breakdown of the May 2016 stock sale proceeds received by Honig, Stetson, O'Rourke, and Groussman (and their respective entities), the Commission refers Defendant to AC ¶ 148. For a further breakdown of the February 2016 stock sale proceeds received by Honig, Stetson, and O'Rourke (and their respective entities), the Commission refers Defendant to AC ¶ 140. To calculate those amounts, the Commission reviewed Bluesheet and applicable brokerage account data, and added the proceeds from the sale of MGT shares during and immediately following each promotional campaign included in Defendants' MGT pump-and-dump schemes alleged in the AC and SAC.

**INTERROGATORY NO. 6:**

IDENTIFY all facts, documents, and witnesses that support YOUR contention that Mr. Ladd "was aware of the promotional efforts of the Honig-led group," including that Mr. Ladd "knew, or was reckless in not knowing, that Ford was being compensated by Honig and his associates and that he was concealing that fact from his Seeking Alpha readers in the April 2013 article, just as he had concealed it in his November 2012 article" (AC ¶ 129, 131) and that Mr. Ladd "knew the promotional article [published on February 3, 2016] was slated to appear [and] knew, or was reckless in not knowing, that the article's author failed to disclose that he was being compensated by [MGT] to write it" (AC ¶ 140).

**Response:** The Commission objects to this Interrogatory because it is not a more practical method for obtaining the information sought than other discovery mechanisms. The Commission further objects to this Interrogatory as not a proper contention interrogatory, and as impermissibly broad and burdensome to the extent it requests that the Commission identify every single fact, document, and witness concerning the subject allegation of the Complaint, and to the extent that it seeks a narrative explanation of such facts, documents, and witnesses. Subject to and without waiving these objections, the Commission further responds by identifying the following representative examples, but by no means all, of witnesses and documents that concern the subject allegations:

**Witnesses:** Ladd, Honig, Ford, Stetson, Ciccarelli, Steven Brandstetter, and Traversa.

**Documents:** Ladd Deposition Exhibits 47, 49-52, 54-55, 57-59, 302; Robert Holmes Deposition Exhibits 14-15, 21; and John Ford Telephone Records (SEC-ATT-E-0012236-13804).

8

**INTERROGATORY NO. 7:**

IDENTIFY all facts, documents, and witnesses that support YOUR contention that Mr. Ladd knew or was reckless in not knowing that any of the INVESTOR DEFENDANTS "were operating as a group" as defined by Section 13(d)(3) of the Securities Exchange Act. (AC ¶ 137)

**Response:** See response to Interrogatory 2.

**INTERROGATORY NO. 8:**

IDENTIFY all members of any "group" that YOU allege invested in MGT that YOU contend Mr. Ladd should have reported the aggregated beneficial holdings of MGT stock in MGT's public filings.

**Response:** The Commission alleges in this case that the following individuals, and their entities, constitute the group whose collective MGT stock ownership MGT and Ladd should have reported in the public filings it made in 2015 and 2016: Honig, Brauser, Stetson, O'Rourke, Groussman, GRQ Consultants, Inc., Grander Holdings, Inc., Stetson Capital Investments Inc., ATC Capital LLC, and Melechdavid, Inc.

**INTERROGATORY NO. 9:**

State with as much specificity as possible what information YOU have been told by any of the INVESTOR DEFENDANTS (1) about Mr. Ladd or MGT or (2) the status of any of the INVESTOR DEFENDANTS as a group as defined by Section 13(d)(3) of the Securities Exchange Act, including any of the INVESTOR DEFENDANTS' subjective beliefs as to whether or not such INVESTOR DEFENDANT was a member of such a group.

**Response:** The Commission objects to this Interrogatory on the grounds that it seeks attorney work product, and because it is not a more practical method for obtaining the information sought than other discovery mechanisms.

Subject to and without waiving these objections, the Commission further responds by referring Defendant to the FBI 302s produced in this matter reflecting statements made by various witnesses, including some of the "Investor Defendants" as defined in the Interrogatories.

**INTERROGATORY NO. 10:**

State with as much specificity as possible YOUR definition of the term "pump and dump," as that term is used in the AMENDED COMPLAINT, including where it is defined, where that definition is found in the law, and what is its legal significance, if any.

**Response:** The SEC refers Defendant generally to SAC ¶ 49 and *Honig*, 2020 WL 906383, at *1 n.1; *see also, e.g., Fezzani v. Bear, Stearns & Co., Inc.*, 716 F.3d 18, 21 (2d

9

Cir. 2013) (alleged scheme in which a security appeared to be "the subject of an active, rising market" but where in fact "the market was principally a series of artificial trades" is a "paradigmatic 'pump and dump' scheme"); *United States v. Salmonese*, 352 F.3d 608, 612 (2d Cir. 2003) (in "the classic 'pump and dump' scheme[,] . . . persons holding certain securities fraudulently inflate their price (the 'pump') in order to sell at an artificial profit (the 'dump')"); *SEC v. Alpine Securities Corp.*, 308 F. Supp. 3d 775, 803 (S.D.N.Y. 2018) ("In a pump-and-dump scheme, conspirators manipulate the price and volume of a particular stock through the dissemination of false and misleading promotional materials"); *SEC v. Carillo Huettel LLP*, 13-cv-1735 (GBD) (JCF), 2017 WL 213067, *1 n.2 (S.D.N.Y. Jan. 17, 2017) (Magistrate Judge Report and Recommendation, approved March 28, 2017).

**INTERROGATORY NO. 11:**

State with as much specificity as possible any and all statements YOU contend are materially misleading in John Ford's articles about MGT published in Seeking Alpha.

**Response:** The Commission contends the following in this case concerning the false and misleading nature of John Ford's articles regarding MGT on the *Seeking Alpha* website. John Ford's November 5, 2012 MGT promotion on *Seeking Alpha* (the "November 5 Promotion") falsely and misleadingly failed to disclose the compensation Ford had received from Defendant Barry Honig to author and publish that piece. The November 5 Promotion instead falsely assured investors that Ford was "express[ing] his own opinions" and was "not receiving compensation for it (other than from Seeking Alpha)." The November 5 Promotion further falsely stated that Ford had "no business relationship with any company whose stock is mentioned in this article" when, in fact, Ford had a business relationship with MGT, as described above.

In addition to similar misstatements about his compensation (that omitted his compensation arrangements with Honig for writing this and other promotional pieces on companies in which Honig's group had an interest), John Ford's April 11, 2013 MGT promotional article on Seeking Alpha (the "April 11 Promotion") also falsely stated that MGT's then-pending patent enforcement action was on the brink of settlement when, in fact, no such settlement was imminent. The April 11 Promotion thus falsely and misleadingly stated that Ford "speculat[ed] that settlement negotiations are occurring with one of the defendants"; that "settlement negotiations are taking place"; that "[i]n my opinion, a settlement between [one of the defendants] and MGT appears inevitable"; and that "it's possible that settlement talks are going on right now" but that, even if not, such a "settlement still appears likely within the next couple of months."

**INTERROGATORY NO. 12:**

State with as much specificity as possible any and all statements YOU contend are materially misleading in any articles about MGT published in February and May 2016, including but not limited to the article described in Paragraph 139 of the AC and the May 9, 2016 StockBeast.com articles about MGT (AC ¶ 146).

10

**Response:** The Commission contends in this case that the following articles about MGT, issued in February and May 2016, were false and misleading. The article that appeared on February 3, 2016 in the internet publication *Small Cap Leader* stated that it had been paid for by "Star Media," when, in fact, it was paid for by Ciccarelli using funds supplied to him for that purpose by MGT, acting through Ladd at Honig's direction. On May 9, 2016, the website *StockBeast.com* published an article regarding the MGT/D-Vasive transaction that repeated the false claim contained in MGT's May 9, 2016 press release that John McAfee had "sold his startup company to Intel for $7.6BB."

**INTERROGATORY NO. 13:**

IDENTIFY all facts, documents, and witnesses that support YOUR contention that the statement in the May 9, 2016 press release that John McAfee "sold his anti-virus company to Intel for $7.6 billion" was materially misleading to investors and that Mr. Ladd knew or should have known that such statement was materially misleading to investors.

**Response:** The Commission objects to this Interrogatory to the extent it attempts improperly to conflate the "materiality" and "scienter" elements of the Commission's fraud claims in this case. The "materiality" and "scienter" elements are separate, distinct, and independent of each other. Thus, for example, the Commission is not required to prove that Defendant Ladd knew that the subject false statement was "material." The Commission further objects to this Interrogatory because it is not a more practical method for obtaining the information sought than other discovery mechanisms. The Commission also objects to this Interrogatory as not a proper contention interrogatory, and as impermissibly broad and burdensome, to the extent it requests that the Commission identify every single fact, document, and witness concerning the subject allegation of the Complaint, and to the extent that it seeks a narrative explanation of such facts, documents, and witnesses. Subject to and without waiving these objections, the Commission further responds by identifying the following representative examples, but by no means all, of witnesses and documents that concern Defendant Ladd's scienter regarding the false and misleading nature of the May 9, 2016 press release, and the materiality of that false press release:

**Witnesses:** Ladd, Kittrell, Guscinski, John McAfee, Holmes, Onghai, and investors who bought MGT stock after reading the press release and/or the *Stock Beast.com* promotion.

**Documents:** Ladd Deposition Exhibits 72, 74-76, 78, 302; Robert Holmes Deposition Exhibits 24, 26-28; Michael Onghai Deposition Exhibit 11; and Bluesheet data showing MGT stock trades by investors on and after May 9, 2016.

In addition to the above witnesses and documents, the Commission refers Defendant to *Honig*, 2020 WL 906383, at *6-9.

**INTERROGATORY NO. 14:**

State with as much specificity as possible which of MGT's promotional activities YOU

11

contend were unlawful, including what aspect of those promotions were unlawful.

**Response:** The Commission objects to this Interrogatory because the term "unlawful" is vague and ambiguous in this context, the term "promotional activities" is undefined, and to the extent this Interrogatory seeks information beyond the scope of the SAC. The SAC alleges specified violations of the federal securities laws, certain of which arise directly from certain violative promotional activities specified in the SAC. The SAC also alleges additional promotional activities in further support of its allegations concerning Defendant Ladd's scienter and the Honig Group's "group" status, which also concern Ladd's and his co-Defendants' violative activities alleged in the SAC. Subject to and without waiving these objections, the Commission responds as follows. See responses to Interrogatories 11 and 12. In addition, the Commission contends that any other MGT promotional activities involving Defendants Ladd or the Investor Defendants during the time period alleged in the SAC were violative in that they were part of Defendants' broader schemes to defraud MGT investors, as alleged in the SAC.

### INTERROGATORY NO. 15:

IDENTIFY all facts, documents, and witnesses that support YOUR contention that Mr. Ladd acted with scienter with respect to any of the allegations in the AMENDED COMPLAINT.

**Response:** The Commission objects to this Interrogatory as vague and overbroad. The Commission further objects to this Interrogatory because it is not a more practical method for obtaining the information sought than other discovery mechanisms. The Commission also objects to this Interrogatory as not a proper contention interrogatory, and as impermissibly broad and burdensome to the extent it requests that the Commission identify every single fact, document, and witness concerning the subject allegations of the AC or SAC, and to the extent that it seeks a narrative explanation of such facts, documents, and witnesses. Subject to and without waiving these objections, the Commission further responds by identifying the following representative examples, but by no means all, of witnesses and documents that concern Defendant Ladd's scienter regarding the fraud allegations in the Commission's Amended Complaint. See responses to Interrogatories 2, 6, 7, and 13 above.

### INTERROGATORY NO. 16:

Do YOU contend that the conduct of Mr. Ladd and the INVESTOR DEFENDANTS caused injury to MGT investors? If the answer is anything but "no," state the nature and IDENTIFY the dollar amount of each category of injury to MGT investors YOU believe Mr. Ladd and each INVESTOR DEFENDANT caused and, for each such category, IDENTIFY the particular investors YOU contend were injured, how they were injured, and how YOU computed the dollar amount of the injury.

**Response:** The Commission objects to this request to the extent it implies that the Commission is required to prove any investor injury or loss in this case, which is not an

12

element of any of the Commission's claims. Subject to and without waiving this objection, the Commission responds as follows. The Commission contends in this case that investors who purchased MGT stock during and in the wake of — or otherwise based upon — the false and misleading MGT Form S-1, filed November 6, 2015, the false and misleading February 3, 2016 *Small Cap Leader* publication, the false and misleading May 9, 2016 press release and *Stock Beast.com* publication, and the false and misleading April 4, 2016 MGT Form 10-K were victims of Defendants' pump and dump schemes. The Commission has not yet calculated the dollar amounts of losses of such victims.

**INTERROGATORY NO. 17:**

IDENTIFY any improper proceeds YOU contend unjustly enriched Mr. Ladd in connection with the allegations in the AMENDED COMPLAINT, including the amount in disgorgement penalties that YOU contend is proper, how YOU have calculated such amount, and why such amounts constitute ill-gotten gains, including any trading by Seymour Ladd or LADDCAP that YOU contend should be included in the disgorgement calculation.

**Response:** The Commission objects to the term "disgorgement penalties" as vague and inaccurate. Subject to and without waiving this objection, the Commission responds as follows. The Commission's total disgorgement (ill-gotten gains) claim against Ladd is $1,230,724.50 (the proceeds of his MGT stock sales in February and May 2016) plus prejudgment interest on that amount, less Ladd's out-of-pocket costs in acquiring those shares, and any proceeds Ladd did not receive from his MGT stock sales in his parents' account (other than the $325,000 of those proceeds he received by check from his mother). That amount constitutes the proceeds of Ladd's MGT stock sales into the fraudulently inflated market for MGT stock in February and May 2016 — after Ladd caused MGT to issue the false November 2015 Form S-1, the false April 2016 Form 10-K, and the false May 9, 2016 press release. In addition, Ladd's May 2016 stock sales were unlawful in that they exceeded the trading volume limitations applicable to Ladd under Section 5 of the Securities Act of 1933. The below table lists — by date and brokerage account — the proceeds of Defendant Ladd's MGT stock sales that form the basis of the Commission's disgorgement claim against him in this case.

| DATE | ACCOUNT | MGT STOCK SALE PROCEEDS |
|---|---|---|
| 2/3/16 | Robert Ladd E*Trade | $ 21,043.16 |
| 2/16/15 | Robert Ladd E*Trade | $ 1,313.50 |
| 2/26/16 | Robert Ladd E*Trade | $ 1,150.00 |
| 3/9/16 | Robert Ladd E*Trade | $ 1,890.00 |
| 4/27/16 | Robert Ladd E*Trade | $ 7,580.16 |
| 4/28/16 | Robert Ladd E*Trade | $ 3,416.00 |
| 4/29/16 | Robert Ladd E*Trade | $ 7,226.30 |
| 5/3/16 | Robert Ladd E*Trade | $ 2,442.00 |
| 5/9/2016 | Robert Ladd E*Trade | $ 24,766.47 |
| 5/10/2016 | Robert Ladd E*Trade | $ 86,003.15 |
| 5/11/2016 | Robert Ladd E*Trade | $233,248.97 |
| 5/12/2016 | Robert Ladd E*Trade | $ 70,429.80 |
| 5/12/2016 | Seymour Ladd TD Ameritrade | $551,979.44 |
| 5/16/2016 | Robert Ladd E*Trade | $ 46,213.20 |
| 5/16/2016 | Seymour Ladd TD Ameritrade | $102,409.19 |
| 5/17/2016 | Robert Ladd E*Trade | $ 28,105.03 |
| 5/17/2016 | Seymour Ladd TD Ameritrade | $ 13,720.00 |
| 5/31/2016 | Robert Ladd TD Ameritrade | $ 27,787.44 |
| | | Total: $1,230,724.50 |

Dated: November 9, 2020

Respectfully submitted,

/s/ Jack Kaufman
Nancy A. Brown
Jack Kaufman
Katherine Bromberg
Securities and Exchange Commission
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-0106 (Kaufman)
Attorneys for Plaintiff Securities and
Exchange Commission

14