UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,           :
                                              :
                    Plaintiff,                :
                                              :      18 Civ. 8175 (ER)
         – against –                          :
                                              :      ECF CASE
BARRY C. HONIG, ROBERT LADD,                  :
ELLIOT MAZA, BRIAN KELLER,                    :
JOHN H. FORD, GRQ CONSULTANTS, INC., and      :
HS CONTRARIAN INVESTMENTS, LLC,               :
                                              :
                    Defendants.               :
------------------------------------------------------------------------x

### DECLARATION OF RICKY TONG IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR REMEDIES AS TO DEFENDANT LADD

I, Ricky Tong, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Fraud Analyst with the United States Securities and Exchange Commission ("Commission"), working in the Division of Enforcement, New York Regional Office. I make this Declaration in further support of the Commission's Motion for Remedies as to Defendant Ladd. I base this declaration on the files and records the Commission has obtained, as further described herein.

2. In the course of my duties with the Commission, I assist in investigations into possible violations of the federal securities laws. My responsibilities include analyzing financial records from banks, brokerage firms, and money service businesses; securities trading records; phone records; books and records of companies; information drawn from publicly available sources, and other information and documents that have been obtained by the Commission's staff during the course of investigations. I have worked with the Commission since November 2015 and have a Master of Science Degree in Information Systems from Brooklyn College, a Bachelor of Science

Degree in Economics from John Jay College of Criminal Justice, and I am a Certified Fraud Examiner (Association of Certified Fraud Examiners).

**Relevant Individuals and Accounts**

3. As part of my work on this matter, I analyzed Ladd's trading records in MGT Capital Investments, Inc. ("MGT") for the time period December 28, 2011 through June 18, 2018, with a special emphasis on certain time periods relevant to the allegations in the Second Amended Complaint filed in this action, including the time period May 9 to May 31, 2016. In performing my analysis of this period, I reviewed the records of the brokerage accounts produced by the broker-dealers below in order to calculate the amount of total realized gains that Ladd obtained from MGT stock sales from May 9, 2016 through May 31, 2016:

| Account Holder Name | Brokerage | Account Number |
|---|---|---|
| Robert B. Ladd ("Ladd E*Trade") | E*Trade | ****8290 |
| Robert B. Ladd (IRA) ("Ladd IRA TDA") | TD Ameritrade | *****2587 |
| Seymour and Shirley Ladd ("Ladd Parents' TDA") | TD Ameritrade | *****9470 |

**Profits Ladd Obtained from MGT Sales from May 9, 2016 through May 31, 2016**

4. Appended hereto as Exhibits A through C are true and correct copies of various account statements for the Ladd-associated accounts for the period from May 1, 2016 to May 31, 2016:

| Exhibit | Account | Time Period |
|---|---|---|
| Exhibit A | Ladd E*Trade | May 1, 2016-May 31, 2016 |
| Exhibit B | Ladd IRA TDA | May 1, 2016-May 31, 2016 |
| Exhibit C | Ladd Parents' TDA | May 1, 2016-May 31, 2016 |

**(a) Ladd's Trading of MGT Shares in His Own Accounts in May 2016**

    **i. E*Trade**

5. Appended hereto as Exhibit D is a true and correct copy of the Form 1099 that Ladd received from E*Trade for the year 2016 ("Form 1099").

6. Between May 9 and May 17, 2016, Ladd sold a total of 460,000 MGT shares out of the Ladd E*Trade account for total proceeds of $487,740.15, after accounting for commissions and fees. (*See* Ex. A; Ex. D.) The Form 1099 reported a cost basis for those 460,000 MGT shares of $175,647.51, resulting in total realized gains of $312,092.64. (*See* Ex. D.)

### ii. TDA

7. Appended hereto as Exhibit E is a true and correct copy of the October 2012 statement for Ladd's IRA TDA account.

8. On May 31, 2016, Ladd sold a total of 11,000 shares of MGT stock out of the Ladd IRA TDA account, for total proceeds of $27,777.81, after accounting for commissions and fees. (Ex. B.) The most recent documentation of the cost basis that I was able to obtain regarding Ladd's sale of those 11,000 shares is the October 2012 statement for the Ladd IRA TDA account. That statement shows that Ladd received 28,000 shares of MGT stock at a cost of $4.689 per share. (Ex. E.). Therefore, the total cost basis for the 11,000 shares that Ladd sold on May 31, 2016 was $51,576.89. When $51,576.89 is subtracted from the gross proceeds of $27,777.81, the net realized loss from Ladd's May 31, 2016 sale of 11,000 MGT shares was $23,799.08.

**(b) Ladd Received $325,000 Profit From His Trading of MGT Shares in His Parents' Account in May 2016**

9. Appended hereto as Exhibit C is a true and correct copy of the account statements for the Ladd Parents' TDA account for the period May 1 to May 31, 2016. Between May 12 and May 17, 2016, 381,863 MGT shares were sold in the Ladd Parents' TDA account for proceeds of $667,584.13, after accounting for commissions and fees. Appended hereto as Exhibit F is a true and correct copy of a check for $325,000 that, I understand, Ladd received from the proceeds of those MGT stock sales, resulting in $325,000 of further profit for Ladd.

10. Therefore, Ladd's total realized gains from sales of MGT stock out of the Ladd E*Trade account, the Ladd IRA TDA account, and the Ladd Parents' TDA account, from May 9 to May 31, 2016, was $613,293.56.

11. As part of my work in this matter, I also reviewed Exhibit 3 to the Declaration of Adam Ford in Support of Robert Ladd's Memorandum of Law in Opposition to Plaintiff's Motion for Relief ("Ford Declaration"). The Ford Declaration states, "Attached hereto as Exhibit 3 is a true and correct copy of a chart illustrating Robert Ladd's out-of-pocket costs in acquiring shares of MGT, along with back-up showing the purchases. The sales of shares are all based on the SEC's exhibits and corresponding information associated with them."

12. The Ford Declaration does not state for which of Ladd's MGT shares Exhibit 3 illustrates his out-of-pocket expenses. Ford Declaration Ex. 3 also does not reference any documentation regarding the amount of money that Ladd paid to acquire his MGT shares, and it does not attach any relevant stock certificates or brokerage documents. Rather, its statements regarding "Robert Ladd's out-of-pocket costs" appear to be based solely on certain Forms 13D that Ladd filed with the Commission (the "Forms 13D") and publicly-filed subscription documents for MGT shares ("Subscription Agreements").

13. Neither the Forms 13D, nor the Subscription Agreements, nor any other document appended to the Ford Declaration indicates any actual purchases or sales of MGT shares. *See* Ford Declaration Ex. 3.

14. Thus, the Ford Declaration includes no document showing any purchases or sales of MGT stock or providing any linkage of any of the MGT shares listed on the Forms 13D and the Subscription Agreements to Ladd's May 2016 MGT stock sales.

15. The brokerage records and tax documents appended hereto as Exhibits A-E reflect the costs that Ladd incurred in obtaining the MGT shares that he sold between May 9 and May 31, 2016.

**MGT Investor Losses**

16. In order to analyze which investors in MGT shares incurred trading losses, I reviewed the Electronic Blue Sheet data files ("Blue Sheets") for MGT stock. Blue Sheets contain both trading data and account holder information provided by the broker-dealer firms who brokered MGT's securities transactions. The Blue Sheets that I reviewed for MGT stock provided various types of trading data, including the account holder for whom specific trades were executed, the trade dates, whether the transaction was a buy or a sell, and the quantities and prices of stock purchased and sold.

17. My analysis of trading records obtained in the Blue Sheets data of MGT stock shows that approximately 298 investors who made their first purchases of MGT stock between May 9, 2016, and May 31, 2016 sold their entire positions in MGT stock by May 31, 2016, for total realized losses of $537,904.14.

18. An additional 116 investors who first purchased MGT stock between May 9, 2016, and May 31, 2016 sold their entire positions in MGT stock between June 1, 2016 and March 31, 2019, for total realized losses of $190,893.75.

19. Thus, in total, this group of approximately 414 MGT Investors who made their first purchases of MGT shares between May 9, 2016 and May 31, 2016 – none of whom made any later MGT stock purchases – divested their entire positions for total realized losses of $728,797.90.

20. In addition, over 27,000 investors made their first purchase of MGT shares between

June 1, 2016 and June 1, 2018. This group of approximately 27,000 investors, who also made no purchases of MGT shares beyond this two-year period, divested their entire positions in MGT stock for total realized losses of more than $47,000,000.

      I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 3, 2024
New York, New York

*/s/ Ricky Tong*
_____
Ricky Tong