UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

            – *against* –

BARRY C. HONIG, MICHAEL
BRAUSER, JOHN STETSON, JOHN R.
O'ROURKE III, ROBERT LADD,
ELLIOT MAZA, BRIAN KELLER, JOHN
H. FORD, ATG CAPITAL LLC, GRQ
CONSULTANTS, INC., HS
CONTRARIAN INVESTMENTS, LLC,
GRANDER HOLDINGS, INC., *and*
STETSON CAPITAL INVESTMENTS
INC.,

                              Defendants.

**<u>OPINION & ORDER</u>**

18 Civ. 8175 (ER)

<u>Ramos, D.J.</u>:

        The Securities and Exchange Commission ("SEC") brought this action against

defendant Robert Ladd as well as defendants Barry C. Honig, Michael Brauser, John

Stetson and John R. O'Rourke III (collectively the "Honig Group") for securities fraud

and other securities laws violations in connection with MGT Capital Investments, Inc.

Doc. 233.  The SEC asserted various theories of liability under the Securities Act of 1933

("Securities Act"), and the Securities Exchange Act of 1934 ("Exchange Act").  *Id.*  The

SEC moved for summary judgment, and the Court granted that motion in part, finding

Ladd liable for securities fraud and other violations.  *See SEC v. Honig*, No. 18 Civ. 8175

(ER), 2023 WL 6386918 (S.D.N.Y. Sept. 29, 2023) (Doc. 333) ("Summary Judgment

Order").

        Pending before the Court is the SEC's motion for remedies seeking civil penalties

and injunctive relief against Ladd.  Doc. 338.  For the reasons explained below, the Court

grants the remedies that the SEC requests, subject to additional modifications.

## I.    BACKGROUND

Familiarity with the prior proceedings in this case is presumed, and the Court incorporates the findings of fact in the Summary Judgment Order by reference.  *See generally SEC v. Honig*, No. 18 Civ. 8175 (ER), 2023 WL 6386918 (S.D.N.Y. Sept. 29, 2023).  For present purposes, the Court provides the following summary.

### A.  Factual Background

At all times relevant to this motion, Robert Ladd was the CEO and director of MGT Capital Investments, Inc.  *Honig*, 2023 WL 6386918, at *1.

Between August 20 and October 2, 2015, Ladd made twenty-five open-market MGT stock purchases in his TD Ameritrade account.  *Honig*, 2023 WL 6386918, at *13.  Ladd failed to file the requisite Form 4 for any of the purchases, and did not otherwise publicly disclose them as he was required to do.[1]  *Id.*

On November 22, 2015 Ladd submitted an online application for a new E*Trade account.  *Honig*, 2023 WL 6386918, at *7.  In the application, he concealed his affiliation with MGT by (1) describing his occupation as "retired"; (2) answering "No" as to whether he was a "Director, or policymaking officer of a publicly-owned company"; and (3) leaving blank the "Employer" section of the form.  *Id.*

In May 2016, Ladd drafted a press release in anticipation of John McAfee, the founder of a cyber-security company that bore his name, becoming the chief executive chairman and CEO of MGT.  *Honig*, 2023 WL 6386918, at *8–9.  On May 9, Ladd issued the press release, which incorrectly stated that "McAfee sold his company to Intel for $7.6 billion."  *Id.*  In reality, McAfee had left the company over a decade before its sale to Intel.  *Id.*  An investor who bought MGT stock on May 16, 2016 later testified that the incorrect statement in the press release was important to his decision to invest because it signaled the talent and success McAfee might bring to MGT.  *Id.* at *10.

---

[1] Section 16(a) of the Exchange Act requires a public company officer to file a Form 4 with the SEC disclosing any purchase or sale of the company's stock by the officer within two business days of the trade execution date.  *Honig*, 2023 WL 6386918, at *11.

From May 9 to 12, 2016, Ladd sold 435,000 MGT shares from his E*Trade account. *Honig*, 2023 WL 6386918, at *9–13. The sale was unregistered, as Ladd did not concurrently file a Form 144. *Id.* at *31–32. Form 144 is intended to provide notice of a proposed sale of securities in accordance with Securities Act 144(h); Form 144 must be filed when share prices are altogether above $50,000 or when there are more than 5,000 shares sold during any three-month period, and it must be filed concurrently with the execution of the sale. *Id.* at *10. Ladd also made an unregistered sale of 340,000 MGT shares from his parents' TD Ameritrade account on May 12, 2016. *Honig*, 2023 WL 6386918, at *10–13. Ladd received $325,000 in gross proceeds from the sale of MGT stock in his parents' account. *Id.*

On May 25, 2016, Ladd filed a Form 144 that stated he intended to sell 41,000 MGT shares from his TD Ameritrade account, and 465,171 shares from his E*Trade account. *Honig*, 2023 WL 6386918, at *10–11. Ladd later admitted he understood at the time that, as an officer or director of MGT, Rule 144 required him to submit a Form 144 reporting his MGT stock sales "contemporaneously with—or before" any such sales. *Id.* Ladd's statements in his May 25 Form 144 were not truthful because Ladd had already sold all of his MGT shares out of his E*Trade account by May 17, 2016. *Id.* at *10. Moreover, Ladd's May 25 Form 144 reported that he had not sold shares in the prior three months, when in reality he had sold 77,472 shares between February 2016 and April 30, 2016, and 466,600 shares in May. *Id.*

On May 31, 2016, Ladd filed a Form 4 falsely stating (1) that he had distributed 465,171 MGT shares "for no consideration pro rata" on May 25, 2016 when he had in reality sold them in multiple sales beginning in December 2015; and (2) that Ladd sold 33,603 MGT shares on May 31, 2016, when he had actually sold 11,000 shares on that date. *Honig*, 2023 WL 6386918, at *11.

**B. Procedural Background**

In September 2018, the SEC filed an enforcement action alleging that Ladd had participated in a "pump and dump" scheme with the Honig Group to unlawfully inflate MGT's stock price.  Doc. 1.

*1. Summary Judgment Order*

On September 29, 2023, the Court granted in part the SEC's motion for summary judgment.  Doc. 333.  The Court's Summary Judgment Order established Ladd's liability for the following securities fraud and other violations of securities laws.

*a.    Securities Fraud*

Ladd was found liable for four violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and SEC Rule 10b-5 promulgated thereunder, and Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q.  *See Honig*, 2023 WL 6386918, at *20–32.  Section 10(b) prohibits using or employing, "in connection with the purchase or sale of any security…any manipulative or deceptive device or contrivance," 15 U.S.C. § 78j(b), while SEC Rule 10b-5 creates liability for a person who makes "any untrue statement of a material fact or…omit[s] to state a material fact" in connection with any such purchase or sale.  *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 397 (S.D.N.Y. 2013).  Section 17(a)(2) of the Securities Act creates liability where a defendant "obtain[ed] money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order make the statements made, in light of the circumstances under which they were made, not misleading."  15 U.S.C. § 77q(a)(2).

First, the SEC was granted summary judgment regarding Ladd's November 22, 2015 online application for an E*Trade account where he (1) falsely described his occupation as "retired"; (2) falsely answered "No" as to whether he was a "Director, or policymaking officer of a publicly-owned company"; and (3) left blank the "Employer" section of the form.  *Honig*, 2023 WL 6386918, at *7.  The Court deemed the misstatements material because a reasonable investor would have found them important.

*Id.* at *20–22.  Moreover, the Court found that the misstatements were made with scienter, noting how Ladd's actual employment was known to him at the time he filled out the form.  *Id.*  Thus, the Court found Ladd liable on the § 10(b) and § 17(a)(2) claims concerning the E*Trade new account form.  *Id.* at *23.

Second, the SEC was granted summary judgment regarding the May 9, 2016 press release which incorrectly stated that "McAfee sold his company to Intel for $7.6 billion." *Honig*, 2023 WL 6386918, at *8.  The Court found that the misstatement was material because the information would affect an investor's decision to buy or sell MGT's securities.  *Id.* at *25–27.  Moreover, the Court found that Ladd consciously misrepresented McAfee's background in the press release.  *Id.* at *27–28.  Specifically, the Court found that Ladd knew that McAfee had previously sold his shares in his prior company because as he acknowledged, "everyone knew."  *Id.*  Thus, scienter was established and the Court found Ladd liable on the § 10(b) and § 17(a)(2) claims concerning the press release.  *Id.*

Third, the SEC was granted summary judgment regarding Ladd's May 25, 2016 Form 144.  *Honig*, 2023 WL 6386918, at *23.  The Court found the misrepresentations on the Form 144 material, citing an MGT investor who had testified that it would have been important for them to know that Ladd had sold hundreds of thousands of shares in May and earlier.  *Id.* at *23–24.  The Court also found that Ladd consciously misbehaved, establishing scienter, because he failed to verify the number of shares that could be sold from his E*Trade account.  *Id.*  Thus, the Court found Ladd liable on the § 10(b) and § 17(a)(2) claims concerning the May 25, 2016 Form 144.  *Id.* at *25.

Fourth, the SEC was granted summary judgment regarding Ladd's May 31, 2016 Form 4.  *Honig*, 2023 WL 6386918, at *28–29.  The Court found Ladd's misstatements material, citing MGT investors who suggested that knowing the accurate information would have been important in their decision-making; while a distribution for no consideration might signal that Ladd felt the stock would increase in value, the sale

exhibited Ladd's "declining confidence" in MGT.  *Id.* at *29.  The Court found that the false statements on the Form 4 resulted from conscious misbehavior or recklessness, noting that Ladd had logged into his E*Trade account three times on the day he submitted the form and thus had access to information contradicting his reporting.  *Id.* at *30. Accordingly, the Court found Ladd liable on the § 10(b) and § 17(a)(2) claims concerning the May 31, 2016 Form 4.  *Id.* at *31.

### b.  Securities Act Section 5 Violations

The Court also found Ladd liable for two unregistered sales of MGT stock between May 9-12, 2016 in violation of Section 5 of the Securities Act:  (1) his sale of 435,000 shares of MGT stock from his own E*Trade account; and (2) his sale of 340,000 MGT shares from his parents' TD Ameritrade Account.  *Honig*, 2023 WL 6386918, at *31–34.  Ladd did not file the requisite Form 144 concurrently with the sales.  *Id.*

### c.  Exchange Act Section 16(a) and Rule 16a-3 Violations

The SEC was also granted summary judgment regarding Ladd's twenty-five open-market stock sales between August 20 and October 2, 2015.  *Honig*, 2023 WL 6386918, at *35.  Ladd failed to file a requisite timely Form 4 as an affiliate of MGT.  *Id.*  The court found that in violation of § 16(a) and Rule 16a-3.  *Id.* at *35–36.

### 2.  Motion for remedies

The SEC now moves for remedies against Ladd.  Doc. 338.  The SEC has foregone any claims against Ladd for which the Court did not find Ladd liable in its Summary Judgment Order.[2]  Doc. 339 at 1 n.1.  For the claims upon which the Court found Ladd liable, the SEC seeks (1) civil penalties for Ladd's fraud, Securities Act Section 5, and Exchange Act Section 16 violations; (2) a bar on Ladd acting as an officer or director of a public company; and (3) an injunction against future violations of federal securities laws.  Doc. 339 at 1.

---

[2] The Court denied the SEC's motion from summary judgment for claims under § 10(b) of the Exchange Act and § 17(a)(2) of the Securities Act relating to MGT's Forms S-1 and 10-K, and under Exchange Act § 13(d) relating to Ladd's percentage of MGT stock ownership.  *Honig*, 2023 WL 6386918, at *36.

In its motion for remedies, the SEC claims Ladd continued to make false statements on behalf of MGT after the Court's Summary Judgment Order.  Doc. 339 at 20–21.  Specifically, the SEC points to MGT's Form 10-Q quarterly report filed on December 13, 2023, which states that "[d]uring the period covered by this report, there were no material changes to the description of legal proceedings…"  *Id.*  The report covered the period ending September 30, 2023, and the Summary Judgment Order was filed September 29, 2023.  *Id.*  Ladd contests the SEC's characterization, pointing to MGT's Form 8-K, which mentions the Summary Judgment Order, Doc. 346 at 14 n.2.

The parties also contest the existence of investor loss, or risk thereof, deriving from Ladd's misconduct.  The SEC alleges that Ladd's conduct not only created a significant risk of investor loss, but also that a number of MGT investors incurred losses.  Doc. 347 at 7–8.  According to Ladd, his conduct did not result in investor losses.  Doc. 346 at 3–4.  In support of his contention, Ladd provides a graph depicting MGT's stock price rising and falling starting in 2016, with a horizontal line inserted by Ladd showing that the price reached the same point in 2018 as it had in April 2016.  Doc. 346 at 4.  The graph provided in Ladd's reply is reproduced below:



Doc. 346 at 4.

## II.    DISCUSSION

The SEC moves for judgment against Ladd, asking the Court to impose the following remedies:  "(1) $1,127,306 in civil money penalties; (2) a bar prohibiting Ladd from acting as an officer or director of a public company; and (3) injunctions against future violations of the federal securities laws for which the Court found Ladd liable in its Summary Judgment Decision."  Doc. 338.  We address each of the SEC's requests for relief in turn.

### A.  Civil Penalties

"Section 20(d)(2) of the Securities Act, 15 U.S.C. 77t(d)(2), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), authorize courts to order civil monetary penalties for violations of the securities laws."  *SEC v. Aly*, No. 16 Civ. 3853 (PGG), 2018 WL 4853031, at *4 (S.D.N.Y. Oct. 5, 2018).  These provisions were enacted pursuant to the Securities Enforcement Remedies and Penny Stock Reform Act of 1990 with the dual goal of punishing individual violators and deterring future violations.  *SEC v. Credit Bancorp, Ltd.*, No. 99 Civ. 11395 (RWS), 2002 WL 31422602, at *1 (S.D.N.Y. Oct. 29, 2002) (citation omitted); *see SEC v. Jadidian*, No. 08 Civ. 8079 (PGG), 2011 WL 1327245, at *8 (S.D.N.Y. Mar. 31, 2011) ("The purpose of these [civil] penalties is to create meaningful financial disincentives to participating in fraudulent conduct.").

The Securities Enforcement Remedies and Penny Stock Reform Act "provides for three tiers of civil monetary penalties, to be determined 'in light of the facts and circumstances.'"  *SEC v. Paulsen*, No. 18 Civ. 6718 (PGG), 2021 WL 5014886, at *3 (S.D.N.Y. Oct. 28, 2021) (citing 15 U.S.C. 77t(d)(2)(A); 15 U.S.C. § 78u(d)(3)(B)(i)).  A first-tier penalty of up to $5,000 per violation (as adjusted for inflation) may be imposed for any violation committed by a natural person.  *SEC v. Razmilovic*, 738 F.3d 14, 38 (2d Cir. 2013).  A second-tier penalty of up to $50,000 per violation (as adjusted for inflation), or the gross amount of the pecuniary gain resulting from the violation, may be imposed where the violation "involved fraud, deceit, manipulation, or deliberate or

reckless disregard of a regulatory requirement." *Id.* A third-tier penalty of up to $100,000 per violation (as adjusted for inflation), or the gross amount of the pecuniary gain resulting from the violation, may be imposed where (1) the defendant engaged in conduct involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and (2) that conduct also "directly or indirectly resulted in substantial losses or *created a significant risk of substantial losses to other persons*." *Id.* (emphasis added).

The SEC asks for the maximum penalty amounts that were in effect in September 2023, when the Court issued its Summary Judgment Order. Doc. 339 at 15 n.6. Under the 2023 inflation adjustment, the penalty tiers for violations which occurred following November 3, 2015 were (1) $11,162 for first-tier violations; (2) $111,614 for second-tier violations; and (3) $223,229 for third-tier violations. Doc. 339 at 14–15 (citing SEC Adjustments to Civil Monetary Penalty Amounts, 2024 WL 111023, at *1–2 (SEC Release, Jan. 5, 2024)).

"Aside from the maximum statutory restrictions, the appropriate civil penalty is within the discretion of the district court." *SEC v. Lek Sec. Corp.*, 612 F. Supp. 3d 287, 295 (S.D.N.Y. 2020) (internal quotation marks and citation omitted). In determining the appropriate civil monetary penalty, courts in this Circuit consider:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*SEC v. Fowler*, 6 F.4th 255, 266 (2d Cir. 2021) (internal quotation marks and citation omitted); *see also SEC v. Haligiannis,* 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007). The factors, often called the *Haligiannis* factors, are neither exhaustive nor "to be taken as talismanic." *Lek Sec. Corp.*, 612 F. Supp. 3d at 295. "Other relevant considerations include a defendant's financial condition, a defendant's failure to admit wrongdoing, and a

defendant's lack of cooperation with authorities." *Id.* (internal quotation marks and citation omitted). Additionally, the "brazenness, scope, and duration" of the securities violations may warrant "a significant penalty." *SEC v. Rajaratnam*, 918 F.3d 36, 45–46 (2d Cir. 2019). In all, the "[c]ourt has broad discretion to impose the civil monetary penalties it deems appropriate in the instant case." *SEC v. Shkreli*, No. 15 Civ. 7175 (KAM) (JRC), 2022 WL 541792, at *13 (E.D.N.Y. Feb. 23, 2022) (citing *SEC v. de Maison*, No. 18-2564, 2021 WL 5936385, at *1 (2d Cir. Dec. 16, 2021).

Moreover, it is within a court's discretion to treat each fraudulent transaction as a discrete violation. *See SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 288 n.7 (2d Cir. 2013) ("[W]e find no error in the district court's methodology for calculating the maximum penalty by counting each late trade as a separate violation."); *see, e.g.*, *Tourre*, 4 F. Supp. 3d at 592–94 (imposing separate penalties for each of defendant's seven false statements).

Ladd addresses all of the SEC's requested penalties in the aggregate, arguing that the sum total of his illicit conduct warrants, at most, a single first-tier penalty. Doc. 346 at 6–11. First, Ladd asserts that the SEC's requested penalties represent an "improper end-run" around the Second Circuit's cabining of disgorgement in *SEC v. Govil*, 86 F.4th 89 (2d Cir. 2023). Doc. 346 at 7. In *Govil*, the Second Circuit held that disgorgement awards are limited by equitable principles relating to harm and victims. 86 F.4th at 111. As the SEC notes in reply, the *Govil* court's discussion of equitable principles and victims applied solely to disgorgement, which is an equitable remedy, in contrast to civil penalties, which are a legal remedy. *See Govil*, 86 F.4th at 97 n.6 ("Govil did not appeal the [civil] penalty, so that decision is not before us."). Thus, the Court declines to extend *Govil*'s reasoning concerning disgorgement to the instant matter.

Ladd also cites *SEC v. Findley* and *SEC v. Snyder* in arguing that his conduct warrants a lesser penalty than the SEC proposes. Doc. 346 at 8. However, in both *Findley* and *Snyder* the Court cited the defendants' poor financial condition as a

mitigating factor. *See SEC v. Findley*, No. 20 Civ. 0397 (SRU), 2024 WL 707264, at *11
(D. Conn. Feb. 21, 2024) (finding that defendant's poor "financial status…warrants
reduction from the maximum permissible civil penalty."); *see SEC v. Snyder*, No. 03 Civ.
04658 (KPE), 2006 WL 6508273, at *12 (S.D. Tex. Aug. 22, 2006) (finding that
"[d]efendant's current financial situation indicate that imposing civil penalties would be
inappropriate.").  Importantly, here, Ladd does not argue that his financial condition
warrants a lesser penalty.

Ladd also cites *SEC v. Opulentica, LLC*, where the court imposed a penalty of just
$120,000 for the defendant's extensive fraudulent conduct.  Doc. 346 at 10.  However, in
*Opulentica* the court considered the burden of other financial aspects of the remedies,
such as disgorgement, in ordering a lesser civil penalty.  *SEC v. Opulentica, LLC*, 479 F.
Supp. 2d 319, 331–332.  In contrast, here, the SEC is not seeking disgorgement.

Finally, Ladd distinguishes his conduct from the conduct at issue in *SEC v.
Genovese* and *SEC v. Jean Pierre*, where the courts awarded substantial civil penalties.
Doc. 346 at 9–10 (citing *SEC v. Genovese*, 53 F. Supp. 3d 24, 46–47 (S.D.N.Y. 2021) and
*SEC v. Jean-Pierre*, No. 12 Civ. 8886 (LGS), 2015 WL 1054905, at *1, *11–12 (S.D.N.Y.
Mar. 9, 2015)).  Ladd claims that the courts in *Genovese* and *Jean Pierre* highlighted the
substantial losses suffered by investors in awarding civil penalties against the defendants,
and thus his conduct, which he claims did not cause any investor loss, does not warrant
substantial penalties.  Doc. 346 at 10.  However, third-tier penalties are available not only
in situations of actual investor loss, but also where the defendant's conduct created a
significant risk thereof.  *See* 15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii).  In
fact, contrary to Ladd's claim, the *Jean Pierre* court noted the "absence of evidence of
any monetary loss to innocent third parties" in granting a total $1,425,000 in civil
penalties.  2015 WL 1054905, at *12.

After analyzing the six violations for which Ladd was found liable and the SEC
seeks remedies, the Court finds that the imposition of a civil penalty of $1,121,144

against Ladd is warranted—$892,916 (223,229 x 4) in total third-tier penalties for the securities fraud violations, $223,228 (111,614 x 2) in total second-tier penalties for the two violations of Section 5, and a $5,000 first-tier penalty for the Section 16 violations.

     *1.  E*Trade New Account Form*

     In the Summary Judgment Order, the Court found that Ladd was liable under Section 10(b) of the Exchange Act and Rule 10b-5(b), and Section 17(a)(2) of the Securities Act for misstating his background in his November 2015 E*Trade account application. *Honig*, 2023 WL 6386918, at *22–23. The SEC seeks a single third-tier penalty in the amount of $223,229 for Ladd's false E*Trade account application. Doc. 339 at 16.

     Third-tier penalties may be imposed where (1) the defendant engaged in conduct involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and (2) that conduct also "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Razmilovic*, 738 F.3d at 38. Here, Ladd's misconduct regarding the press release satisfies the statutory requirements for a third-tier penalty.

     First, the Summary Judgment Order found that Ladd had misstated his background with scienter, rejecting Ladd's assertion that his misstatements were merely clerical errors. *See Honig*, 2023 WL 6386918, at *22. Hence, the Court now finds that Ladd's misstatements on the E*Trade account form were made with "fraud, deceit, manipulation, or a deliberate or reckless disregard of a regulatory requirement." *See Razmilovic*, 738 F.3d at 38.

     Second, the SEC argues that Ladd's false account form created a significant risk of substantial loss to MGT investors, Doc. 339 at 17, while Ladd asserts that his fraudulent conduct did not harm any investors or create a significant risk thereof. Doc. 346 at 10–11. The SEC cites the Court's finding in its Summary Judgment Order that "it is so obvious that investors would have found Ladd's misstatements" on the E*Trade

account form "important" because the false form allowed Ladd to skirt stock volume limitations and reporting requirements. Doc 339 at 17 (citing *Honig*, 2023 WL 6386918, at *22). In contrast, Ladd relies on a graph which shows MGT stock price rising and falling between 2016 and 2018, asserting that "any trader who purchased MGT stock *after* Ladd's sales of stock would have received at least unrealized gains from those purchases for the next two years." Doc. 346 at 4 (alteration in original).[3] The Court is not convinced by Ladd's argument concerning investor losses. At the very least, his misstatements and omissions on the account form created a significant *risk* of substantial losses to the investors because a truthful form would have alerted E*Trade to Ladd's relationship with MGT and thus subjected his trades to regulatory restrictions. *See Honig*, 2023 WL 6386918, at *22. Thus, the statutory requirements for a third-tier penalty are satisfied.

The Court moreover finds that the *Haligiannis* factors weigh towards a maximal third-tier penalty for Ladd's false account form. Under the first factor, Ladd's misstatements on the form were indeed egregious. As the Court found in its Summary Judgment Order, Ladd's blatant misrepresentations on the form allowed him to hide his MGT affiliate status from E*Trade, allowing him to skirt both reporting and volume limitations. *See Honig*, 2023 WL 6386918, at *22. Under the second factor, the Court also found in its Summary Judgment Order that Ladd's misstatements on the account form were made with scienter. *Id.* Under the third factor, Ladd's misstatements on the form effectively removed his trades from a number of regulatory requirements, thereby risking investor loss, as previously discussed. *See Id.* Under the forth factor, Ladd's repeated misrepresentations, as outlined below, weigh in favor of a higher penalty. Finally, Ladd has made no showing that his financial condition warrants a lesser penalty.

---

[3] Ladd also cites the SEC's decision not to seek disgorgement as an acknowledgement that "Ladd's conduct did not result in investor losses." Doc. 346 at 4. Ladd does not cite any case law in support of this assertion, and the Court is not convinced that the SEC's decision to pursue one remedy or another conclusively bears on the harm caused by Ladd's misconduct.

13

Accordingly, all of the factors weigh in favor of imposing a maximal penalty, and the Court finds that a third-tier penalty in the amount of $223,229 is warranted for Ladd's false E*Trade account application.

### 2. May 9, 2016 MGT Press Release

In the Summary Judgment Order, the Court found that Ladd was liable under Section 10(b) of the Exchange Act and Rule 10b-5(b), and Section 17(a)(2) of the Securities Act for misrepresenting John McAfee's background in the May 2016 MGT press release. *Honig*, 2023 WL 6386918, at *25–28. The SEC seeks a $223,229 third-tier penalty for the false press release. Doc. 339 at 16.

Ladd's misconduct regarding the press release satisfies the third-tier penalty statutory requirements of conduct (1) involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" (2) that "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *See Razmilovic*, 738 F.3d at 38. As to Ladd's deceit, the Court found in the Summary Judgment Order that "it is undisputed that Ladd knew his statement [in the press release] was inaccurate." *Honig*, 2023 WL 6386918, at *28. As for investor loss, the MGT stock chart provided by Ladd demonstrates an upward spike shortly after the May 2016 press release followed by a precipitous decline. Doc. 346 at 4; Doc. 347 at 8 n.4. The Summary Judgment Order found that the misstatements in the release were "obviously important" to a reasonable investor, and could influence an investor's decision to buy the company's securities. *Honig*, 2023 WL 6386918, at *27. Accordingly, the SEC has sufficiently shown that Ladd's press release created a significant risk of substantial investor losses.

Turning to the *Haligiannis* factors, Ladd's conduct was egregious. Ladd misstated McAfee's background despite knowing his statement was inaccurate, inflating the MGT stock price in the following days and weeks. *See Honig*, 2023 WL 6386918, at *25–28. The second factor concerns Ladd's scienter, which the Court found was easily

14

satisfied in the Summary Judgment Order. *Id.* at *27–28. The next factor asks whether Ladd's conduct created substantial losses or the risk thereof for others. As outlined above, his misstatement in the release created a risk of substantial loss for investors who relied on it. *See Id.* at *25–27. As for the fourth factor, Ladd's misconduct was recurrent, as shown by the number of other violations for which he was found liable in the Summary Judgment Order. Finally, under the fifth factor, Ladd has not alleged financial hardship. All of the factors weigh towards a maximal penalty. Accordingly, the Court finds that a third-tier penalty in the amount of $223,229 is warranted for Ladd's press release misrepresentation.

### 3. May 25, 2016 Form 144

In the Summary Judgment Order, the Court found that Ladd was liable under Section 10(b) of the Exchange Act and Rule 10b-5(b), and Section 17(a)(2) of the Securities Act for misstating the timing and amount of his stock sales in a May 25, 2016 Form 144. *Honig*, 2023 WL 6386918, at *23–25. The SEC seeks a $223,229 third-tier penalty for Ladd's May 25 false Form 144. Doc. 339 at 16.

Ladd's misconduct regarding the May 25 Form 144 satisfies the third-tier penalty statutory requirements. *See Razmilovic*, 738 F.3d at 38. The Summary Judgment Order found that Ladd "consciously misbehaved" when he failed to verify the number of shares he had already sold before filing his Form 144, *Honig*, 2023 WL 6386918, at *24, satisfying the requisite disregard of a regulatory requirement. As for the second statutory element, the Court cited in the to an MGT investor who would have questioned MGT's prospects if he knew about the sales Ladd omitted from the Form 144. *Id.* Ladd's misrepresentations thus created a significant risk of substantial investor losses by withholding pertinent information.

Turning to the first *Haligiannis* factor, Ladd's misrepresentation of his sales in the Form 144 was egregious. He claimed that he intended to sell 465,171 shares from his E*Trade account when he "had already sold *all* of his MGT shared out of his E*Trade

account." *Honig*, 2023 WL 6386918, at *24 (emphasis added). The second factor concerns the degree of Ladd's scienter. As the Court found, Ladd "had knowledge that it would be impossible to sell" the shares reported in the Form 144, thereby establishing scienter. *Id.* Under the third factor, as outlined above, Ladd's omissions and misstatements on the May 25 Form 144 created the risk of substantial losses to investors. Under the forth factor, Ladd's misconduct was recurrent. All of the factors weigh in favor of a maximal penalty. Accordingly, the Court finds that a third-tier penalty in the amount of $223,229 is warranted for Ladd's false May 25 Form 144.

> ### 4. *May 31, 2016 Form 4*

In the Summary Judgment Order, the Court found that Ladd was liable under Section 10(b) of the Exchange Act and Rule 10b-5(b), and Section 17(a)(2) of the Securities Act for misstating the timing and amount of his stock sales in a May 31, 2015 Form 4. *Honig*, 2023 WL 6386918, at *28–31. Specifically, Ladd represented in the Form 4 that he had distributed MGT shares for no consideration on May 25, 2016, when he had actually sold the shares over the prior months. *Id.* at *11. The SEC seeks a $223,229 third-tier penalty for Ladd's false May 31 Form 4. Doc. 339 at 16.

Ladd's misconduct regarding the May 31 Form 4 satisfies the third-tier penalty statutory requirements. *See Razmilovic*, 738 F.3d at 38. The Summary Judgment Order found that Ladd "knew" he had not sold the shares in the manner represented in the Form 4. *Honig*, 2023 WL 6386918, at *30. Ladd was, "at the very least," reckless, thus satisfying the requisite disregard of a regulatory requirement. *Id.* As for the second statutory element, Ladd's misstatements in the Form 4 indeed created a significant risk of substantial losses to others; as the Court noted in its Summary Judgment Order, a number of investors suggested that the sales misrepresented in the May 31 Form 4 would have been important to their decision-making. *Id.* at *29.

Turning to the first *Haligiannis* factor, Ladd's misstatements in the May 31 Form 4 were egregious. The form contained multiple material misrepresentations; Ladd misled

investors to believe "he was a net acquirer of MGT stock" by both characterizing his sale as a distribution for no consideration, and by failing to disclose his other sales earlier in May. *Honig*, 2023 WL 6386918 at *29–30. Under the second factor, the Summary Judgment Order found that Ladd's behavior regarding the Form 4 exhibited scienter. *Id.* at *30–31. Under the third factor, as outlined above, Ladd's omissions and misstatements on the May 31 Form 4 created the risk of substantial losses to investors. Under the forth factor, Ladd's misrepresentations were recurrent. All of the factors weigh in favor of a maximal penalty. Accordingly, the Court finds that a third-tier penalty in the amount of $223,229 is warranted for Ladd's false May 31 Form 4.

###### 5. *Securities Act Section 5 Violations*

In the Summary Judgment Order, the Court found that Ladd was liable under Section 5 of the Securities Act for two unregistered sales of MGT stock: (1) his sales of his own MGT stock during the week of May 9-12; and (2) his sales from his parents' account. *Honig*, 2023 WL 6386918, at *31–34. Specifically, he failed to file the requisite Form 144 to record the sales. *Id.* The SEC seeks two second-tier penalties—one for each violation. Doc. 339 at 19.

A second-tier penalty may be imposed where the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Razmilovic*, 738 F.3d at 38. Ladd was aware that, as an officer of MGT, he was required to submit a Form 144 contemporaneously reporting any MGT stock sales. *Honig*, 2023 WL 6386918, at *10. The Court found that he failed to do so in connection to the sales from his and his parents' accounts. *Id.* at *31–34. Accordingly, at the very least, Ladd demonstrated a reckless disregard for the Form 144 reporting requirement.

Turning to the first *Haligiannis* factor, Ladd's failure to submit the requisite Form 144 for the two series of sales was egregious. Despite an admitted awareness of the requirement, Ladd failed to report the sales, for which he received hundreds of thousands of dollars. *See Honig*, 2023 WL 6386918 *10, *31–34. Since the Section 5 violations

were strict liability claims, the Court did not consider scienter in its Summary Judgment Order. *See id.* at *31. Under the second factor, the Court notes Ladd's admission that he was aware of the reporting requirement and his subsequent failure to report the sales. *See id.* at *10, *31–34. Under the third factor, Ladd withheld pertinent information from investors, and thus created a risk of investor loss. Under the fourth factor, Ladd's misconduct was recurrent. The factors weigh in favor of maximal penalties. Accordingly, the Court finds that two second-tier penalties in the amount of $111,614 each ($223,228 in sum) are warranted for Ladd's Section 5 violations.

### 6. *Exchange Act Section 16(a) and Rule 16a-3 Violations*

In the Summary Judgment Order, the Court found that Ladd was liable under Section 16 of the Exchange Act and Rule 16a-3 for his failure to file a Form 4 for purchases of MGT stock on at least 25 occasions. *Honig*, 2023 WL 6386918, at *35–36. The purchases at issue occurred between August 20 and October 2, 2015. *Id.* at *13. The SEC seeks a single first-tier penalty for the violations. Doc. 339 at 19–20.

A first-tier penalty may be imposed for any violation and is thus permissible for any one of Ladd's Section 16 violations. *See Razmilovic*, 738 F.3d at 38. The SEC seeks a single penalty as opposed to twenty-five "in light of the significant penalties the SEC seeks for Ladd's other violations in this case…" Doc. 339 at 19–20. The Court agrees with the SEC's reasoning that a single penalty is appropriate. *See Opulentica*, 479 F. Supp. 2d at 332 (declining to grant a more substantial civil penalty "in view of the size of other financial components of the judgment…"). However, the Court will only impose a penalty in the amount of $5,000 for the Section 16 violations, and not $11,162 as the SEC requests.[4]

---

[4] The SEC seeks $11,162 as a first-tier penalty for the Section 16 violations, relying on the 2023 civil penalty inflation adjustment (as they do for Ladd's other violations). Doc. 339 at 19. However, under the 2023 penalty inflation adjustment, the $11,162 first-tier statutory maximum exists for violations occurring after November 2, 2015. Doc. 339 at 14–15 (citing SEC Adjustments to Civil Monetary Penalty Amounts, 2024 WL 111023, at *1-2 (SEC Release, Jan. 5, 2024)). Since the Section 16 violations occurred before the

**B. Officer-and-Director Bar**

The SEC seeks to permanently bar Ladd from acting as an officer or director of a public company. Doc. 339 at 20. Ladd argues that the bar is not warranted. Doc. 346 at 11.

Sections 21(d)(2) of the Exchange Act and 20(e) of the Securities Act authorize district courts to bar a person who violated federal securities law from acting as an officer or director of a public company. *SEC v. Cattlin*, No. 21 Civ. 5294 (ARR) (JRC), 2024 WL 1259101, at *11 (E.D.N.Y. Mar. 8, 2024). "[T]he statutory warrant for a director-officer bar only requires, in pertinent part, a finding that the defendant's conduct demonstrates 'unfitness to serve as an officer or director.'" *SEC v. Gupta*, No. 11 Civ. 7566 (JSR), 2013 WL 3784138, at *3 (S.D.N.Y. July 17, 2013*), aff'd* 569 F. App'x 45 (2d Cir. 2014). The Sarbanes-Oxley amendments lessened the prior requirement that a person against whom the officer-director bar was sought be "*substantially* unfit," thereby demonstrating Congressional intent "to lower the threshold of misconduct for which courts may impose director and officer bans." *SEC v. Bankosky*, 716 F.3d 45, 48 (2d Cir. 2013) (emphasis added).

The Court has "substantial discretion in deciding whether to impose a bar to employment in a public company." *SEC v. Gallison*, No. 15 Civ. 5456 (GBD) (SDA), 2023 WL 3090857, at *3 (S.D.N.Y. Apr. 26, 2023). Courts in this Circuit typically apply the following pre-Sarbanes-Oxley set of factors when considering an officer-director bar, despite the now lower standard: "(1) the egregiousness of the underlying securities law violation; (2) the defendant's recidivism; (3) the defendant's role or position in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *Gupta*, 2013 WL 3784138, at *9 (citing *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)).

---

covered time period, the maximum first-tier penalty would be lower than the amount sought by the SEC. Regardless, "[a]side from the maximum statutory restrictions, the appropriate civil penalty is within the discretion of the district court." *Lek Sec. Corp.*, 612 F. Supp. 3d at 295 (citation omitted).

Under the first factor, Ladd committed egregious violations of the Securities Act and Exchange Act, as discussed above. Under the second factor, Ladd violated securities laws and regulations in repeated and varied ways. However, he is not a recidivist for the purposes of considering an officer-director bar because he has not been found liable for any violations before or since the Summary Judgment Order.[5] *See SEC v. SeeThruEquity, LLC*, No. 18 Civ. 10374 (LLS), 2022 WL 171196, at *4 (S.D.N.Y. Jan. 19, 2022). Under the third factor, Ladd was a high-ranking officer, as the CEO of MGT. *Honig*, 2023 WL 6386918 at *1; *see Cattlin*, 2024 WL 1259101, at *11 (noting, in granting an officer-director bar, that the defendant was CEO). Under the fourth factor, Ladd consistently violated securities laws with scienter, as previously discussed. Under the fifth factor, Ladd's violations amounted to hundreds of thousands of dollars in unregistered sales that were shielded from reporting and restrictions. *See Honig*, 2023 WL 6386918, at *28. Finally, under the sixth factor, Ladd's repeated violations of securities law evince some likelihood that the misconduct will reoccur. However, Ladd acknowledges "the gravity of the liability finding against him" and maintains he is "focused on providing proper leadership and maintaining good governance policies wherever he works." Doc. 346 at 12–13.

Before "imposing a permanent bar, the court should consider whether a conditional bar (e.g., a bar limited to a particular industry) and/or a bar limited in time (e.g., a bar of five years) might be sufficient, especially where there is no prior history of unfitness." *Shkreli*, 2022 WL 541792, at *10 (citing *Patel*, 61 F.3d at 142). Thus, "[a]lthough it is not essential for a lifetime ban that there be past violations, . . . it is essential, in the absence of such violations, that a district court articulate the factual basis for a finding of the likelihood of recurrence." *Patel*, 61 F.3d at 142.

---

[5] The SEC claims for the first time in its motion for remedies that Ladd continues to make materially false public statements, citing MGT's December 13, 2023 quarterly report for the period ending September 30, 2023. Doc. 339 at 21. The Court declines to consider the allegation as Ladd has not been found liable for the conduct.

Ladd cites a number of cases in arguing against the imposition of an officer-director bar.  First, he cites *SEC v. Johnston*, where the Court granted an officer-director bar—albeit a bar limited to a term of years—for a CFO who produced misleading disclosures at his company.  Doc. 346 at 12–13 (citing 368 F. Supp. 3d 247, 253 (D. Mass. 2019)).  The *Johnston* Court noted in pertinent part that the claims at issue were the defendant's first securities offenses.  368 F. Supp. 3d at 251.

Ladd also cites *SEC v. Snyder*, where the court declined to issue an officer-director bar.  Doc. 346 at 13 (citing 2006 WL 6508273, at *9).  However, the *Snyder* court emphasized in pertinent part that the defendant had "no realistic chance of ever again obtaining a position as an officer or director of a public company," noting the strictly lower-level employment the defendant had secured following the court's finding of liability.  *Id.* at *8.  Here, Ladd not only fails to allege a similar situation, he is still CEO of MGT.[6]  Doc. 348-1 at 4–5.

Here, there is no finding that Ladd violated any securities law or regulations prior to the period at issue.  The Court agrees that in instances where the defendant is not a repeat offender, like in *Johnston*, a time-limited ban may be more appropriate.  His "conduct does not warrant a permanent exclusion from the corporate suite" but a five-year bar should be sufficient to impress upon Ladd the gravity of his misconduct and deter future violations.  *Johnston,* 368 F. Supp. 3d at 253.  "Such a penalty will strike an appropriate balance between protecting investors and avoiding an unduly harsh permanent ban from any future employment in the securities industry."  *Id.*  Accordingly, the Court finds that a five-year officer-director bar is warranted.

### C.  Injunction Against Future Violations

"Section 20(b) of the Securities Act and Section 21(d) of the Exchange Act authorize this Court to issue injunctive relief for violation of those Acts."  *SEC v.*

---

[6] Ladd is listed as MGT's CEO in the Form 8-K filed by MGT in February 2024.  *See* Doc. 348-1 at 4–5.

*Gallison*, No. 15 Civ. 05456 (GBD) (SDA), 2023 WL 3004882, at *2 (S.D.N.Y. Feb. 4, 2023).  "The primary consideration for imposing [such] an injunction is whether there is a reasonable likelihood that the wrong will be repeated."  *SEC v. Gallison*, No. 15 Civ. 5456 (GBD) (SDA), 2023 WL 3090857, at *2 (S.D.N.Y. Apr. 26, 2023).

The SEC requests that Ladd be permanently enjoined from engaging in future violations of the securities laws and regulations under which the Court found him liable: Sections 10(b) and 16(a) of the Exchange Act (and Rules 10b-5 and 16a-3) and Sections 5 and 17(a)(2) of the Securities Act.  Doc. 339 at 22.  Ladd disagrees, arguing that the SEC lacks the statutory authority to make such a request and that the SEC fails to demonstrate the requisite likelihood that Ladd's misconduct will recur.  Doc. 346 at 13–16.

First, the Court finds that the SEC is within its statutory authority to seek this relief.  *See SEC v. Tourre*, 4 F. Supp. 3d 579, 598 (S.D.N.Y. 2014) ("Both the Securities Act and the Exchange Act also permit a court to order injunctive relief in the face of a violation of any of their provisions." (citing 15 U.S.C. § 77t(b); 15 U.S.C. §§ 78u(d),(e), 78u-1)).

Next, a "court makes a prediction of the likelihood of future violations based on an assessment of the totality of the circumstances surrounding the particular defendant and the past violations that were committed."  *Cattlin*, 2024 WL 1259101, at *10 (internal quotations and citation omitted).  In the context of an obey-the-law injunction, courts in this Circuit consider the following factors in determining whether there is a realistic likelihood of future violations:  (1) the degree of scienter involved; (2) the sincerity of defendant's assurances against future violations; (3) the isolated or recurrent nature of the infraction; (4) defendant's recognition of the wrongful nature of his conduct; and (5) the likelihood, because of defendant's professional occupation, that future violations might occur.  *Gallison*, 2023 WL 3090857, at *2.

Here, the factors weigh in favor of granting a permanent injunction.  First, as previously detailed, the Court found that Ladd committed a number of securities violations with scienter.  Second, the Court is unable to evaluate the sincerity of Ladd's assurances against future violations on this record.  Ladd maintains that he is focused on "good governance" in his work going forward, citing to a declaration which does not appear in the docket.  Doc. 346 at 12–13.  The SEC asserts that Ladd's omission of the Summary Judgment Order from MGT's December 2023 Form 10-Q undermines his claims of reform.  Doc. 347 at 10.  Because the record does not make clear the sincerity of Ladd's claims of redemption, this factor weighs neither for nor against the injunction.  Third, Ladd's violations were recurrent, as outlined above.  Fourth, the record does not indicate whether or not the defendant truly recognizes the gravity of his misconduct, and thus the factor weighs neither for nor against the injunction.  Fifth, as of February 2024, Ladd remains CEO of MGT.  Doc. 348-1 at 4–5.  Ladd cites *SEC v. Tourre* as an instance where the court declined to impose a permanent injunction after finding the defendant liable for securities law violations.  Doc. 346 at 16 (citing 4 F. Supp. 3d 579, 598).  However, in *Tourre* the court noted that the defendant "has not worked in the securities industry" in years.  4 F. Supp. 3d at 598.  Here, as CEO of MGT, Ladd remains in a position where he might conduct future violations.  *See Cattlin*, 2024 WL 1259101, at *10 ("having served as a CEO of two corporations, [defendant] may be in a position in the future to have the opportunity to commit further violations.")

Accordingly, a permanent injunction is warranted, and the Court enjoins Ladd from violating Sections 10(b) and 16(a) of the Exchange Act (and Rules 10b-5 and 16a-3) and Sections 5 and 17(a)(2) of the Securities Act.

**CONCLUSION**

The SEC's motion for relief is granted in part.  Civil penalties in the amount of $1,121,144 are imposed:  $892,916 (223,229 x 4) in total third-tier penalties for the securities fraud violations, $223,228 (111,614 x 2) in total second-tier penalties for the violations of Section 5, and a $5,000 first-tier penalty for the Section 16 violations. Separately, the Court imposes a five-year officer-director bar and a permanent injunction against future violations of Sections 10(b) and 16(a) of the Exchange Act (and Rules 10b-5 and 16a-3 thereunder) and Sections 5 and 17(a)(2) of the Securities Act.

The SEC shall by July 26, 2024 file a proposed final judgment.  Ladd shall by August 2, 2024 file any objections.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 338.

It is SO ORDERED.

Dated:    July 18, 2024
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.