UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────x

SECURITIES AND EXCHANGE COMMISSION,    :
                                       :
                      Plaintiff,       :
                                       :   18 Civ. 8175 (ER)
        – against –                    :
                                       :   ECF CASE
BARRY C. HONIG, ROBERT LADD,           :
ELLIOT MAZA, BRIAN KELLER,             :
JOHN H. FORD, GRQ CONSULTANTS, INC., and :
HS CONTRARIAN INVESTMENTS, LLC,        :
                                       :
                      Defendants.      :
─────────────────────────────────────────x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR FINAL JUDGMENT AGAINST DEFENDANT BRIAN KELLER**

SECURITIES AND EXCHANGE COMMISSION
Jack Kaufman
100 Pearl Street, Suite 20-100
New York, New York 10004
(212) 336-0106

Katherine Bromberg
33 Arch Street
24th Floor
Boston, MA 02110
(617) 573-8914

Attorneys for Plaintiff

July 25, 2025

TABLE OF CONTENTS

<u>PAGE</u>

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    The Complaint's Allegations Establish Keller's Role in the BioZone Fraud ............... 2

    II.   The Requested Third-Tier Civil Money Penalty is Commensurate with Penalties Imposed Against other Defendants in this Action .......................................................... 4

CONCLUSION ............................................................................................................................... 7

TABLE OF AUTHORITIES

**Cases**                                         **Page**

*SEC v. Bajic*,
  No. 20 Civ. 0007 (LGS), 2023 WL 6289953 (S.D.N.Y. Sept. 27, 2023) .................................. 5-6

*SEC v. Rust*,
  No. 16 Civ. 3573 (ER), 2021 WL 2850615
  (S.D.N.Y. July 8, 2021) (Ramos, J.) ....................................................................................... 5, 6

*SEC v. Universal Express, Inc.*,
  646 F.Supp.2d 552 (S.D.N.Y. 2009) ............................................................................................ 4

*SEC v. Universal Express, Inc.*,
  438 Fed.Appx. 23 (2d Cir. 2011) ................................................................................................. 4

**Statutes**

15 U.S.C. § 77q .................................................................................................................... 2-3, 6

15 U.S.C. § 78j(b) ..................................................................................................................... 3, 6

17 C.F.R. § 240.10b-5 ............................................................................................................... 3, 6

17 C.F.R. § 201.1001(a) ................................................................................................................ 6

Plaintiff Securities and Exchange Commission (the "SEC"), respectfully submits this Reply Memorandum of Law in response to Defendant Brian Keller's July 15, 2025 Letter ("Keller Letter") (DE 369).

## PRELIMINARY STATEMENT

Keller asserts first that he was "unaware and uninvolved in the stock or stock transactions" concerning the fraudulent scheme involving the stock of BioZone.[1] *See* Keller Letter. This claim is of no moment because Keller's consent Judgment (DE 113 ¶ VI) expressly precludes him from challenging the Complaint's allegations, including those regarding his knowledge and involvement in any "stock or stock transactions" at issue in this case. The SEC's Complaint (DE 105) alleges that Keller was aware of and participated in a fraudulent pump-and-dump scheme involving BioZone stock. Keller's Judgment provides that, in considering the SEC's motion for monetary relief against Keller, the Court must accept as true the Complaint's allegations against Keller; and that Keller cannot contest the Complaint's allegations or otherwise assert that he did not violate the federal securities laws (as alleged in the Complaint). (DE 113 ¶ VI.) The Keller Letter ignores these provisions of the Judgment, and it also fails to acknowledge the Complaint's allegations that Keller, as an officer of BioZone, played a key role in the BioZone pump-and-dump scheme. In any event, even if Keller had been "unaware and uninvolved in the stock or stock transactions," he nonetheless knowingly contributed to the fraud in other ways alleged in the Complaint: by allowing the Honig Group to control BioZone; by signing false public filings that failed to disclose that control; and by giving false information to Ford to write a promotional article. (Complaint ¶¶ 82, 83, 85, 91, 95, 109).

Keller also wrongly asserts that "the penalty [requested by the SEC] is disproportionately

---

[1] All short forms in this brief are the same as those in the SEC's opening brief (DE 365).

severe compared to others who engaged in the mastermind of this scheme and realized substantial profits." See Keller Letter. In fact, the SEC's requested $125,000 penalty against Keller is lower than six of the seven monetary penalties that the Court has approved in consent judgments against other Defendants in this case who were charged (like Keller) with violating Securities Act Section 17(a) and Exchange Act Section 10(b). (DE 76-78, 93, 224-229, 362-363). Notably, the SEC's requested $125,000 penalty is substantially lower than the $578,005 penalty agreed to by Defendant Maza, Keller's primary co-conspirator in the BioZone scheme. (DE 363.) Furthermore, contrary to Keller's argument, his purported lack of financial gain is reflected in the SEC's overall remedies recommendation, which does not seek disgorgement.

Accordingly, for the reasons set forth below and in the SEC's opening brief, the Court should enter a final judgment against Keller that includes both the non-monetary relief that the Court previously awarded against him and a $125,000 civil money penalty.

## ARGUMENT

**I.    The Complaint's Allegations Establish Keller's Role in the BioZone Fraud**

As explained in the SEC's opening brief (pp. 4-8), the Complaint alleges that Keller substantially participated in the BioZone fraudulent scheme. This scheme unfolded when the Honig Group approached Keller and proposed to take the private BioZone Labs public through a reverse merger with a public shell company controlled by members of the Honig Group. (Complaint ¶¶ 82, 83, 85.) In exchange for allowing the Honig Group to control BioZone, Keller received 6,650,000 shares of the new public company. (*Id.* ¶¶ 84, 85.) After the merger, the Honig Group controlled the vast majority of BioZone's shares and installed Defendant Elliot Maza as CEO to do their bidding. (*Id.* ¶ 90)

While Keller was BioZone's nominal Chief Scientific Officer, President, and a director post-merger, as Keller knew and intended, the Honig Group controlled BioZone's management

2

and policies and used that control—with Keller's assistance and cooperation—to effectuate their pump-and-dump scheme. (Complaint ¶ 91.) The Complaint includes direct evidence of Keller's knowledge of the Honig Group's control: he wrote in a February 2012 email to a BioZone colleague upset with Maza's leadership: "The real power is with Barry Honig and Mike Brauser. Elliot [Maza] is just a mouthpiece." (*Id.* ¶ 91.)

Keller assisted the scheme, along with Maza, by failing to disclose in BioZone's public annual SEC financial statement (its "Form 10-K") and its amended Form 10-K that the Honig Group was exercising control over BioZone—an arrangement essential to the pump-and-dump scheme. (Complaint ¶¶ 91, 95.) In addition, Keller and Maza acceded to the Honig Group's demands for favorable financing terms for BioZone, thus allowing Honig and Brauser to amass millions of shares of BioZone stock while conferring no significant benefit on the company. (*Id.* ¶ 92.) Keller further contributed to the scheme by providing false projections to Ford, an online newsletter writer regarding BioZone's future success. (*Id.* ¶ 109.) The resultant false online article artificially inflated BioZone's stock price, allowing Honig and Brauser to dump their shares on unsuspecting investors. (*Id.*)

The Complaint's allegations thus set forth Keller's substantial participation in the BioZone fraudulent scheme—by hiding the Honig Group's control and giving false information to promotional writer Ford in connection with the Honig Group's pump and dump of the BioZone stock.

As further explained in the SEC's opening brief (pp.2-3), under the Judgment, for purposes of assessing the appropriate penalty amount against Keller, the Court must accept as true the Complaint's allegations against Keller. (DE 113 ¶ VI.) Thus, the Court should disregard the Keller Letter's assertions to the extent Keller is now attempting to take issue with any of the

3

Complaint's allegations against him. *See SEC v. Universal Express, Inc.*, 646 F.Supp.2d 552, 565 (S.D.N.Y. 2009) *aff'd* 438 Fed.Appx. 23 (2d. Cir. 2011) ("because [defendant] has admitted the truth of the allegations contained in the complaint for purposes of this motion, any contention [not in the complaint] must be rejected.").

**II.    The Requested Third-Tier Civil Money Penalty is Commensurate with Penalties Imposed Against other Defendants in this Action**

Keller further asserts that the penalty the SEC seeks "is disproportionately severe compared to others who engaged in the mastermind of this scheme and realized substantial profits." *See* Keller Letter. As the record demonstrates, however, that is not the case.

For penalty purposes, the most analogous final judgment in this case is against CEO Maza, Keller's close co-conspirator in the BioZone scheme. The Complaint's allegations regarding Maza overlap with those against Keller in several ways. Like Keller, Maza approved BioZone financings that awarded Honig and Brauser millions more shares of BioZone stock, without any benefit to BioZone. (Complaint ¶¶ 92, 94.) Also like Keller, the Complaint alleges that Maza, in September 2013, fraudulently concealed the Honig Group's control of BioZone by signing BioZone Forms 10-K that concealed those facts from its shareholders and the general public. (*Id.* ¶¶ 91, 95.) Keller and Maza engaged in this deception despite knowing that the Honig Group controlled almost 45% of BioZone's outstanding shares in order to dictate BioZone's management and policies. (*Id.* ¶ 95.) Despite the similarities in their conduct, Maza's consent judgment orders him to pay $578,005 in penalties (DE 363), more than four times the $125,000 penalty that the SEC requests against Keller. (DE 363.)

Furthermore, almost all of the consent judgments against the other defendants in this case who were involved in the BioZone scheme included penalties greater than $125,000: $5,000,000 ordered against defendant Frost (DE 77); $578,0005 ordered against defendant Maza (DE 363),

4

$260,000 ordered against defendant O'Rourke (DE 228); $160,000 ordered against defendant Brauser (DE 224); $160,000 ordered against defendant Stetson (DE 227); and $160,000 ordered against defendant Groussman (DE 93).[2] The Complaint alleges that Defendants Frost, Maza, Brauser, Stetson, O'Rourke, and Ford all substantially participated in the BioZone scheme. (Complaint ¶¶ 80-112.) Moreover, Defendants Frost, Brauser, Stetson, O'Rourke, and Groussman each paid additional substantial disgorgement and prejudgment interest thereon ("PJI"): $433,181.06 disgorgement and $90,206.46 PJI ordered against Frost (DE 77); $765,128 disgorgement and $129,198 PJI ordered against O'Rourke (DE 228); $844,914.32 disgorgement and $70,853.84 PJI ordered against Brauser (DE 224); $837,509.98 disgorgement and $157,159.30 PJI ordered against Stetson (DE 227); and $1,051,360 disgorgement and $70,554.78 PJI ordered against Groussman (DE 93). Thus, directly contrary to Keller's argument, the $125,000 penalty that the SEC requests against him is much lower than the civil penalties ordered against almost all other Defendants in this case and is proportionate to Keller's misconduct alleged in the Complaint.

The requested penalty is also consistent with the purpose of civil monetary penalties: "The purpose of civil monetary penalties is to punish the individual violator and deter future violations of the securities laws." *SEC v. Rust*, No. 16 Civ. 3573 (ER), 2021 WL 2850615, at *3 (S.D.N.Y. July 8, 2021) (Ramos, J.). (internal quotation marks omitted.)

Finally, the requested penalty comports with applicable precedent setting guidelines for how to assess the appropriate amount of a penalty in a given case. *See e.g., SEC v. Bajic*, No. 20 Civ. 0007 (LGS), 2023 WL 6289953, at *4 (S.D.N.Y. Sept. 27, 2023) (civil monetary penalties are "not to exceed the greater of: (i) the gross pecuniary gain to a defendant as a result of the

---

[2] The only exception is Defendant Ford, whose consent judgment includes a $100,000 penalty. (DE 362).

violation, or (ii) a specified amount per violation, depending on whether the violation falls in the first, second or third penalty tier.")[3] When considering how to assess a penalty, Courts consider these factors:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*Rust*, 2021 WL 2850615, at *4.

A $125,000, third-tier civil money penalty fits well within these factors. The Complaint's allegations—which the Court must accept as true for purposes of this motion—establish that Keller's conduct was intentional, including his knowing misrepresentations regarding the status of BioZone's technology for Ford's *Seeking Alpha* article, in violation of Exchange Act Section 10(b), and Rule 10b-5(b) thereunder, and Securities Act Section 17(a)(2). (Complaint Counts Three and Four.)

As the Complaint further alleges, despite knowing that Honig and Brauser controlled BioZone decision making, and as an officer and director of BioZone (a public company), Keller nonetheless signed at least two BioZone public annual financial SEC filings that fraudulently failed to disclose Honig's and Brauser's control of BioZone (which BioZone filed with the SEC in 2013). (Complaint ¶¶ 91, 95.) Moreover, investors who purchased BioZone stock after the publication of Ford's *Seeking Alpha* article touting the stock were harmed because their purchases were at artificially high prices, which then turned sharply downward when BioZone tanked in contradiction to Ford's article. (*Id.* ¶ 8.) Thus, Keller's illegal acts were egregious,

---

[3] When Keller's violations occurred, in September 2013, the maximum inflation-adjusted per-violation amount applicable to individuals for third-tier violations was $160,000. *See* Table I to 17 C.F.R. § 201.1001(a).

knowing, repeated, and resulted in substantial losses or, at the least, a significant risk of substantial losses, to investors. The Keller Letter does not address these factors or otherwise challenge this analysis.

Accordingly, a $125,000 third-tier penalty is appropriate in this case because it serves the dual purposes of general and specific deterrence. At the same time, a $125,000 penalty is proportionate to the penalties imposed in the consent judgments that the Court previously issued against the other Defendants in this case.

## **CONCLUSION**

For the foregoing reasons and those set forth in the SEC's opening brief, the Court should grant the SEC's motion for a final judgment against Defendant Keller, ordering both the relief the Court previously awarded and an additional $125,000 civil penalty that the SEC requests herein against him.[4]

Dated: July 25, 2025
       New York, New York

Respectfully submitted,

*/s/ Katherine Bromberg*
Katherine Bromberg
33 Arch Street
24th Floor
Boston, MA 02110
(617) 573-8914

Jack Kaufman
100 Pearl Street, Suite 20-100
New York, New York 10004
(212) 336-0106

Attorneys for Plaintiff Securities and Exchange Commission

---

[4] Should the Court grant the SEC's motion in whole or part, the SEC will file a proposed form of Final Judgment for the Court's consideration.